**RECORD NOS. 22-1999(L), 22-2064**

In The
# United States Court of Appeals
For The Fourth Circuit

**KIERAN RAVI BHATTACHARYA,**

***Plaintiff – Appellant,***

**v.**

**JAMES B. MURRAY, JR., in his official capacity as Rector of the Board of Visitors of the University of Virginia; WHITTINGTON W. CLEMENT, in his official capacity as Vice Rector of the Board of Visitors of the University of Virginia; ROBERT M. BLUE; MARK T. BOWLES; L. D. BRITT, M.D., M.P.H.; FRANK M. CONNER, III; ELIZABETH M. CRANWELL; THOMAS A. DEPASQUALE; BARBARA J. FRIED; JOHN A. GRIFFIN; LOUIS S. HADDAD; ROBERT D. HARDIE; MAURICE A. JONES; BABUR B. LATEEF, M.D.; ANGELA HUCLES MANGANO; C. EVANS POSTON, JR.; JAMES V. REYES, in his official capacity as Member of the Board of Visitors of the University of Virginia; PETER C. BRUNJES, in his official capacity as Member of the Board of Visitors of the University of Virginia; MELISSA FIELDING, in her official capacity as Deputy Chief of Police of the University of Virginia; JOHN J. DENSMORE, M.D., Ph.D., in his official capacity as Associate Dean for Admissions and Student Affairs of the University of Virginia School of Medicine; JIM B. TUCKER, M.D., in his official capacity as Chair of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine; CHRISTINE PETERSON, M.D., Assistant Dean for Medical Education of the University of Virginia School of Medicine; EVELYN R. FLEMING; CARLOS M. BROWN; LEWIS FRANKLIN (L. F.) PAYNE, JR.,**

***Defendants – Appellees.***

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT CHARLOTTESVILLE**

**JOINT APPENDIX**
**VOLUME I OF VII**
**(Pages 1 – 376)**

**Michael J. Lockerby**
**FOLEY & LARDNER LLP**
**3000 K Street, NW, Suite 600**
**Washington, DC 20007**
**(202) 945-6079**

***Counsel for Appellant***

**Lucas W.E. Croslow**
**Andrew N. Ferguson**
**Erika L. Maley**
**OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA**
**202 North 9th Street**
**Richmond, Virginia 23219**
**(804) 786-7704**

***Counsel for Appellees***

**THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA 23219 ♦ (800) 856-4419**

# TABLE OF CONTENTS

## VOLUME ONE

District Court Docket Sheet .................... JA1

Plaintiff's Complaint,
With Exhibits,
Filed September 16, 2019 .................... JA85

Exhibits:

1. Social Issues in Medicine Agency Evaluation of Student
Undated .................... JA134

2. Student Performance Evaluation
Dated September 12, 2016 .................... JA135

3. Student Performance Evaluation
Dated August 1, 2016 through December 18, 2016 .................... JA140

4. University of Virginia Official Withdrawal Form
Dated February 7, 2017 .................... JA143

5. Student Performance Evaluation
Dated March 26, 2018 through May 26, 2018 .................... JA145

6. Student Performance Evaluation
Dated January 1, 2018 through May 25, 2018 .................... JA150

7. Policy on Academic and Professional Advancement
Revised July 2018 .................... JA153

8. Concern Card
Dated May 4, 2018 .................... JA163

9. 1 Hour Audio Recording of Social Issues in Medicine
Undated .................... JA164

Exhibits, continued:

10. Email Correspondence
Various Dates ........ JA165

11. Concern Card
Dated October 25, 2018 ........ JA167

12. Email Correspondence
Various Dates ........ JA168

13. University of Virginia School of Medicine Minutes
Dated November 14, 2018 ........ JA170

14. Academic Standards and Achievement Commitment Operating Procedures
Undated ........ JA171

15. Redacted Jim Tucker's Bio
Undated ........ JA176

16. Redacted ASAC Committee Members
Undated ........ JA179

17. Information about Brian W. Behm, MD
Undated ........ JA181

18. Information about Donna T. Chem, M.D., MPH
Undated ........ JA183

19. Information about Stephen H. Culp, MD PhD
Undated ........ JA185

20. Information about Pamila Herrington, M.D.
Undated ........ JA186

21. Information about Nicolas Intagliata, MD
Undated ........ JA188

Exhibits, continued:

22. Information about Dr. Nora Kern
Undated ................................................................ JA190

23. Information about Wilson Miller, PhD
Undated ................................................................ JA191

24. Information about Barnett R. Nathan, MD
Undated ................................................................ JA192

25. Information about Catherine C. Shaffrey, MD
Undated ................................................................ JA194

Pretrial Order of
The Honorable Norman K. Moon
Filed October 1, 2019 ................................................................ JA196

First Amended Complaint,
With Exhibits,
Filed February 19, 2020 ................................................................ JA203

Exhibits:

2. Audio Recording of AMWA Microaggression Panel Discussion
Dated October 25, 2018 ................................................................ JA259

9. Policy on Academic and Professional Advancement
Revised July 2018 ................................................................ JA261

65. Appeal to Trespass Warning
Dated July 21, 2019 ................................................................ JA272

66. Email Correspondence between
Kieran Bhattacharya and Gloria Graham
Re: Attached Trespass Appeal Decision
Dated August 7, 2019 ................................................................ JA275

Memorandum Opinion of The Honorable Norman K. Moon
Filed March 31, 2021 ................................................................ JA278

Order of
The Honorable Norman K. Moon
Re: Granting in Part and Denying in Part
Defendants' Motion to Dismiss
Filed March 31, 2021 .......... JA317

Report and Recommendations of
Magistrate Judge Joel C. Hoppe
Filed November 12, 2021 .......... JA318

Plaintiff's Objections to Magistrate's Report and Recommendations
Filed November 26, 2021 .......... JA339

Plaintiff's Reply Memorandum in Support of
Plaintiff's Objections to Magistrate's Report and Recommendations
Filed December 17, 2021 .......... JA352

Memorandum Opinion and Order of
The Honorable Norman K. Moon
Re: Granting in Part and Denying in Part Plaintiff's Motion for
Leave to File Second Amended Complaint and Adopting in
Part Magistrate Judge's Report and Recommendations
Filed March 16, 2022 .......... JA366

**VOLUME TWO**

Second Amended Complaint,
With Exhibits,
Filed March 24, 2022 .......... JA377

Exhibits:

1. A Printout of the Website Posting under the Heading
"New AMWA Chapter at the University of Virginia —
First Event a Success!"
Dated January 7, 2019 .......... JA450

2. Audio Recording
Dated October 25, 2018 .......... JA456

Second Amended Complaint,
With Exhibits,
Filed March 24, 2022, continued:

13. Second Professionalism Concern Card
Dated October 25, 2018 .................................................. JA458

28. UVA Medical School's Webpage on "Medical Student Advocacy"
Undated ........................................................................ JA460

36. Email to Kieran Bhattacharya from Jim Tucker
Re: Attached ASAC Letter
dated November 15, 2018 ................................................ JA463

37. Email Correspondence between
Kieran Bhattacharya and John Densmore
dated November 26-27, 2019 ............................................ JA466

38. FIRE's Mission Statement
Undated ........................................................................ JA468

40. Email to Kieran Bhattacharya from R. J. Canterbury
Dated November 27, 2018 ................................................ JA471

41. Redacted Information about Randolph Canterbury
Undated ........................................................................ JA473

42. Email to Kieran Bhattacharya from Katherine Yates
Dated November 28, 2018 ................................................ JA480

45. Academic Standards and Achievement
Committee Operating Procedures
Undated ........................................................................ JA482

46. Verizon Telephone Call Log
Dated November 28, 2018 ................................................ JA488

53. Email to Kieran Bhattacharya from Jim Tucker
Re: Attached ASAC Letter
Dated November 29, 2018 ................................................ JA490

Second Amended Complaint,
With Exhibits,
Filed March 24, 2022, continued:

58. Letter to Kieran Bhattacharya from Melissa Fielding
Dated January 2, 2019 .......... JA494

59. Email Correspondence between
John Densmore and Kieran Bhattacharya
Dated December 27, 2018 to January 3, 2019 .......... JA498

63. Email to Kieran Bhattacharya from Melissa Fielding
Dated July 18, 2019 .......... JA501

Exhibit to Appeal of Magistrate Judge's Decision
Filed April 6, 2022:

A. Contact Notes of Call from Nicole Ruzek to Poplar Springs
Dated November 20, 2018 .......... JA504

Exhibit to Plaintiff's Response to Dr. Hsu's Motion to Quash Verizon Subpoena
Filed May 27, 2022:

C. Excerpts of Deposition of Christine Peterson
Heard on May 4, 2022 .......... JA505

Defendants' Exhibits to Memorandum in
Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022:

DX1. Redacted Videoconference Videotaped Deposition of
Melissa Fielding
Heard on April 27, 2022 .......... JA517

Examination by Mr. Lockhart .......... JA528
Examination by Ms. Thompson .......... JA571

Defendants' Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment Filed June 22, 2022, continued:

DX2. Excerpts of Deposition of Kieran Ravi Bhattacharya
Heard on May 23, 2022 .................................................. JA586

Examination .................................................................. JA588

DX4. Functions and Structure of a Medical School Standards for Accreditation of Medical Education Programs Leading to the MD Degree
Dated July 1, 2018 ......................................................... JA593

DX5. University of Virginia Graduate Record of 2018-2019
Dated June 30, 2021 ........................................................ JA634

DX6. Tech Standard Acknowledgements
Undated ......................................................................... JA652

DX9. Excerpts of Virtual Video Deposition of Pamila A. Herrington, M.D.
Heard on May 12, 2022 .................................................. JA661

Examination .................................................................. JA664

DX10. Redacted Videotaped Deposition of John Densmore
Heard on May 9, 2022 ............................................ JA669

Examination by Mr. Lockerby ................................ JA676

DX11. University of Virginia Official Withdrawal Form
Dated February 7, 2017 and February 21, 2017 ...... JA695

DX12. Email Correspondence
Various Dates ........................................................ JA697

DX13. Redacted Virtual Video-recorded Deposition of Roxanne Bhattacharya
Heard on April 23, 2022 ......................................... JA700

Defendants' Exhibits to Memorandum in
Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX15. Email Correspondence
Various Dates ........................................................ JA730

DX16. Redacted Declaration of Christine Peterson, M.D.,
With Exhibits,
Dated June 11, 2022 ............................................... JA732

DX17, Email to
Victor Soukoulis from
Christine M. Peterdon
Re: Student
Dated September 2, 2015 ........................................ JA738

DX18. Audio File
Undated ................................................................. JA740

DX19. Redacted Email Correspondence
Various Dates ........................................................ JA741

DX20. Declaration of Nora G. Kern, M.D.
Dated June 10, 2022 ............................................... JA745

DX20-A. Concern Card
Dated October 25, 2018 .......................................... JA751

DX21. Email Correspondence
Dated October 25, 2018 .......................................... JA755

DX22. Email Correspondence
Various Dates ........................................................ JA758

DX23. Redacted University of Virginia School of Medicine Minutes
Dated November 14, 2018 ...................................... JA761

Defendants' Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment Filed June 22, 2022, continued:

DX24. University of Virginia Academic Standards and Achievement Committee Letter Dated November 15, 2018 .......... JA763

DX25. Email Correspondence Re: HEME Final Update Dated November 12 2018 .......... JA766

DX26. Email Correspondence Various Dates .......... JA769

DX27. Redacted Letter to Justice Clark from Kieran Bhattacharya Re: Introduction Dated November 25, 2018 .......... JA771

DX29. Redacted Petition for Involuntary Admission for Treatment Dated November 14, 2018 .......... JA774

DX30. Emergency Custody Order Dated November 14, 2021 .......... JA777

DX31. University of Virginia Police Department Field Case Report Dated November 14, 2018 .......... JA779

DX32. Incident Report Dated July 16, 2021 .......... JA781

DX33. Redacted Petition for Involuntary Admission for Treatment Dated November 19, 2018 .......... JA784

DX35. Video Undated .......... JA791

Defendants' Exhibits to Memorandum in
Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX36. Redacted Email to
Internal Notification List, Gloria Graham and
Patricia M. Lampkin
Re: Internal Notification – Assist Citizen CEO
Dated November 19, 2019 ........................................ JA792

DX37. Excerpts of Videotape Zoom Deposition of
Patrick L. Stafford, M.D.
Heard on April 6, 2022 ........................................ JA794

DX38. Redacted Temporary Detention Order – Magistrate
Dated July 19, 2018 ........................................ JA798

DX39. Report Information
Undated ........................................ JA800

DX40. Order for Treatment
Dated January 13, 2022 ........................................ JA803

DX41. Discharge Summary
Dated November 26, 2018 ........................................ JA807

DX42. Student Participation in Curricular Events
Dated June, 2019 ........................................ JA811

DX44. Email Correspondence
Various Dates ........................................ JA815

DX45. Email to
Kieran Bhattacharya from
R.J. Canterbury
Re: Required Process to Attend Class
Dated November 27, 2011 ........................................ JA817

DX46. Email to
R.J. Canterbury from

John J. Densmore
Re: Update
Dated November 20, 2018 ........................................ JA819

Defendants' Exhibits to Memorandum in
Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX47. Email Correspondence
Dated November 27, 2018 ........................................ JA821

DX48. Declaration of Randolph J. Canterbury, M.D.
Dated June 9, 2022 ........................................ JA823

DX49. Email to
Jim Tucker from
R.J. Canterbury
Re: Subject Emergency ASAC Meeting
Dated November 27, 2011 ........................................ JA827

DX50. Email Correspondence
Dated November 27, 2018 ........................................ JA829

DX51. Email to
Kieran Bhattacharya from
Katherine Yates
Re: ASAC Meeting Invite
Dated November 18, 2018 ........................................ JA832

DX52. Video
Undated ........................................ JA834

DX54. Redacted University of Virginia School of Medicine Minutes
Dated November 28, 2018 ........................................ JA835

**VOLUME THREE**

DX55. Redacted Deposition of Christine Peterson
Heard on May 4, 2022 ........................................ JA837

Examination by Mr. Lockerby ........................................ JA849

Defendants' Exhibits to Memorandum in
Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX56. Letter to
Kieran Bhattacharya from
Jim B. Tucker
Re: School of Medicine's Technical Standards
Dated November 29, 2018 ....................................... JA870

DX58. Redacted Declaration,
With Exhibits,
Dated June 10, 2022 ............................................... JA873

DX59. Redacted Email Correspondence
Dated December 30, 2018 ....................................... JA888

DX61. Declaration of Jim B. Tucker, M.D.,
With Exhibits,
Dated June 10, 2022 ............................................... JA891

DX63. Trespass Warning
Dated January 2, 2019 ............................................ JA901

DX64. Email Correspondence
Various Dates.......................................................... JA905

DX65. Email to
Virginia Police from
Kieran Bhattacharya
Dated January 8, 2019 ............................................ JA908

DX66. Email to
Kieran Bhattacharya from
Gloria Graham
Re: Trespass Warning Correspondence
Dated January 11, 2019 .......................................... JA910

DX67. Email Correspondence
Dated July 7, 2019 .................................................. JA912

Defendants' Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX68. Email Correspondence
Various Dates....................................................... JA914

DX69. Email Correspondence
Various Dates....................................................... JA916

DX70. Email Correspondence
Various Dates....................................................... JA919

DX71. Email Correspondence
Various Dates....................................................... JA923

DX72. Email Correspondence
Various Dates....................................................... JA928

DX73. Letter to
Kieran Bhattacharya from
Gloria Graham
Re: Trespass Warning
Dated August 7, 2019 ............................................ JA931

DX75. Declaration of Brian W. Behm
Dated June 9, 2022 ................................................ JA934

DX76. Declaration of Robert A. Bloodgood
Dated June 9, 2022 ................................................ JA940

DX77. Declaration of Sharon Diamond-Myrsten, M.D.
Dated June 10, 2022 .............................................. JA945

DX78. Declaration of Nicolas Intagliata
Dated June 13, 2022 .............................................. JA951

DX79. Declaration of G. Wilson Miller, Ph.D.
Dated June 11, 2022 .............................................. JA957

Defendants' Exhibits to Memorandum in
Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX80. Declaration of Barnett R. Nathan
Dated June 12, 2022 ............................................... JA963

DX90. Declaration of Dr. Roger Abounader
Dated June 13, 2022 ............................................... JA969

DX91. Redacted Preadmission Face Sheet
Dated November 19, 2018 ....................................... JA975

DX93. Redacted Emergency Custody Order
Filed November 19, 2018 ......................................... JA985

Memorandum in Support of Plaintiff's Motion to Compel Production of
Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses,
With Exhibit,
Filed July 2, 2022 .......................................................................... JA987

Exhibit:

2. Email Correspondence
Dated November 29, 2018 .............................................. JA1015

Exhibits to Plaintiff's Opposition to
UVA's Motion for Summary Judgment
Filed July 13, 2022:

PX2. Email Correspondence
Re: Listening Post – General Evaluation
Dated October 26, 2015 .................................................. JA1018

PX3. Email Correspondence
Re: Listening Post – General Evaluation
Dated October 28, 2016 .................................................. JA1020

Exhibits to Plaintiff's Opposition to
UVA's Motion for Summary Judgment
Filed July 13, 2022, continued:

PX4. Excerpts of Transcript of Videotaped Deposition of Christine Peterson
Heard on May 4, 2022 .................................................. JA1022

Examination by Mr. Lockerby ........................................ JA1027

PX5. Handwritten Notes
Dated October 31, 2018 ................................................. JA1059

PX6. Notes from Telephone Meeting with John Densmore
Dated November 20, 2018 ............................................. JA1062

PX7. Email Correspondence
Re: Listening Post – General Evaluation
Dated October 25-29, 2018 ............................................ JA1065

PX8. Randolph Canterbury Tweet
Dated September 22, 2018 ............................................. JA1068

PX9. Excerpts of Transcript of Videotaped Deposition of John Densmore
Heard on May 9, 2022 .................................................. JA1070

Examination by Mr. Lockerby .................................................. JA1075

PX11. Email Correspondence
Re: Listening Post – General Evaluation
Dated October 26, 2016 ................................................. JA1083

PX12. Email Correspondence between Christine Peterson and Nicole Ruzek
Dated November 19-20, 2018 ......................................... JA1086

Exhibits to Plaintiff's Opposition to
UVA's Motion for Summary Judgment
Filed July 13, 2022, continued:

PX14. Excerpts of Transcript of Videotaped Deposition of Edward Markowski
Heard on April 27, 2022 .................................................JA1090

Examination by Mr. Slovak ............................................JA1095

PX15. Excerpts of Transcript of Videotaped Deposition of Nicole Ruzek, Ph. D.
Heard on May 11, 2022 ..................................................JA1107

Examination ..................................................................JA1112

PX19. Email to Meg Keeley, John Densmore, and Sean Reed from Christine Peterson
Dated January 2, 2009....................................................JA1152

PX23. Email Exchange between Christine Peterson, Kieran Bhattacharya, and John Densmore
Dated October 25-26, 2018.............................................JA1154

PX27. Excerpts of Transcript of Virtual Video Deposition of Pamila A. Herrington, M.D.
Heard on May 12, 2022 ..................................................JA1156

Examination ..................................................................JA1158

PX34. Email to Nicole Ruzek from Christine Peterson
Dated November 28, 2014 .............................................JA1170

PX39. University of Virginia Police Department Detail
Dated December 10, 2021...............................................JA1172

PX40. Email Correspondence between R. J. Canterbury and Jim Tucker
Dated December 29-30, 2018 .........................................JA1225

Exhibits to Plaintiff's Opposition to
UVA's Motion for Summary Judgment
Filed July 13, 2022, continued:

PX41. Email from J. R. Canterbury
Dated November 3, 2020 .......... JA1229

PX42. Excerpts of Transcript of Videotaped Deposition of
Randolph Canterbury, M.D.
Heard on May 24, 2022 .......... JA1231

Examination by Mr. Munisteri .......... JA1236

PX43. Email to Kieran R. Bhattacharya from R. J. Canterbury
Dated November 27, 2018 .......... JA1252

Memorandum Opinion of
The Honorable Norman K. Moon
Re: Denying Plaintiff's Appeals of Judge Hoppe's Discovery Orders, Granting Defendant Rasmussen's Motion to Dismiss, and Granting in Full the UVA Defendants' Motion for Judgment on the Pleadings
Filed July 21, 2022 .......... JA1254

Corrected Exhibit 13 to Opposition to UVA's
Motion for Summary Judgment,
With Exhibit,
Filed July 27, 2022 .......... JA1266

Transcript of Motion for Summary Judgment before
The Honorable Norman K. Moon
Heard on August 15, 2022 .......... JA1269

Memorandum Opinion of
The Honorable Norman K. Moon
Filed August 19, 2022 .......... JA1312

Order of
The Honorable Norman K. Moon
Re: Granting UVA's Motion for Summary Judgment
Filed August 19, 2022 .......... JA1332

Administrative Order of
The Honorable Norman K. Moon
Re: Closing Case
Filed September 30, 2022 .................................................................. JA1333

Plaintiff's Notice of Appeal
Filed October 3, 2022 ...................................................................... JA1334

**VOLUME FOUR (SEALED)**

Exhibit to Plaintiff's Motion for Leave to File Second Amended Complaint
Filed June 10, 2021:

A. Proposed Second Amended Complaint
Dated June 10, 2021 ...................................................... JA1336

Exhibit to Plaintiff's Opposition to Defendants' Joint Motion to Compel
Filed November 17, 2021:

10. Email Correspondence
Dated November 20, 2018 .............................................. JA1423

Exhibits to Defendants' Joint Reply to Plaintiff's Opposition to Defendants' Joint Motion to Compel
Filed November 19, 2021:

A. Petition for Involuntary Admission for Treatment
Undated ......................................................................... JA1425

B. Emergency Custody Order
Dated November 14, 2018 .............................................. JA1426

Exhibit to Plaintiff's Objections to Magistrate's Report and Recommendations
Filed November 26, 2021:

A. Letter from
Christine M. Peterson, MD
Re: Angel Hsu's Request for Legal Protection from the Aggressive Behavior
Dated November 23, 2018 .............................................. JA1427

Exhibits to Plaintiff's Objections to Magistrate's Reports and Recommendations
Filed November 29, 2021:

B. Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event Number One
Undated ........................................................................ JA1429

C. Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event Number Two
Undated ........................................................................ JA1459

D. Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event Number Three
Undated ........................................................................ JA1464

E. Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event Number Four
Undated ........................................................................ JA1467

F. Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event Number Five
Undated ........................................................................ JA1468

Exhibit to Plaintiff's Memorandum in Support of Motion to Remediate Defendants' Spoilation of Evidence and Amend Scheduling Order
Filed February 7, 2022:

D. Email Correspondence
dated November 27, 2018 ............................................... JA1470

F. Email Correspondence
Various Dates ................................................................. JA1472

Exhibit to Plaintiff's Reply to UVA Defendants' Opposition to Plaintiff's Spoilation Remediation Motion
Filed February 25, 2022(301):

9. Email Correspondence

Various Dates ........ JA1487

Exhibits to Plaintiff's Opposition to the UVA Defendants' Motion for Protective Order
Filed April 20, 2022(368):

D. Text Messages
Dated October 28, 2018 ........ JA1494

N. Email Correspondence
Various Dates ........ JA1496

Defendants' Sealed Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022:

DX8. ED in UVA Emergency Department
Dated November 19, 2018 ........ JA1500

**VOLUME FIVE (SEALED)**

Defendants' Sealed Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX8. ED in UVA Emergency Department
Dated November 19, 2018, continued ........ JA1837

**VOLUME SIX (SEALED)**

Defendants' Sealed Exhibits to Memorandum in Support of Defendants' Motion for Summary Judgment
Filed June 22, 2022, continued:

DX8. ED in UVA Emergency Department
Dated November 19, 2018, continued ........ JA2338

DX14. Medical School Record
Dated October 11, 2019 ........ JA2617

DX28. Summary of Note for Kieran R. Bhattacharya
Dated November 14, 2018 .................................... JA2619

DX34. Declaration of Angel Hsu, M.D.
Dated June 9, 2022 .................................... JA2690

DX34-B. Photograph/Screen Capture
undated .................................... JA2694

DX34-C. Text Messages
Various Dates .................................... JA2697

DX34-D. Preliminary Protective Orders – Family Abuse
Dated November 26, 2018 .................................... JA2701

DX34-E. LinkedIn Messages
Dated July 5, 2019 .................................... JA2712

DX34-F. Protective Order – Family Abuse
Dated September 20, 2019 .................................... JA2717

DX57. Meeting Notes
Dated April 2, 2019 .................................... JA2722

Plaintiff's Opposition to UVA's Motion for Summary Judgment
Filed July 13, 2022 .................................... JA2739

Exhibits to Plaintiff's Amended Opposition to
UVA's Motion for Summary Judgment
Filed July 13, 2022:

PX10. Handwritten Notes
Dated January 10, 2017 .................................... JA2797

PX17. Email Correspondence between
Christine Peterson and Tabitha Enoch
Dated November 30, 2018 .................................... JA2800

PX21. University of Virginia Progress Notes
Dated January 8-21, 2017 .................................... JA2806

Exhibits to Plaintiff's Amended Opposition to
UVA's Motion for Summary Judgment
Filed July 13, 2022, continued:

PX22. Declaration of Kieran Ravi Bhattacharya
Dated July 12, 2022 .......................................................JA2808

PX24. Communications to and from John Densmore
Various Dates.................................................................JA2815

PX25. Text Messages
Undated ........................................................................JA2817

PX33. Email Correspondence
Dated November 20-26, 2018.........................................JA2819

PX46. Email Correspondence between
Tabitha Enoch and Christine Peterson
Dated November 29, 2018 ....................................JA2832

**VOLUME SEVEN (MEDIA)**

Exhibit to First Amended Complaint
Filed February 19, 2020:

2. Audio Recording of AMWA Microaggression Panel Discussion
Dated October 25, 2018 ..................................................JA2836

CLOSED,APPEAL,CASREF,PROTO

# U.S. District Court
# Western District of Virginia (Charlottesville)
# CIVIL DOCKET FOR CASE #: 3:19-cv-00054-NKM-JCH

Bhattacharya v. Murray, Jr., et al
Assigned to: Senior Judge Norman K. Moon
Referred to: Magistrate Judge Joel C. Hoppe
Demand: $140,000
Case in other court: USCA, 22-01999
USCA, 22-02064
Cause: 42:1983 Civil Rights Act

Date Filed: 09/16/2019
Date Terminated: 09/30/2022
Jury Demand: Both
Nature of Suit: 448 Civil Rights: Education
Jurisdiction: Federal Question

**Plaintiff**

**Kieran Ravi Bhattacharya** represented by

**Brandon Christopher Marx**
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
214-999-4754
Fax: 214-999-3754
Email: bmarx@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Melko**
Foley & Lardner LLP
1000 Louisiana St., Suite 2000
Houston, TX 77002
713-276-5727
Email: jmelko@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael J. Lockerby**
Foley & Lardner, LLP
3000 K Street, N.W., Suite 600
Washington, DC 20007
202-945-6079
Fax: 672-5399
Email: mlockerby@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Thomas Slovak**
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
214-999-4334

Fax: 214-999-4667
Email: rslovak@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven Lockhart**
Foley & Lardner LLP
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
214-999-4668
Email: slockhart@foley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jack Gabriel Haake**
McDermott Will & Emery LLP
2501 N. Harwood St., Ste 1900
Dallas, TX 75201
214-210-2816
Fax: 972-692-7487
Email: jhaake@mwe.com
*TERMINATED: 05/11/2021*
*ATTORNEY TO BE NOTICED*

**James G. Munisteri**
Foley & Lardner LLP
1000 Louisiana, Ste 2000
Houston, TX 77002
713-276-5500
Fax: 713-276-5555
Email: jmunisteri@foley.com
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**Region Ten Community Service Board** represented by **Region Ten Community Service Board**
PRO SE

**Shannon Aileen Delano**
Flora Pettit PC
530 East Main Street
Charlottesville, VA 22902
434-817-7974
Fax: 434-977-5109
Email: shannon.delano@jacksonlewis.com
*TERMINATED: 08/24/2022*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rector and Visitors of the University of Virginia**
*TERMINATED: 02/19/2020*

represented by **Madeline Markelz Gibson**
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219
804-692-0551
Fax: 804-786-1991
Email: MGibson@oag.state.va.us
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
University of Virginia
Office of the University Counsel
P.O. Box 400225
Charlottesville, VA 22904-4225
434-982-2941
Fax: 434-982-3070
Email: mwriley@virginia.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Jeffrey Henson**
Troutman Pepper
1001 Haxall Point, Ste 11th Floor
Richmond, VA 23219
804-697-1429
Email: andrew.henson@troutman.com
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
Office of the Attorney General of Virginia
202 North 9th Street
Richmond, VA 23219
804-786-0082
Email: BMcGill@oag.state.va.us
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Defendant**

**James B. Murray, Jr.**
*in his official capacity as Rector of the Board of Visitors of the University of Virginia*

represented by **Farnaz Farkish Thompson**
McGuireWoods LLP
Office of General Counsel
888 16th Street N.W., Suite 500
Washington, DC 20006
202-857-2488
Fax: 202-828-3358
Email: fthompson@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
McGuireWoods LLP
323 2nd Street SE, Suite 700

Charlottesville, VA 22902
434-977-2509
Fax: 434-980-2258
Email: jblank@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
McGuireWoods LLP
652 Peter Jefferson Parkway, Suite 350
Charlottesville, VA 22911
434-977-2575
Fax: 434-980-2275
Email: mschwartz@williamsmullen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
McGuireWoods LLP
800 E. Canal Street
Richmond, VA 23219
804-775-1476
Fax: 804-698-2176
Email: apenn@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
McGuireWoods
888 16th Street, NW, Suite 500
Black Lives Matter Plaza
Washington, DC 20006
202-857-2438
Email: bhoward@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
Office of the Attorney General - Richmond
202 North Ninth Street

Richmond, VA 23219
804-486-4933
Fax: 804-371-2087
Email: cbrown@oag.state.va.us
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
804-775-1806
Email: efleming@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
McGuireWoods
800 East Canal Street
Richmond, VA 23219
804-775-1067
Email: etucker@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**James Compton**
888 16th St NW, Suite 500
Washington, DC 20006
202-857-1741
Email: jcompton@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Michael Brody**
McGuireWoods LLP
888 16th Street N.W., Ste. 500
Washington, DC 20006
202-857-1754
Email: mbrody@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Whittington W. Clement**
*in his official capacity as Vice Rector of the Board of Visitors of the University of Virginia*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert M. Blue** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark T. Bowles** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**L. D. Britt**
*M.D. , M.P.H.*

represented by

**Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Frank M. Conner, III** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**

(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Elizabeth M. Cranwell** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Thomas A. DePasquale** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Barbara J. Fried** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**John A. Griffin** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)

*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Louis S. Haddad** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Robert D. Hardie** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Maurice A. Jones** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Babur B. Lateef**
*M.D.*

represented by

**Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Angela Hucles Mangano** represented by

**Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)

*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**C. Evans Poston, Jr.** represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**James V. Reyes**
*in his official capacitiy as Member of the Board of Visitors of the University of Virginia*

represented by

**Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter C. Brunjes**
*in his official capacitiy as Member of the Board of Visitors of the University of Virginia*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Timonty Longo, Sr.**
*in his official capacity as Chief of Police of the University of Virginia*
*TERMINATED: 07/21/2022*

represented by

**Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Melissa Fielding**
*in her official capacity as Deputy Chief of Police of the University of Virginia*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**

(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**John J. Densmore**
*M.D., Ph.D., in his official capacity as Associate Dean for Admissions and Student*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Affairs of the University of Virginia School of Medicine*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jim B. Tucker**
*M.D., in his official capacity as Chair of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)

*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Christine Peterson**
*M.D., Assistant Dean for Medical Education of the University of Virginia School of Medicine*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Nora Kern**
*M.D., in her offical and individual capacity*
*TERMINATED: 07/21/2022*

represented by **Farnaz Farkish Thompson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Todd Blank**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Micah Block Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alicia Marie Penn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brandi G. Howard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)

*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 01/25/2022*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evan Tucker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Compton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Brody**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sara K. Rasmussen**
*M.D., PhD., in her official and individual capacity*
*TERMINATED: 07/21/2022*

represented by **Harry Robert Yates , III**
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, VA 23219
804-403-7108
Fax: 804-403-7110
Email: ryates@ohaganmeyer.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Madeline Markelz Gibson**
(See above for address)
*TERMINATED: 10/04/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brittany Ashley McGill**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Calvin Cameron Brown**
(See above for address)
*TERMINATED: 10/19/2021*
*ATTORNEY TO BE NOTICED*

**Christopher Quinn Adams**
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500

Richmond, VA 23219
804-403-7100
Fax: 804-237-0250
Email: cadams@ohaganmeyer.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Evelyn R Fleming** represented by **Melissa Wolf Riley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Samuel Fleming**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/16/2019 | 1 | COMPLAINT against Rector and Visitors of the University of Virginia (Filing & Administrative fee $ 400; Receipt 0423-300003211.), filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibits 1-25, # 3 Exhibits 26-56; Exhbits 9 and 46b are audio recordings on a thumb drive located in the Clerk's office)(jcj) |
| 09/30/2019 | 2 | WAIVER OF SERVICE Returned Executed by Rector and Visitors of the University of Virginia. Rector and Visitors of the University of Virginia waiver sent on 9/30/2019, answer due 12/2/2019.(jcj) |
| 09/30/2019 | 3 | NOTICE of Appearance by Madeline Markelz Gibson on behalf of Rector and Visitors of the University of Virginia (Gibson, Madeline) |
| 10/01/2019 | 4 | PRETRIAL ORDER. CASE REFERRED to Magistrate Judge Joel C. Hoppe.. Signed by Senior Judge Norman K. Moon on 10/1/19. (jcj) |
| 10/11/2019 | 5 | MOTION to Stay *Discovery Pending Filing And Resolution of Motion to Dismiss* by Rector and Visitors of the University of Virginia. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(Gibson, Madeline) |
| 10/11/2019 | 6 | Brief / Memorandum in Support re 5 MOTION to Stay *Discovery Pending Filing And Resolution of Motion to Dismiss* . filed by Rector and Visitors of the University of Virginia. (Gibson, Madeline) |
| 10/25/2019 | 7 | RESPONSE in Opposition re 5 MOTION to Stay *Discovery Pending Filing And Resolution of Motion to Dismiss*. filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Attachment 1)(jcj) |
| 10/31/2019 | 8 | NOTICE of Hearing: **(CR)** (No Interpreter requested) Jury Trial set for July 22-24, 2020 09:30 AM in Charlottesville before Senior Judge Norman K. Moon. **Counsel must contact the Clerk's Office no later than five (5) business days before the scheduled trial date for your technology needs.** (hnw) |
| 10/31/2019 | 9 | CERTIFICATE OF SERVICE by Kieran Ravi Bhattacharya re 7 Response in Opposition to Motion (jcj) |
| 10/31/2019 | 10 | PLAINTIFF KIERAN RAVI BHATTACHARYA'S INITIAL DISCLOSURES (FRCP 26(a)(1) (Attachments: # 1 Exhibits 1-4)(jcj) |

| | | |
|---|---|---|
| 10/31/2019 | 11 | MOTION/ Request for access to CM/ECF System by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (jcj) |
| 10/31/2019 | 12 | RESPONSE in Support re 5 MOTION to Stay *Discovery Pending Filing And Resolution of Motion to Dismiss* . filed by Rector and Visitors of the University of Virginia. (Gibson, Madeline) |
| 11/05/2019 | 13 | NOTICE of Telephonic Hearing on Motion 5 MOTION to Stay *Discovery Pending Filing And Resolution of Motion to Dismiss* : **(FTR)** Telephonic Motion Hearing set for 11/5/2019 03:00 PM before Magistrate Judge Joel C. Hoppe. Chambers to email dial in information to counsel. Clerk gave dial in info to Mr. Bhattacharya.(kld) |
| 11/05/2019 | 14 | FTR Log Notes for Telephonic Motion Hearing in the Charlottesville Division in CR3 held before Judge Joel C. Hoppe on 11/5/19. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. FTR Operator: H. Wheeler (hnw) |
| 11/05/2019 | 15 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Telephonic Motion Hearing held on 11/5/2019 re 5 MOTION to Stay *Discovery Pending Filing And Resolution of Motion to Dismiss* filed by Rector and Visitors of the University of Virginia, 11 MOTION request for access to CM/ECF System filed by Kieran Ravi Bhattacharya. (FTR Operator: H. Wheeler) (hnw) |
| 11/07/2019 | 16 | ORAL ORDER granting 5 Motion to Stay Discovery Pending Filing And Resolution of Motion to Dismiss and STAYING Discovery Deadlines and 4 Pretrial Order Deadlines pending the filing of Motion to Dismiss. If after the filing of the Motion to Dismiss the Plaintiff determines he needs discovery he may make a request specifying the discovery he needs.. Entered by Magistrate Judge Joel C. Hoppe on 11/5/19. (hnw) |
| 11/07/2019 | 17 | ORDER granting 11 Motion for access to the Court's Case Management /Electronic Case Filing System. Signed by Magistrate Judge Joel C. Hoppe on 11/7/19. (hnw) |
| 11/25/2019 | 18 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction by Rector and Visitors of the University of Virginia. (Attachments: # 1 Text of Proposed Order)(Gibson, Madeline) |
| 11/25/2019 | 19 | Brief / Memorandum in Support re 18 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction . filed by Rector and Visitors of the University of Virginia. (Gibson, Madeline) |
| 11/27/2019 | 20 | Roseboro Notice re 18 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction (hnw) |
| 12/14/2019 | 21 | NOTICE of Appearance by Michael J. Lockerby on behalf of Kieran Ravi Bhattacharya (Lockerby, Michael) |
| 12/14/2019 | 22 | NOTICE of Appearance by Jack Gabriel Haake on behalf of Kieran Ravi Bhattacharya (Haake, Jack) |
| 12/14/2019 | 23 | MOTION for Extension of Time to File Response/Reply as to 18 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Plaintiff's Uncontested Motion for Continunance) (Lockerby, Michael) |
| 12/16/2019 | 24 | Oral ORDER granting 23 Motion for Extension of Time to File Response/Reply. Plaintiff's response to defendant's motion to dismiss is due by January 6, 2020. Entered |

| | | |
|---|---|---|
| | | by Magistrate Judge Joel C. Hoppe on 12/16/19. (JCH) |
| 01/06/2020 | 25 | Brief / Memorandum in Opposition re 18 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 01/09/2020 | 26 | Consent MOTION to Stay *Briefing on Motion to Dismiss* by Rector and Visitors of the University of Virginia. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Consent Motion)(Gibson, Madeline) |
| 01/10/2020 | 27 | Oral ORDER granting 26 Motion to Stay Case. For the reasons stated in the motion to stay, the time for defendant to file its reply to the motion to dismiss is stayed pending further order of the court. No other action or deadline in the case is stayed. Entered by Magistrate Judge Joel C. Hoppe on 1/10/20. (JCH) |
| 02/03/2020 | 28 | PROPOSED AMENDED COMPLAINT *against University Defendants, UVA Med School Defendants, and Individual Co-Conspirators* filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66)(Lockerby, Michael) SEE ORDER ENTERED 2/19/2020 Modified on 2/20/2020 (hnw). |
| 02/04/2020 | 29 | ORAL ORDER: The Court recently granted the parties' consent motion to stay Defendant's deadline to file a reply in support of its pending motion to dismiss the Plaintiff's complaint, ECF No. 27, based on Plaintiff's representations that he planned to file a motion seeking leave to amend the pleading, ECF No. 26. On February 3, 2020, Plaintiff's counsel docketed a 270-page amended complaint, ECF No. 28, but did not seek leave in accordance with Fed. R. Civ. P. 15(a)(2) and the presiding District Judge's pretrial order, ECF No. 4, at 6. An amended pleading filed without the Court's leave or the opposing party's written consent has no legal effect. Accordingly, the parties are directed to confer and, on or before Monday, February 10, 2020, to file a report stating whether Defendant consents to Plaintiff's proposed amendment. Fed. R. Civ. P. 15(a)(2). If Defendant does not consent in writing, Plaintiff must file a motion seeking leave to amend his complaint. Entered by Magistrate Judge Joel C. Hoppe on 1/4/20. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(jcj) |
| 02/07/2020 | 30 | STATUS REPORT *Regarding Amended Complaint* by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/07/2020 | 31 | MOTION for Leave to File *First Amended Complaint* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Proposed Order)(Haake, Jack) |
| 02/19/2020 | 32 | ORDER granting 31 Motion for Leave to File First Amended Complaint Signed by Magistrate Judge Joel C. Hoppe on 2/19/2020. (hnw) |

| | | |
|---|---|---|
| 02/19/2020 | 33 | AMENDED COMPLAINT against James B. Murray, Jr., Whittington W. Clement, Robert M. Blue, Mark T. Bowles, L. D. Britt, Frank M. Conner, III., Elizabeth M. Cranwell, Thomas A. DePasquale, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, C. Evans Poston, Jr., James V. Reyes, Peter C. Brunjes, Timonty Longo, Sr., Melissa Fielding, John J. Densmore, Jim B. Tucker, Christine Peterson, Nora Kern, Sara K. Rasmussen, filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 48, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66)(hnw) (Entered: 02/20/2020) |
| 02/21/2020 | 34 | ORDER dismissing as moot 18 Motion to Dismiss for Failure to State a Claim; dismissing as moot 18 Motion to Dismiss for Lack of Jurisdiction Signed by Senior Judge Norman K. Moon on 2/21/2020. (hnw) |
| 02/27/2020 | 35 | Proposed Summons for James B. Murray Jr. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 36 | Proposed Summons for Whittington W. Clement by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 37 | Proposed Summons for Robert M. Blue by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 38 | Proposed Summons for Mark T. Bowles by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 39 | Proposed Summons for L.D. Britt, M.D., M.P.H. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 40 | Proposed Summons for Frank M. Conner III by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 41 | Proposed Summons for Elizabeth M. Cranwell by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 42 | Proposed Summons for Thomas A. DePasquale by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 43 | Proposed Summons for Barbara J. Fried by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 44 | Proposed Summons for John A. Griffin by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 45 | Proposed Summons for Louis S. Haddad by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 46 | Proposed Summons for Robert D. Hardie by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 47 | Proposed Summons for Maurice A. Jones by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 48 | Proposed Summons for Babur B. Lateef, M.D. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 49 | Proposed Summons for Angela Hucles Mangano by Kieran Ravi Bhattacharya (Haake, Jack) |

| | | |
|---|---|---|
| 02/27/2020 | 50 | Proposed Summons for C. Evans Poston Jr. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 51 | Proposed Summons for James V. Reyes by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 52 | Proposed Summons for Peter C. Brunjes by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 53 | Proposed Summons for Timothy Longo Sr. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 54 | Proposed Summons for Melissa Fielding by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 55 | Proposed Summons for John J. Densmore, M.D., Ph.D. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 56 | Proposed Summons for Jim B. Tucker, M.D. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 57 | Proposed Summons for Christine Peterson, M.D. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 58 | Proposed Summons for Nora Kern, M.D. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/27/2020 | 59 | Proposed Summons for Sara K. Rasmussen, M.D. by Kieran Ravi Bhattacharya (Haake, Jack) |
| 02/28/2020 | 60 | Electronic Summons Issued as to Robert M. Blue NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 61 | Electronic Summons Issued as to Mark T. Bowles NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 62 | Electronic Summons Issued as to Frank M. Conner, III. NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 63 | Electronic Summons Issued as to L. D. Britt NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 64 | Electronic Summons Issued as to Peter C. Brunjes NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 65 | Electronic Summons Issued as to Elizabeth M. Cranwell NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 66 | Electronic Summons Issued as to John J. Densmore NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 67 | Electronic Summons Issued as to Barbara J. Fried NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 68 | Electronic Summons Issued as to John A. Griffin NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 69 | Electronic Summons Issued as to Louis S. Haddad NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate |

| | | |
|---|---|---|
| | | service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 70 | Electronic Summons Issued as to Robert D. Hardie NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 71 | Electronic Summons Issued as to Thomas A. DePasquale NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 72 | Electronic Summons Issued as to Melissa Fielding NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 73 | Electronic Summons Issued as to Maurice A. Jones NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 74 | Electronic Summons Issued as to Nora Kern NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 75 | Electronic Summons Issued as to Babur B. Lateef NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 76 | Electronic Summons Issued as to Timonty Longo, Sr. NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 77 | Electronic Summons Issued as to Angela Hucles Mangano NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 78 | Electronic Summons Issued as to James B. Murray, Jr. NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 79 | Electronic Summons Issued as to Christine Peterson NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 80 | Electronic Summons Issued as to C. Evans Poston, Jr. NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 81 | Electronic Summons Issued as to Sara K. Rasmussen NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 82 | Electronic Summons Issued as to James V. Reyes NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 83 | Electronic Summons Issued as to Jim B. Tucker NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 02/28/2020 | 84 | Electronic Summons Issued as to Whittington W. Clement NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary |

| | | |
|---|---|---|
| | | to effectuate service under Fed. R. Civ. P. 4.(hnw) |
| 03/17/2020 | 85 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on James B. Murray Jr. on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 86 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Mark T. Bowles on 03/04/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 87 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on L.D. Britt, M.D., M.P.H. on 3/9/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 88 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Frank M. Conner III on 03/03/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 89 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Elizabeth M. Cranwell on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 90 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Thomas A. DePasquale on 3/7/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 91 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Louis S. Haddad on 3/9/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 92 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Robert D. Hardie on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 93 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Babur B. Lateef, M.D. on 3/9/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 94 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on C. Evans Poston Jr. on 3/7/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 95 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Peter C. Brunjes on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 96 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Timothy Longo Sr. on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 97 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Melissa Fielding on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 98 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on John J. Densmore, M.D., Ph.D. on 3/4/2020, filed by Kieran Ravi Bhattacharya. (Haake, Jack) |
| 03/17/2020 | 99 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Jim B. Tucker, M.D. on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 100 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Christine Peterson, M.D. on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 101 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Nora Kern, M.D. on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/17/2020 | 102 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Sara K. Rasmussen, M.D. on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/20/2020 | 103 | Proposed Summons for James V. Reyes by Kieran Ravi Bhattacharya (Haake, Jack) |

| | | |
|---|---|---|
| 03/20/2020 | 104 | Electronic Summons Issued as to James V. Reyes NOTICE TO COUNSEL: Please print copies of the electronically issued summons for each defendant as necessary to effectuate service under Fed. R. Civ. P. 4.(jcj) (Main Document 104 replaced on 3/20/2020) (hnw). Modified on 3/20/2020 (hnw).Replaced deficient pdf document with corrected pdf document |
| 03/20/2020 | 105 | CERTIFICATE OF SERVICE by Kieran Ravi Bhattacharya *of Service of Process for John A. Griffin, Maurice A. Jones, Angela Hucles Mangano, and James V. Reyes on March 20, 2020* (Haake, Jack) |
| 03/20/2020 | 106 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Whittington W. Clement on 3/10/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/20/2020 | 107 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Robert M. Blue on 3/11/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/20/2020 | 108 | AFFIDAVIT of Service for Summons and First Amended Complaint and Exhibits served on Barbara J. Fried on 3/4/2020, filed by Kieran Ravi Bhattacharya.(Haake, Jack) |
| 03/23/2020 | 109 | AFFIDAVIT of Service for Summons, Complaint and Exhibits served on John A. Griffin on 3/16/20, filed by Kieran Ravi Bhattacharya.(jcj) |
| 03/23/2020 | 110 | AFFIDAVIT of Service for Summons, Complaint and Exhibits served on Maurice A. Jones on 3/16/20, filed by Kieran Ravi Bhattacharya.(jcj) |
| 03/24/2020 | 111 | NOTICE of Appearance by Madeline Markelz Gibson on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker (Gibson, Madeline) |
| 03/24/2020 | 112 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Text of Proposed Order) (Gibson, Madeline) |
| 03/24/2020 | 113 | Brief / Memorandum in Support re 112 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Gibson, Madeline) |
| 04/07/2020 | 114 | Letter submitting a thumb drive to accompany Exhibit coversheets filed with the First Amended Complaint on 2/19/2020 (ECF. Dkt. 33). by Kieran Ravi Bhattacharya (jcj) Available for viewing in the Clerk's office. |
| 04/07/2020 | 115 | Brief / Memorandum in Opposition re 112 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* . filed by Kieran Ravi Bhattacharya. |

| | | |
|---|---|---|
| | | (Lockerby, Michael) |
| 04/14/2020 | 116 | REPLY to Response to Motion re 112 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Gibson, Madeline) |
| 04/22/2020 | 117 | NOTICE of Hearing on Motion 112 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* : **(CR)** (No Interpreter requested) Motion Hearing set for 6/24/2020 11:00 AM in Charlottesville before Senior Judge Norman K. Moon. (hnw) |
| 04/22/2020 | 118 | NOTICE of Appearance by Calvin Cameron Brown on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker (Brown, Calvin) |
| 06/16/2020 | 119 | NOTICE Rescheduling Hearing on Motion 112 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* **(CR) (No Interpreter requested) previously set for June 24, 2020 at 11:00 a.m. before Judge Norman K. Moon in Charlottesville:TELEPHONIC Motion Hearing NOW SET for June 24, 2020 11:00 AM in Charlottesville before Senior Judge Norman K. Moon. Parties will receive an email with dial in instructions. (hnw)** |
| 06/24/2020 | 120 | Minute Entry for proceedings held before Senior Judge Norman K. Moon: Motion Hearing held on 6/24/2020 re 112 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *First Amended Complaint* filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, Sara K. Rasmussen, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale. (Court Reporter: Mary Butenschoen) (hnw) |
| 06/30/2020 | 121 | Notice Rescheduling Hearing pursuant to Standing Order No. 2020-14 entered June 8, 2020 in the matter of Court Operations Under the Exigent Circumstances Created by COVID-19: Phase I Reopening, **(CR)** (No Interpreter requested) Jury Trial previously set for July 22-24, 2020 at 9:30 a.m. before Judge Norman K. Moon in Charlottesville: Jury Trial RESET for March 1-3, 2021 09:30 AM in Charlottesville before Senior Judge Norman K. Moon. **Counsel must contact the Clerk's Office no later than five (5) business days before the scheduled trial date for your technology needs.** (hnw) |
| 09/21/2020 | | **IMPORTANT NOTICE:** The United States District Court for the Western District of Virginia (WDVA) will be going live on the Next Generation of CM/ECF (NextGen CM/ECF) Tuesday, October 13, 2020. Preparing for NextGen CM/ECF is a two-step process. Step One is that each attorney must upgrade their individual PACER account, no shared accounts within firms will be allowed. Check and see if your PACER account is an "Upgraded" PACER account. Many PACER accounts have already been upgraded. If any of the following is true, you have an upgraded PACER account and no action is required until after the VAWD NextGen CM/ECF upgrade on **October 13, 2020:** 1) You have an |

| | | |
|---|---|---|
| | | upgraded PACER account for another NextGen Court or 2) Your PACER account was created after August 10, 2014. If none of these are true, you must upgrade your legacy PACER account before you will be able to link your PACER account to your VAWD CM/ECF account for your new NextGen CM/ECF account. Click here to learn how to upgrade your PACER Account. If you still have questions regarding your PACER account, please contact the PACER Service Center 800- 676-6856. Complete information regarding the WDVA NextGen CM/ECF implementation can be found at NextGen Information. (mzc) (ADI) |
| 09/29/2020 | | **IMPORTANT NOTICE:** The Western District of Virginia will be going live on NextGen CM/ECF Tuesday, October 13, 2020. This is a Two-Step process. In Step one each attorney was to make sure they had an upgraded individual PACER account. Now in preparation for Step Two please make sure you know your VAWD CM/ECF username and password. Please manually log in to the VAWD CM/ECF system at ht tps://ecf.vawd.uscourts.gov/cgi-bin/login.pl to make sure you know your current VAWD CM/ECF username and password. (do not rely on the auto-populating in your browser, because you will have to manually enter your CM/ECF username and password during the linking process after we go live on NextGen.) If you do not know your username or password please email ecf@vawd.uscourts.gov and include your bar# and contact phone#. (ADI) (mzc) |
| 10/05/2020 | | **IMPORTANT NOTICE:** The Western District of Virginia will be going live on NextGen CM/ECF **Tuesday, October 13, 2020**. The VAWD CM/ECF system will be unavailable from 8:00 am, October 10, 2020, through 8:00 am on Tuesday October 13, 2020. Preparing for NextGen CM/ECF is a two-step process. Step one was to upgrade your PACER account. Each attorney should have their own individual Upgraded PACER account at this time. Step two will be to link your upgraded PACER account to your VAWD CM/ECF account **after** the Court goes live on NextGen CM/ECF October 13, 2020. Instructions for linking you r account can be found by clicking here. Remember you cannot link your accounts until on or after the court goes live on NextGe n October 13, 2020. If you have any additional questions please call the VAWD Clerks Office at 540-857-5100 or email ecf@vawd.uscourts.gov. (ADI) (mzc) |
| 02/08/2021 | 122 | Oral ORDER cancelling the jury trial currently set for March 1-3, 2021 at 9:30 AM, in light of W.D. Va. Second Amended Standing Order No. 2020-10 and 2020-14. Courtroom Deputy Heidi Wheeler will contact the parties to reschedule a trial in this case. Entered by Senior Judge Norman K. Moon on 02/08/2021. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(dg) |
| 02/08/2021 | 123 | Notice of Cancellation of March 1-3, 2021 Jury Trial **(No Interpreter requested)** (Cancel Court Reporter) (hnw) |
| 03/11/2021 | 124 | MOTION for Discovery *Plaintiff's Motion to Lift Discovery Stay and Issue New Discovery Schedule* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Haake, Jack) |
| 03/11/2021 | 125 | Brief / Memorandum in Support re 124 MOTION for Discovery *Plaintiff's Motion to Lift Discovery Stay and Issue New Discovery Schedule Plaintiff's Memorandum in Support of Motion to Lift Discovery Stay and Issue New Discovery Schedule*. filed by Kieran Ravi Bhattacharya. (Haake, Jack) |
| 03/25/2021 | 126 | Brief / Memorandum in Opposition re 124 MOTION for Discovery *Plaintiff's Motion to Lift Discovery Stay and Issue New Discovery Schedule* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. |

| | | |
|---|---|---|
| | | Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Gibson, Madeline) |
| 03/26/2021 | 127 | NOTICE of Telephonic Hearing on Motion 124 MOTION for Discovery *Plaintiff's Motion to Lift Discovery Stay and Issue New Discovery Schedule* : **(FTR)** Telephonic Motion Hearing set for 4/6/2021 09:00 AM before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel.(kld) |
| 03/31/2021 | 128 | Reply re 124 MOTION for Discovery *Plaintiff's Motion to Lift Discovery Stay and Issue New Discovery Schedule*, 125 Brief / Memorandum in Support, *of Motion to Lift Discovery Stay and Issue New Discovery Schedule*. filed by Kieran Ravi Bhattacharya. (Haake, Jack) |
| 03/31/2021 | 129 | MEMORANDUM OPINION. Signed by Senior Judge Norman K. Moon on 3/31/2021. (hnw) |
| 03/31/2021 | 130 | ORDER granting in part and denying in part 112 Motion to Dismiss for Failure to State a Claim. The Court GRANTS Defendants' motion to dismiss Counts II, III, and IV and DISMISSES Counts II, III, and IV with prejudice. The Court DENIES Defendants' motion to dismiss Count I. Signed by Senior Judge Norman K. Moon on 3/31/2021. (hnw) |
| 04/06/2021 | 131 | Log Notes for Motion Hearing in the Harrisonburg Division held before Judge Joel C. Hoppe on 4/6/21. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. AT&T Conference Manager: Karen Dotson (kld) |
| 04/06/2021 | 132 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Motion Hearing held on 4/6/2021 re 124 MOTION for Discovery *Plaintiff's Motion to Lift Discovery Stay and Issue New Discovery Schedule* filed by Kieran Ravi Bhattacharya. (AT&T Conference Manager: Karen Dotson) (kld) |
| 04/06/2021 | 133 | NOTICE of Telephonic Hearing: **(N)** Status Conference Call set for 5/6/2021 09:00 AM before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel.(kld) |
| 04/06/2021 | 134 | Oral ORDER granting 124 Motion for Discovery. Entered by Magistrate Judge Joel C. Hoppe on 4/6/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 04/14/2021 | 135 | ANSWER to 33 Amended Complaint,,,,,,, with JURY DEMAND by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker.(Gibson, Madeline) |
| 04/15/2021 | 136 | NOTICE of Hearing: **(CR)** (No Interpreter requested) Jury Trial reset for January 4-7, 2022 09:30 AM in Charlottesville before Senior Judge Norman K. Moon. **Counsel must contact the Clerk's Office no later than five (5) business days before the scheduled trial date for your technology needs.** (hnw) |
| 04/16/2021 | 137 | Joint MOTION for Entry of Pretrial Order by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A - Proposed Order)(Haake, Jack) |
| 04/19/2021 | 138 | Oral ORDER granting 137 Motion for Entry of Pretrial Order. Entered by Magistrate Judge Joel C. Hoppe on 04/19/2021. *This Notice of Electronic Filing is the Official* |

| | | |
|---|---|---|
| | | *ORDER for this entry. No document is attached.*(dg) |
| 04/19/2021 | 139 | Amended PRETRIAL ORDER. Signed by Magistrate Judge Joel C. Hoppe on 04/19/2021. (dg) |
| 05/06/2021 | 140 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Status Conference Call held in chambers on 5/6/2021. (kld) |
| 05/06/2021 | 141 | NOTICE of Telephonic Hearing: **(N)** Status Conference set for 9/1/2021 09:00 AM before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 05/11/2021 | 142 | MOTION to Withdraw as Attorney by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Haake, Jack) |
| 05/11/2021 | 143 | Brief / Memorandum in Support re 142 MOTION to Withdraw as Attorney . filed by Kieran Ravi Bhattacharya. (Haake, Jack) |
| 05/11/2021 | 144 | Oral ORDER granting 142 Motion to Withdraw as Attorney. Attorney Jack Gabriel Haake terminated. Entered by Magistrate Judge Joel C. Hoppe on 5/11/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 06/03/2021 | 145 | REPORT of Rule 26(f) Planning Meeting (Attachments: # 1 Exhibit A - ESI Protocol (Proposed), # 2 Exhibit B - Fed. R. Evid. 502(d) Order (Proposed), # 3 Exhibit C - Protective Order (Proposed))(Lockerby, Michael) |
| 06/03/2021 | 146 | MOTION for Extension of Time to Amend 33 Amended Complaint,,,,,,, *(Plaintiff's Motion for One-Week Extension of Deadline to Amend Complaint)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Plaintiff's Motion for One-Week Extension of Deadline to Amend Complaint)(Lockerby, Michael) |
| 06/04/2021 | 147 | Brief / Memorandum in Opposition re 146 MOTION for Extension of Time to Amend 33 Amended Complaint,,,,,,, *(Plaintiff's Motion for One-Week Extension of Deadline to Amend Complaint) Partial Opposition*. filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Gibson, Madeline) |
| 06/09/2021 | 148 | ORDER granting 146 Motion for Extension of Time to Amend. Signed by Magistrate Judge Joel C. Hoppe on 06/09/2021. (dg) |
| 06/10/2021 | 149 | MOTION for Leave to File *Second Amended Complaint* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A - Proposed Second Amended Complaint, # 2 Exhibit 67 to Second Amended Complaint (Richard Bio), # 3 Exhibit 68 to Second Amended Complaint (Densmore Bio), # 4 Exhibit 69 to Second Amended Complaint (Angel Hsu LinkedIn Profile), # 5 Exhibit 70 to Second Amended Complaint (11-14-18 ASAC Letter), # 6 Exhibit 71 to Second Amended Complaint (Fed. R. Evid. 1006 Summary))(Lockerby, Michael) |
| 06/16/2021 | 150 | Stipulated PROTECTIVE ORDER. Signed by Magistrate Judge Joel C. Hoppe on 06/16/2021. (dg) |
| 06/16/2021 | 151 | Federal Rule of Evidence 502(d) ORDER. Signed by Magistrate Judge Joel C. Hoppe on 06/16/2021. (dg) |

| | | |
|---|---|---|
| 06/16/2021 | 152 | Stipulated ORDER Regarding Discovery of Documents and Electronically Stored Information. Signed by Magistrate Judge Joel C. Hoppe on 06/16/2021. (dg) |
| 06/23/2021 | 153 | NOTICE of Appearance by Brittany McGill on behalf of All Defendants (McGill, Brittany) |
| 06/24/2021 | 154 | Brief / Memorandum in Opposition re 149 MOTION for Leave to File *Second Amended Complaint* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Gibson, Madeline) |
| 07/01/2021 | 155 | REPLY to Response to Motion re 149 MOTION for Leave to File *Second Amended Complaint* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - Declaration of Kieran Ravi Bhattacharya)(Lockerby, Michael) |
| 07/21/2021 | 156 | ORDER REFERRING MOTION for a Report & Recommendation: 149 MOTION for Leave to File *Second Amended Complaint* filed by Kieran Ravi Bhattacharya. Motions referred to Joel C. Hoppe. Signed by Senior Judge Norman K. Moon on 07/21/2021. (dg) |
| 07/22/2021 | 157 | NOTICE of Hearing on Motion 149 MOTION for Leave to File *Second Amended Complaint* : **(FTR)** Motion Hearing set for 8/23/2021 11:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 07/26/2021 | 158 | MOTION to Quash by Region Ten Community Service Board. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A)(Temlak, Shannon) |
| 07/28/2021 | 159 | MOTION to Quash *Subpoena Duces Tecum (Metropolitan Psychiatric Services)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit 1 - Subpoena to MPS)(Lockerby, Michael) |
| 07/29/2021 | 160 | MOTION to Quash *Subpoena Duces Tecum (University of Alabama)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit 1 - Subpoena to University of Alabama)(Lockerby, Michael) |
| 07/30/2021 | 161 | Amended MOTION to Quash *Subpoena Duces Tecum (University of Alabama)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit 1 - Subpoena to University of Alabama)(Lockerby, Michael) |
| 08/12/2021 | 162 | Brief / Memorandum in Opposition re 158 MOTION to Quash . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Notice of SDT, # 2 Exhibit Certification, # 3 Text of Proposed Order)(McGill, Brittany) Modified on 9/2/2021 Document unsealed pursuant to order 170 (dg). |
| 08/12/2021 | 163 | MOTION to Seal Document 162 Brief / Memorandum in Opposition,, 158 MOTION to Quash by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. |

| | | |
|---|---|---|
| | | Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (McGill, Brittany) |
| 08/12/2021 | 164 | Brief / Memorandum in Support re 163 MOTION to Seal Document 162 Brief / Memorandum in Opposition,, 158 MOTION to Quash . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Text of Proposed Order)(McGill, Brittany) |
| 08/12/2021 | 165 | NOTICE by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker re 163 (McGill, Brittany) |
| 08/17/2021 | 166 | MOTION to Seal Document 161 Amended MOTION to Quash *Subpoena Duces Tecum (University of Alabama)*, 159 MOTION to Quash *Subpoena Duces Tecum (Metropolitan Psychiatric Services) and to File Opposition to Plaintiff's Motions to Quash Under Seal* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (McGill, Brittany) |
| 08/17/2021 | 167 | Brief / Memorandum in Support re 166 MOTION to Seal Document 161 Amended MOTION to Quash *Subpoena Duces Tecum (University of Alabama)*, 159 MOTION to Quash *Subpoena Duces Tecum (Metropolitan Psychiatric Services) and to File Opposition to Plaintiff's Moti . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Text of Proposed Order) (McGill, Brittany)* |
| 08/17/2021 | 168 | NOTICE by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker *of Motion to Seal* (McGill, Brittany) |
| 08/18/2021 | 169 | NOTICE of Hearing: **(FTR)** Discovery Hearing set for 8/23/2021 11:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel (kld) |
| 08/18/2021 | 170 | ORDER denying 163 Motion to Seal Document ; denying 166 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 08/18/2021. (dg) |

| | | |
|---|---|---|
| 08/18/2021 | 171 | Defendants' Opposition to Plaintiff's Motions to Quash Subpoenas Duces Tecum - Temporarily Sealed for three days pursuant to Order 170 . (Attachments: # 1 Exhibit 1, # 2 Cover Letter, # 3 Envelope)(dg) Modified on 9/1/2021 Document unsealed pursuant to order 170 (dg). |
| 08/23/2021 | 172 | Log Notes for Motion Hearing & discovery dispute in the Harrisonburg Division held before Judge Joel C. Hoppe on 8/23/21. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. AT&T Conf Manager: Karen Dotson (kld) |
| 08/23/2021 | 173 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Motion Hearing held on 8/23/2021 re 149 MOTION for Leave to File *Second Amended Complaint* filed by Kieran Ravi Bhattacharya, Discovery Hearing held on 8/23/2021. (AT&T Conference Manager: Karen Dotson) (kld) Modified on 8/24/2021 to correct and add time in court (kld). |
| 08/23/2021 | 174 | NOTICE of Hearing on Motion 161 Amended MOTION to Quash *Subpoena Duces Tecum (University of Alabama)*, 159 MOTION to Quash *Subpoena Duces Tecum (Metropolitan Psychiatric Services)*, 158 MOTION to Quash : **(FTR)** Motion Hearing set for 9/1/2021 09:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 08/23/2021 | 175 | Oral ORDER directing the plaintiff to produce all social media posts and information that is relevant and proportional to the claims and defenses in this case. Entered by Magistrate Judge Joel C. Hoppe on 8/23/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(kld) |
| 08/27/2021 | 176 | MOTION to Quash *and/or Motion for Protective Order for Deposition of Evelyn R. Fleming* by Rector and Visitors of the University of Virginia, Evelyn R Fleming. Motions referred to Judge Joel C. Hoppe. (Riley, Melissa) |
| 08/27/2021 | 177 | Brief / Memorandum in Support re 176 MOTION to Quash *and/or Motion for Protective Order for Deposition of Evelyn R. Fleming* . filed by Evelyn R Fleming, Rector and Visitors of the University of Virginia. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Riley, Melissa) (Attachment 1 replaced on 8/30/2021) (dg). Modified on 8/30/2021 Replaced deficient pdf document with flattened pdf document (dg). |
| 08/27/2021 | 178 | MOTION to Quash *CVS Subpoena* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit 1 (CVS Subpoena), # 2 Exhibit 2 (Bhattacharya Declaration))(Lockerby, Michael) |
| 08/27/2021 | 179 | MOTION to Quash *Verizon Wireless Subpoena* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit 1 (Verizon Wireless Subpoena))(Lockerby, Michael) |
| 09/01/2021 | 180 | FTR Log Notes for Telephonic Motion Hearing and Status Conference in the Charlottesville Division held before Judge Joel C. Hoppe on 9/1/2021. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the AT&T conference Manager and that it can be transcribed without undue difficulty. Conference Operator: H. Wheeler (hnw) |
| 09/01/2021 | 181 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Telephonic Motion and Status Hearing held on 9/1/2021 re 161 Amended MOTION to Quash *Subpoena Duces Tecum (University of Alabama)* filed by Kieran Ravi Bhattacharya, 159 MOTION to Quash *Subpoena Duces Tecum (Metropolitan Psychiatric Services)* filed by |

| | | |
|---|---|---|
| | | Kieran Ravi Bhattacharya, 158 MOTION to Quash filed by Region Ten Community Service Board. (FTR/AT&T conference manager Operator: H. Wheeler) (hnw) |
| 09/01/2021 | 182 | NOTICE of Hearing: **(N)** Status Conference set for 9/8/2021 02:30 PM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel.(kld) |
| 09/02/2021 | 183 | RESPONSE in Opposition re 178 MOTION to Quash *CVS Subpoena* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Notice of SDT)(McGill, Brittany) |
| 09/08/2021 | 184 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Status Conference Call held in chambers on 9/8/2021. (kld) |
| 09/09/2021 | 185 | RESPONSE in Opposition re 179 MOTION to Quash *Verizon Wireless Subpoena* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Cellco SDT, # 2 Exhibit Plaintiff's First Set of Discovery, # 3 Exhibit Plaintiff's Second Set of Discovery, # 4 Exhibit Hsu SDT, # 5 Exhibit Elsarrag SDT, # 6 Exhibit Richard SDT, # 7 Exhibit Ali SDT, # 8 Exhibit Morgan SDT)(McGill, Brittany) (Attachment 4 replaced on 9/10/2021) (dg). (Attachment 5 replaced on 9/10/2021) (dg). (Attachment 6 replaced on 9/10/2021) (dg). (Attachment 7 replaced on 9/10/2021) (dg). (Attachment 8 replaced on 9/10/2021) (dg). Modified on 9/10/2021 Replaced deficient pdf documents with flattened pdf documents (dg). |
| 09/10/2021 | 186 | RESPONSE to Motion re 176 MOTION to Quash *and/or Motion for Protective Order for Deposition of Evelyn R. Fleming* . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 09/10/2021 | 187 | MOTION to Seal Document 186 Response to Motion *(Exhibit A)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |
| 09/10/2021 | 188 | NOTICE by Kieran Ravi Bhattacharya re 187 *(Presentation of Sealing Order)* (Lockerby, Michael) |
| 09/14/2021 | 189 | NOTICE of Hearing: **(FTR)** Discovery Hearing set for 9/15/2021 10:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 09/15/2021 | 190 | Log Notes for Discovery Hrg in the Harrisonburg Division held before Judge Joel C. Hoppe on 9/15/21. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. AT&T Conf Manager: Karen Dotson (kld) |
| 09/15/2021 | 191 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Discovery Hearing held on 9/15/2021. (AT&T Conference Manager: Karen Dotson) (kld) |

| | | |
|---|---|---|
| 09/15/2021 | 192 | Oral ORDER continuing trial date. Counsel to contact Ms. Wheeler within 14 days to reschedule. Entered by Magistrate Judge Joel C. Hoppe on 9/15/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(kld) |
| 09/16/2021 | 193 | REPLY to Response to Motion re 178 MOTION to Quash *CVS Subpoena* . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 09/16/2021 | 194 | REPLY to Response to Motion re 179 MOTION to Quash *Verizon Wireless Subpoena* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - Discovery Responses)(Lockerby, Michael) |
| 09/20/2021 | 195 | ORAL ORDER denying without prejudice 187 Motion to Seal Document. Plaintiff has not submitted to the court the document he requests to file under seal, as required by Local Rule 9. Entered by Magistrate Judge Joel C. Hoppe on 9/20/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 09/20/2021 | 196 | REPLY to Response to Motion re 176 MOTION to Quash *and/or Motion for Protective Order for Deposition of Evelyn R. Fleming* . filed by Evelyn R Fleming, Rector and Visitors of the University of Virginia. (Riley, Melissa) |
| 09/21/2021 | 197 | ORDER denying 158 Motion to Quash; denying 159 Motion to Quash; terminating as moot 160 Motion to Quash; granting in part 161 Amended Motion to Quash. Signed by Magistrate Judge Joel C. Hoppe on 09/21/2021. (dg) |
| 09/29/2021 | 198 | MOTION to Withdraw as Attorney by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Gibson Motion to Withdraw)(Gibson, Madeline) |
| 09/30/2021 | 199 | MOTION to Seal Document 188 Notice (Other), 186 Response to Motion *(Plaintiff's Renewed Motion to Seal Exhibit A to Plaintiff's Response to Motion to Quash Fleming Subpoena)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |
| 10/04/2021 | 200 | NOTICE of Appearance by Farnaz Farkish Thompson on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Thompson, Farnaz) |
| 10/04/2021 | 201 | ORAL ORDER granting 199 Motion to Seal Document. Entered by Magistrate Judge Joel C. Hoppe on 10/4/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 10/04/2021 | 202 | NOTICE of Appearance by Micah Block Schwartz on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Schwartz, Micah) |

| | | |
|---|---|---|
| 10/04/2021 | 203 | Sealed Document - Exhibit A to 186 Response to Motion (dg) |
| 10/04/2021 | 204 | NOTICE of Appearance by Jonathan Todd Blank on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Blank, Jonathan) |
| 10/04/2021 | 205 | ORAL ORDER granting 198 Motion to Withdraw as Attorney. Attorney Madeline Markelz Gibson terminated. Entered by Magistrate Judge Joel C. Hoppe on 10/4/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.* (JCH) |
| 10/05/2021 | 206 | NOTICE of Appearance by Harry Robert Yates, III on behalf of Sara K. Rasmussen (Yates, Harry) |
| 10/05/2021 | 207 | NOTICE of Appearance by Christopher Quinn Adams on behalf of Sara K. Rasmussen (Adams, Christopher) |
| 10/19/2021 | 208 | MOTION to Withdraw as Attorney *for Defendant Rasmussen* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(Brown, Calvin) |
| 10/19/2021 | 209 | MOTION to Withdraw as Attorney by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, Rector and Visitors of the University of Virginia, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(McGill, Brittany) |
| 10/19/2021 | 210 | ORAL ORDER granting 208 Motion to Withdraw as Attorney. Attorney Calvin Cameron Brown terminated as to Sara K. Rasmussen. Entered by Magistrate Judge Joel C. Hoppe on 10/19/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 10/19/2021 | 211 | ORAL ORDER granting 209 Motion to Withdraw as Attorney. Attorney Brittany Ashley McGill terminated. Entered by Magistrate Judge Joel C. Hoppe on 10/19/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 10/22/2021 | 212 | NOTICE of Appearance by Evan Tucker on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Tucker, Evan) |
| 10/29/2021 | 213 | NOTICE of Hearing: **(CR)** Jury Trial set for Oct 24-28; Oct 31-Nov 4; Nov 7-Nov 9, 2022 09:30 AM in Charlottesville before Senior Judge Norman K. Moon. **Counsel must** |

| | | |
|---|---|---|
| | | **contact the Clerk's Office no later than five (5) business days before the scheduled trial date for your technology needs.** (hnw) |
| 11/03/2021 | 214 | MOTION for *Brandi G. Howard* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3824012. by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Thompson, Farnaz) |
| 11/03/2021 | 215 | MOTION for *Michael A. Brody* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3824026. by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Thompson, Farnaz) |
| 11/05/2021 | 216 | ORAL ORDER granting 214 MOTION for Brandi G. Howard to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 11/5/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 11/05/2021 | 217 | ORAL ORDER granting 215 MOTION for Michael A. Brody to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 11/5/21. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 11/05/2021 | 218 | MOTION to Quash *Subpoena to Boys & Girls Club of West Alabama* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A - Subpoena to Boys & Girls Club of West Alabama)(Lockerby, Michael) |
| 11/08/2021 | 219 | MOTION to Seal Document by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A, # 2 Text of Proposed Order Proposed Order) (Thompson, Farnaz) |
| 11/09/2021 | 220 | NOTICE of Appearance by Brandi G. Howard on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Howard, Brandi) |
| 11/10/2021 | 221 | Joint MOTION to Seal Document by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. |

| | | |
|---|---|---|
| | | Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Tucker, Evan) |
| 11/10/2021 | 222 | NOTICE of Appearance by Michael Brody on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Brody, Michael) |
| 11/12/2021 | 223 | ORDER granting in part 219 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 11/12/2021. (dg) |
| 11/12/2021 | 224 | Sealed Document - Defendants' Opposition to Plaintiff's Motion to Quash (Attachments: # 1 Exhibit A)(dg) |
| 11/12/2021 | 225 | ORDER granting in part 221 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 11/12/2021. (dg) |
| 11/12/2021 | 226 | Joint MOTION to Compel by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (dg) (Main Document 226 replaced on 11/12/2021) (dg). Modified on 11/12/2021 PDF replaced with corrected version (dg). |
| 11/12/2021 | 227 | Joint Memorandum in Support re 226 MOTION to Compel filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (dg) |
| 11/12/2021 | 228 | Sealed Documents - Exhibits to 227 Joint Memorandum in Support of Motion to Compel. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G)(dg) |
| 11/12/2021 | 229 | RESPONSE in Opposition re 218 MOTION to Quash *Subpoena to Boys & Girls Club of West Alabama* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit B, # 2 Exhibit Exhibit C, # 3 Exhibit Exhibit D)(Thompson, Farnaz) |
| 11/12/2021 | 230 | REPORT AND RECOMMENDATIONS re 149 MOTION for Leave to File *Second Amended Complaint* filed by Kieran Ravi Bhattacharya. Signed by Magistrate Judge Joel C. Hoppe on 11/12/2021. (dg) |
| 11/14/2021 | 231 | NOTICE of Hearing: **(CR)** Oral Argument Hearing on Motions for Summary Judgment (yet to be filed ) set for 7/11/2022 10:00 AM (Four Hours set aside at request of counsel) in Charlottesville before Senior Judge Norman K. Moon. (hnw) |

| | | |
|---|---|---|
| 11/15/2021 | 232 | NOTICE of Appearance by Alicia Marie Penn on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Penn, Alicia) |
| 11/15/2021 | 233 | NOTICE of Hearing on Motion 226 MOTION to Compel : **(FTR)** Motion Hearing set for 11/19/2021 04:00 PM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 11/16/2021 | 234 | MOTION to Seal Document *(Plaintiff's Opposition to Defendants' Joint Motion to Compel)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal)(Lockerby, Michael) |
| 11/17/2021 | 235 | ORDER granting 234 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 11/17/2021. (dg) |
| 11/17/2021 | 236 | Sealed Document - Plaintiff's Opposition to 226 Defendants' Joint Motion to Compel. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33)(dg) |
| 11/17/2021 | 237 | MOTION to Seal Document 236 Sealed Document,, *(Amended Page 10 of Plaintiff's Opposition and Exhibit 34)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Amended Page 10 and Exhibit 34)(Lockerby, Michael) |
| 11/18/2021 | 238 | ORDER granting 237 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 11/18/2021. (dg) |
| 11/18/2021 | 239 | Sealed Document - AMENDED page 10 to 236 Plaintiff's Opposition to 226 Defendants' Joint Motion to Compel & Exhibit 34 to 236 Plaintiff's Opposition to Defendants' Joint Motion to Compel. (Attachment: # 1 Exhibit 34)(dg) |
| 11/18/2021 | 240 | Joint MOTION to Seal Document *Joint Reply to Plaintiff's Opposition to Motion to Compel* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Tucker, Evan) |
| 11/19/2021 | 241 | ORDER granting 240 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 11/19/2021. (dg) |
| 11/19/2021 | 242 | Sealed Document - Defendants' Joint Reply to Plaintiff's Opposition to Defendants' Joint Motion to Compel (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(dg) |
| 11/19/2021 | 243 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Discovery Hearing held on 11/19/2021. (AT&T Conference Manager: Karen Dotson) (kld) |

| | | |
|---|---|---|
| 11/19/2021 | 244 | Log Notes for Motion Hearing in the Harrisonburg Division held before Judge Joel C. Hoppe on 11/19/21. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. AT&T Conf Manager: Karen Dotson (kld) |
| 11/22/2021 | 245 | ORDER granting 226 Motion to Compel. Signed by Magistrate Judge Joel C. Hoppe on 11/19/21. (kld) |
| 11/24/2021 | 246 | TRANSCRIPT REQUEST (3 Day Service) by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Evelyn R Fleming, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Rector and Visitors of the University of Virginia, Region Ten Community Service Board, James V. Reyes, Jim B. Tucker for Civil; Discovery Hearing held on **8/23/2021** before Judge Mag. Judge Hoppe, Sr. Judge Moon. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Penn, Alicia) Lisa Blair, OCR to transcribe. Modified on 11/29/2021 (sad). |
| 11/26/2021 | 247 | OBJECTION to 230 Report and Recommendations by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Thompson, Farnaz) |
| 11/26/2021 | 248 | OBJECTION to 230 Report and Recommendations by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - November 23, 2018 Correspondence)(Lockerby, Michael) Modified on 11/29/2021 exhibit A sealed pursuant to Order 253 (dg). |
| 11/26/2021 | 249 | MOTION to Seal *Exhibits B - F to Plaintiff's Objections*, MOTION to Seal Document 248 Objection to Report and Recommendations by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal)(Lockerby, Michael) |
| 11/29/2021 | 250 | ORDER granting 249 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on 11/29/2021. (dg) |
| 11/29/2021 | 251 | Sealed Document - Exhibits B through F of Plaintiff's Objections to Magistrate's Report & Recommendations. (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit E, # 4 Exhibit F)(dg) |
| 11/29/2021 | 252 | MOTION to Seal Document 248 Objection to Report and Recommendations *(Exhibit A - Dkt. #248-1)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Exhibit A)(Lockerby, Michael) |
| 11/29/2021 | 253 | ORDER granting 252 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 11/29/2021. (dg) |
| 11/30/2021 | 254 | **Financial arrangements made** (Original) (3 Days Service) re 246 Transcript Request,,, **Transcript due by 12/3/2021.** (lmb) |
| 12/02/2021 | 255 | TRANSCRIPT of Proceedings: FTR Telephonic Motions Hearing held on **8/23/21** before Judge Hoppe. Court Reporter/Transcriber Lisa Blair, Telephone number 434.409.4575. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have seven (7)** |

| | | |
|---|---|---|
| | | **calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov Transcript may be viewed at the court public terminal or purchased through Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER unless a Redacted Transcript has been filed. Redaction Request due 12/23/2021. Redacted Transcript Deadline set for 1/3/2022. Release of Transcript Restriction set for 3/2/2022. (lmb)** |
| 12/10/2021 | 256 | NOTICE of Hearing on Motion 179 MOTION to Quash *Verizon Wireless Subpoena*, 178 MOTION to Quash *CVS Subpoena* : **(FTR)** Motion Hearing set for 12/20/2021 09:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 12/10/2021 | 257 | Response re 248 Objection to Report and Recommendations, . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Thompson, Farnaz) |
| 12/10/2021 | 258 | Response re 247 Objection to Report and Recommendations,, . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 12/10/2021 | 259 | MOTION to Seal Document 258 Response *Exhibit A to Plaintiff's Opposition* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Exhibit A)(Lockerby, Michael) |
| 12/13/2021 | 260 | ORDER granting 259 Motion to Seal Document Signed by Magistrate Judge Joel C. Hoppe on 12/13/2021. (dg) |
| 12/13/2021 | 261 | Sealed Document - Exhibit A to 258 Plaintiff's Opposition to Defendants' Objections to the Report and Recommendations Regarding Plaintiff's Motion for Leave to File Second Amended Complaint. (dg) |
| 12/17/2021 | 262 | Reply re 247 Objection to Report and Recommendations,, . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Thompson, Farnaz) |
| 12/17/2021 | 263 | OBJECTION to 230 Report and Recommendations *(Reply to Defendants' Response)* by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 12/20/2021 | 264 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Motion Hearing held on 12/20/2021 re 179 MOTION to Quash *Verizon Wireless Subpoena* filed by Kieran Ravi Bhattacharya, 178 MOTION to Quash *CVS Subpoena* filed by Kieran Ravi Bhattacharya. (AT&T Conf Manager: Karen Dotson) (kld) |
| 12/20/2021 | 265 | Log Notes for Motion Hearing in the Harrisonburg Division held before Judge Joel C. Hoppe on 12/20/21. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. AT&T Conf Manager: Karen Dotson (kld) |

| | | |
|---|---|---|
| 12/20/2021 | 266 | ORDER granting in part and denying in part 178 Motion to Quash; granting in part and denying in part 179 Motion to Quash. Signed by Magistrate Judge Joel C. Hoppe on 12/20/2021. (dg) |
| 01/04/2022 | 267 | NOTICE of Hearing RE OBJECTIONS TO 230 REPORT AND RECOMMENDATIONS re 149 MOTION for Leave to File *Second Amended Complaint* filed by Kieran Ravi Bhattacharya ; 248 Plaintiff's Objections; and 247 Defendants' Objections: **(CR)** (Click on this link for guidance for participation via Zoom and Click on this link for instructions on how to listen to public hearings)VIDEO Oral Argument Hearing set for 1/12/2022 11:00 AM before Senior Judge Norman K. Moon. (hnw) |
| 01/11/2022 | 268 | MOTION to Withdraw as Attorney by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Evelyn R Fleming, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Rector and Visitors of the University of Virginia, Region Ten Community Service Board, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit proposed order)(Brown, Calvin) |
| 01/12/2022 | 269 | Minute Entry for proceedings held before Senior Judge Norman K. Moon: Video Oral Argument Hearing held on 1/12/2022. (Court Reporter: Mary Butenschoen) (hnw) |
| 01/20/2022 | 270 | AFFIDAVIT of Service for Subpoena to Produce Documents, Information, or Objects served on CVS #1556 on December 27, 2021, filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker.(Penn, Alicia) |
| 01/21/2022 | 271 | Joint MOTION to Amend/Correct 139 Pretrial Order by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Tucker, Evan) |
| 01/25/2022 | 272 | ORAL ORDER granting 268 Motion to Withdraw as Attorney. Attorney Calvin Cameron Brown terminated. Entered by Magistrate Judge Joel C. Hoppe on 1/25/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 02/01/2022 | 273 | ORAL ORDER ; For the reasons stated on the record during the August 23, 2021 hearing, the Court found that Defendants established good cause to make supplemental or amended expert disclosures the week of August 16, 2021, with respect to the five physiciansAsheema Saripalli, Katherine Murray, Thomas Ball, Andy Thompson, and Winifred Wolfe (excluding Dr. Mosely)whose treatment records were produced to Defendants after August 2, 2021. See Am. Pretrial Order, ECF No. 139; Tr. of Aug. 23, 2021 Hrg 6366, ECF No. 255. Entered by Magistrate Judge Joel C. Hoppe on 2/1/2022. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(hnw) |

| | | |
|---|---|---|
| 02/03/2022 | 274 | Joint MOTION for Reconsideration re 266 Order on Motion to Quash, by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Text of Proposed Order Proposed Order - Counsel Receives Records, # 5 Text of Proposed Order Proposed Order - In-Camera Review of Records) (Penn, Alicia) |
| 02/03/2022 | 275 | MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Amended Pretrial Order, # 2 Text of Proposed Order for the Remediation of Spoliation, # 3 Exhibit A to Remediation Order (Custodians), # 4 Exhibit B to Remediation Order (Search Terms))(Lockerby, Michael) |
| 02/03/2022 | 276 | Brief / Memorandum in Support re 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - Rule 30(b)(6) Notice, # 2 Exhibit B - Defendants' Objections, # 3 Exhibit C - Sealed, # 4 Exhibit D - Sealed, # 5 Exhibit E - Sealed, # 6 Exhibit F - Sealed, # 7 Exhibit G - Sealed, # 8 Exhibit H - June 21, 2021 email, # 9 Exhibit I - July 1, 2021 email)(Lockerby, Michael) |
| 02/03/2022 | 277 | MOTION to Seal Document 276 Brief / Memorandum in Support,, *(Exhibits C, D, E, F, and G)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Exhibits C, D, E, F, and G)(Lockerby, Michael) |
| 02/04/2022 | 278 | RESPONSE to Motion re 271 Joint MOTION to Amend/Correct 139 Pretrial Order . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 02/07/2022 | 279 | ORDER granting 277 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 02/07/2022. (dg) |
| 02/07/2022 | 280 | Sealed Document - Exhibits C, D, E, F, G to 276 Plaintiff's Memorandum in Support of Plaintiff's Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order. (Attachments: # 1 Exhibit D, # 2 Exhibit E, # 3 Exhibit F, # 4 Exhibit G)(dg) |
| 02/11/2022 | 281 | Brief / Memorandum in Opposition re 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)* . filed by Sara K. Rasmussen. (Yates, Harry) |
| 02/11/2022 | 282 | Joint Reply re 278 Response to Motion . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 Exhibit Exhibit H, # 9 Exhibit Exhibit I, # 10 Exhibit Exhibit J, # 11 Exhibit Exhibit K, # 12 Exhibit Exhibit L)(Tucker, Evan) |
| 02/15/2022 | 283 | MOTION to Quash *Defendants' Subpoenas to Drs. Debasis and Roxanne Bhattacharya* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # |

| | | |
|---|---|---|
| | | 1 Exhibit A - Deposition Notice (Dr. Debasis Bhattacharya), # 2 Exhibit B - Document Requests (Dr. Debasis Bhattacharya), # 3 Exhibit C - Deposition Notice (Dr. Roxanne Bhattacharya), # 4 Exhibit D - Document Requests (Dr. Roxanne Bhattacharya)) (Lockerby, Michael) |
| 02/17/2022 | 284 | RESPONSE to Motion re 274 Joint MOTION for Reconsideration re 266 Order on Motion to Quash, . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 02/17/2022 | 285 | Response re 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 - SEALED, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7 - SEALED, # 8 Exhibit 8 - SEALED, # 9 Exhibit 9 - SEALED, # 10 Exhibit 10 - SEALED, # 11 Exhibit 11 - SEALED, # 12 Exhibit 12 - SEALED, # 13 Exhibit 13 - SEALED, # 14 Exhibit 14 - SEALED, # 15 Exhibit 15 - SEALED, # 16 Exhibit 16 - SEALED, # 17 Exhibit 17 - SEALED, # 18 Exhibit 18 - SEALED, # 19 Exhibit 19 - SEALED, # 20 Exhibit 20 - SEALED, # 21 Exhibit 21 - SEALED, # 22 Exhibit 22 - SEALED, # 23 Exhibit 23 - SEALED, # 24 Exhibit 24 - SEALED, # 25 Exhibit 25) (Tucker, Evan) |
| 02/17/2022 | 286 | MOTION to Seal Document 285 Response,,,,, by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Response and Exhibits 2, 7-24)(Tucker, Evan) |
| 02/18/2022 | 287 | REPLY to Response to Motion re 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order) Reply to Dr. Rasmussen's Opposition*. filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2 (Under Seal), # 3 Exhibit 3 (Under Seal), # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Lockerby, Michael) |
| 02/18/2022 | 288 | MOTION to Seal Document 287 Reply to Response to Motion, *Motion to Seal Exhibits 2 and 3* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Exhibits 2 and 3) (Lockerby, Michael) |
| 02/22/2022 | 289 | ORDER granting 286 Motion to Seal Document Signed by Magistrate Judge Joel C. Hoppe on 02/22/2022. (dg) |
| 02/22/2022 | 290 | Sealed Document - Exhibits 2, 7-24 and Defendants' Response re 275 MOTION for Discovery (Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order). Video Exhibits 10, 15, 16, 17 provided to Clerk's Office via Flash Drive. (Attachments: # 1 Exhibit 7, # 2 Exhibit 8, # 3 Exhibit 9, # 4 Exhibit 11, # 5 Exhibit 12, # 6 Exhibit 13, # 7 Exhibit 14, # 8 Exhibit 18, # 9 Exhibit 19, # 10 Exhibit 20, # 11 Exhibit 21, # 12 Exhibit 22, # 13 Exhibit 23, # 14 Exhibit 24)(dg) (Additional attachment(s) added on 3/15/2022: # 15 Defendants' Response) (dg). Modified on 3/15/2022 to add Defendants' sealed response to Plaintiff's motion (dg). |

| | | |
|---|---|---|
| 02/22/2022 | 291 | Joint Reply re 274 Joint MOTION for Reconsideration re 266 Order on Motion to Quash, . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C)(Penn, Alicia) |
| 02/23/2022 | 292 | Joint RESPONSE in Opposition re 283 MOTION to Quash *Defendants' Subpoenas to Drs. Debasis and Roxanne Bhattacharya* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. (Tucker, Evan) |
| 02/23/2022 | 293 | Joint MOTION to Seal Document 292 Response in Opposition to Motion,, by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Text of Proposed Order)(Tucker, Evan) |
| 02/24/2022 | 294 | ORDER granting 293 Motion to Seal Document Signed by Magistrate Judge Joel C. Hoppe on 02/24/2022. (dg) |
| 02/24/2022 | 295 | Sealed Document - Defendants' Opposition to Plaintiff's Motion to Quash (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit I) (dg) |
| 02/24/2022 | 296 | REPLY to Response to Motion re 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1 (Native), # 2 Exhibit 2 (Sealed), # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10 (Sealed), # 11 Exhibit 11 (Sealed), # 12 Exhibit 12 (Sealed), # 13 Exhibit 13 (Sealed), # 14 Exhibit 14 (Sealed), # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25 (Sealed), # 26 Exhibit 26 (Sealed), # 27 Exhibit 27 (Sealed), # 28 Exhibit 28 (Sealed))(Lockerby, Michael) |
| 02/24/2022 | 297 | MOTION to Seal Document 296 Reply to Response to Motion,,, by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal)(Lockerby, Michael) |
| 02/24/2022 | 298 | MOTION to Seal Document 296 Reply to Response to Motion,,, *(Video Recordings)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Video Recordings)(Lockerby, Michael) (Entered: 02/25/2022) |
| 02/25/2022 | 299 | ORDER granting 297 Motion to Seal Document Signed by Magistrate Judge Joel C. Hoppe on 02/25/2022. (dg) |

| | | |
|---|---|---|
| 02/25/2022 | 300 | ORDER granting 298 Motion to Seal Document Signed by Magistrate Judge Joel C. Hoppe on 02/25/2022. (dg) |
| 02/25/2022 | 301 | Sealed Document - Exhibits 2, 10, 11, 12, 13, 14, 25, 26, 27, and 28 to Plaintiff's Reply to the UVA Defendants' Opposition to Plaintiff'sSpoliation Remediation Motion (Attachments: # 1 Exhibit 10, # 2 Exhibit 11, # 3 Exhibit 12, # 4 Exhibit 13, # 5 Exhibit 14, # 6 Exhibit 25, # 7 Exhibit 26, # 8 Exhibit 27, # 9 Exhibit 28)(dg) |
| 02/25/2022 | 302 | Additional Evidence re 292 Response in Opposition to Motion,, by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker *Exhibits to the Response Brief in Opposition to the Motion to Quash Subpoenas to Drs. Debasis and Roxanne Bhattacharya* (Attachments: # 1 Exhibit Exhibit G, # 2 Exhibit Exhibit H, # 3 Exhibit Exhibit J, # 4 Exhibit Exhibit K)(Tucker, Evan) |
| 02/25/2022 | 303 | AMENDED DOCUMENT by Kieran Ravi Bhattacharya. Amendment to 296 Reply to Response to Motion,,, *(Correction to Page 11 of Plaintiff's Reply)* (Attachments: # 1 Exhibit A - Corrected Page 11 of Plaintiff's Reply, # 2 Exhibit B - Corrections to Page 11 of Plaintiff's Reply)(Lockerby, Michael) |
| 03/02/2022 | 304 | NOTICE of Hearing on Motion 274 Joint MOTION for Reconsideration re 266 Order on Motion to Quash, , 283 MOTION to Quash *Defendants' Subpoenas to Drs. Debasis and Roxanne Bhattacharya*, 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)*, 271 Joint MOTION to Amend/Correct 139 Pretrial Order : **(FTR)** (No Interpreter requested) . Motion Hearing set for 3/15/2022 10:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel.(kld) |
| 03/02/2022 | 305 | REPLY to Response to Motion re 283 MOTION to Quash *Defendants' Subpoenas to Drs. Debasis and Roxanne Bhattacharya* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1 - Objections to Subpoena, # 2 Exhibit 2 - February 4, 2022 Email (Yates), # 3 Exhibit 3 - February 4, 2022 Email (Goodman), # 4 Exhibit 4 - February 10, 2022 Email (Howard))(Lockerby, Michael) |
| 03/03/2022 | 306 | TRANSCRIPT REQUEST (3 Day Service) by Kieran Ravi Bhattacharya for Status Conference Call held on **September 8, 2021** reported by Court Reporter Unknown before Judge Hon. Joel C. Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Lockerby, Michael) |
| 03/03/2022 | 307 | TRANSCRIPT REQUEST (3 Day Service) by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker for Status Conference Call held on **September 8, 2021** reported by Court Reporter Unknown before Judge Hon. Joel C. Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Howard, Brandi) |
| 03/09/2022 | 308 | MOTION for *Steven C. Lockhart* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3905476. by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |

| | | |
|---|---|---|
| 03/09/2022 | 309 | MOTION for *John P. Melko* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3905477. by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |
| 03/09/2022 | 310 | MOTION for *James G. Munisteri* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3905478. by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |
| 03/09/2022 | 311 | MOTION for *Robert Slovak* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3905482. by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |
| 03/09/2022 | 312 | MOTION for *Brandon C. Marx* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3905489. by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Lockerby, Michael) |
| 03/10/2022 | 313 | ORAL ORDER granting 309 MOTION for John P. Melko to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 3/10/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 03/10/2022 | 314 | ORAL ORDER granting 308 MOTION for Steven C. Lockhart to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 3/10/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 03/10/2022 | 315 | ORAL ORDER granting 312 MOTION for Brandon C. Marx to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 3/10/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 03/10/2022 | 316 | ORAL ORDER granting 311 MOTION for Robert Slovak to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 3/10/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 03/10/2022 | 317 | ORAL ORDER granting 310 MOTION for James G. Munisteri to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 3/10/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 03/11/2022 | 318 | ORDER granting 288 MOTION to Seal Document 287 Reply to Response to Motion, *Motion to Seal Exhibits 2 and 3* Signed by Magistrate Judge Joel C. Hoppe on 03/11/2022. (dg) |
| 03/11/2022 | 319 | Sealed Document - Exhibits 2 and 3 to 287 Plaintiff's response to motion (Attachments: # 1 Exhibit)(dg) |
| 03/11/2022 | 320 | AMENDED DOCUMENT by Kieran Ravi Bhattacharya. Amendment to 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order) Amended Proposed Orders Granting Motion* (Attachments: # 1 Text of Proposed Order Exhibit 1 to Motion - Amended Pretrial Order, # 2 Text of Proposed Order Exhibit 2 to Motion - Spoliation Remediation Order, # 3 Exhibit A to Spoliation Remediation Order - Custodians, # 4 Exhibit B to Spoliation Remediation Order - Search Terms)(Lockerby, Michael) |
| 03/15/2022 | 321 | Log Notes for Motions Hearing in the Harrisonburg Division held before Judge Joel C. Hoppe on 3/15/22. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. Cisco Conference Operator: Karen Dotson (kld) |
| 03/15/2022 | 322 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Motion Hearing held on 3/15/2022 re 274 Joint MOTION for Reconsideration re 266 Order on |

| | | |
|---|---|---|
| | | Motion to Quash, filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, Sara K. Rasmussen, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, 283 MOTION to Quash *Defendants' Subpoenas to Drs. Debasis and Roxanne Bhattacharya* filed by Kieran Ravi Bhattacharya, 275 MOTION for Discovery *(Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order)* filed by Kieran Ravi Bhattacharya, 271 Joint MOTION to Amend/Correct 139 Pretrial Order filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, Sara K. Rasmussen, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale. (Cisco Conference Operator: Karen Dotson) (kld) |
| 03/15/2022 | 323 | ORAL ORDER denying as moot 176 Motion to Quash; deemed withdrawn 218 Motion to Quash Entered by Magistrate Judge Joel C. Hoppe on 3/15/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(kld) |
| 03/16/2022 | 324 | MEMORANDUM OPINION and ORDER granting in part and denying in part 149 Motion for Leave to File; adopting in part 230 Report and Recommendations. Signed by Senior Judge Norman K. Moon on 03/16/2022. (dg) |
| 03/16/2022 | 325 | NOTICE of Appearance by Brandon Christopher Marx on behalf of Kieran Ravi Bhattacharya (Marx, Brandon) |
| 03/16/2022 | 326 | NOTICE of Appearance by Steven Lockhart on behalf of Kieran Ravi Bhattacharya (Lockhart, Steven) |
| 03/16/2022 | 327 | NOTICE of Appearance by Robert Thomas Slovak on behalf of Kieran Ravi Bhattacharya (Slovak, Robert) |
| 03/16/2022 | 328 | NOTICE of Appearance by John Melko on behalf of Kieran Ravi Bhattacharya (Melko, John) |
| 03/17/2022 | 329 | NOTICE of Appearance by James G. Munisteri on behalf of Kieran Ravi Bhattacharya (Munisteri, James) |
| 03/17/2022 | 330 | ORDER granting in part and denying in part 271 Motion to Amend/Correct; taking under advisement in part and denying in part 275 Motion for Discovery. Signed by Magistrate Judge Joel C. Hoppe on 03/17/2022. (dg) |
| 03/18/2022 | 331 | MEMORANDUM OPINION and ORDER granting 274 Joint MOTION for Reconsideration re 266 Order on Motion to Quash, filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, Sara K. Rasmussen, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale Signed by Magistrate Judge Joel C. Hoppe on 03/18/2022. (dg) Modified on 3/24/2022 to include MEMORANDUM OPINION in docket text (dg). |
| 03/22/2022 | 332 | ORDER denying without prejudice 283 Motion to Quash Signed by Magistrate Judge Joel C. Hoppe on 03/22/2022. (dg) (Entered: 03/23/2022) |

| | | |
|---|---|---|
| 03/23/2022 | 333 | MEMORANDUM OPINION and ORDER. The Court finds it necessary to review in camera the contents of preservation notices that UVA's Office of General Counsel sent to certain UVA employees in November 2019 and May 2021, which are mentioned in both parties briefs for this motion. Accordingly, counsel for the UVA Defendantsshall file a fully unredacted copy of each preservation notice by 5:00 p.m. on Thursday, March 24, 2022. The documents may be filed ex parte and under seal and will be reviewed in camera. Signed by Magistrate Judge Joel C. Hoppe on 03/23/2022. (dg) Modified on 3/23/2022 to correct docket text (dg). |
| 03/24/2022 | 334 | Ex Parte Sealed Document - UVA Office of General Counsel's preservation notices (Attachments: # 1 Email, # 2 Email, # 3 Email, # 4 Email, # 5 Email, # 6 Email, # 7 Email)(dg) |
| 03/24/2022 | 335 | AMENDED COMPLAINT *(Second Amended Complaint)* against Kieran Ravi Bhattacharya, filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70)(Lockerby, Michael) |
| 03/24/2022 | 336 | NOTICE by Kieran Ravi Bhattacharya re 335 *Filing of Second Amended Complaint* (Lockerby, Michael) |
| 03/30/2022 | 337 | TRANSCRIPT REQUEST (3 Day Service) by Kieran Ravi Bhattacharya for Motions Hearing held on **March 15, 2022** reported by Court Reporter FTR before Judge Joel C. Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Lockerby, Michael) Lisa Blair, OCR to transcribe. Modified on 3/30/2022 (sad). |
| 03/31/2022 | 338 | **Financial arrangements made** (Original) (3 Days Service) re 337 Transcript Request, **Transcript due by 4/3/2022.** (lmb) |
| 03/31/2022 | 339 | TRANSCRIPT REQUEST (3 Day Service) by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker for Motion Hearing held on **March 15, 2022** reported by Court Reporter FTR before Judge Joel C. Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Howard, Brandi) |
| 03/31/2022 | 340 | **Financial arrangements made** (Copy) (3 Days Service) re 339 Transcript Request,, **Transcript due by 4/3/2022.** (lmb) |
| 04/03/2022 | 341 | TRANSCRIPT of Proceedings: Telephonic motions hearing held on **3/15/2022** before Judge Joel Hoppe. Court Reporter/Transcriber Lisa Blair, Telephone number 434-409-4575. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this** |

| | | |
|---|---|---|
| | | **transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov Transcript may be viewed at the court public terminal or purchased through Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER unless a Redacted Transcript has been filed. Redaction Request due 4/25/2022. Redacted Transcript Deadline set for 5/4/2022. Release of Transcript Restriction set for 7/5/2022. (lmb) Main Document 341 replaced on 4/4/2022 with correction made for typographical error. (sad).** |
| 04/03/2022 | 342 | Transcript Copy Delivered re 339 Transcript Request,, (lmb) |
| 04/05/2022 | 343 | MOTION to Seal *Motion for Protective Order* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |
| 04/05/2022 | 344 | MOTION for Protective Order by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Thompson, Farnaz) |
| 04/06/2022 | 345 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Sara K. Rasmussen. (Yates, Harry) |
| 04/06/2022 | 346 | Brief / Memorandum in Support re 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . filed by Sara K. Rasmussen. (Yates, Harry) |
| 04/06/2022 | 347 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Kieran Ravi Bhattacharya re 333 Memorandum Opinion,,, Order to Respond,, (Attachments: # 1 Exhibit A - 11-20-18 Nicole Ruzek Call to Poplar Springs)(Lockerby, Michael) |
| 04/07/2022 | 348 | MOTION to Seal *Answer to Plaintiff's Second Amended Complaint* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |
| 04/07/2022 | 349 | ANSWER to 335 Amended Complaint,,,,, with JURY DEMAND by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker.(Thompson, Farnaz) |

| | | |
|---|---|---|
| 04/07/2022 | 350 | MOTION for Judgment on the Pleadings by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Thompson, Farnaz) |
| 04/07/2022 | 351 | Brief / Memorandum in Support re 350 MOTION for Judgment on the Pleadings . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Thompson, Farnaz) |
| 04/07/2022 | 352 | MOTION for *James A. Compton* to Appear Pro Hac Vice. Filing fee $ 100, receipt number AVAWDC-3926362. by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Thompson, Farnaz) |
| 04/11/2022 | 353 | ORAL ORDER granting 352 MOTION for James A. Compton to Appear Pro Hac Vice in this case. Entered by Magistrate Judge Joel C. Hoppe on 4/11/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 04/12/2022 | 354 | NOTICE of Appearance by Melissa Wolf Riley on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, Louis S. Haddad, Robert D. Hardie, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Riley, Melissa) |
| 04/12/2022 | 355 | NOTICE of Appearance by James Compton on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Compton, James) |
| 04/13/2022 | 356 | ORDER granting 348 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on 04/13/2022. (dg) |
| 04/13/2022 | 357 | Sealed Document - Defendants' Answer to Plaintiff's Second Amended Complaint (dg) |
| 04/13/2022 | 358 | ORAL ORDER: Plaintiff shall respond to Defendants' motion for protective order, ECF No. 344, no later than April 19, 2022. Defendants may file a reply no later than April 22, 2022. Entered by Magistrate Judge Joel C. Hoppe on 04/13/2022. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(dg) |
| 04/13/2022 | 359 | ORDER granting 343 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on 04/13/2022. (dg) |
| 04/13/2022 | 360 | MOTION to Quash *Subpoena Duces Tecum to AT&T* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, |

| | | |
|---|---|---|
| | | Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Howard, Brandi) |
| 04/13/2022 | 361 | MOTION to Seal *Exhibits B through E to Defendants' Motion to Quash Subpoena Duces Tecum to AT&T* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Howard, Brandi) |
| 04/13/2022 | 366 | Sealed Document - Defedants' Memorandum in Support of Motion for Protective Order (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(dg) (Entered: 04/19/2022) |
| 04/14/2022 | 362 | NOTICE of Hearing on Motion 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 350 MOTION for Judgment on the Pleadings, and AND 347 Motion for Reconsideration/ APPEAL OF MAGISTRATE JUDGE DECISION to District re 333 Memorandum Opinion and Order : **(CR)** (Click on this link for guidance for participation via Zoom and Click on this link for instructions on how to listen to public hearings)VIDEO Motion Hearing set for 5/26/2022 02:00 PM before Senior Judge Norman K. Moon. (hnw) |
| 04/14/2022 | 363 | ORDER granting 361 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on 04/14/2022. (dg) |
| 04/14/2022 | 364 | Sealed Document - Exhibits B through E to 360 Defendants' Motion to Quash (Attachments: # 1 Exhibit C, # 2 Exhibit D, # 3 Exhibit E)(dg) |
| 04/19/2022 | 365 | NOTICE of Hearing: **(FTR)** Discovery Hearing set for 4/20/2022 10:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 04/19/2022 | 367 | RESPONSE in Opposition re 344 MOTION for Protective Order . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 04/20/2022 | 368 | Amended RESPONSE in Opposition re 344 MOTION for Protective Order *(Corrected to Replace Dkt. #367)*. filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C - Sealed, # 4 Exhibit D - Sealed, # 5 Exhibit E - Sealed, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J - Sealed, # 11 Exhibit K - Sealed, # 12 Exhibit L, # 13 Exhibit M - Sealed, # 14 Exhibit N - Sealed)(Lockerby, Michael) |
| 04/20/2022 | 369 | MOTION to Seal Document 368 Response in Opposition to Motion,, *(Exhibits C, D, E, J, K, M, and N)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal)(Lockerby, Michael), GRANTED IN PART BY ORDER 373 ENTERED 4/20/22 Modified on 4/20/2022 (hnw). |
| 04/20/2022 | 370 | Log Notes for discovery dispute in the Harrisonburg Division held before Judge Joel C. Hoppe on 4/20/22. In accordance with 28 USC 753(b), I certify that I monitored the |

| | | |
|---|---|---|
| | | digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. Cisco Conference Operator: Karen Dotson (kld) |
| 04/20/2022 | 371 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Discovery Hearing held on 4/20/2022. (Cisco Conference Operator: Karen Dotson) (kld) |
| 04/20/2022 | 372 | NOTICE of Hearing on Motion 344 MOTION for Protective Order : **(FTR)** Motion Hearing set for 4/25/2022 11:00 AM in Charlottesville before Magistrate Judge Joel C. Hoppe. (kld) |
| 04/20/2022 | 373 | ORDER granting in part 369 Motion to Seal Document 368 Plaintiff's Opposition to Defendant's Motion for Protective Order. The Clerk is DIRECTED to seal Exhibits D, E, J, K, and N as they appear to contain confidential information. Exhibits C and M do not appear to contain confidential information. The Clerk is DIRECTED to return Exhibits C and M to Plaintiff for filing on the public docket, if he chooses. Signed by Magistrate Judge Joel C. Hoppe on 4/20/2022. (hnw) |
| 04/20/2022 | 374 | Sealed Document-Pursuant to 373 Order entered 4/20/22; SEALED Exhibits to 368 Plaintiff's Opposition to the UVA Defendants' Motion for Protective Order; Exhibit D (Attachments: # 1 Exhibit E, # 2 Exhibit J, # 3 Exhibit K, # 4 Exhibit N)(hnw) |
| 04/20/2022 | 375 | AMENDED DOCUMENT by Kieran Ravi Bhattacharya. Amendment to 368 Response in Opposition to Motion,, *Exhibit C (Unsealed) (Dkt. #368-3)* (Lockerby, Michael) |
| 04/20/2022 | 376 | AMENDED DOCUMENT by Kieran Ravi Bhattacharya. Amendment to 368 Response in Opposition to Motion,, *Exhibit M (Unsealed) (Dkt. #368-13)* (Lockerby, Michael) |
| 04/20/2022 | 377 | REDACTION to 357 Sealed Document by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Thompson, Farnaz) |
| 04/20/2022 | 378 | MOTION to Seal *Defendants' Response to Plaintiff's Objections to Ruling that Defendants Had No Pre-Litigation Duty to Preserve Evidence* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) GRANTED BY ORDER 382 ENTERED 4/21/22 Modified on 4/21/2022 (hnw). |
| 04/20/2022 | 379 | Response re 347 Appeal of Magistrate Judge Decision to District Court . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit 5)(Thompson, Farnaz) |
| 04/20/2022 | 380 | Response re 347 Appeal of Magistrate Judge Decision to District Court . filed by Sara K. Rasmussen. (Yates, Harry) |

| | | |
|---|---|---|
| 04/20/2022 | 381 | RESPONSE in Opposition re 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A)(Lockerby, Michael) |
| 04/21/2022 | 382 | ORDER granting 378 Motion to Seal. The Court hereby DIRECTS the Clerk to file under seal Defendants' response brief and Exhibits 1 through 4. Defendants are DIRECTED to file on the public docket a version of their response brief with redactions of Plaintiff's highly sensitive health information. Signed by Magistrate Judge Joel C. Hoppe on 4/21/2022. (hnw) |
| 04/21/2022 | 383 | Sealed Document-DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO RULING THAT DEFENDANTS HAD NO PRE-LITIGATION DUTY TO PRESERVE EVIDENCE and Exhibits 1-4, Sealed Pursuant to Order 382 entered 4/21/2022 ( Exhibits 1-4 on USB located in the Clerk's Office ) (hnw) |
| 04/21/2022 | 384 | RESPONSE in Opposition re 350 MOTION for Judgment on the Pleadings . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 04/22/2022 | 385 | MOTION for Protective Order Regarding Plaintiff's Fourth Set of Discovery Requests and to Resolve Issues Related to Plaintiff's Fifth and Seventh set of Discovery Requests; Filed pursuant to order 359 entered 4/13/2022, by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Placeholder Motion found at docket entry 344 dated 4/5/2022. Memorandum in Support found at docket 366 filed 4/13/2022 Under seal, also pursuant to order 359 .Motions referred to Judge Joel C. Hoppe. (hnw) |
| 04/22/2022 | 386 | MOTION to Quash *Subpoena Duces Tecum to Level 3 Communications, LLC* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A)(Tucker, Evan) |
| 04/22/2022 | 387 | Reply re 344 MOTION for Protective Order . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A)(Thompson, Farnaz) |
| 04/24/2022 | 388 | NOTICE by Kieran Ravi Bhattacharya re 344 *Supplemental Authority re UVA' Defendants' Motion for Protective Order)* (Attachments: # 1 Exhibit A - Defendants' Objections and Responses to Plaintiff's Written Discovery, # 2 Exhibit B - UVA Defendants' Third Amended Initial Disclosures, # 3 Exhibit C - Sierra Pacific (E.D. Cal. 2011), # 4 Exhibit D - Ramaco (S.D. W. Va. 2021))(Lockerby, Michael) |
| 04/25/2022 | 389 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Discovery Hearing held on 4/25/2022. (FTR Operator: Dylan Gaddes) (dg) |

| | | |
|---|---|---|
| 04/25/2022 | 390 | FTR Log Notes for Discovery Hearing in the Charlottesville Division in CR1 held before Judge Joel C. Hoppe on April 25, 2022. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. FTR Operator: Dylan Gaddes (dg) |
| 04/25/2022 | 391 | REDACTION to 383 Sealed Document, by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Thompson, Farnaz) |
| 04/26/2022 | 392 | NOTICE of Appearance by Eric Samuel Fleming on behalf of Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Evelyn R Fleming, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker (Fleming, Eric) |
| 04/27/2022 | 393 | Reply re 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . filed by Sara K. Rasmussen. (Yates, Harry) |
| 04/27/2022 | 394 | RESPONSE in Opposition re 360 MOTION to Quash *Subpoena Duces Tecum to AT&T* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - Cell Carrier Retention Data)(Lockerby, Michael) |
| 04/28/2022 | 395 | Reply re 350 MOTION for Judgment on the Pleadings . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Tucker, Evan) |
| 04/28/2022 | 396 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Kieran Ravi Bhattacharya re 347 Appeal of Magistrate Judge Decision to District Court (Attachments: # 1 Exhibit A - April 22, 2022 Email)(Lockerby, Michael) |
| 05/02/2022 | 397 | MEMORANDUM OPINION and ORDER granting 344 Motion for Protective Order; granting 385 Motion for Protective Order. Signed by Magistrate Judge Joel C. Hoppe on 05/02/2022. (dg) |
| 05/04/2022 | 398 | RESPONSE in Support re 360 MOTION to Quash *Subpoena Duces Tecum to AT&T* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E)(Howard, Brandi) |
| 05/04/2022 | 399 | MOTION to Seal *Exhibit A to Defendants' Reply in Support of Motion to Quash Subpoena Duces Tecum to AT&T* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. |

| | | |
|---|---|---|
| | | Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Howard, Brandi) |
| 05/05/2022 | 400 | ORDER granting 399 Motion to Seal Signed by Magistrate Judge Joel C. Hoppe on 05/05/2022. (dg) |
| 05/05/2022 | 401 | Sealed Document - Exhibit A to Defendants' Reply in Support of Motion to Quash (dg) |
| 05/06/2022 | 402 | MOTION to Quash *Subpoena Duces Tecum to AT&T* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A)(Howard, Brandi) |
| 05/06/2022 | 403 | Brief / Memorandum in Opposition re 386 MOTION to Quash *Subpoena Duces Tecum to Level 3 Communications, LLC* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - November 23, 2018 Correspondence from Christine Peterson)(Lockerby, Michael) |
| 05/09/2022 | 404 | ORAL ORDER: Pursuant to Local Rule 9(c)(1)(a), the Clerk is directed to docket the unredacted version of Exhibit A to Defendants' Motion to Quash Subpoena Duces Tecum to AT&T, ECF No. 402-1, under seal. Entered by Magistrate Judge Joel C. Hoppe on 05/09/2022. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(dg) |
| 05/09/2022 | 405 | Sealed Document - Exhibit A to Defendants' Motion to Quash Subpoena Duces Tecum to AT&T (dg) |
| 05/10/2022 | 406 | MOTION to Quash *Subpoena Duces Tecum* by Martin A Conn. Motions referred to Judge Joel C. Hoppe. (Conn, Martin) |
| 05/10/2022 | 407 | Consent MOTION to Amend/Correct by Sara K. Rasmussen. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(Yates, Harry) |
| 05/10/2022 | 408 | Brief / Memorandum in Support re 407 Consent MOTION to Amend/Correct *Under Federal Rule 36(b)*. filed by Sara K. Rasmussen. (Attachments: # 1 Exhibit 1)(Yates, Harry) |
| 05/10/2022 | 409 | ORDER granting 407 Motion to Amend/Correct. Defendant Dr. Ramsussen shall serve her amended answer to Request for Admission No. 135 on Plaintiff by Friday, May 13, 2022. Signed by Magistrate Judge Joel C. Hoppe on 05/10/2022. (dg) |
| 05/12/2022 | 410 | MEMORANDUM OPINION and ORDER denying 275 Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order. Signed by Magistrate Judge Joel C. Hoppe on 05/12/2022. (dg) Modified on 5/16/2022 to add Memorandum Opinion to docket text (dg). |
| 05/13/2022 | 411 | Reply re 386 MOTION to Quash *Subpoena Duces Tecum to Level 3 Communications, LLC* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty |

| | | |
|---|---|---|
| | | Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Tucker, Evan) |
| 05/13/2022 | 412 | MOTION to Quash *Subpoena Duces Tecum to Verizon Wireless* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit A)(Penn, Alicia) (Additional attachment(s) added on 5/16/2022: # 2 UNREDACTED Exhibit A (Sealed)) (kld). |
| 05/17/2022 | 413 | NOTICE of Hearing on Motion 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 350 MOTION for Judgment on the Pleadings AND 347 Motion for Reconsideration/ APPEAL OF MAGISTRATE JUDGE DECISION to District Judge re 333 Memorandum Opinion and Order : **(CR)** (Click on this link for guidance for participation via Zoom and Click on this link for instructions on how to listen to public hearings) Motion Hearing RESET for 6/15/2022 11:00 AM before Senior Judge Norman K. Moon. (hnw) |
| 05/20/2022 | 414 | Brief / Memorandum in Opposition re 402 MOTION to Quash *Subpoena Duces Tecum to AT&T* . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 05/24/2022 | 415 | Sealed Document-Medical Records. In accordance with the Memorandum Opinion & Order of March 18, 2022, ECF No. 331, the undersigned Magistrate Judge has reviewed Plaintiff's CVS pharmacy records incamera to determine what information, if any, shall be produced to Defendants consistent with Rule 26(b) and the Court's prior discovery orders. These redacted materials shall be subject to the Stipulated Protective Order. (hnw) |
| 05/24/2022 | 416 | Consent MOTION for Extension of Time to File Response/Reply as to 406 MOTION to Quash *Subpoena Duces Tecum* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Plaintiff's Unopposed Motion)(Lockerby, Michael) |
| 05/25/2022 | 417 | ORDER granting 416 Motion for Extension of Time to File Response/Reply. Signed by Magistrate Judge Joel C. Hoppe on 05/25/2022. (dg) |
| 05/26/2022 | 418 | APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Kieran Ravi Bhattacharya re 410 Order on Motion for Discovery, (Lockerby, Michael) |
| 05/27/2022 | 419 | Reply re 402 MOTION to Quash *Subpoena Duces Tecum to AT&T* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Howard, Brandi) |
| 05/27/2022 | 420 | RESPONSE to Motion re 412 MOTION to Quash *Subpoena Duces Tecum to Verizon Wireless* . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 05/27/2022 | 421 | RESPONSE in Opposition re 406 MOTION to Quash *Subpoena Duces Tecum* . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 05/27/2022 | 422 | Exhibit *(Exhibits to Plaintiff's Response to Dr. Hsu's Motion to Quash Verizon Subpoena)* by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, |

| | | |
|---|---|---|
| | | # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H-1, # 9 Exhibit H-2, # 10 Exhibit H-3, # 11 Exhibit I)(Lockerby, Michael) |
| 06/02/2022 | 423 | REPLY to Response to Motion re 406 MOTION to Quash *Subpoena Duces Tecum* . filed by Martin A Conn. (Conn, Martin) |
| 06/02/2022 | 424 | Brief/Memorandum *in Opposition to 418 Plaintiff's Appeal of Magistrate Judge Decision re 410 Order* . filed by Sara K. Rasmussen. (Yates, Harry) Modified on 6/2/2022 Docket text modified to related this entry to Dkts 410 and 418 (al). |
| 06/03/2022 | 425 | Reply re 412 MOTION to Quash *Subpoena Duces Tecum to Verizon Wireless* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Penn, Alicia) |
| 06/06/2022 | 426 | MOTION for Leave to File Excess Pages by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |
| 06/06/2022 | 427 | NOTICE of Hearing on 418 Motion for Reconsideration/APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Kieran Ravi Bhattacharya re 410 Order on Motion for Discovery,: **(CR)** (Click on this link for guidance for participation via Zoom and Click on this link for instructions on how to listen to public hearings)VIDEO Motion Hearing set for 6/15/2022 11:00 AM with other previously scheduled Motions before Senior Judge Norman K. Moon. (hnw) |
| 06/08/2022 | 428 | ORAL ORDER granting 426 Motion for Leave to File Excess Pages. Defendants' brief in support of summary judgment may be up to 50 pages long. The Court encourages succinct briefing. If doubling the page limit does not allow Defendants to present all necessary facts and arguments in one brief, Defendants may request to file a longer brief. Entered by Magistrate Judge Joel C. Hoppe on 6/8/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 06/08/2022 | 429 | NOTICE of Hearing on Motion 386 MOTION to Quash *Subpoena Duces Tecum to Level 3 Communications, LLC*, 402 MOTION to Quash *Subpoena Duces Tecum to AT&T*, 412 MOTION to Quash *Subpoena Duces Tecum to Verizon Wireless*, 360 MOTION to Quash *Subpoena Duces Tecum to AT&T*, 406 MOTION to Quash *Subpoena Duces Tecum* : **(FTR)** . Motion Hearing set for 6/17/2022 09:00 AM in by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel.(kld) |
| 06/09/2022 | 430 | Second MOTION for Leave to File Excess Pages by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |

| | | |
|---|---|---|
| 06/09/2022 | 431 | Appellant's REPLY BRIEF by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit A - AMWA Nov. 2018 Newsletter)(Lockerby, Michael) |
| 06/09/2022 | 432 | Response re 418 Appeal of Magistrate Judge Decision to District Court . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F, # 7 Exhibit Exhibit G, # 8 Exhibit Exhibit H, # 9 Exhibit Exhibit I, # 10 Exhibit Exhibit J, # 11 Exhibit Exhibit K, # 12 Exhibit Exhibit L, # 13 Exhibit Exhibit M, # 14 Exhibit Exhibit N)(Thompson, Farnaz) |
| 06/09/2022 | 433 | MOTION to Seal *Exhibits D, H, I, L, and M to Defendants' Response to Plaintiff's Appeal of Magistrate Judge Hoppe's Order on Plaintiff's Motion to Remediate Spoliation of Evidence* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |
| 06/10/2022 | 434 | ORAL ORDER granting 430 Motion for Leave to File Excess Pages. Defendants, not including Rasmussen, may file a memorandum in support of their motion for summary judgment on behalf of the defendants sued in their official and individual capacities that does not exceed 70 pages. Entered by Magistrate Judge Joel C. Hoppe on 6/10/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.* (JCH) |
| 06/10/2022 | 436 | ORDER granting 433 Motion to Seal Signed by Magistrate Judge Joel C. Hoppe on 06/10/2022. (dg) (Entered: 06/13/2022) |
| 06/10/2022 | 437 | Sealed Document - Exhibits D, H, I, L, and M to Defendants' Response to Plaintiff's Appeal of Magistrate Judge Hoppe's Order on Plaintiff's Motion to Remediate Spoliation of Evidence (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(dg) (Entered: 06/13/2022) |
| 06/13/2022 | 435 | NOTICE Rescheduling Hearing on Motion 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 350 MOTION for Judgment on the Pleadings, AND 347 Motion for Reconsideration/ APPEAL OF MAGISTRATE JUDGE DECISION to District Judge re 333 Memorandum Opinion and Order and 418 Motion for Reconsideration/APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Kieran Ravi Bhattacharya re 410 Order on Motion for Discovery, **(CR)** previously set for June 15, 2022 at 11:00 a.m. before Judge Norman K. Moon (Click on this link for guidance for participation via Zoom and Click on this link for instructions on how to listen to public hearings) VIDEO Motion Hearing RESET for 6/15/2022 10:00 AM before Senior Judge Norman K. Moon. THIS IS A CHANGE IN TIME ONLY(hnw) |
| 06/14/2022 | 438 | MOTION to Seal *Items Under Seal* by Sara K. Rasmussen. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Adams, Christopher) |
| 06/14/2022 | 439 | ORDER granting 438 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on |

| | | |
|---|---|---|
| | | 06/14/2022. (dg) |
| 06/14/2022 | 440 | Sealed Document - Dr. Rasmussen's Memorandum in Support of her Motion for Summary Judgment. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(dg) |
| 06/14/2022 | 441 | MOTION for Summary Judgment by Sara K. Rasmussen. (Adams, Christopher) |
| 06/14/2022 | 442 | Brief / Memorandum in Support re 441 MOTION for Summary Judgment . filed by Sara K. Rasmussen. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6)(Adams, Christopher) |
| 06/14/2022 | 443 | MOTION to Seal *Memorandum in Support of Motion for Summary Judgment and Exhibits* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |
| 06/14/2022 | 444 | MOTION for Summary Judgment by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Thompson, Farnaz) |
| 06/14/2022 | 445 | Brief / Memorandum in Support re 444 MOTION for Summary Judgment . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit)(Thompson, Farnaz) |
| 06/15/2022 | 446 | Minute Entry for proceedings held before Senior Judge Norman K. Moon: Motion Hearing held on 6/15/2022 re 345 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Sara K. Rasmussen, 350 MOTION for Judgment on the Pleadings filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale AND 347 Motion for Reconsideration/ APPEAL OF MAGISTRATE JUDGE DECISION to District Judge re 333 Memorandum Opinion and Order and 418 Motion for Reconsideration/APPEAL OF MAGISTRATE JUDGE DECISION to District Court by Kieran Ravi Bhattacharya re 410 Order on Motion for Discovery. (Court Reporter: Lisa Blair) (hnw) |
| 06/16/2022 | 447 | ORDER granting in part and denying in part 443 Motion to Seal Signed by Magistrate Judge Joel C. Hoppe on 06/16/2022. (dg) |
| 06/16/2022 | 448 | Sealed Document - Defendants' Memorandum in Support of their Motion for Summary Judgment. (dg) |
| 06/17/2022 | 449 | MOTION to Amend/Correct 330 Order on Motion to Amend/Correct, Order on Motion for Discovery , MOTION for Extension of Time to File Response/Reply as to 444 MOTION for Summary Judgment by Kieran Ravi Bhattacharya. Motions referred to |

| | | |
|---|---|---|
| | | Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A - June 13, 2022 Email Chain, # 2 Text of Proposed Order Granting Motion to Amend Scheduling Order)(Lockerby, Michael) |
| 06/17/2022 | 450 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Motion Hearing held on 6/17/2022 re 386 MOTION to Quash *Subpoena Duces Tecum to Level 3 Communications, LLC* filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, 402 MOTION to Quash *Subpoena Duces Tecum to AT&T* filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, 412 MOTION to Quash *Subpoena Duces Tecum to Verizon Wireless* filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, 360 MOTION to Quash *Subpoena Duces Tecum to AT&T* filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, 406 MOTION to Quash *Subpoena Duces Tecum* filed by Martin A Conn. (Cisco Conference Operator: Karen Dotson) (kld) |
| 06/17/2022 | 451 | Log Notes for Motions Hearing in the Harrisonburg Division held before Judge Joel C. Hoppe on 6/17/22. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. Cisco Conference Operator: Karen Dotson (kld) |
| 06/17/2022 | 452 | RESPONSE in Opposition re 449 MOTION to Amend/Correct 330 Order on Motion to Amend/Correct, Order on Motion for Discovery MOTION for Extension of Time to File Response/Reply as to 444 MOTION for Summary Judgment . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Howard, Brandi) |
| 06/19/2022 | 453 | REPLY to Response to Motion re 449 MOTION to Amend/Correct 330 Order on Motion to Amend/Correct, Order on Motion for Discovery MOTION for Extension of Time to File Response/Reply as to 444 MOTION for Summary Judgment . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 06/20/2022 | 454 | ORAL ORDER granting 449 Motion to Amend/Correct; granting 449 Motion for Extension of Time to File Response/Reply. Plaintiff has shown good cause to extend the time to respond to Defendants' motion for summary judgment, ECF No. 444, and brief in |

| | | |
|---|---|---|
| | | support, which is lengthy and accompanied by voluminous exhibits. Accordingly, Plaintiff shall file any brief in opposition no later than July 12, 2022. Defendants shall file any reply brief no later than July 26, 2022. Furthermore, Plaintiff's brief in opposition may be up to 54 pages--the length of Defendants' brief. The Court will reschedule the hearing on Defendants' motion for summary judgment. Entered by Magistrate Judge Joel C. Hoppe on 6/20/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 06/21/2022 | 455 | Notice of Cancellation of July 11, 2022 Oral Argument/Motion Hearing for Motions yet to be filed **(No Interpreter requested)** (Cancel Court Reporter) (hnw) |
| 06/21/2022 | 456 | NOTICE of Hearing on Motion 441 MOTION for Summary Judgment , 444 MOTION for Summary Judgment : **(CR)** (No Interpreter requested) (Click on this link for guidance for participation via Zoom and Click on this link for instructions on how to listen to public hearings) VIDEO Motion Hearing RESET for 8/15/2022 02:00 PM before Senior Judge Norman K. Moon. (hnw) |
| 06/21/2022 | 457 | ORDER granting in part and denying as moot in part 360 Motion to Quash; granting in part 386 Motion to Quash; granting in part 402 Motion to Quash; granting in part 406 Motion to Quash; granting 412 Motion to Quash Signed by Magistrate Judge Joel C. Hoppe on 06/21/2022. (dg) |
| 06/21/2022 | 458 | MOTION to Seal by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 4, # 5 Exhibit Exhibit 5, # 6 Text of Proposed Order Proposed Order) (Fleming, Eric) |
| 06/22/2022 | 459 | ORDER granting 458 Motion to Seal Signed by Magistrate Judge Joel C. Hoppe on 06/22/2022. (dg) |
| 06/22/2022 | 460 | Memorandum in Support re 444 MOTION for Summary Judgment . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit DX1, # 2 Exhibit DX10, # 3 Exhibit DX13, # 4 Exhibit DX16, # 5 Exhibit DX19, # 6 Exhibit DX23, # 7 Exhibit DX27, # 8 Exhibit DX29, # 9 Exhibit DX30, # 10 Exhibit DX33, # 11 Exhibit DX36, # 12 Exhibit DX38, # 13 Exhibit DX43, # 14 Exhibit DX54, # 15 Exhibit DX55, # 16 Exhibit DX58, # 17 Exhibit DX59, # 18 Exhibit DX60, # 19 Exhibit DX61, # 20 Exhibit DX62, # 21 Exhibit DX74, # 22 Exhibit DX89, # 23 Exhibit DX91, # 24 Exhibit DX93, # 25 Exhibit DX94)(dg) |
| 07/02/2022 | 461 | MOTION to Compel *Production of Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A - List of Attorneys, # 2 Text of Proposed Order Granting Plaintiff's Motion to Compel Production of Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses)(Lockerby, Michael) |
| 07/02/2022 | 462 | Brief / Memorandum in Support re 461 MOTION to Compel *Production of Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses* . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1 - August 2, 2021 Disclosures, # 2 Exhibit 2 - |

| | | |
|---|---|---|
| | | UVA2761-63, # 3 Exhibit 3 - May 11, 2022 Email Withdrawing Designations)(Lockerby, Michael) |
| 07/12/2022 | 463 | RESPONSE in Opposition re 444 MOTION for Summary Judgment . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) Modified on 10/5/2022 sealed at the direction of Judge Hoppe's chambers (dg). |
| 07/13/2022 | 464 | Exhibit *(Exhibits to Mr. Bhattacharya's Opposition to UVA's Motion for Summary Judgment)* by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10 (Sealed), # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17 (Sealed), # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21 (Sealed), # 22 Exhibit 22 (Sealed), # 23 Exhibit 23, # 24 Exhibit 24 (Sealed), # 25 Exhibit 25 (Sealed), # 26 Exhibit 26 (Sealed), # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32 (Sealed), # 33 Exhibit 33 (Sealed), # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46 (Sealed), # 47 Exhibit 47, # 48 Exhibit 48)(Lockerby, Michael) |
| 07/13/2022 | 465 | MOTION to Seal Document 464 Exhibit,,,, *(Motion to Seal Certain Exhibits to Mr. Bhattacharya's Opposition to UVA's Motion for Summary Judgment)* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Plaintiff's Motion to Seal Certain Exhibits)(Lockerby, Michael) |
| 07/13/2022 | 466 | Amended Brief / Memorandum in Opposition re 444 MOTION for Summary Judgment . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 07/13/2022 | 467 | ORDER granting 465 MOTION to Seal Document Signed by Magistrate Judge Joel C. Hoppe on 07/13/2022. (dg) |
| 07/13/2022 | 468 | NOTICE of Hearing: **(FTR)** Discovery Hearing set for 7/14/2022 11:30 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 07/13/2022 | 469 | Sealed Document - Exhibits to Plaintiff's Opposition to UVA's Motion for Summary Judgment (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit)(dg) |
| 07/14/2022 | 470 | TRANSCRIPT REQUEST (3 Day Service) by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker for Motion to Dismiss Hearing held on **June 15, 2022** reported by Court Reporter Lisa Blair before Judge Sr. Judge Moon. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Penn, Alicia) |
| 07/14/2022 | 471 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Discovery Hearing held on 7/14/2022. (Cisco Conference Operator: Karen Dotson) (kld) |
| 07/14/2022 | 472 | Log Notes for Discovery Hrg in the Harrisonburg Division held before Judge Joel C. Hoppe on 7/14/22. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. Cisco Conference Operator: Karen Dotson (kld) |

| | | |
|---|---|---|
| 07/14/2022 | 473 | TRANSCRIPT REQUEST (3 Day Service) by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, Sara K. Rasmussen, James V. Reyes, Jim B. Tucker for Discovery Hearing held on **July 14, 2022** reported by Court Reporter FTR before Judge Magistrate Judge Joel C. Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Penn, Alicia) Lisa Blair, OCR to transcribe. Modified on 7/14/2022 (sad). |
| 07/15/2022 | 474 | **Financial arrangements made** (Original) (3 Days Service) re 470 Transcript Request,, **Transcript due by 7/18/2022.** (lmb) |
| 07/15/2022 | 475 | TRANSCRIPT REQUEST (3 Day Service) by Kieran Ravi Bhattacharya for Hearing held on **July 14, 2022** reported by Court Reporter FTR before Judge Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Lockerby, Michael) Main Document 475 replaced on 7/18/2022 with flattened PDF. Lisa Blair OCR transcribed FTR. (sad). |
| 07/15/2022 | 476 | TRANSCRIPT REQUEST (3 Day Service) by Kieran Ravi Bhattacharya for Hearing held on **7/14/2022** reported by Court Reporter FTR before Judge Hoppe. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Lockerby, Michael) duplicate entry to 475 . Modified on 7/18/2022 (sad). |
| 07/15/2022 | 477 | TRANSCRIPT REQUEST (3 Day Service) by Kieran Ravi Bhattacharya for Hearing held on **6/15/2022** reported by Court Reporter Lisa Blair before Judge Moon. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Lockerby, Michael) |
| 07/18/2022 | 478 | TRANSCRIPT of Proceedings: Motions hearing via Zoom held on **June 15, 2022** before Judge Norman K. Moon. Court Reporter/Transcriber Lisa Blair, Telephone number 434.409.4575. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov Transcript may be viewed at the court public terminal or purchased through Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER unless a Redacted Transcript has been filed. Redaction Request due 8/8/2022. Redacted Transcript Deadline set for 8/18/2022. Release of Transcript Restriction set for 10/17/2022. (lmb)** |
| 07/18/2022 | 479 | **Financial arrangements made** (Original) (3 Days Service) re 473 Transcript Request,,, **Transcript due by 7/21/2022.** (lmb) |
| 07/18/2022 | 480 | **Financial arrangements made** (Copy) (3 Days Service) re 477 Transcript Request, **Transcript due by 7/21/2022.** (lmb) |
| 07/18/2022 | 481 | RESPONSE in Opposition re 461 MOTION to Compel *Production of Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Nora Kern, Babur B. Lateef, Timonty Longo, Sr, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. |

| | | |
|---|---|---|
| | | Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D, # 5 Exhibit Exhibit E, # 6 Exhibit Exhibit F)(Fleming, Eric) |
| 07/19/2022 | 482 | **Financial arrangements made** (Copy) (3 Days Service) re 476 Transcript Request, **Transcript due by 7/22/2022.** (lmb) |
| 07/19/2022 | 483 | Transcript Copy Delivered re 477 Transcript Request, (lmb) |
| 07/20/2022 | 484 | MOTION to Withdraw as Attorney by Region Ten Community Service Board. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(Delano, Shannon) |
| 07/20/2022 | 485 | TRANSCRIPT of Proceedings: Telephonic motions hearing held on **7/14/2022** before Judge Joel C. Hoppe. Court Reporter/Transcriber Lisa Blair, Telephone number 434.409.4575. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov Transcript may be viewed at the court public terminal or purchased through Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER unless a Redacted Transcript has been filed. Redaction Request due 8/10/2022. Redacted Transcript Deadline set for 8/22/2022. Release of Transcript Restriction set for 10/18/2022. (lmb)** |
| 07/20/2022 | 486 | Transcript Copy Delivered re 475 Transcript Request, (lmb) |
| 07/21/2022 | 487 | MEMORANDUM OPINION. Signed by Senior Judge Norman K. Moon on 07/21/2022. (dg) |
| 07/21/2022 | 488 | ORDER: the Court DENIES Plaintiff's appeals of Judge Hoppe's discovery orders, Dkt. 347 and 418, GRANTS Defendant Rasmussen's motion to dismiss, Dkt. 345, and GRANTS the UVA Defendants' motion for judgment on the pleadings, Dkt. 350, with respect to each of the three issues raised in that motion. Signed by Senior Judge Norman K. Moon on 07/21/2022. (dg) |
| 07/21/2022 | 489 | Emergency MOTION to Continue *Deadline Relating To Motion To Compel Production* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Proposed Order)(Melko, John) |
| 07/21/2022 | 490 | ORAL ORDER granting 489 Motion to Continue briefing schedule. The deadline for plaintiff to file his motion to compel is extended to July 25, 2022 at 4:00pm. Defendants shall file any response brief by August 1, 2022. Entered by Magistrate Judge Joel C. Hoppe on 7/21/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 07/25/2022 | 491 | Second MOTION to Continue *Briefing Deadlines for Motions to Compel* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Marx, Brandon) |
| 07/25/2022 | 492 | ORDER granting 491 Motion to Continue. Signed by Magistrate Judge Joel C. Hoppe on 07/25/2022. (dg) |
| 07/26/2022 | 493 | MOTION to Seal *Reply in Support of Motion for Summary Judgment* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. Motions referred to Judge |

| | | |
|---|---|---|
| | | Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Thompson, Farnaz) |
| 07/26/2022 | 494 | Reply re 444 MOTION for Summary Judgment . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit DX96)(Thompson, Farnaz) |
| 07/26/2022 | 497 | ORDER granting 493 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on 07/26/2022. (dg) (Entered: 07/27/2022) |
| 07/26/2022 | 498 | Defendants' Redacted Reply in Support re 444 MOTION for Summary Judgment filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (dg) (Entered: 07/27/2022) |
| 07/26/2022 | 499 | Sealed Document - Defendants' Unredacted Reply in Support of Motion for Summary Judgment (dg) (Entered: 07/27/2022) |
| 07/27/2022 | 495 | MOTION to Compel *Production of Documents from CAPS Withheld by UVA* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A - UVA CAPS Subpoena, # 2 Exhibit B - Meet and Confer Summary, # 3 Exhibit C - Sealed Peterson Notes Produced Memorial Day Weekend, # 4 Exhibit D - Peterson Deposition Excerpt)(Lockerby, Michael) |
| 07/27/2022 | 496 | MOTION to Seal Document 495 MOTION to Compel *Production of Documents from CAPS Withheld by UVA* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal Exhibit C)(Lockerby, Michael) |
| 07/27/2022 | 500 | NOTICE by Kieran Ravi Bhattacharya re 464 *Correction of Exhibit 13 to Plaintiff's Opposition to UVA's MSJ* (Attachments: # 1 Exhibit 13 - Corrected Exhibit 13 to Plaintiff's Opposition (Dkt. 464-13))(Lockerby, Michael) |
| 07/27/2022 | 501 | ORDER granting 496 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 07/27/2022. (dg) |
| 07/27/2022 | 502 | Sealed Document - Exhibit C to Plaintiff's Motion to Compel Production of Documents from CAPS Withheld by UVA. (dg) |
| 07/29/2022 | 503 | REPLY to Response to Motion re 461 MOTION to Compel *Production of Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses* . filed by Kieran Ravi Bhattacharya. (Lockerby, Michael) |
| 08/01/2022 | 504 | NOTICE of Appearance by Andrew Jeffrey Henson on behalf of Rector and Visitors of the University of Virginia (Henson, Andrew) |
| 08/01/2022 | 505 | MOTION to Seal *UVA CAPS' and UVA Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents from CAPS* by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, |

| | | |
|---|---|---|
| | | James V. Reyes, Jim B. Tucker. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Proposed Order)(Penn, Alicia) |
| 08/01/2022 | 506 | RESPONSE in Opposition re 495 MOTION to Compel *Production of Documents from CAPS Withheld by UVA* . filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D)(Penn, Alicia) |
| 08/02/2022 | 507 | MOTION to Seal by Martin A Conn. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(Conn, Martin) |
| 08/02/2022 | 508 | Brief/Memorandum *In Support of Motion to Seal*. filed by Martin A Conn. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Conn, Martin) |
| 08/02/2022 | 509 | ORDER granting 505 Motion to Seal. Signed by Magistrate Judge Joel C. Hoppe on 08/02/2022. (dg) (Entered: 08/03/2022) |
| 08/02/2022 | 510 | Redacted RESPONSE in Opposition re 495 MOTION to Compel *Production of Documents from CAPS Withheld by UVA*. filed by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker. (Attachments: # 1 Exhibit B, # 2 Exhibit C)(dg) (Entered: 08/03/2022) |
| 08/02/2022 | 511 | Sealed Document - Unredacted Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents from CAPS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(dg) (Entered: 08/03/2022) |
| 08/03/2022 | 512 | NOTICE by Martin A Conn re 507 *Non Party HSU's Waiver of Hearing* (Conn, Martin) |
| 08/10/2022 | 513 | NOTICE of Hearing on Motion 461 MOTION to Compel *Production of Documents Withheld by UVA's "Hybrid" Non-Reporting Expert Witnesses* : **(FTR)** Motion Hearing set for 8/30/2022 11:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 08/11/2022 | 514 | TRANSCRIPT REQUEST (Realtime Service) by Robert M. Blue, Mark T. Bowles, L. D. Britt, Peter C. Brunjes, Whittington W. Clement, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale, John J. Densmore, Melissa Fielding, Barbara J. Fried, John A. Griffin, Louis S. Haddad, Robert D. Hardie, Maurice A. Jones, Babur B. Lateef, Angela Hucles Mangano, James B. Murray, Jr, Christine Peterson, C. Evans Poston, Jr, James V. Reyes, Jim B. Tucker for Summary Judgment Hearing held on **August 15, 2022** reported by Court Reporter Lisa Blair before Judge Norman K. Moon. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Penn, Alicia) |
| 08/11/2022 | 515 | **Financial arrangements made** (Original) (Realtime Service) re 514 Transcript Request,, (lmb) |
| 08/15/2022 | 516 | ORDER to Show Cause. In addition, the motion to seal at Dkt. 507 is hereby GRANTED. Signed by Senior Judge Norman K. Moon on 08/15/2022. (dg) |
| 08/15/2022 | 517 | Minute Entry for proceedings held before Senior Judge Norman K. Moon: Motion Hearing held on 8/15/2022 re 444 MOTION for Summary Judgment filed by Christine Peterson, Robert D. Hardie, Maurice A. Jones, Whittington W. Clement, Mark T. Bowles, |

| | | |
|---|---|---|
| | | John A. Griffin, Robert M. Blue, John J. Densmore, Timonty Longo, Sr., Peter C. Brunjes, Louis S. Haddad, James V. Reyes, Barbara J. Fried, Nora Kern, Babur B. Lateef, C. Evans Poston, Jr., Angela Hucles Mangano, James B. Murray, Jr., Melissa Fielding, L. D. Britt, Jim B. Tucker, Frank M. Conner, III, Elizabeth M. Cranwell, Thomas A. DePasquale. (Court Reporter: Lisa Blair) (hnw) |
| 08/19/2022 | 518 | MEMORANDUM OPINION. Signed by Senior Judge Norman K. Moon on 08/19/2022. (dg) |
| 08/19/2022 | 519 | ORDER granting 444 Motion for Summary Judgment. Signed by Senior Judge Norman K. Moon on 08/19/2022. (dg) |
| 08/19/2022 | 520 | NOTICE of Appearance by Stewart Ryan Pollock on behalf of Martin A Conn (Pollock, Stewart) |
| 08/19/2022 | 521 | MOTION for Attorney Fees by Martin A Conn. Motions referred to Judge Joel C. Hoppe. (Pollock, Stewart) |
| 08/19/2022 | 522 | RESPONSE TO ORDER TO SHOW CAUSE . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Lockerby, Michael) |
| 08/19/2022 | 523 | Brief / Memorandum in Support re 521 MOTION for Attorney Fees *and Response to 516 Order to Show Cause*. filed by Martin A Conn. (Attachments: # 1 Affidavit of Stewart Pollock, # 2 Exhibit A, # 3 Exhibit B)(Pollock, Stewart) |
| 08/19/2022 | 524 | MOTION to Seal Document 522 Response to Order to Show Cause *and Motion for Leave to Make Redacted Filings* by Kieran Ravi Bhattacharya. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order Granting Motion to Seal and Granting Leave to Make Redacted Filings)(Lockerby, Michael) |
| 08/19/2022 | 525 | ORAL ORDER: Upon consideration of Plaintiff's Motion to Seal at Dkt. 524, the Court hereby GRANTS the motion with respect to sealing Plaintiff's Response to the Order to Show Cause and its attached Exhibits, and DIRECTS the Clerk to seal Plaintiff's Response to the Courts Order to Show Cause, including Exhibits 1 and 2. The Court will rule on the proposed redacted versions of Plaintiff's prior briefings after further review. It is so ORDERED. Entered by Senior Judge Norman K. Moon on 08/19/2022. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(dg) |
| 08/19/2022 | 526 | MOTION to Seal Document 523 Brief / Memorandum in Support, *(Exhibit A & B to Affidavit of Stewart Pollock only)* by Martin A Conn. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Text of Proposed Order)(Pollock, Stewart) |
| 08/19/2022 | 527 | Sealed Document - Plaintiff's Response to the Court's Order to Show Cause (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(dg) |
| 08/22/2022 | 528 | Notice of Cancellation of Jury Trial set for October 24 - 28, October 31 - November 4, and November 7 - 9, 2022 at 9:30 AM in Charlottesville. (Cancel Court Reporter) (ca) |
| 08/23/2022 | 529 | ORAL ORDER denying 526 Motion to Seal Document 526 MOTION to Seal Document 523 Brief / Memorandum in Support, *(Exhibit A & B to Affidavit of Stewart Pollock only)*.Counsel for Angel Hsu seeks to file their billing records under seal because they contend those records are attorney work product. Filing those documents under seal, however, would merely shield them from the public, not opposing counsel, thereby effectively waiving any claim of privilege. Moreover, the billing records in total are not work product. If Hsu's counsel believes portions of their billing records reveal work product, they may move to file the records with privileged material redacted. The Clerk is directed to return the billing records to counsel. Entered by Magistrate Judge Joel C. |

| | | |
|---|---|---|
| | | Hoppe on 8/23/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(JCH) |
| 08/24/2022 | 530 | ORAL ORDER denying as moot 461 Motion to Compel; granting 484 Motion to Withdraw as Attorney. Attorney Shannon Aileen Delano terminated; denying as moot 495 Motion to Compel. Entered by Magistrate Judge Joel C. Hoppe on 8/24/22. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(kld) |
| 08/24/2022 | 531 | Notice of Cancellation of 8/30/22 at 11:00 AM Motion Hearing **(No Interpreter requested)** (No Court Reporter Requested) (kld) |
| 08/24/2022 | 532 | MEMORANDUM OPINION and ORDER on Rule 11(b) Sanctions. Signed by Senior Judge Norman K. Moon on 08/24/2022. (dg) |
| 08/25/2022 | 533 | MOTION to Seal Document by Martin A Conn. Motions referred to Judge Joel C. Hoppe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Pollock, Stewart) |
| 08/26/2022 | 534 | ORAL ORDER: Defendant Rasmussen's motion for summary judgment at Dkt. 441 is hereby DENIED as moot, since she has since been dismissed from this case. It is so ORDERED. Entered by Senior Judge Norman K. Moon on 08/26/2022. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(dg) |
| 08/29/2022 | 535 | ORDER denying 533 Motion to Seal Document. Signed by Magistrate Judge Joel C. Hoppe on 08/29/2022. (dg) |
| 09/02/2022 | 536 | AFFIDAVIT re 523 Brief / Memorandum in Support, *with unsealed exhibits* by Martin A Conn (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Pollock, Stewart) |
| 09/02/2022 | 537 | RESPONSE in Opposition re 521 MOTION for Attorney Fees . filed by Kieran Ravi Bhattacharya. (Attachments: # 1 Exhibit 1 - FRE 1006 Billing Summary)(Lockerby, Michael) |
| 09/16/2022 | 538 | NOTICE OF APPEAL as to 519 Order on Motion for Summary Judgment by Kieran Ravi Bhattacharya. Filing fee $ 505, receipt number AVAWDC-4033509. (Lockerby, Michael) |
| 09/19/2022 | 539 | Transmittal of Notice of Appeal to 4CCA re 538 Notice of Appeal<br>NOTE: The Docketing Statement and Transcript Order Form are available on the 4th Circuit Court of Appeals website at www.ca4.uscourts.gov. If CJA24 form(s) are applicable, you must submit a separate Auth-24 for each court reporter from whom you wish to order a transcript through the District Court's eVoucher system. (dg) |
| 09/21/2022 | 540 | USCA Notice of Appellate Case Opening re 538 Notice of Appeal filed by Kieran Ravi Bhattacharya. USCA Case Number 22-1999. Case Manager: Naeemah R. Sims. (dg) |
| 09/22/2022 | 541 | NOTICE of Hearing on Motion 521 MOTION for Attorney Fees : **(FTR)** Motion Hearing set for 10/5/2022 11:00 AM by telephone conference before Magistrate Judge Joel C. Hoppe. Dial in information emailed to counsel. (kld) |
| 09/30/2022 | 542 | Administrative ORDER CLOSING CASE. The Court will still proceed with ruling on the motion for attorneys fees, Dkt. 521. Signed by Senior Judge Norman K. Moon on 09/30/2022. (dg) |
| 10/03/2022 | 543 | NOTICE OF APPEAL as to 542 Order Dismissing Case by Kieran Ravi Bhattacharya. Filing fee $ 505, receipt number AVAWDC-4044663. (Lockerby, Michael) |
| 10/05/2022 | 544 | Minute Entry for proceedings held before Magistrate Judge Joel C. Hoppe: Motion Hearing held on 10/5/2022 re 521 MOTION for Attorney Fees filed by Martin A Conn. (Cisco Operator: Karen Dotson) (kld) |

| | | |
|---|---|---|
| 10/05/2022 | 545 | Log Notes for Motion Hearing in the Harrisonburg Division held before Judge Joel C. Hoppe on 10/5/22. In accordance with 28 USC 753(b), I certify that I monitored the digital recording of this proceeding and that it is a true and correct record, that it is sufficiently intelligible when played on the FTR (For the Record) Player, and that it can be transcribed without undue difficulty. Cisco Operator: Karen Dotson (kld) |
| 10/07/2022 | 546 | Transmittal of Notice of Appeal to 4CCA re 543 Notice of Appeal<br>NOTE: The Docketing Statement and Transcript Order Form are available on the 4th Circuit Court of Appeals website at www.ca4.uscourts.gov. If CJA24 form(s) are applicable, you must submit a separate Auth-24 for each court reporter from whom you wish to order a transcript through the District Court's eVoucher system. (dg) |
| 10/11/2022 | 547 | USCA Notice of Appellate Case Opening re 543 Notice of Appeal filed by Kieran Ravi Bhattacharya. **USCA Case Number 22-2064**. Case Manager: Naeemah R. Sims. (dg) |
| 10/11/2022 | 548 | ORDER of USCA as to 538 Notice of Appeal filed by Kieran Ravi Bhattacharya, 543 Notice of Appeal filed by Kieran Ravi Bhattacharya. The court consolidates Case No. 22-1999 and Case No. 22-2064. (dg) |
| 10/18/2022 | 549 | REPORT AND RECOMMENDATIONS re 521 MOTION for Attorney Fees filed by Martin A Conn. Signed by Magistrate Judge Joel C. Hoppe on 10/18/2022. (jv) |
| 10/18/2022 | 550 | ORAL ORDER: The Clerk is directed to file the redacted versions of ECF Nos. 463 and 495. Entered by Magistrate Judge Joel C. Hoppe on 10/18/2022. *This Notice of Electronic Filing is the Official ORDER for this entry. No document is attached.*(jv) |
| 10/18/2022 | 551 | REDACTED MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM CAPS WITHHELD BY UVA in re: 495 by Kieran Ravi Bhattacharya (jv) |
| 10/18/2022 | 552 | REDACTED Response in Opposition to 444 Motion for Summary Judgment in re: 463 by Kieran Ravi Bhattacharya (jv) |
| 11/07/2022 | 553 | ORDER adopting 549 Report and Recommendations; denying 521 Motion for Attorney Fees. Signed by Senior Judge Norman K. Moon on 11/07/2022. (dg) |
| 11/09/2022 | 554 | TRANSCRIPT REQUEST (3 Day Service) by Kieran Ravi Bhattacharya for Summary judgment hearing held on **August 15, 2022** before Judge Moon. *Transcript Due Deadline will be set when Financial Arrangements are made.* (Lockerby, Michael) |
| 11/09/2022 | 555 | NOTICE to Michael Lockerby re 554 transcript request: File transcript request with 4th Circuit as this case is on appeal. Requestor notified by email as well. (sad) |
| 11/10/2022 | 556 | USCA Appeal Transcript Order Acknowledgment **for 517 Motion Hearing held on 8/15/2022** re, 538 Notice of Appeal, 543 Notice of Appeal Court Reporter: Lisa Blair. **Appeal Transcript due by 1/17/2023.** 4CCA notified the requestor has requested 3 day turnaround. Court Reporter notified of request. (sad) |
| 11/14/2022 | 557 | **Financial arrangements made** (Original) (3 Days Service) re 556 USCA Appeal Transcript Order Acknowledgment, 554 Transcript Request, **Transcript due by 11/17/2022.** (lmb) |
| 11/15/2022 | 558 | Appeal Transcript filed for Motion for Summary Judgment via Zoom for dates of **August 15, 2022** before Judge Norman K. Moon, re 556 USCA Appeal Transcript Order Acknowledgment, Court Reporter/Transcriber: Lisa Blair, Telephone number 434.409.4575. **NOTICE RE REDACTION OF TRANSCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov** ***Does this*** |

| | | |
|---|---|---|
| | | ***satisfy all appellate orders for this reporter? Yes*** **Transcript may be viewed at the court public terminal or purchased through Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER unless a Redacted Transcript has been filed. Redaction Request due 12/6/2022. Redacted Transcript Deadline set for 12/16/2022. Release of Transcript Restriction set for 2/13/2023. (lmb)** |
| 11/22/2022 | 559 | NOTICE by Kieran Ravi Bhattacharya re 553 *Filing Redacted Proposed Second Amended Complaint to Replace Dkt. #149-1* (Attachments: # 1 Exhibit A - Redacted Proposed SAC to Replace Dkt. No. 149-1)(Lockerby, Michael) |
| 02/10/2023 | 560 | ORDER of USCA as to 538 Notice of Appeal filed by Kieran Ravi Bhattacharya (dg) |

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/16/2023 16:43:28 | | | |
| **PACER Login:** | FL2152 | **Client Code:** | 999400-6445 |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-00054-NKM-JCH |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
SEP 16 2019
JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF VIRGINIA**

**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| **Kieran Ravi Bhattacharya,**<br>**Plaintiff,**<br>**v.**<br>**Rector and Visitors of the University of Virginia,**<br>**Defendant** | **Case No.:** 3:19CV00054<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT**

COMES NOW, Plaintiff Kieran Bhattacharya, for his Complaint, and states as follows:

1. Plaintiff Kieran Bhattacharya (hereinafter "Plaintiff"), is a United States Citizen and a resident of the State of Hawai'i. He matriculated as a medical student at the University of Virginia School of Medicine (hereinafter "SOM") in the Class lass of 2020 (hereinafter "SOM2020") on 4 August, 2016 and took a voluntary leave of absence on 7 February, 2017. Plaintiff joined the Class of 2021 (hereinafter "SOM2021") on 3 January, 2018 and was enrolled at SOM until he received a 1-year suspension for "unprofessionalism" from Academic Standards and Achievement Committee (hereinafter "ASAC") chairman Jim Tucker, MD (hereinafter "Dr. Tucker") on 29 November, 2018. Plaintiff is currently unemployed. Plaintiff is filing this Complaint as a pro se litigant.

2. The University of Virginia, an institution of higher education, was incorporated and created as a body politic to be known by the name "Rector and Visitors of the University of Virginia" (hereinafter "University").

3. Defendant University is a citizen of Virginia for purposes of diversity jurisdiction in that it has the power to sue and be sued, complain, and defend in all courts; it exercises autonomy over its operations; it does not perform traditional government functions; and any judgment against it would not be paid from the state treasury.

4. Original federal question jurisdiction of this Court is proper pursuant to Article III, § 2 of the United States Constitution and 28 U.S.C. § 1332 which provides that federal courts shall have jurisdiction where there is diversity of citizenship and the amount in controversy is greater than $75,000.

5. Plaintiff matriculated to SOM and began the Fall 2016 Semester as a member of SOM2020 on 4 August, 2016.

6. During the Fall 2016 semester, Plaintiff participated in the SOM's mandated Social Issues in Medicine (hereinafter "SIM") course through shadowing and direct client contact at the Albemarle County Department of Social Services, Foster Care Unit. In the Agency Evaluation of Student (Exhibit 1.), Supervisor Beckie Aderholz reported that Plaintiff attended all scheduled sessions, conformed to expectations with respect to different metrics, and received no negative responses.

7. During the Fall 2016 semester, Plaintiff participated in Team-Based Learning (hereinafter "TBL") exercises and received five Student Performance Evaluations (hereinafter "SPE") from five medical students in Plaintiff's six-person TBL team for that semester. Three of five medical students rated Plaintiff's TBL performance as "Frequently exceeds expectations"; one medical student rated Plaintiff's TBL performance as "Meets and sometimes exceeds expectations"; and one medical student rated Plaintiff's TBL performance as "Meets expectations." All five of Plaintiff's SPEs from TBLs in the Fall

2016 Semester are included (Exhibit 2.) with this Complaint with redactions of any and all personal identifiers of each of the other five medical students in Plaintiff's TBL group.

8. During the Fall 2016 semester, Plaintiff participated in Clinical Performance Development (hereinafter "CPD") 1A and received one SPE (Exhibit 3.) from his CPD mentor, Andrew Wolf, MD (hereinafter "Dr. Wolf"). In this SPE, Dr. Wolf marked "Strongly Agree" with respect to the following assertions: "The student participates in and contributes to small group discussion"; "The student is willing to help others in the group"; "The student exhibits humanism, compassion, and empathy during small group discussion"; "The student demonstrates engagement in the SIM community service experience"; "The student demonstrates awareness of the political and economic forces that impact the delivery of health care"; and "The student demonstrates awareness of the socio-cultural forces that impact the delivery of health care."

9. On 18 December, 2016, Plaintiff completed the Fall 2016 semester in good academic standing while as a member of SOM2020.

10. Plaintiff began the Spring 2017 semester at SOM on 2 January, 2017 while as a member of SOM2020.

11. On 7 February, 2017, Plaintiff took a 1-year leave of absence (hereinafter "LOA") from SOM. On the University of Virginia Official Withdrawal Form (Exhibit 4.), Plaintiff cited his reason for withdrawal as "Personal."

12. During Plaintiff's LOA from SOM throughout the year 2017, Plaintiff authored and presented, in conjunction with one former SOM classmate, an abstract at the 4th Annual Symposium on Academic Interventional Radiology on 30 September, 2017 in Washington DC.

13. During Plaintiff's LOA from SOM throughout the year 2017, Plaintiff authored and presented, in conjunction with one former SOM classmate, a poster entitled "Characterization of trends in medical student indebtedness with current and potentially new repayment options for young physicians" at the Sixteenth Annual Medical Student Research Symposium at the University of Virginia School of Medicine on 7 November, 2017.

14. During Plaintiff's LOA from SOM throughout the year 2017, Plaintiff authored, in conjunction with one former classmate, "Endovascular Management of Acute Mesenteric Ischemia" and orally presented findings at the 43rd Annual Scientific Meeting of Society of Interventional Radiology on 19 March, 2018 in Los Angeles, California.

15. During Plaintiff's LOA from SOM throughout the year 2017, Plaintiff authored a textbook chapter entitled "Special Considerations: Revision Anterior Cruciate Ligament," for which he received first authorship in the first edition of the textbook, "ACL Injuries in Female Athletes" in the year 2018. This textbook was published in the year 2018.

16. During Plaintiff's LOA from SOM throughout the year 2017, Plaintiff authored a textbook chapter entitled "Head and Spine Diagnosis and Decision Making," for which he received first authorship in the Fifth Edition of "Delee, Drez, and Miller's Orthopaedic Sports Medicine" in the year 2018. The textbook was published in the year 2019.

17. During Plaintiff's LOA from SOM throughout the year 2017, Plaintiff edited and contributed to the manuscript "Endovascular Management of Acute Mesenteric Ischemia," for which he received second authorship after it was accepted for publication in "Annals of Gastroenterology" on 13 August, 2019.

18. Plaintiff returned to SOM on 3 January, 2018 to begin the Spring 2018 semester as a member of SOM2021.

19. During the Spring 2018 semester, Plaintiff participated in TBL exercises and received five SPEs from five medical students in Plaintiff's six-person TBL. Three of the five medical students rated Plaintiff's TBL performance as "Frequently exceeds expectations"; and two medical students rated Plaintiff's TBL performance as "Meets and sometimes exceeds expectations." All five complete SPEs from the Spring 2018 Semester are included (Exhibit 5.) with this Complaint with redactions of any and all personal identifiers each of the other five medical students in the TBL group.

20. During the Spring 2018 semester, Plaintiff participated in CPD 1B and received one SPE (Exhibit 6.) from his CPD mentor, James Moak, MD (hereinafter "Dr. Moak").

21. A "Professionalism Concern Card" at SOM is punitive administrative action taken against medical students for a variety of forms of misconduct, including but not limited to unexcused absences and violations in professionalism. According to SOM's Policy on Academic and Professional Enhancement (Exhibit 7.), "Any breach of professionalism resulting in a recorded observation, e.g., Professionalism Concern Card, letter, written report, etc., must be addressed with the student by their college dean and documentation of the discussion must be recorded."

22. At 10:52 AM on 4 May, 2018, during the Spring 2018 semester, Plaintiff received a Professionalism Concern Card (Exhibit 8.) from an Attendance Monitor, who commented that "Student did not attend the required Patient Presentation on May 2, 2018."

23. In the Professionalism Concern Card issued against Plaintiff by Attendance Monitor on 4 May, 2018, Attendance Monitor reports that he or she did not notify Plaintiff of this

concern card; that he or she did not feel uncomfortable in reporting this concern card to Plaintiff; and that he or she did request to be contacted about the action taken. Plaintiff was not made aware of having received this Professionalism Concern Card until after receiving his medical student file more than six and a half months later on 20 December, 2018.

24. Plaintiff reports that he did attend the 2 May, 2018 patient presentation, but that he was not tallied as present due to a lapse in Plaintiff's subscription of SOM's attendance technology.

25. Attendance at SOM is monitored using a "Turning Point Login," the subscription service for which had expired at the time for the Plaintiff due to his LOA during the year 2017. Plaintiff was notified by Dr. Mary Kate Warden (hereinafter "Dr. Warden"), a "system leader" for the area of study for which the Patient Presentation was focused, and Plaintiff promptly resolved the issue with SOM's technical support.

26. Despite resolving the issue and communicating the resolution with Dr. Warden, Plaintiff reports that the Attendance Monitor did not rescind the Professionalism Concern Card against Plaintiff.

27. Plaintiff reports having no recollection of discussion or notification of the aforementioned Professionalism Concern Card with his then college dean, John J. Densmore, MD, PhD (hereinafter "Dr. Densmore") or any other faculty or staff member. Furthermore, there is no evidence of notification to or discussion of this Professionalism Concern Card to Plaintiff in his student file.

28. On 27 May, 2018, Plaintiff completed the Spring 2018 semester at SOM in good academic standing while as a member of SOM2021.

29. On 30 July, 2018, Plaintiff began the Fall 2018 semester at SOM while as a member of SOM2021.

30. At noon on 25 October, 2018, Plaintiff attended a SIM discussion entitled "Microaggressions: Why are "They" So Sensitive?" led by Beverly Colwell Adams, PhD (hereinafter "Dr. Adams") and hosted by the SOM chapter of the American Medical Women's Association (hereinafter "AMWA"). Plaintiff participated in a 5 minute and 20 second discussion with two panel speakers, Dr. Adams and Sarah K. Rasmussen, MD, PhD (hereinafter "Dr. Rasmussen"), during a designated question and answer session.

31. The entire 1-hour SIM discussion is included in this complaint (Exhibit 9.). Plaintiff participates in discussion with two panel speakers, Dr. Adams and Dr. Rasmussen, between 28:40 and 34:00 of the one-hour session.

32. At 2:59 PM on 25 October, 2018, Christine M Peterson, MD (hereinafter "Dr. Peterson"), a gynecologist and one of four "college deans" at SOM, sent Plaintiff the following email (Exhibit 10.): "Kieran, I was at the noontime "Microaggressions" panel today and observed your discomfort with the speaker's perspective on the topic. Would you like to come share your thoughts with me? I think I can provide some perspective that will reassure you about what you are and are not responsible for in interactions that could be uncomfortable even when that's not intended. If you'd prefer to talk with your own college dean, that's fine too. I simply want to help you understand and be able to cope with unintended consequences of conversations. Dr. Peterson"

33. Plaintiff agreed to meet with Dr. Peterson at her office at 4 PM on 31 October, 2018.

34. At 9:04 PM on 25 October, 2018, Nora Kern, MD (hereinafter "Dr. Kern"), a Urologist at SOM, issued a Professionalism Concern Card (Exhibit 11.) against Plaintiff. Dr. Kern

was the third member on the speaking panel of the SIM discussion and called on Plaintiff

to ask questions during the discussion; and at no time during the 5 minutes and 20 second

discussion involving Plaintiff, Dr. Adams, and Dr. Rasmussen did Dr. Kern directly

address the Plaintiff or his line of questioning as inappropriate.

35.   In support of the Professionalism Concern card against Plaintiff, Dr. Kern cites relevance

in the following two areas: "Respect for Others" and "Respect for Differences."

36.   Dr. Kern refers to Plaintiff as "this student" and "med student" in the following

description in support of the Professionalism Concern Card: "For a AMWA session, we

held a panel on micro aggression. Myself and 2 other faculty members were invited

guests. This student asked a series of questions that were quite antagonistic toward the

panel. He pressed on and stated one faculty member was being contradictory. His level of

frustration/anger seemed to escalate until another faculty member defused the situation

by calling on another student for questions. I am shocked that a med student would show

so little respect toward faculty members. It worries me how he will do on wards."

37.   The supporting commentary from Dr. Kern in her Professionalism Concern Card against

Plaintiff does not directly quote Plaintiff, Dr. Rasmussen, or Dr. Adams from the 5

minutes and 20 seconds of available audio discussion amongst these three individuals.

38.   Dr. Kern reports in the Professionalism Concern Card at 9:04 PM on 25 October, 2018

that she has not discussed her concerns with Plaintiff and further discloses that she does

not feel uncomfortable discussing her concerns with Plaintiff. Moreover, Dr. Kern makes

no indication that she has reported her issuance of a Professionalism Concern Card

against Plaintiff with anyone other than Katherine Yates (hereinafter "Ms. Yates"), the

registrar at SOM and standard recipient of the concern card notifications through som-

studentaffairs@virgina.edu. This Professionalism Concern Card was not made available to Plaintiff until after receiving his medical student file approximately 56 days later on 20 December, 2018.

39.   Plaintiff reports no recollection of ever having being notified in person by Dr. Kern of the Professionalism Concern Card issued solely by Dr. Kern against Plaintiff. Furthermore, Plaintiff reports no recollection of ever speaking directly to or having been spoken directly to in person by Dr. Kern at any time during his enrollment at SOM. Finally, Plaintiff reports no recollection of contacting directly or having been contacted directly by Dr. Kern for any reason during his enrollment at SOM. Dr. Kern does not name Plaintiff directly by first or last name in the supporting commentary of the Professionalism Concern Card.

40.   At 1:12 PM on 26 October, 2018, Dr. Densmore sent the following e-mail (Exhibit 12.) to Plaintiff: "Hi Kieran, I just wanted to check in and see how you are doing. I hope the semester is going well. I'd like to meet next week if you have some time. JJD"

41.   Plaintiff agreed to meet with Dr. Densmore at noon on 1 November, 2018.

42.   As had been previously agreed upon, Plaintiff met with Dr. Peterson in Dr. Peterson's office at 4 PM on 31 October, 2018 for approximately 1 hour. Plaintiff reports recollection of having discussed a variety of social and political topics with Dr. Peterson, including but not limited to the topic of microaggressions.

43.   Plaintiff reports no recollection of ever having been told by Dr. Peterson during this hour-long interaction that Dr. Kern had issued a Professionalism Concern Card against Plaintiff at 9:04 PM on 25 October, 2018 as a result of the Plaintiff's participation in the SIM discussion on microaggressions between noon and 1 PM on 25 October, 2018.

Moreover, there is no documented report in Plaintiff's student file of Dr. Peterson's communicating to Plaintiff that he had received a Professional Concern Card from Dr. Kern as a result of Plaintiff's participation in the 25 October, 2018 SIM discussion on microaggressions.

44. As had been previously agreed upon, Plaintiff met with Dr. Densmore in Dr. Densmore's personal office at noon on 1 November, 2018 for approximately 10 minutes. Plaintiff reports having a brief discussion with Dr. Densmore about study strategies for SOM's "summative exams" and the United States Medical Licensing Exam (hereinafter "USMLE") Step 1, which Plaintiff was scheduled to take on 1 February, 2019.

45. Plaintiff reports no recollection of having being informed by Dr. Densmore during this 1 November, 2018 meeting that Dr. Kern had issued a Professionalism Concern Card against Plaintiff at 9:04 PM on 25 October, 2018 as a result of the Plaintiff's participation in the 25 October, 2018 SIM discussion on microaggressions. Furthermore, there is no documented report in Plaintiff's medical student file that Dr. Densmore had communicated to Plaintiff that Dr. Kern had issued a Professionalism Concern Card against Plaintiff as a result of Plaintiff's participation in the 25 October, 2018 SIM discussion on microaggressions.

46. After meeting with Dr. Densmore in Dr. Densmore's personal office at noon on 1 November, 2018, Plaintiff reports having been under the impression that there were no Professionalism Concern Cards in his student file. However, two Professionalism Concern Cards had been placed in Plaintiff's student file at the time of the 1 November, 2018 meeting with Dr. Densmore, and no faculty member or employee of SOM is documented to have informed Plaintiff of and/or discussed with Plaintiff these two

serious, punitive administrative decisions. As previously mentioned, in the Professionalism Concern Card (Exhibit 8.) issued against Plaintiff by an "Attendance Monitor" at 10:52 AM on 4 May, 2018 and in the Professionalism Concern Card (Exhibit 11.) issued by Dr. Kern at 9:04 PM on 25 October, 2018, neither the Attendance Monitor nor Dr. Kern report feeling uncomfortable discussing their concerns with Plaintiff. Nonetheless, there is no evidence in Plaintiff's student file that that either the Attendance Monitor or Dr. Kern ever explicitly reported either or both punitive administrative actions to Plaintiff. Moreover, there is no evidence in Plaintiff's student file that either the Attendance Monitor or Dr. Kern made any effort to delegate the task of explicitly reporting either or both of these Professionalism Concern Cards to Plaintiff at any time during Plaintiff's enrollment at SOM.

47. In room "MR 5 3005" at 4:03 PM on 14 November, 2018, a meeting of the University of Virginia School of Medicine Academic Standards and Achievement Committee (hereinafter "SOM ASAC") was called to order. The meeting was adjourned at 5:18 PM on 14 November, 2018. Minutes of the 14 November, 2018 SOM ASAC meeting were respectfully submitted by Ms. Yates on 27 November, 2018 (Exhibit 13.).

48. At the 14 November, 2018 SOM ASAC meeting, Ms. Yates tallied twelve voting committee members as "present." In this Complaint, each of these twelve committee members will be listed numerically in the order that each individual was listed by Ms. Yates with each committee member's name; each committee member's position at SOM on or around 14 November, 2018 to the best of Plaintiff's knowledge; and whatever the Plaintiff feels necessary to include about each committee member's position to provide this Court with what Plaintiff believes to be a sensitive and specific representation of the

SOM ASAC's published "Academic Standards and Achievement Committee Operating Procedures." (Exhibit 14.)

49.     Committee member #1 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Jim B. Tucker, MD. Dr. Tucker's publicly available biography (Exhibit 15.) discloses that he received Board Certification in General Psychiatry and Child and Adolescent Psychiatry by the American Board of Psychiatry and Neurology (hereinafter "ABPN") in 1992 and that he is currently a Professor of Psychiatry at SOM.

50.     The SOM Office of Student Affairs discloses in its publicly available list of ASAC committee members (Exhibit 16.) that Dr. Tucker is the Chair of the SOM ASAC and that he has held this position since on or before the year 2017 and will retain this position until on or after the year 2020. In accordance with Section II of the operating procedures of SOM ASAC, Dr. Tucker was qualified as a voting member of SOM ASAC during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had no recollection of any direct contact with Dr. Tucker on or before 14 November, 2018.

51.     Committee member #2 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Brian Behm, MD (hereinafter "Dr. Behm"). Dr. Behm's publicly available biography (Exhibit 17.) discloses that he received Board Certification in Internal Medicine and Gastroenterology by the American Board of Medical Specialties (hereinafter "ABMS"), retains a title of Associate Professor at SOM, and is described as a gastroenterologist. The SOM Office of Student Affairs discloses in its publicly available list of ASAC committee members that Dr. Behm has been an SOM ASAC committee member since on or before the year 2017 and will retain this position until on or after the

year 2020; however, Dr. Behm is currently listed as "On Leave" from the SOM ASAC

for reasons unbeknownst to Plaintiff. In accordance with Section II of operating

procedures of the SOM ASAC, Dr. Behm was qualified as a voting member of SOM

ASAC during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading,

Plaintiff reports having had no recollection of any direct contact with Dr. Behm on or

before 14 November, 2018.

52.   Committee member #3 tallied by Ms. Yates as present at the 14 November, 2018 SOM

ASAC meeting was Donna Chen, MD, MPH (hereinafter "Dr. Chen"). Dr. Chen's

publicly available biography (Exhibit 18.) discloses that she received Board Certification

in Psychiatry by ABPN in 2001 and retains the following titles at SOM: Associate

Professor in Psychiatry and Associate Professor in Health Evaluation Sciences. The SOM

Office of Student Affairs discloses in its publicly available list of ASAC committee

members that Dr. Chen has been an SOM ASAC member since on or before the year

2017 and will retain this position until on or after the year 2020. In accordance with

Section II of operating procedures of the SOM ASAC, Dr. Chen was qualified as a voting

member of SOM ASAC during the 14 November, 2018 SOM ASAC meeting. At the

time of this pleading, Plaintiff reports having had recollection of numerous instances of

direct contact with Dr. Chen in the context of medical ethics lectures while Plaintiff was

enrolled at SOM.

53.   Committee member #4 tallied by Ms. Yates as present at the 14 November, 2018 SOM

ASAC meeting was Stephen Culp, MD, PhD (hereinafter "Dr. Culp"). Dr. Culp's

publicly available biography (Exhibit 19.) discloses that he received Board Certification

in Urology by ABMS and retains the title of Associate Professor of Urology at SOM. The

SOM Office of Student Affairs does not currently disclose Dr. Culp as a SOM ASAC member in its publicly available list of ASAC committee members. Nonetheless, Dr. Culp was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had no recollection of any direct contact with Dr. Culp on or before 14 November, 2018.

54. Committee member #5 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Pamila Herrington, MD (hereinafter "Dr. Herrington"). Dr. Herrington's publicly available biography (Exhibit 20.) discloses that she received Board Certification in Psychiatry and Neurology-Psychiatry by ABPN in 1998 and that she retains the title of Assistant Professor of Psychiatric Medicine at SOM. The SOM Office of Student Affairs discloses in its publicly available list of ASAC committee members that Dr. Herrington has been an SOM ASAC member since on or before the year 2019 and will retain this position until on or after the year 2022. In accordance with Section II of operating procedures of the SOM ASAC, Dr. Herrington was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had recollection of multiple instances of direct contact with Dr. Herrington.

55. Committee member #6 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Nicholas Intagliata, MD (hereinafter "Dr. Intagliata"). Dr. Intagliata's publicly available biography (Exhibit 21.) discloses that he has received Board Certification in Internal Medicine, Gastroenterology, and Transplant Hepatology by ABMS. The SOM Office of Student Affairs discloses in its publicly available list of

ASAC committee members that Dr. Intagliata has been an ASAC committee member since on or before the year 2018 and will retain this position until on or after the year 2021. In accordance with Section II of operating procedures of the SOM ASAC, Dr. Intagliata was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had no recollection of direct contact with Dr. Intagliata on or before 14 November, 2018.

56. Committee member #7 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Nora Kern, MD. Dr. Kern's publicly available biography (Exhibit 22.) discloses that she received Board Certification in Urology by the American Board of Urology (hereinafter "ABU") and retains the title of Assistant Professor of Urology at SOM. The SOM Office of Student Affairs does not currently list Dr. Kern in its publicly available list of ASAC committee members. Nonetheless, Dr. Kern was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. As mentioned previously, at the time of this pleading, Plaintiff reports having had no recollection of direct contact with Dr. Kern; however, Dr. Kern was present at the SIM discussion on microaggressions and did issue a Professionalism Concern Card against Plaintiff at 9:04 PM on 25 October, 2018.

57. Committee member #8 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Wilson Miller, PhD. Dr. Miller's publicly available biography (Exhibit 23.) discloses that he holds the title of Assistant Professor of Radiology and Medical Imaging at SOM. The SOM Office of Student Affairs discloses in its publicly available list of ASAC committee members that Dr. Miller has been an ASAC committee

member since on or before the year 2018 and will retain this position until on or after the year 2021. In accordance with Section II of operating procedures of the SOM ASAC, Dr. Miller was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had no recollection of any direct contact with Dr. Miller on or before 14 November, 2018.

58. Committee member #9 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Barnett R Nathan, MD (hereinafter "Dr. Nathan"). Dr. Nathan's publicly available biography (Exhibit 24.) discloses that he received Board Certification in Neurology, Vascular Neurology, and Neurocritical Care by ABMS. The SOM Office of Student Affairs does not currently list Dr. Nathan in its publicly available list of ASAC committee members. Nonetheless, Dr. Nathan was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had no recollection of direct contact with Dr. Nathan on or before 14 November, 2018.

59. Committee member #10 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Catherine Shaffrey, MD. Dr. Shaffrey's publicly available biography (Exhibit 25.) discloses that she received Board Certification in Anesthesiology by ABMS in 1996 and currently holds the title of Assistant Professor of Anesthesiology at SOM. The SOM Office of Student Affairs discloses in its publicly available list of ASAC committee members that Dr. Shaffrey has been an ASAC committee member since on or before the year 2018 and will retain this position until on or after the year 2021. In accordance with Section II of operating procedures of the SOM ASAC, Dr. Shaffrey was

designated as a qualified voting member of SOM ASAC by Ms. Yates during the 14 November, 2018 SOM ASAC meeting. At the time of this pleading, Plaintiff reports having had no recollection of direct contact with Dr. Shaffrey on or before 14 November, 2018.

60.    Committee members #11 and #12 tallied by Ms. Yates as present at the 14 November, 2018 SOM AASC meeting were medical students at SOM. Under Section II of ASAC operating procedures, two fourth year medical students serve 1-year terms as ex-officio voting members of SOM ASAC. Plaintiff reports having had no recollection of direct contact with either of these two medical students on or before 14 November, 2018.

61.    At the 14 November, 2018 SOM ASAC meeting, Ms. Yates tallied 4 individuals, including herself, as "Non-voting members." In this Complaint, each of these 4 non-voting members will be listed numerically in the order each individual was listed by Ms. Yates with each member's name; each individual's position at SOM on or around 14 November, 2018 to the best of Plaintiff's knowledge; and whatever the Plaintiff feels necessary to include about each member's position to provide this Court with what the Plaintiff believes to be a sensitive and specific representation of the SOM ASAC's published "Academic Standards and Achievement Committee Operating Procedures."

62.    Non-voting member #1 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Megan Bray, MD (hereinafter "Dr. Bray"). Dr. Bray's publicly available biography (Exhibit 26.) discloses that she received Board Certification in Obstetrics and Gynecology by ABMS and holds the title of Associate Professor. Pursuant to Section II of operating procedures of SOM ASAC, Dr. Bray was not a qualified voting

member during the 14 November, 2018 SOM ASAC meeting. Plaintiff reports having had no recollection of direct contact with Dr. Bray on or before 14 November, 2018.

63. Non-voting member #2 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Lesley Thomas (hereinafter "Ms. Thomas"). Ms. Thomas holds the title of Assistant Dean for Medical Education, and based on publicly available information from SOM's webpage on "Medical Student Advocacy," (Exhibit 27.) serves as a vocational vector for what can include ex parte, anonymous, and unverifiable reports involving "sexism, racism, harassment, discrimination, verbal abuse, and other types of unprofessional behavior directed at students." Plaintiff reports having had no recollection of any direct contact with Ms. Thomas on or before 14 November, 2018.

64. Non-voting member #3 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Selina Noramly, PhD (hereinafter "Dr. Noramly"). Dr. Noramly's publicly available biography (Exhibit 28.) discloses that she holds the title of Director of Academic Enhancement at SOM. Plaintiff reports having had recollection of direct contact with Dr. Noramly on one occasion before 14 November, 2018 in October 2016 to discuss study strategies for medical school exams.

65. Non-voting member #4 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Katherine Yates herself. The SOM Office of Student Affairs contact list (Exhibit 29.) discloses that Ms. Yates is the SOM registrar and should be contacted for "Clerkship Scheduling, Enrollment, Leaving and Returning from the University." Plaintiff recalls having had direct contact with Ms. Yates before 14 November, 2018 when Plaintiff withdrew from SOM at Defendant University on 7 February, 2017.

66. At the 14 November, 2018 SOM ASAC meeting, Ms. Yates tallied 4 individuals as "Guests." In this complaint, each of these 4 Guests will be listed numerically in the order each individual was listed by Ms. Yates with each member's name; each individual's position at SOM on or around 14 November, 2018 to the best of Plaintiff's knowledge; and whatever the Plaintiff feels necessary to include about each member's position to provide this Court with what the Plaintiff believes to be a sensitive and specific representation of the SOM ASAC's published "Academic Standards and Achievement Committee Operating Procedures."

67. Guest #1 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was David Charles Lewis, who is referred to by a "UVA PUBLIC PEOPLE SEARCH" (Exhibit 30.) as Business Intelligence Lead. Plaintiff reports having had no recollection of any direct contact with David Charles Lewis on or before 14 November, 2018.

68. Guest #2 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Lynne Fleming (hereinafter "Ms. Fleming"). Publicly available biography (Exhibit 31.) discloses Ms. Fleming as Associate University Counsel at The Office of the University Counsel at Defendant University. Ms. Fleming has been a member of University Counsel's Office since 2001.

69. Guest #3 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Dr. Peterson. Publicly available biography (Exhibit 32.) discloses that Dr. Peterson received Board Certification in Obstetrics and Gynecology by ABMS in 1982 and holds the titles of Assistant Dean for Medical Education and Associate Professor of Obstetrics and Gynecology at SOM. As mentioned previously, Plaintiff had first met in person with Dr. Peterson in her personal office at 4 PM on 31 October, 2018 per Dr. Peterson's

request. Plaintiff reports having had no recollection of any other interactions with Dr. Peterson between on or after 5 PM on 31 October, 2018 and on or before 4 PM on 14 November, 2018.

70. Guest #4 tallied by Ms. Yates as present at the 14 November, 2018 SOM ASAC meeting was Sean Reed, MD (hereinafter Dr. Reed). Publicly available biography (Exhibit 33.) discloses that Dr. Reed received Board Certification in Family Medicine by the American Board of Family Medicine and holds the title of Associate Professor at SOM. Plaintiff reports having had no recollection of any direct contact with Dr. Reed on or before 14 November, 2018.

71. During the 14 November, 2018 SOM ASAC meeting, Ms. Yates tallied a total twelve voting committee members; four non-voting committee members, and four guests as present. Plaintiff reports having had no recollection of any direct contact on or before 14 November, 2018 with ten of the twelve voting committee members present at the 14 November, 2018 SOM ASAC meeting; no recollection of any direct contact on or before 14 November, 2018 with two of the four non-voting committee members present at the 14 November, 2018 SOM ASAC meeting; and no recollection of any direct contact on or before 14 November, 2018 with three of the four guests present at the 14 November, 2018 SOM ASAC meeting.

72. During the 14 November, 2018 SOM ASAC meeting, Ms. Yates reports the following as a "Professionalism Issue" (Exhibit 34.): "Kieran Bhattacharya (Densmore) concern card for professionalism – From the reporter: 'For a AMWA session, we held a panel on micro aggression. I and 2 other faculty members were invited guests. This student asked a series of questions that were quite antagonistic toward the panel. He pressed on and stated one

faculty member was being contradictory. His level of frustration/anger seemed to escalate until another faculty member defused the situation by calling on another student for questions. I am shocked that a med student would show so little respect toward faculty members. It worries me how he will do on wards. – One prior concern card (attendance of a mandatory activity).'"

73.   The punitive action against Plaintiff recorded by Ms. Yates at the 14 November, 2018 SOM ASAC occurred approximately three weeks prior. There is no evidence from minutes by Ms. Yates that there was any amount of deliberation or discussion regarding the topic of microaggressions during the meeting itself. Moreover, the Professionalism Issue reported to SOM ASAC by Dr. Kern, who herself was an SOM ASAC committee member, reads in exact verbatim as to what Dr. Kern had placed in the supporting commentary for the Professionalism Concern Card that she and only she had written in support of her furtive, punitive utilization of administrative action against Plaintiff.

74.   During the 14 November, 2018 SOM ASAC meeting, Ms. Yates records the following (Exhibit 13.): "Professionalism Issues – The committee voted unanimously to send Kieran Bhattacharya (Densmore) a letter reminding him of the importance in medicine to show respect to all: colleagues, other staff, and patients and families."

75.   In accordance with Section II of the operating procedures of SOM ASAC and the aforementioned tallies by Ms. Yates, a unanimous vote by the SOM ASAC committee on 14 November, 2018 includes votes by the following individuals: Drs. Jim Tucker, Brian Behm, Donna Chen, Stephen Culp, Pamila Herrington, Nicholas Intagliata, Nora Kern, Wilson Miller, Barnett Nathan, Catherine Shaffrey, and two fourth year medical students.

76. The unanimous vote by SOM ASAC was intended to send an e-mail reminder to Plaintiff, who at the time was a medical student as SOM, to remind Plaintiff of the importance in medicine to show respect to all. The four entities listed under "all" in the joint statement voted unanimously on by SOM ASAC include the following: colleagues, other staff, and patients and families. This declarative list does not include a reminder to show respect to medical students. Furthermore, at no point during Plaintiff's participation with two SOM faculty members in a 5 minute and 20 seconds discussion of microaggressions did Plaintiff interact with patients, families, or other staff not generally considered to be faculty members.

77. There exists no documentation in Plaintiff's student file of Plaintiff's showing disrespect to patients, families, or staff not generally considered to be faculty members.

78. There was no documented effort by any of the 20 individuals present at the 14 November, 2018 ASAC meeting to listen to the available audio of the 25 October, 2018 SIM discussion on microaggressions.

79. There was no documented effort by any of the 20 individuals present at the 14 November, 2018 ASAC meeting to explicitly notify Plaintiff by any means that Dr. Kern had issued a Professionalism Concern Card against Plaintiff at 9:04 PM on 25 October, 2018.

80. At 10:36 AM on 15 November, 2018, Dr. Tucker attached the following letter, dated on 15 November, 2018 (Exhibit 35.) in an email (Exhibit 35.B.): "Dear Mr. Bhattacharya: The Academic Standards and Achievement Committee has received notice of a concern about your behavior at a recent AMWA panel. It was thought to be unnecessarily antagonistic and disrespectful. Certainly, people may have different opinions on various issues, but they need to express them in appropriate ways. It is always important in

medicine to show respect to all: colleagues, other staff, and patients and their families. We would suggest that you consider getting counseling in order to work on your skills of being able to express yourself appropriately. Sincerely, Jim B Tucker, MD."

81. Dr. Tucker's recommendation of counseling to Plaintiff in the 15 November, 2018 letter on behalf on SOM ASAC was not included in the reminder that was unanimously voted upon by the SOM ASAC committee members on 14 November, 2018 according to minutes taken by Ms. Yates.

82. In Dr. Tucker's recommendation of counseling to Plaintiff on 15 November, 2018, Dr. Tucker fails to report to Plaintiff that "it" was specifically Dr. Kern and Dr. Kern only who viewed Plaintiff's conduct as "antagonistic."

83. In Dr. Tucker's recommendation of counseling to Plaintiff on 15 November, 2018, Dr. Tucker fails to report to Plaintiff that Dr. Kern issued a Professionalism Concern Card against Plaintiff at 9:04 PM on 25 October, 2018.

84. To the best of Plaintiff's knowledge, Dr. Kern was the only individual who was percipient witness of the SIM discussion on 25 October, 2018 and also a percipient witness of and voting member at the SOM ASAC meeting on 14 November, 2018.

85. At 5:45 PM on 26 November, 2018, Dr. Densmore sent the following email (Exhibit 36.) to Plaintiff: "Hi Kieran, I hope you're doing well. We were notified by the Dean of Students Office that you were heading back to Charlottesville. You will need to be seen by CAPS before you can return to classes. Let me know if you have questions. Best regards, JJD."

86. The acronym "CAPS" referenced by Dr. Densmore was understood at the time by Plaintiff to be "Counseling and Psychological Services" at the Elson Student Health

Center of Defendant University. Furthermore, it was understood by the Plaintiff at the time that any individual receiving treatment from Counseling and Psychological Services (hereinafter "CAPS") at Defendant university would be required to provide CAPS with expressed written consent to treatment.

87. Dr. Densmore's publicly available biography (Exhibit 37.) discloses that he has Board Certification in Internal Medicine; Hematology; and Medical Oncology by ABMS and holds the following two titles at SOM of Defendant University: Associate Professor of Internal Medicine and Associate Dean for Admissions and Student Affairs. Moreover, Dr. Densmore serves as a one of the four college deans for "Hunter College," of which Plaintiff was a member of while enrolled at SOM.

88. In response to Dr. Densmore's email (Exhibit 36.) to Plaintiff at 5:45 PM PM on November 26, 2018, Plaintiff sent the following email (Exhibit 36.) to Dr. Densmore qt 5:00 AM on 27 November, 2018: "How can it be legal to mandate psychiatric evaluations to continue my education? 'Public colleges responding to clearly protected expressions by prescribing mandatory counseling or psychological evaluation violates both students' rights to free speech and private conscience.' – Kelly Sarabyn, FIRE (Foundation for Individual Rights in Education)"

89. The Foundation for Individual Rights in Education (hereinafter "FIRE") was founded in 1999 and describes its mission (Exhibit 38.) as to "defend and sustain individual rights of students and faculty members at America's colleges and universities. These rights include freedom of speech, freedom of association, due process, legal equality, religious liberty, and sanctity of conscience."

90.     Kelly Sarabyn, an author for and contributor to FIRE, from her 31 December, 2007

        article (Exhibit 39.) entitled "Colleges, Mandatory Counseling, and the Right of Private

        Conscience," penned the following excerpt: "Public colleges responding to clearly

        protected expressions by prescribing mandatory counseling or psychological evaluation

        violates both students' rights to free speech and private conscience. Unlike a suspension

        from school, which offends a student's right to free speech, ordering psychological

        counseling for protected speech compounds the offense to the Constitution by violating

        both a student's right to free speech and his right to private conscience."

91.     At 11:48 AM on 27 November, 2018, Randolph J. Canterbury, MD (hereinafter "Dr.

        Canterbury") sent the following email (Exhibit 40.) entitled "Required process to attend

        class" to Plaintiff: "Dear Kieran, I have heard from Dr. Densmore that you have been

        calling him about your desire to return to classes today. You are not cleared to return to

        class until you have been evaluated by CAPS at the Student Health Service. Do not attend

        your CPD group today. Make an appointment with CAPS to initiate the medical

        clearance process. Best regards, R. J. Canterbury, M.D."

92.     Dr. Canterbury's publicly available biographies (Exhibit 41.) disclose that he received

        Board Certification in Internal Medicine in 1983 by ABMS and Board Certification in

        Psychiatry in 1985 and Addiction medicine in 1991 by ABPN. Dr. Canterbury holds the

        titles of Professor of Psychiatric Medicine and Internal Medicine as well as Senior

        Associate Dean for Education at SOM of Defendant University.

93.     At the time of this Complaint and at the time of receiving the aforementioned email from

        Dr. Canterbury at 11:48 AM on 27 November, 2018, Plaintiff does not and did not have

any understanding or awareness as to what "medical clearance process" was referenced by Dr. Canterbury in Dr. Canterbury's email to Plaintiff.

94. At 1:00 PM on 28 November, 2018, Ms. Yates sent the following email (Exhibit 42.) to Plaintiff, "Hello Kieran, The Academic Standards and Achievement Committee will be meeting today to discuss your current enrollment status. You are invited to attend to share your insights with the committee. The meeting will take place at 5:00 in the Claude Moore Medical Education Building, in room G 165. Please arrive at 5:00. The meeting has some business to attend to before they have questions for you, so we will have someone waiting to let you know when they are ready for you. Please reply and let us know if you will be in attendance. Thank you, Katherine M. Yates"

95. At 1:28 PM on 28 November, 2018, Plaintiff sent the following email (Exhibit 43.) to Ms. Yates: "Who exactly will be present? Do you normally just give students 3 hours to prepare after indirectly threatening to kick them from medical school? Why exactly is my enrollment status up for discussion?"

96. At 1:37 PM, on 28 November, 2018, 203 minutes before 5:00 PM, 28 November, 2018, Ms. Yates sent the following email (Exhibit 44.) to Plaintiff: "Hello, Here is the information about the committee's make up policies, and procedures:
https://med.virginia.edu/student-affairs/policies/academic-standards-and-achievement-committee-operating-procedures/
https://med.virginia.edu/student-affairs/policies/academic-standards-achievement-policy/
https://med.virginia.edu/school-administration/standing-committees/academic-standards-and-achievement-committee/
Regards, Katherine"

97.   Per the concluding portion of the introductory paragraph of the Academic Standards and Achievement Committee Operating Procedures (Exhibit 14.), "Comprised of faculty in the school of medicine who do not assign final grades to students as well as student representatives, the role of ASAC is to promote students who meet these required standards, to recommend remedial action for those who do not meet the standards, and to suspend or recommend dismissal of those students who are incapable or who choose not to meet the required standards of achievement within the time frame allotted for completion of the M.D. degree." This introduction of this document goes on to declare: "It is the policy of the School of Medicine to give every qualified and committed student the opportunity to graduate; however, the School reserves the right, in its sole and absolute discretion, to make judgments about who has or has not demonstrated the necessary qualification to earn a degree and to practice medicine competently."

98.   Section III.A. of the Academic Standards and Achievement Committee Operating Procedures (Exhibit 14.) states as follows: "Official votes may be taken when a quorum (greater than 50% of the voting members) is present. All motions, except for a motion of dismissal, shall pass by a majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members. Voting members will be recused from participating and shall not be counted in the quorum is they have (or have had) a personal, mentoring, or advising relationship with the student beyond that of usual student-faculty contact in class or clinical environment. This restriction includes faculty mentors on research projects, family members, anyone with a physician-patient relationship with the student or other personal relationship."

99. Section III.D. of the Academic Standards and Achievement Committee Operating Procedures (Exhibit 14.) states as follows: "When there are severe professional transgressions or the Committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken only after the student has been offered an opportunity to address the Committee in person, and to respond to questions from members of the Committee. Also, the student should be notified by the Committee in writing as to what the major concerns of the Committee are likely to be during the coming meeting. Assistant Deans for Student Affairs (College Deans) as well as relevant teaching faculty may also be invited to attend committee meetings to provide information."

100. The beginning portion of Section III.H. of the Academic Standards and Achievement Committee Operating Procedures (Exhibit 14.) states as follows: "When a student addresses the Committee, the student will act as his or her own advocate."

101. Section III.J. of the Academic Standards and Achievement Committee Operating Procedures (Exhibit 14.) states as follows "Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the Committee should be guided by several important general principles, including: fairness to students; following due process; promptness of action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to the Faculty, patients and to society to train graduates who demonstrate the highest standards or academic performance and conduct."

102. Paragraph 3 of the "Professionalism" subsection of SOM's Policy on Academic and Professional Advancement (Exhibit 7.) states as follows: "Any breach of professionalism

resulting in a recorded observation, e.g., Professionalism Concern Card, letter, written report, etc., must be addressed with the student by their college dean and documentation of the discussion must be recorded."

103. When Plaintiff had received an email from Ms. Yates at 1:00 PM on 28 November, 2018, Plaintiff had received no specific written notice or documented address from his college dean or anyone else that he had received either or both of the Professionalism Concern Cards that were in his student file at the time.

104. Although Section III.D. of ASAC operating procedures states that in instances in which the Committee is to consider serious actions such as suspension or dismissal of the student, "the student should be notified by the Committee in writing as to what the major concerns of the Committee are likely to be during the coming meeting," Plaintiff received no written notification of specific allegations in which Plaintiff was expected to explain and/or defend against in advocating for Plaintiff's enrollment status at SOM of Defendant University.

105. Although Plaintiff responded to Ms. Yates within 28 minutes and asked as to what specifically was the reasoning behind the ASAC disciplinary hearing, neither Ms. Yates nor any other employee of SOM at Defendant University was able to provide Plaintiff with any written statement of the allegations against him during the remaining 3 hours and 32 minutes that Plaintiff had to prepare to advocate for his enrollment status at SOM of Defendant University.

106. Plaintiff initially received only one e-mail from Ms. Yates and no other notifications by phone or in person from anyone else of the ASAC disciplinary hearing.

107.   Between 1:23 PM and 2:06 PM on 28 November, 2018, Plaintiff made 9 phone calls
       (Exhibit 45.) to a variety of faculty members in Charlottesville in an attempt to garner
       more information about what to expect and as to what exact consequences could arise
       from the scheduled, upcoming ASAC disciplinary hearing against Plaintiff at 5:00 PM on
       28 November, 2018.

108.   At 2:12 PM on 28 November, 2018, Plaintiff received an incoming call (Exhibit 45.)
       from Dr. Reed. While Plaintiff did not record the 2:12 PM phone call from Dr. Reed,
       Plaintiff reports recollection that Dr. Reed then informed him that he had received a
       Professionalism Concern Card from as a result of Plaintiff's participation in the
       aforementioned SIM discussion on microaggressions. Moreover, Plaintiff reports that he
       had informed Dr. Reed that he was unaware that Plaintiff had received any
       Professionalism Concern Cards. Finally, Plaintiff reports recollection that Dr. Reed had
       expressed doubtfulness that Plaintiff had not received any notification of the
       aforementioned Professionalism Concern Card. Dr. Reed did not by any means send
       Plaintiff a written copy of the Professionalism Concern Card issued against Plaintiff
       before his disciplinary hearing scheduled to take place within 2 hours and 48 minutes of
       the beginning of the incoming call from Dr. Reed.

109.   At 5:00 PM on 28 November, 2018, Plaintiff attended the ASAC hearing to discuss his
       enrollment status. Plaintiff documented the hearing via a photograph (Exhibit 46.) of the
       attendees and an audio recording (Exhibit 46.B.) of the entire disciplinary hearing. The
       duration of the ASAC hearing was approximately 28 minutes.

110.   During the 28 November, 2018 ASAC disciplinary hearing against Plaintiff, the only
       document or interaction explicitly and accurately referenced by Dr. Tucker to Plaintiff

was Dr. Tucker's letter on behalf of ASAC to Plaintiff regarding Plaintiff's participation in the SIM discussion on microaggressions. Plaintiff claimed to have never read the aforementioned document including Dr. Tucker's recommendation for counseling at the time of the ASAC disciplinary hearing. Plaintiff requested that Dr. Tucker produce the referenced document, and Dr. Tucker refused to do so until after the conclusion of the disciplinary hearing.

111. During the 28 November, 2018 ASAC disciplinary hearing against Plaintiff, Dr. Tucker erroneously refers to the explicit order by Dr. Densmore in the email referenced in Paragraph 85 of this Complaint as a recommendation to be evaluated by CAPS. Dr. Tucker refuses to acknowledge this error when Plaintiff finds and reads the contents of the email in person to Dr. Tucker during the ASAC disciplinary hearing.

112. From minutes (Exhibit 47.) of the 28 November, 2018 ASAC disciplinary hearing against Plaintiff, Ms. Yates tallies twelve voting committee members as "present." Nine of these twelve ASAC committee members present at the 28 November, 2018 ASAC disciplinary hearing against Plaintiff were also present at the 14 November, 2018 ASAC meeting. These nine members were Drs. Jim Tucker, Brian Behm, Donna Chen, Nicholas Intagliata, Nora Kern, Wilson Miller, Barnett Nathan, Catherine Shaffrey, and one fourth year medical student. Each of the remaining three "Disciplinary" Committee Members will be listed numerically in the order that each individual was listed by Ms. Yates with each committee member's name; each committee member's position at SOM on or around 28 November, 2018 to the best of Plaintiff's knowledge; and whatever the Plaintiff feels necessary to include about each committee member's position to provide this Court with what Plaintiff believes to be a sensitive and specific representation of

SOM ASAC's published "Academic Standards and Achievement Committee Operating Procedures." (Exhibit 14.)

113. "Disciplinary" committee member #1 tallied by Ms. Yates as present at the 28 November, 2018 SOM ASAC disciplinary hearing was Roger Abounader, MD, PhD (hereinafter "Dr. Abounader"). Dr. Abounader's publicly available biography (Exhibit 48.) discloses that he holds the title of Professor of Microbiology, Immunology, and Cancer Biology at SOM. The SOM office of Student Affairs discloses in its publicly available list of ASAC committee members that Dr. Abounader has been an ASAC committee member since on or before the year 2017 and will retain this position until on or after the year 2020. In accordance with Section II of operating procedures of the SOM ASAC, Dr. Abounader was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 28 November, 2018 SOM ASAC disciplinary hearing against Plaintiff. At the time of this pleading, Plaintiff reports having had no recollection of direct contact with Dr. Abounader on or before 5 PM on 28 November, 2018.

114. "Disciplinary" committee member #2 tallied by Ms. Yates as present at the 28 November, 2018 SOM ASAC disciplinary hearing was Robert Bloodgood, PhD (hereinafter "Dr. Bloodgood"). Dr. Bloodgood's publicly available biography (Exhibit 49.) discloses that he holds the title of Professor of Cell Biology at SOM. The SOM office of Student Affairs does not currently list Dr. Bloodgood in its publicly available list of ASAC committee members. Nonetheless, Dr. Bloodgood was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 28 November, 2018 SOM ASAC disciplinary hearing against Plaintiff. At the time of this pleading, Plaintiff

reports having had no recollection of direct contact with Dr. Bloodgood on or before 5 PM on 28 November, 2018.

115. "Disciplinary" Committee member #3 tallied by Ms. Yates as present at the 28 November, 2018 SOM ASAC disciplinary hearing was Sharon Diamond-Myrsten, MD (hereinafter Dr. Diamond-Myrsten). Dr. Diamond-Myrsten's publicly available biography (Exhibit 50.) discloses that she received Board Certification in Family Medicine by ABMS and retains the title of Assistant Professor of Family Medicine at SOM. The SOM office of Student Affairs discloses in its publicly available list of ASAC committee members that Dr. Diamond-Myrsten has been an ASAC committee member since on or before the year 2018 and will retain this position until on or after the year 2021. In accordance with Section II of operating procedures of the SOM ASAC, Dr. Diamond-Myrsten was designated as a qualified voting member of SOM ASAC by Ms. Yates during the 28 November, 2018 SOM ASAC disciplinary hearing against Plaintiff. At the time of this pleading, Plaintiff reports having had no recollection of direct contact with Dr. Diamond-Myrsten on or before 5 PM on 28 November, 2018.

116. From minutes (Exhibit 47.) of the 28 November, 2018 ASAC disciplinary hearing against Plaintiff, Ms. Yates tallies four non-voting committee members as "present." All four non-voting committee members tallied as present during the 28 November, 2018 disciplinary hearing against Plaintiff have been previously mentioned in this complaint and are listed as follows: John J Densmore, MD, PhD; Megan Bray, MD; Lesley Thomas; and Katherine Yates.

117. From minutes (Exhibit 47.) of the 28 November, 2018 ASAC disciplinary hearing against Plaintiff, Ms. Yates tallies three "Guests" as "present." All three Guests tallied as present

during the 28 November, 2018 disciplinary hearing against Plaintiff have been previously

mentioned in this Complaint and are listed as follows: Kieran Bhattacharya (Plaintiff),

Lynne Fleming, and Christine Peterson, MD.

118. Paragraph 1 of 5 from minutes (Exhibit 47.) of the 28 November, 2018 ASAC

disciplinary hearing against Plaintiff states as follows: "The committee convened to

discuss concerning behaviors exhibited by Kieran Bhattacharya (Densmore) over the past

weeks after members of the Technical Standards Committee determined that the concerns

were best addressed by the ASAC. The ASAC convened an emergency meeting on

Wednesday November 28. Kieran Bhattacharya was invited to attend the meeting to

discuss his enrollment status and did attend the meeting.."

119. Paragraph 2 of 5 from minutes (Exhibit 47.) of the 28 November, 2018 ASAC

disciplinary hearing against Plaintiff states as follows: "The student was given the

opportunity to address concerns about his behavior. He asked questions of members of

the Committee and responded to questions asked by the Committee."

120. Paragraph 3 of 5 from minutes (Exhibit 47.) of the 28 November, 2018 ASAC

disciplinary hearing against Plaintiff states as follows: "The Committee reviewed the list

of technical standards that are acknowledged annually by the students especially the

Emotional, Attitudinal and Behavioral Skills."

121. Paragraph 4 of 5 from minutes (Exhibit 47.) of the 28 November, 2018 ASAC

disciplinary hearing against Plaintiff states as follows: "Because the student's behavior

demonstrated his inability to meet several of those standards. Dr. Nathan made a motion

to suspend Kieran Bhattacharya (Densmore) from the School of Medicine, effective

immediately, with the option to petition to return in August of 2019. Dr. Behm seconded

this motion. The committee voted unanimously to accept the motion. Nora Kern did not vote on the matter, as personal business required her to leave before the vote was executed."

122.   Paragraph 5 of 5 from minutes (Exhibit 47.) of the 28 November, 2018 ASAC disciplinary hearing against Plaintiff states as follows: "A letter will be sent to Kieran Bhattacharya's email, informing him of the decision and explaining the appeals process."

123.   At 5:30 PM on 29 November, 2018, Dr. Tucker sent Plaintiff the following message (Exhibit 51.) by email: "Dear Mr. Bhattacharya, See the attached letter from the Academic Standards and Achievement Committee. Please know that Drs. Densmore, Reed, and Keeley are available for support. Also, in response to your question about ID access, suspension involves a deactivation of your ID per standard university procedure, but you can make an appointment should you need to meet with your college dean." Attached (Exhibit 51.B.) to this email was notification to Plaintiff of a 1-year suspension from SOM of Defendant University.

124.   Paragraph 1 of 4 of Plaintiff's 1-year suspension letter states as follows: "The Academic Standards and Achievement Committee ("ASAC") convened on November 28, 2018 to review concerns that your recent behavior in various settings demonstrated a failure to comply with the School of Medicine's Technical Standards. Members of the Technical Standards Committee determined that the concerns about your recent behavior should be addressed by the Academic Standards and Achievement Committee. The ASAC decided that the nature of the concerns called for an emergency meeting. You were notified of that meeting on November 28, 2018 and provided an opportunity to be heard and to

respond to the concerns about your recent behavior. You attended the meeting, asked and answered questions and presented information."

125. Paragraph 2 of 4 of Plaintiff's 1-year suspension letter states as follows: "The Academic Standards and Achievement Committee has determined that your aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday, constitute a violation of the School of Medicine's Technical Standards that are found at: https://med.virginia.edu/student-affairs/policies/technical-standards/"

126. Paragraph 3 of 4 of Plaintiff's 1-year suspension letter states as follows: "Those Standards, in relevant and as part of professionalism, state that each student is responsible for: Demonstrating self-awareness and self-analysis of one's emotional state and reactions; Modulating affect under adverse and stressful conditions and fatigue; Establishing effective working relationships with faculty, other professionals and students in a variety of environments; and Communicating in a non-judgmental way with persons whose beliefs and understandings differ from one's own."

127. Paragraph 4 of 4 of Plaintiff's 1-year suspension letter states as follows: "The committee has voted to suspend you from school, effective immediately. You may apply for readmission to return to class no earlier than August, 2019. A student suspended for academic, professionalism, or administrative reasons or a student who has academic or Technical Standards/professionalism deficiencies at the time of suspension must be reviewed and approved to return by ASAC. The committee would only approve your return if you are able to provide evidence that further violations of the Technical

Standards are unlikely to occur. You may appeal your suspension, in accordance with the SOM's appeal procedures."

128. In Plaintiff's 1-year suspension letter, Dr. Tucker asserts on behalf of ASAC that "The Academic Standards and Achievement Committee has determined that your aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday."

129. Prior to Plaintiff's disciplinary hearing at 5:00 PM on 28 November, 2018, Plaintiff was never provided with written documentation from any employee of SOM as to what "aggressive and inappropriate interactions" Plaintiff had committed in "public settings." Moreover, no member of SOM ASAC made any specific reference to or allegation of Plaintiff's activity in public settings during the disciplinary hearing. The 1-year suspension letter itself provides Plaintiff with no details as to the nature, timing, location, severity, and/or reporting actor(s) of these multiple "public settings" in which Plaintiff is described by Dr. Tucker on behalf of SOM ASAC to have exhibited "multiple aggressive and inappropriate interactions."

130. Prior to Plaintiff's disciplinary hearing at 5:00 PM on 28 November, 2018, Plaintiff was never provided with written documentation from any employee of SOM as to what "aggressive and inappropriate interactions" Plaintiff had committed in "a speaker's lecture." If this excerpt from Dr. Tucker's 1-year suspension letter on behalf of SOM ASAC to Plaintiff was referencing the SIM discussion on microaggressions, this Court should take note from available audio of the SIM discussion that Plaintiff was called on to ask questions by Dr. Kern and spoke only during a designated period of questions and answers following Dr. Adams' lecture at the 25 October, 2018 SIM discussion on

microaggressions. Plaintiff did not speak during Dr. Adams' lecture itself, and Plaintiff

attempted to detail this by presenting the 5 minute and 20 second audio excerpt to SOM

ASAC during Plaintiff's disciplinary hearing but was restrained from doing so by Dr.

Tucker. Also, there is no existing documentation available to Plaintiff that any ASAC

committee member had listened to the available audio before incorporating this

interaction and voting unanimously as a committee to issue a 1-year suspension against

Plaintiff from SOM at Defendant University.

131.   Prior to Plaintiff's ASAC Disciplinary hearing on 28 November, 2018, Plaintiff was not

provided with written documentation from any employee of SOM as to what "aggressive

and inappropriate interactions" Plaintiff had committed "with [his] dean."

132.   Dr. Tucker asserts in the 1-year suspension letter on behalf on ASAC to Plaintiff that

Plaintiff's conduct at the ASAC disciplinary hearing itself qualified as "aggressive and

inappropriate," but makes no effort to provide further details on this allegation, and no

characterization about Plaintiff's conduct during the disciplinary hearing is explicitly

described as aggressive and inappropriate in the minutes documented by Ms. Yates of the

28 November, 2018 disciplinary hearing against Plaintiff.

133.   To the best of Plaintiff's recollection, Plaintiff reports that within 72 hours of his

receiving a 1-year suspension letter from Dr. Tucker at 5 PM on 29 November, 2018,

Plaintiff's UVA health system email account was deleted. Plaintiff was able to archive

several emails before this email account was deleted, including but not limited to explicit

orders for psychiatric evaluations by Dr. Densmore in Paragraph 85 and by Dr.

Canterbury in Paragraph 91 of this Complaint that were erroneously characterized by Dr.

Tucker as recommendations during the ASAC disciplinary hearing against Plaintiff.

134. Bullet point #3 of the Academic appeals process listed in the concluding portion of the 1-year suspension letter from Dr. Tucker on behalf of SOM ASAC to Plaintiff declares the following: "The student is permitted to inspect their entire medical school file, including any material upon which the decision of ASAC was based." Emails from Dr. Densmore and Dr. Canterbury obtained by Plaintiff and included as exhibits Paragraphs 85 and 91 of this Complaint were only made available through the process of forwarding and archiving what the Plaintiff believed to be pertinent emails on the morning of 29 November, 2018 and were never made available to Plaintiff in his student file or by any other means from SOM at Defendant University.

135. Bullet point #5 of the Academic appeals process listed in the concluding portion of the 1-year suspension letter from Dr. Tucker to Plaintiff declares the following: "The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days) and will uphold, modify, or reverse the decision(s) of ASAC."

136. At 11:15 AM on 4 December, 2018, Plaintiff sent an email from a personal email account (Exhibit 52.) to Dr. Densmore to initiate the appeals process. At 8:02 PM on 4 December, 2018, Plaintiff received a response by email (Exhibit 52.B.) from Dr. Densmore declaring that the appeals process had been initiated.

137. On 7 December, 2018, during the course of the scheduled appeals process, Plaintiff received notification by email (Exhibit 53.) from the National Board of Medical Examiners (hereinafter "NBME") that his registration for the United States Medical Licensing Exam Step 1 (hereinafter "USMLE Step 1") was cancelled upon notification by SOM that Plaintiff was not currently enrolled at SOM. Plaintiff was previously scheduled to take the USMLE Step 1 on 1 February, 2019.

138. On 20 December, 2018, approximately 16 days after initiating the appeals process, Plaintiff received his medical student file. It was at this time, more than three weeks after receiving his 1-year suspension, that Plaintiff was able to view the two Professional Concerns Cards placed against him by Attendance Monitor and Dr. Kern, respectively.

139. On 3 January, 2019, Dr. Densmore sent an email with the following message: "Dear Kieran, I received from the University Police Department a copy of a "no trespass warning" issued to you (attached). We will not be able to proceed with an appeal to your suspension at this time. Best regards, John Densmore."

140. Attached in the aforementioned email from Support Services Captain Melissa Fielding with the following message (Exhibit 54.): "Dear Mr. Bhattacharya: As a follow up to my phone conversation with you on Sunday, December 30, 2018, please find attached to this letter a no trespass warning which has been issued to you by the University of Virginia Police Department at the University of Virginia."

141. No specific reasoning as to why the no trespass warning (Exhibit 54.) was issued to Plaintiff was provided to Plaintiff in writing.

142. No specific reasoning as to why the no trespass warning (Exhibit 54.) was in issued to Plaintiff and no specific notice that a no trespass warning would be issued to Plaintiff was provided to Plaintiff during the referenced phone call in the message attached to the no trespass warning issued against Plaintiff by then Support Services Captain Melissa Fielding of the University of Virginia Police Department (hereinafter "UPD") at Defendant University.

143. On 7 July, 2019, Plaintiff emailed Dr. Tucker and Dr. Densmore inquiring about the possibility of readmission to SOM. On 12 July, 2019, Dr. Densmore responded in an

email (Exhibit 55.) with the following message: "Dear Kieran, Thank you for your email. The School of Medicine is aware that a no trespass order was issued by the University Police Department (UPD) on January 2, 2019 prohibiting you from University Grounds for four years. We cannot address your request for readmission while a no trespass order is in effect. Should you have questions about that order, you will need to contact UPD directly. Best regards, John Densmore."

144. The no trespass warning against Plaintiff from the police department of Defendant University is set to expire on 3 January, 2023.

145. According to SOM's Policy on Academic and Professional Advancement, "All requirements for graduation, including passing Step 1, Step 2 CK and Step 2 CS of the USMLE, must be completed within six years from the date the student matriculated in the School of Medicine." Plaintiff would not be able to comply with this requirement if he were to graduate from SOM after 3 August, 2022.

**COUNT I – FIRST AMENDMENT VIOLATION (42 U.S.C. § 1983)**

For count I of his Complaint, for First Amendment Violation of Freedom of Speech and Expression against Defendant University, Plaintiff Kieran Bhattacharya, states as follows:

146. Plaintiff herein incorporates by reference the allegations contained in Paragraphs 1 through 145 of his Complaint.

147. The First Amendment prohibits State officials at public universities from adopting regulations that outlaw certain student conduct when the regulation "is so broad as to chill the exercise of free speech and expression." *Dambrot v. Cent. Michigan University*, 55 F.3d 1177, 1182 (6th Cir. 1995)

148. The government may not prohibit speech "based solely on the emotive impact that its offensive content may have on a listener." *Saxe v. State College Area School dist.*, 240 F.3d 200, 209 (3d Cir. 2001) (Alito, J).

149. Moreover, "regulations that prohibit speech on the basis of listener reaction alone are unconstitutional both in public high school and university settings." *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357, 369 (M.D. Pa. 2003).

150. A regulation is unconstitutionally overbroad if "a substantial number of instances exist in which the [regulation] cannot be applied constitutionally." *Speet v. Schuette*, 726 F .3d 867, 872 (6th Cir. 2013). This Court must find a regulation as facially unconstitutional because "the threat of enforcement of an overbroad [regulation] may deter or 'chill' constitutionally protected speech," as "[m]any persons, rather than undertake the considerable burden (and sometimes risk) of vindicating their rights through case-by-base litigation, will chose simply to abstain from protected speech, harming not only themselves but society as a whole, which is deprived of an uninhibited market of ideas." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

151. Dr. Densmore, who was acting at the time in the capacity of a public employee at SOM of Defendant University, issued a mandatory psychiatric evaluation by Defendant University's Counseling and Psychological Services via email at 5:30 PM on 26 November, 2018 as a necessary condition for Plaintiff's returning to classes at SOM. This mandatory psychiatric evaluation constitutes a violation of Plaintiff's First Amendment protections of freedom of speech and expression. Furthermore, Dr. Densmore's issuance of a mandatory psychiatric evaluation violates Plaintiff's private conscience.

152. To Plaintiff's knowledge, no established protocol or policy of SOM at Defendant University allows a faculty to member to, without explicit reason, order that a medical student receive an indefinite amount of psychiatric evaluations for an indefinite period of time by an unspecified individual or individuals to maintain enrollment at SOM at Defendant University, a public institution. Moreover, no established protocol or policy by SOM of Defendant University was communicated to Plaintiff with the email by Dr. Densmore referenced in Paragraph 85 of this Complaint.

153. Beyond the lack of clear legal and institutional bases in Dr. Densmore's mandated psychiatric evaluation by email to Plaintiff, it isn't explicitly clear to Plaintiff as to how Dr. Densmore would be able to verify that Plaintiff had been evaluated by CAPS at the Elson Student Health of Defendant University. The Department of Student Health at Defendant University's statement (Exhibit 56.) of student confidentiality states as follows: "Your medical records will be kept confidential and access to information about you will be limited to those legitimately involved in your care. Your medical records will be released only in cases of medical emergencies, in response to court-ordered subpoenas or to persons you specify with your written consent." Moreover, Plaintiff's receiving treatment from CAPS would in itself have required written consent, and even if Plaintiff did decide on his own volition to request treatment from CAPS, there would be ample reasons for Plaintiff to do so while maintaining strict confidentiality.

154. Thus, even if Dr. Densmore had the legal and institutional authority to order psychiatric evaluations of medical students at SOM without any explicitly written reason, there would and should be no practical way for Dr. Densmore to systematically confirm that such orders were followed by Plaintiff, nor are there any publicly established policies by

Defendant University to the best of Plaintiff's knowledge that specify exactly what Plaintiff must have said or done while being evaluated by CAPS. Plaintiff, for example, could have decided on his volition to consent to treatment at CAPS and chose to remain silent in the presence of a psychiatrist or counselor and promptly left immediately after beginning an interaction with a CAPS employee.

155. Dr. Densmore made no attempt to challenge Plaintiff's responses by email or by phone on 27 November, 2018 to clarify what legal and institutional bases Dr. Densmore felt that he had at the time to order a mandatory psychiatric evaluation of Plaintiff as a necessary prerequisite to return to classes at SOM of Defendant University.

156. Dr. Canterbury's follow-up email on 27 November, 2018, detailed in Paragraph 91, reaffirms the mandatory psychiatric evaluation from Dr. Densmore from the previous day. Dr. Canterbury's order lacks the same degree of legal bases, institutional authority, and practical application for the same reasons listed in Paragraphs 146 to 155.

**COUNT II – FIFTH AMMENDMENT VIOLATION (U.S.C. 42 § 1983)**

For Count II of his Complaint, for Fifth Amendment Violation of Procedural Due Process against Defendant University, Plaintiff Kieran Bhattacharya, states as follows:

157. Plaintiff hereby re-alleges and repeats paragraphs 1 through 156, and incorporates them herein as fully set forth.

158. The concept of procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)

159. Moreover, "[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct." *Dixon v. Ala. State Bd. Of Educ.,* 294 F.2d 150, 158 (5th Cir. 1961).

160. Plaintiff acknowledges that "[a] university is not a court of law, and it is neither a practical or desirable one." (quoting *Flain v. Med. Coll. Of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005))

161. Applying *Matthews*: "Generally, the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail." (citing *Matthews*, 424 U.S. at 335). These are also known as the *Matthews* factors.

162. Plaintiff reports that a 1-year suspension for "unprofessionalism" would be catastrophic towards his interests as a prospective medical resident, assuming that SOM had accepted his request for reenrollment or will in the future provide Plaintiff with an opportunity for reenrollment, which Dr. Densmore reports on behalf of SOM that SOM is unable to do so at the time of this Complaint as a result of the 4-year No Trespass Order issued against Plaintiff on 2 January, 2019.

163. Plaintiff received no written explanation as to why exactly his enrollment status was being addresses and only received notice of his disciplinary hearing by email 4 hours prior to the disciplinary hearing. This is in direct discordance with Section III.D. of ASAC operating procedures that "the student should be notified by the Committee in

writing as to what the major concerns of the Committee are likely to be during the coming meeting,"

164. It is inconceivable, particularly with notice by e-mail 4 hours prior to the disciplinary hearing, that Plaintiff would know exactly how to properly defend his enrollment status in SOM at Defendant University without any written descriptions as to what major concerns the Committee are likely to be during the coming meeting.

165. Even after calling nearly 10 SOM faculty members merely hours before he was required to defend his enrollment status, Plaintiff only received verbal notification of a Professionalism Concern Card that had been issued more than one month prior, but he had received no explicit notification of the actual Professionalism Concern Card from Dr. Kern. Beyond the fact that neither Dr. Kern, Dr. Peterson, Dr. Tucker, nor any committee member of SOM ASAC made any effort to explicitly inform Plaintiff in person, by email, or by phone of the Professionalism Concern Card when having ample opportunity to do so, there exists no documentation in Plaintiff's student file that the Professionalism Concern Card was addressed specifically by Dr. Densmore with Plaintiff. This interaction between Plaintiff and Dr. Densmore should have been carried and documented in a timely manner after 25 October, 2018 for the Professionalism Concern Card to have been made in compliance with SOM's Policy on Academic and Professional Advancement. Finally, Dr. Reed made no effort to provide Plaintiff with a written copy of the Professionalism Concern Card hours before the disciplinary hearing was scheduled to commence, and Dr. Tucker made no effort to provide Plaintiff with a written copy of the Professionalism Concern Card during the disciplinary hearing itself. Plaintiff did not obtain a physical copy of the Professionalism Concern Card until receiving a copy of his

Student File on 20 December, 2018, 56 days after the Professionalism Concern Card was issued by Dr. Kern and 22 days after Plaintiff received a 1-year suspension for unprofessionalism.

166. Despite multiple attempts to clarify as to what specific allegation he was defending against with Ms. Yates by email, with Dr. Reed by phone, and at least three ASAC committee members during the ASAC Disciplinary hearing on 28 November, 2018, Plaintiff received no notification of any other specific incidents with the exception of a vague and unwritten references to Plaintiff's conduct during his participation in the SIM discussion on microaggressions on 25 October, 2018.

167. Plaintiff brought a copy of the audio recording of the SIM discussion and includes the audio in this Complaint. Dr. Tucker, chairman of ASAC and author of Plaintiff's 1-year suspension letter, not only declined to hear this audio recording during the ASAC disciplinary hearing, but he also did not explicitly demonstrate any effort to listen to the audio recording during the prior 14 November, 2018 ASAC meeting, where Dr. Tucker made the decision to recommend that Plaintiff seek psychological counseling without explicit approval or vote of such language by the other 11 voting committee members according to minutes documented by Ms. Yates during the 14 November, 2018 ASAC meeting and obtained by Plaintiff in his medical student file.

168. Finally, Dr. Tucker erroneously characterized Dr. Densmore's mandatory psychiatric evaluation as a recommendation and refused to correct himself after correction by Plaintiff of this mischaracterization during the course of the 28 November, 2018 ASAC Disciplinary hearing.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Kieran Bhattacharya prays that the Court:

a) order Defendant University to dissolve its existing No Trespass Order from UPD, therefore permitting Plaintiff to coordinate opportunity for re-enrollment at SOM

b) order Defendant University to remove all references from Plaintiff's 1-year suspension from his medical student file

c) order Defendant University to remove all references to Plaintiff's two Professionalism Concern Cards from his medical student file

d) order Defendant University to allow Plaintiff the opportunity for reenrollment at SOM on or around 4 November, 2019 to allow Plaintiff to complete requirements of SOM's Doctor of Medicine program within 6 years of his matriculation date

e) order Defendant University to allow for Plaintiff's registration of the USMLE Step 1 on or before 10 February, 2020 by immediately notifying the NBME of Plaintiff's enrollment status at SOM

f) order Defendant University compensate Plaintiff for lost potential future income, harm to professional reputation, and any and all out-of-pocket incidental expenses in an amount not less than one hundred and forty thousand and 00/100 dollars ($140,000)

g) Order Defendant University to pay court costs; and

h) Enter its Order for such other and further relief as this Court deems just and proper under the circumstances.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully Submitted,
Kieran Bhattacharya

/s/ Kieran Bhattacharya
Filing as Pro Se Litigant
70 Hale Pili Way
Haiku, HI, 96708
Cell: (808) 344-9928
E-mail: kieran0696@gmail.com



*The School of Medicine, Office of Medical Education*

# Social Issues in Medicine
# Agency Evaluation of Student

Fall 16 X
Spring 17 ___

Name of Student Kieran Bhattacharya
Name of Agency and Program Albemarle County DSS, Foster Care Unit
Supervisor Name & Tel # Beckie Aderholz [redacted]

1. Briefly describe your student's duties.
   - ☐ Casework ☑ Direct Client Contact ☑ Shadowing ☐ Home Visits ☐ Outreach ☐ Health Fairs
   - ☐ Administrative/Clerical ☐ Assisting clients with material needs ☐ Teaching/Educational activities
   - ☐ Mentoring/Tutoring ☐ Other ___

2. Has the student attended all scheduled sessions? Yes X No ___

3. Has the student conformed to expectations of professionalism with respect to the following:
   - a. Dress & Appearance Yes X No ___
   - b. Attendance Yes X No ___
   - c. Positive attitude Yes X No ___
   - d. Maintenance of confidentiality relating to client and agency issues Yes X No ___

Please explain any negative responses:
None to report.

4. To what extent has the student been responsive to criticism and suggestions?
(Bold & Underline a number) (Very little) 1 2 3 (4) 5 (Very much)

5. To what extent has the student demonstrated engagement in his/her assignment by directing questions appropriately to the supervisor or other agency staff? (Bold & Underline a number) (Very little) 1 2 3 4 (5)(Very much)

6. To what extent has the student demonstrated respect for clients?
(Bold & Underline a number) (Very little) 1 2 3 4 (5)(Very much)

7. To what extent has the student demonstrated an understanding for the social, psychological, economic and health issues that impact your client population? (Bold & Underline a number) (Very little) 1 2 3 4 (5)(Very much)

8. To what extent has the student demonstrated cultural sensitivity in his/her interaction with your client population? (Bold & Underline a number) (Very little) 1 2 3 4 (5)(Very much) OR N/A (Not Applicable) If not applicable, please explain.

9. How strong is the student's understanding of the services provided by your agency and the challenges you face in delivering them? (Bold & Underline a number) (Not Very Strong) 1 2 3 4 (5) (Very Strong)

10. Did the student make a contribution to the work of the agency?
(Bold & Underline a number) (Very little) 1 2 3 (4) 5 (Very much) Please explain:

11. In a few sentences, please describe below your student's strengths and explain any concerns you encountered while working with him/her.

Please note any problems or satisfactions you encountered as a placement site for the University of Virginia Medical School Social Issues in Medicine course. Include any suggestions for improving the program. Please continue your comments on the back or on another sheet, if necessary.

**Return this form via Email: da7r@virginia.edu or Fax: 434-982-6379**

*Thank you for participating as a supervisor in the Social Issues in Medicine course.*



**Student Performance Evaluation**
**Peer Actionable Feedback SMD20 - TBL Team (FOM 9/12/16)**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 08/15/2016 - 09/24/2016 | 90-6712: Medical Education Foundations Of Medicine | UVA | 6 | 0 |

**Evaluation Period:** 08/15/2016 - 09/24/2016

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

lick here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

> Kieran always comes prepared and has opinions about questions. He is good at defending his choice and making his thought process clear.

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

> Not applicable. Kieran was a little quiet at the beginning but when he spoke up we benefited from his contributions.

3.* What have you learned from this team member that you can take with you to your next experience?

> From Kieran, I have learned that it is ok to disagree.

4.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

- X **Frequently exceeds expectations**
- o Meets and sometimes exceeds expectations
- o Meets expectations
- o Partially meets expectations
- o Does not meet expectations

5. Feedback given by (optional):

Last modified (submitted) at 09/15/2016 08:54:56 PM by [redacted]

**Close**

Supported by the Office of Medical Education [redacted]

POWERED BY OASIS

Copyright © 2008-2018 WARF



**Student Performance Evaluation**
**Peer Actionable Feedback SMD20 - TBL Team (FOM 9/12/16)**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 08/15/2016 - 09/24/2016 | 90-6712: Medical Education Foundations Of Medicine | UVA | 6 | 0 |

**Evaluation Period:** 08/15/2016 - 09/24/2016

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

Kieran is always well prepared, but still accepts other people's viewpoints during discussions.

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

He could do better job speaking up when he believes he has the right answer.

3.* What have you learned from this team member that you can take with you to your next experience?

He has taught me how to listen well to other's opinions.

4.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

- o Frequently exceeds expectations
- X **Meets and sometimes exceeds expectations**
- o Meets expectations
- o Partially meets expectations
- o Does not meet expectations

5. Feedback given by (optional):

Last modified (submitted) at 09/15/2016 10:55:59 AM by [redacted]

**Close**

Supported by the Office of Medical Education [redacted]

POWERED BY OASIS
Copyright © 2008-2018 WARF

(2)

**Student Performance Evaluation**

**Peer Actionable Feedback SMD20 - TBL Team (FOM 9/12/16)**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 08/15/2016 - 09/24/2016 | 90-6712: Medical Education Foundations Of Medicine | UVA | 6 | 0 |

**Evaluation Period:** 08/15/2016 - 09/24/2016

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

Relaxed attitude, willingness to differ in opinion

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

Could wait to be called on by gRAT/GAE facilitator before expressing opinion/answering question, speak louder

3.* What have you learned from this team member that you can take with you to your next experience?

Willingness to compromise views to incorporate others' ideas

4.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

- o Frequently exceeds expectations
- o Meets and sometimes exceeds expectations
- X **Meets expectations**
- o Partially meets expectations
- o Does not meet expectations

5. Feedback given by (optional):

Last modified (submitted) at 09/14/2016 09:49:37 PM by [redacted]

Close

Supported by the Office of Medical Education [redacted]

POWERED BY OASIS
Copyright © 2008-2018 WARF

Case 3:19-cv-00054-NKM-JCH Document 1-2 Filed 09/16/19 Page 4 of 62 Pageid#: 54

②

UVA
Health
Student

**Student Performance Evaluation**
**Peer Actionable Feedback SMD20 - TBL Team (FOM 9/12/16)**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 08/15/2016 - 09/24/2016 | 90-6712: Medical Education Foundations Of Medicine | UVA | 6 | 0 |

**Evaluation Period:** 08/15/2016 - 09/24/2016

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

You are great at working through your through processes to explain your reasoning behind answers

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

I think it would be helpful if you were more open to considering answers that others agree with.

3.* What have you learned from this team member that you can take with you to your next experience?

I have learned to look for less obvious reasoning that is perfectly logical

4.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

X **Frequently exceeds expectations**
o Meets and sometimes exceeds expectations
o Meets expectations
o Partially meets expectations
o Does not meet expectations

5. Feedback given by (optional):

Last modified (submitted) at 09/13/2016 06:28:39 PM by [redacted]

**Close**

Supported by the Office of Medical Education [redacted]

POWERED BY OASIS
Copyright © 2008-2018 WARF



UVA
Medite
Student

**Student Performance Evaluation**
**Peer Actionable Feedback SMD20 - TBL Team (MIS 11/30/16)**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 10/31/2016 - 12/17/2016 | 90-901: Medical Education Microbes & The Immune System | UVA | 7 | 0 |

**Evaluation Period:** 10/31/2016 - 12/17/2016

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

Kieran is always well prepared and helps our team come to the right conclusion on the GRAT.

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

It doesn't really affect anyone but himself, but he is occasionally late to TBLs by a couple of minutes or so.

3.* What have you learned from this team member that you can take with you to your next experience?

How to be a good group member.

4.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

X **Frequently exceeds expectations**
o Meets and sometimes exceeds expectations
o Meets expectations
o Partially meets expectations
o Does not meet expectations

5. Feedback given by (optional):

Last modified (submitted) at 12/02/2016 08:58:37 AM by [redacted]

**Close**

Supported by the Office of Medical Education [redacted]
POWERED BY OASIS
Copyright © 2008-2018 WARF



(3.)

UVA
Healt
Studen

**Student Performance Evaluation**

**SMD20 Clinical Performance Development Phase 1, Semester 1A Student Evaluation**

Close | Print version

Student Level Med1

**Course Information**

| **Date** | **Course** | **Location** | **Weeks** | **Credits** |
|---|---|---|---|---|
| 08/01/2016 - 12/18/2016 | 90-7718: Medical Education Clinical Performance Development 1A | UVA | 18 | 0 |

**Evaluation Period:** 08/01/2016 - 12/18/2016

**Evaluator:** Wolf, Andrew

**Student:** Bhattacharya, Kieran **Email:** [redacted]

This evaluation is to be performed on the CPD 1A small group student. Please give thoughtful consideration to each answer by selecting the most appropriate response using the Likert scale following each question.

1.* I attest that I have no conflict of interest in evaluating this student (e.g., provider-patient relationship, familial relationship, personal friendship). Check YES if you have no conflict, check NO if you have conflict."

X **Yes** o No

**If you cannot attest to the question above, the evaluation will not be available to complete. If you cannot continue, please:**

Exit from the evaluation to the list of evaluations you have to complete
Select "cannot evaluate" for this evaluation
Explain in the text box your conflict of interest

2.* The student participates in and contributes to small group discussion

X **Strongly Agree**
o Agree
o Disagree
o Strongly Disagree

3.* The student demonstrates appropriate interpersonal communication skills

o Strongly Agree
X **Agree**
o Disagree
o Strongly Disagree

4.* The student is willing to help others in the group

X **Strongly Agree**
o Agree
o Disagree
o Strongly Disagree

5.* The student exhibits humanism, compassion, and empathy during small group

X **Strongly Agree**

[redacted]



14.* The student completes assignments on time.

o Strongly Agree
o Agree
X **Disagree**
o Strongly Disagree

15.* The student demonstrates engagement in the SIM community service experience. (Monday & Tuesday groups only; WEDNESDAY & THURSDAY GROUPS ANSWER "N/A")

X **Strongly Agree**
o Agree
o Neutral
o Disagree
o Strongly Disagree
o N/A

**The following questions assess the level of students' awareness of the non-medical societal factors that impact the delivery of healthcare.**

16.* The student incorporates knowledge of the patient's socioeconomic circumstances in his/her history of the patient, the diagnosis and/or treatment plan

o Strongly Agree
X **Agree**
o Disagree
o Strongly Disagree

17.* The student incorporates knowledge of the patient's cultural circumstances in his/her history of the patient, the diagnosis and/or treatment plan

o Strongly Agree
X **Agree**
o Disagree
o Strongly Disagree

18.* The student demonstrates awareness of the political and economic forces that impact the delivery of health care

X **Strongly Agree**
o Agree
o Disagree
o Strongly Disagree

19.* The student demonstrates awareness of the socio-cultural forces that impact the delivery of health care

X **Strongly Agree**
o Agree
o Disagree
o Strongly Disagree

**The following questions pertain to student participation during skills learning**

20.* The student can determine the BMI using the patient's height and weight

o Strongly Agree
X **Agree**
o Disagree
o Strongly Disagree

21.* The student demonstrates knowledge and awareness of end of life care issues

o Strongly Agree



3.

Supported by the Office of Medical Education [redacted]

POWERED BY OASIS
Copyright © 2008-2018 WARF



(4.)

# University of Virginia Official Withdrawal Form

**Instructions**

1. **Complete student portions of form**
2. **Present form to dean of school for approval**
3. **Present form to Dean of Students**

**I.D. Number:** [redacted]

**Name:** Bhattacharya Kieran Ravi
Last First and Middle

**Permanent Address:** [redacted]

**School of Enrollment:** Medicine

Reason(s) for withdrawal: Medical
Other: Personal

By affixing my signature to this document, I certify the following:

1. I am over 18 years of age *or* have consent of my parent or guardian to withdraw from the University.
2. I understand that I remain liable for any obligation to the University, and that withdrawal does not cancel any such liability.
3. If I wish to apply for readmission, I must do so in writing to my academic dean's office at least ~~30~~ 60 days in advance of the start of the semester. (This deadline may be waived by the dean of the school.)
4. I am [redacted] am not an international student studying in the United States on a visa. If I am, I have notified the International Students Office in advance that I am withdrawing.
5. I do [redacted] do not have a federal loan (Ford Federal Direct, Perkins, Health Professions, Nursing, institutional, etc.). If I do, I understand my responsibility for repayment and an exit interview.
6. I do [redacted] do not reside in University housing and/or have a meal plan. If I do, I understand my responsibility for an exit interview with the Housing Division and/or Dining Services.
7. I am [redacted] am not requesting this withdrawal because I have been arrested for, charged with, convicted of, or must serve a criminal sentence for any crime, excluding only minor traffic violations which do not involve bodily injury to others. (If yes, attach an explanation providing a complete and truthful account of the circumstances.)

**Signature:** [signature]

**Date:** 02/07/17

**Dean of School** **Effective Withdrawal Date:** 2-7-17

**Authorized Signature:** [signature]

**Dean of Students** **Date:** 2/21/2017

**Authorized Signature:** [signature]

**Registrar** **Withdrawal Type:** /

In accordance with University regulations, notification of your withdrawal will be made to the following offices as appropriate: Athletics, Communication Services, Dining Services, Honor Committee, Housing Division, International Students, ITC, Judiciary Committee, Library, Student Financial Services, and the University Registrar.

0205 UPJ-315200/PVRS

  

SCHOOL OF MEDICINE
*Office for Student Affairs*

Academic Year: 2016-7

I understand the University of Virginia School of Medicine policy that **students must complete the requirements for their M.D. degree within 6 years of their original matriculation date.**

Students who are on a Leave of Absence must request return to the Associate Dean for Student Affairs and the School of Medicine Registrar at least **60 days** prior to the registration dates for the semester during which they intend to register. Acceptance for readmission will depend on availability due to limitations in class size. The student must meet any additional conditions that are deemed warranted by the Associate Dean for Student Affairs and Admission upon return to registration. A student granted a LOA for medical reasons will require subsequent medical clearance from the Student Health Center as a condition for returning. All students returning from LOA must re-attest to their ability to meet the Technical Standards, with or without reasonable accommodation.

A student who has failed to comply with any conditions of his or her LOA, or who does not return to the School of Medicine within the length of time granted, will be deemed to have withdrawn voluntarily, and any request for readmission, as long as the six year time limit still can be met, must be determined by a vote of ASAC.

Students who have received financial aid must have an exit interview with a financial aid counselor. Immediate repayment of borrowed funds or scholarships may be required.

My signature affirms that I have read and understand the above policies:

[signature] 02/07/17

Signature date

Name: KIERAN RAVI BHATTACHARYA
(Please print clearly)

Are you requesting this LOA because you have been arrested or charged with or convicted of or must serve a criminal sentence for any crime, excluding only minor traffic violations which do not involve bodily injury to others? No ✓ Yes ____ If yes, attach your explanation to this application providing a complete and truthful account of the circumstances.

Reason for leave of absence from the University of Virginia School of Medicine and intended return date:

Personal

[signature] 2-7-17

Signature of Student Affairs Officer date

PO BOX 800739 • CHARLOTTESVILLE, VA 22908-0739 • PHONE (434) 924-5579 • FAX (434) 982-4073
http://www.med-ed.virginia.edu/

UVA
Health
Student

**Student Performance Evaluation**

**Provide End of Semester Peer Feedback to Your TBL Teammates**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 03/26/2018 - 05/26/2018 | 90-903: Medical Education Mind, Brain, & Behavior | UVA | 9 | 9 |

**Evaluation Period:** 03/26/2018 - 05/26/2018

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

Excellent job overall. Is always prepared.

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

Nothing really.

3.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

- X **Frequently exceeds expectations**
- o Meets and sometimes exceeds expectations
- o Meets expectations
- o Partially meets expectations
- o Does not meet expectations

4.* What have you learned from this team member that you can take with you to your next experience?

Easier ways to do/remember things

5. Feedback given by (optional):

Last modified (submitted) at 05/21/2018 07:48:50 PM by [redacted]

Close

Supported by the Office of Medical Education [redacted]

POWERED BY OASIS

Copyright © 2008-2018 WARF



UVA
Health
Student

**Student Performance Evaluation**

**Provide End of Semester Peer Feedback to Your TBL Teammates**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 03/26/2018 - 05/26/2018 | 90-903: Medical Education Mind, Brain, & Behavior | UVA | 9 | 9 |

**Evaluation Period:** 03/26/2018 - 05/26/2018

**Student Activity:** Student added student peer

**Evaluator:** [redacted]

**Student:** Bhattacharya, Kieran **Email:** [redacted]

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

Predictive skills for IRAT questions are 10/10

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

Very obvious god complex when you're assigning team members to questions. Maybe stay away from surgery/emergency med

3.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

X **Frequently exceeds expectations**
o Meets and sometimes exceeds expectations
o Meets expectations
o Partially meets expectations
o Does not meet expectations

4.* What have you learned from this team member that you can take with you to your next experience?

Test every hypothesis with scientific vigor

5. Feedback given by (optional):

Last modified (submitted) at 05/21/2018 03:14:04 PM by [redacted]

Close

Supported by the Office of Medical Education [redacted]
POWERED BY OASIS
Copyright © 2008-2018 WARF

UVA &
Feedb: &
Student &

## Student Performance Evaluation
## Provide End of Semester Peer Feedback to Your TBL Teammates

Close | Print version



**Student Level**   Med1

### Course Information

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 03/26/2018 –<br>05/26/2018 | 90-903: Medical Education<br>Mind, Brain, & Behavior | UVA | 9 | 9 |

**Evaluation Period:** 03/26/2018 - 05/26/2018

**Student Activity:** Student added student peer

**Evaluator:** ▮▮▮▮▮▮▮

**Student:** Bhattacharya, Kieran  **Email:** ▮▮▮▮▮▮▮▮▮▮▮▮

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

> -Confidence in answers
> -Gives clear explanations
> -Supportive team behavior
> -Volunteers to represent team during the GAE

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

> -Elicit multiple view points from team members

3.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

o Frequently exceeds expectations
**X Meets and sometimes exceeds expectations**
o Meets expectations
o Partially meets expectations
o Does not meet expectations

4.* What have you learned from this team member that you can take with you to your next experience?

> Kieran's confidence and willingness to volunteer to represent the team during the GAE

5. Feedback given by (optional):

> 

Last modified (submitted) at 05/21/2018 09:54:35 PM by ▮▮▮▮▮▮▮

**Close**

Supported by the Office of Medical Education ▮▮▮▮▮▮▮▮▮
OASIS
Copyright © 2008-2018 WARF

1/2



| | | |
|---|---|---|
| UVA | ⇕ |
| Health | ⇕ |
| Student | ⇕ |

**Student Performance Evaluation**
**Provide End of Semester Peer Feedback to Your TBL Teammates**

Close | Print version

Student Level    Med1

### Course Information

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 03/26/2018 -<br>05/26/2018 | 90-903: Medical Education<br>Mind, Brain, & Behavior | UVA | 9 | 9 |

**Evaluation Period:** 03/26/2018 - 05/26/2018

**Student Activity:** Student added student peer

**Evaluator:** ████████

**Student:** Bhattacharya, Kieran  **Email:** ████████

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

> Always comes prepared and is very knowledgeable.

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

> N/A

3.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

    X **Frequently exceeds expectations**
    o Meets and sometimes exceeds expectations
    o Meets expectations
    o Partially meets expectations
    o Does not meet expectations

4.* What have you learned from this team member that you can take with you to your next experience?

> Always come as prepared as possible.

5. Feedback given by (optional):

Last modified (submitted) at 05/15/2018 11:10:34 AM by ████████

**Close**

Supported by the Office of Medical Education ████████

OASIS
Copyright © 2008-2018 WARF

UVA
Health
System

**Student Performance Evaluation**
**Provide End of Semester Peer Feedback to Your TBL Teammates**

Close | Print version

Student Level     Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 03/26/2018 – 05/26/2018 | 90-903: Medical Education Mind, Brain, & Behavior | UVA | 9 | 9 |

**Evaluation Period:** 03/26/2018 - 05/26/2018

**Student Activity:** Student added student peer

**Evaluator:** ████████

**Student:** Bhattacharya, Kieran  **Email:** ████████

Click here to see the Exceptions of TBL Members - Rubric for Peer Feedback and Evaluation.

1.* Comment on actions or behaviors that this team member has done well and should continue doing.

> You do a great job of coming to TBL prepared and helping our group answer questions correctly.

2.* Comment on actions or behaviors that this team member could improve upon, stop doing, or start doing.

> Be confident in your answers!

3.* How do you rate this student's performance to date? Refer to the "Expectations of TBL Members - Rubric for Peer Feedback and Evaluation" to guide your selection.

o Frequently exceeds expectations
X **Meets and sometimes exceeds expectations**
o Meets expectations
o Partially meets expectations
o Does not meet expectations

4.* What have you learned from this team member that you can take with you to your next experience?

> I have learned the importance of coming prepared to TBLs.

5. Feedback given by (optional):

Last modified (submitted) at 05/22/2018 09:56:05 PM by ████████
**Close**

Supported by the Office of Medical Education ████████
OASIS
Copyright © 2008-2018 WARF

1/1

 

UVA
Reader
Student

**Student Performance Evaluation**
**CPD Phase 1B Student Evaluation**

Close | Print version

Student Level Med1

**Course Information**

| Date | Course | Location | Weeks | Credits |
|---|---|---|---|---|
| 01/01/2018 - 05/25/2018 | 90-7719: Medical Education Clinical Performance Development 1B | UVA | 21 | 0 |

**Evaluation Period:** 01/01/2018 - 05/25/2018

**Evaluator:** Moak, James

**Student:** Bhattacharya, Kieran **Email:**

"his evaluation is to be performed on the CPD Phase 1 small group student. Please give thoughtful consideration to each answer by selecting the most appropriate response using the scale following each question: Strongly Agree, Agree, No Strong Feelings Either Way, Disagree, Strongly Disagree

1.* I attest that I have no conflict of interest in evaluating this student (e.g., provider-patient relationship, familial relationship, personal friendship). Check YES if you have no conflict, check NO if you have conflict."

X **Yes** o No

2.* The student participates in and contributes to small group discussion.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

.* The student demonstrates appropriate interpersonal communication skills.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

4.* The student is willing to help others in the group.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

5.* The student exhibits humanism, compassion, and empathy during small group.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree



X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

14.* The student submits patient histories for review in a timely manner.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

**Question 15 pertains only to Wednesday and Thursday groups for the student's Spring Social Issues in Medicine assessment. If your group meets on Monday or Tuesday, please answer N/A.**

15.* The student demonstrates engagement in the SIM community service experience.

o Strongly Agree
o Agree
o Disagree
o Strongly Disagree
X **N/A**

**The following questions assess the level of students' awareness of the non-medical societal factors that impact the delivery of healthcare.**

16.* The student incorporates knowledge of the patient's cultural and socioeconomic circumstances in his/her history of the patient, diagnosis, and/or treatment plan.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

17.* The student demonstrates awareness of the political and economic forces that impact the delivery of health care.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

**The following questions pertain to student participation during skills learning.**

18.* The student can perform the upper extremity physical examination.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

19.* The student can perform the lower extremity physical examination.

o Strongly Agree
X **Agree**
o No strong feelings either way
o Disagree
o Strongly Disagree

20.* The student can perform the abdominal physical examination.

(6.)

important insights on social, cultural, and political factors related to our cases. He has a sincere bedside manner that his patients will find reassuring.

27.* Please describe areas this student should work on:

Kieran should continue to practice his physical exam skills. In preparation for the fall OSCE he will want to have his sequence for the various exam maneuvers well-rehearsed (e.g., the neurological exam). Now that he has mastered the basics of a medical interview, he should focus on higher order skills such as taking a sexual history, delivering bad news, and responding to an angry patient. Kieran has a good sense of humor and a ready smile. I have encouraged him to share those facets of his personality more with his patients (when appropriate) to help encourage even better exchange of information.

Last modified (submitted) at 05/25/2018 12:26:29 PM by Moak, James.

Close

Supported by the Office of Medical Education

POWERED BY OASIS

Copyright © 2008-2018 WARF

## POLICY ON ACADEMIC AND PROFESSIONAL ADVANCEMENT

**Objective**: The purpose of this policy is to promote student academic achievement, maintain academic and professional standards (knowledge, skills, attitudes and behaviors) and achieve fairness and consistency in decisions regarding students with academic or professional deficiencies. It is the policy of the School of Medicine to give every qualified and committed student the opportunity to graduate; however, the School reserves the right, in its sole and absolute discretion, to make judgments about who has or has not demonstrated the necessary qualifications to earn the M.D. degree and to practice medicine competently.

**Outline of Policy**: All academic deficiencies, patterns of unprofessional behavior and egregious violations of professionalism will be presented to the Academic Standards and Achievement Committee (ASAC) that acts on behalf of the faculty of the School of Medicine. This policy specifies how ASAC will deal with student academic deficiencies in courses, clerkships, electives, the Clinical Practice Examination (CPX) and with failures on the United States Medical Licensing Examination (USMLE) Step 1 and Step 2 examinations, including compliance with the Standards for Academic Standing (see end of this document).

**Definition of Academic Failure**: The courses and electives in the pre-clerkship and post-clerkship phases of the Next Generation Curriculum, the Family Medicine, Perioperative Medicine and Surgical Subspecialties clerkships are graded as pass/fail (P/F); any F constitutes a failure. The other clerkships are graded with letter grades (A, B, C or F). With the exception of the Patient-Student Partnership Course, a score of 70% or higher is required for successful completion of each course and clerkship. A score lower than 70% constitutes an F; each F constitutes a failure and is documented on the official transcript and the Medical Student Performance Evaluation (MSPE). The Patient-Student Partnership Course requires a score of 80% or higher to pass. Failure to achieve an 80% in this course constitutes a failure and would likewise be documented on the official transcript and the MSPE.

**Professionalism**: Professional attitudes and behaviors are components of the 12 Competencies Required of the Contemporary Physician that enable the independent performance of the responsibilities of a physician and therefore are a requirement for the successful award of the degree of Doctor of Medicine. The School of Medicine's Professionalism Objectives (https://med.virginia.edu/ume/wp-content/uploads/sites/216/2015/09/Professionalism-objectives-clerkships3.pdf) establish general standards applicable to all students in the School of Medicine. However, it is the responsibility of the faculty and the ASAC, as appropriate, to interpret and apply the general Professionalism Objectives to specific situations when concerns are raised about student performance or behaviors.

Evaluation of professional attitudes and behaviors is an integral part of a student's assessment and generally is accomplished through observation and narrative recording. Praise/Concern Cards and written narratives are assessment tools used to describe behaviors in areas of altruism; honesty and integrity; caring, compassion and communication; respect for others; respect for differences; responsibility and accountability; excellence and scholarship; leadership and knowledge and other skills related to professionalism. These professional attitudes and behaviors are monitored and recorded throughout undergraduate medical education.

Any breach of professionalism resulting in a recorded observation, e.g., Professionalism Concern Card, letter, written report, etc., must be addressed with the student by their college dean and documentation of the discussion must be recorded. If a student receives three or more written observations of concern or is reported for two breaches of the Health Insurance Portability and Accountability Act (HIPAA), or is cited for a single egregious breach of professionalism, notice will be sent to ASAC for review. A student identified as having a pattern of unprofessional behavior may be directed to further counseling and /or to supportive remediation and/or placed on *academic warning* or *academic probation* (as defined below), or if the professional violations are severe, a student may be dismissed from school even if they have passing grades in all courses. ASAC will assess the severity of the problem, the management and the consequences, including possibly reporting the behaviors in the student's Medical Student Performance Evaluation (MSPE). Egregious behaviors, such as but not limited to assault on or threat to a patient, patient's family member, student, GME trainee or faculty member, conduct that may constitute a felony, etc., regardless of whether criminal prosecutions are initiated or pursued, will be referred immediately to ASAC, irrespective of whether previous observations of concern exist, with the recommendation for dismissal from school.

**Medical Scientist Training Program Students:** Decisions regarding academic deficiencies of MSTP students during their MD coursework are governed by the ASAC. Final decisions regarding academic deficiencies of MSTP students during their doctoral coursework are determined by the ASAC, but the decision is weighted heavily upon the recommendation of the BIMS Academic Progress and Achievement Committee (BAPAC), which acts as a subcommittee to the ASAC with respect to MSTP students. The BAPAC serves as an institutional oversight committee with representation from all Biomedical Sciences (BIMS)-affiliated degree-granting programs to ensure that individual programs have followed their processes regarding remediation and dismissal for academic deficiencies, ensuring due process for students. The BAPAC assesses whether the policies have been followed and assures fairness and consistency across the interdisciplinary programs comprising BIMS. See individual BIMS-affiliated PhD program standards and "BAPAC Operating Procedures" at http://bims.virginia.edu/bims-committee-membership/bims-academic-progress-and-achievement-committee/.

Reports of an MSTP student's unprofessional, unethical, or illegal activities or behaviors are reviewed and acted upon by the ASAC.

**MD/Public Health Sciences Dual Degree Students:** Decisions regarding academic deficiencies of PHS graduate students during their MD coursework are governed by the ASAC. Final decisions regarding academic deficiencies of PHS graduate students during their PHS coursework are determined by the ASAC, but the decision is weighted heavily upon the recommendation of the PHS Academic Promotion and Achievement Committee (PHS APAC), which acts as a subcommittee to the ASAC with respect to PHS graduate students. See SOM Bylaws, Section 8, Standing Committees, PHS Academic Promotion and Achievement Committee, https://med.virginia.edu/school-administration/wp-content/uploads/sites/304/2018/02/BYLAWS-February-21-2018.pdf.

Reports of a PHS graduate student's unprofessional, unethical, or illegal activities or behaviors are reviewed and acted upon by the ASAC.

**Grading during the Pre-clerkship phase:** The pre-clerkship phase of the Next Generation Curriculum comprises the first three semesters of the educational program. This phase consists of ten graded courses, each assigned a pass/fail grade at the end of the course:

1. Integrated Systems I (first semester)
2. Integrated Systems II (second semester)
3. Integrated Systems III (third semester)
4. Foundations of Clinical Medicine 1-A (FCM 1-A)
5. Foundations of Clinical Medicine 1-B (FCM 1-B)
6. Foundations of Clinical Medicine 1-C (FCM 1-C)
7. Patient Student Partnership 1-A (PSP 1-A)
8. Patient Student Partnership 1-B (PSP 1-B)
9. Patient Student Partnership 1-C (PSP 1-C)
10. Social Issues in Medicine (SIM) (either semester one or two during the first year).

Integrated Systems I consists of the following course components or "systems": Cells to Society, Foundations of Medicine (FoM), Cells, Blood and Cancer (CBC) and Microbes, Immunity, Transfusion and Transplantation (MITT). Integrated Systems II consists of the following course components: Musculoskeletal Integument System (MSI), Gastrointestinal System (GI) and Mind, Brain and Behavior (MBB). Integrated Systems III consists of the following course components: Cardiovascular System (CV), Pulmonary System (Pulm), Renal System, Endocrine-Reproductive System (Endo-Repro) and Hematology (Heme). In order to receive a passing grade for an integrated system course, a student must have an average score for all systems of 70% or above.

Patient Student Partnership 1 (three courses) runs in tandem with Foundations of Clinical Medicine 1 and introduces students to a longitudinal patient experience. Performance is assessed in at each semester by a P/F grade. Students must achieve an 80% or greater on the requirements for this course in order to pass.

In order to progress to the third semester of the curriculum, a student must have achieved an average score of 70% or higher on Integrated Systems I and Integrated Systems II and have received a P for FCM-1A and 1B, PSP-1A and 1B, as well as Social Issues in Medicine. Failure to meet any one of these criteria will result in a referral to ASAC for review and action. Any requirement for remediation must be completed prior to the beginning of the third semester.

Successful completion of the third semester requires an average score of 70% or higher in the Integrated Systems III course, and a grade of P in FCM-1C and PSP-1C. Failure to meet any one of these criteria will result in a referral to the ASAC for review and action.

**Summative Examinations**: A passing score on a summative examination within a course is 70%. Students achieving less than 70% on a summative assessment will be referred to ASAC with the recommendation from the respective system leader for remediation. If the student is in

good standing professionally, has done well formatively, and has no other academic deficiencies, ASAC generally will allow the student to take a reexamination. The reexamination score, if passing, will be an additional score factored into the cumulative total. If the summative examination is failed the second time with a score lower than 70%, ASAC will review the student's performance again and decide either to allow the student to make a third attempt at a reexamination or repeat the course. The final decision regarding reexamination rests with ASAC. Failure to pass a summative on the third attempt constitutes a failure of the system and therefore failure of the course. Any approved summative reexaminations must be taken according to the approved make-up schedule for the current academic year at the next available examination time as determined by ASAC. A student failing 5 total summative examinations in the pre-clerkship phase of the curriculum will be referred to ASAC and will be considered for dismissal. A student who does not take an examination and who does not have an excused absence, will receive a professionalism concern card and a referral to ASAC.

With regard to anatomy practical examinations, a score of 70% or higher is passing. Individual anatomy practical exam scores factor into the respective organ system grades, e.g., an anatomy practical examination score in MSI factors into the MSI grade and an MBB anatomy practical exam score factors into the MBB grade. Anatomy practical examinations also are graded as a thread across the Integrated System in which they occur, i.e., Integrated Systems II or III. A cumulative score of 70% or higher across the anatomy thread is required to progress to the clerkship phase of the curriculum. Students achieving a cumulative anatomy score of less than 70% for Integrated Systems II (consisting of anatomy practical examinations from MSI, GI and MBB) or Integrated System III (consisting of anatomy practical examinations from CV, Pulmonary, Renal and Endo-Repro) will be referred to ASAC and require remediation. Any remediation required by ASAC will include all anatomy from the semester failed, and the format for reexamination will be at the discretion of the anatomy director. Reexamination must occur by the end of the semester break immediately following the course in which the failure occurred. With approval of the Anatomy Director, remediation may occur during spring break, early summer break or fall break.

One component of assessment in FCM-1 is OSCEs. Students must achieve a passing grade on the OSCEs in FCM to pass the FCM course. A passing graded on the FCM-1B OSCE is required to pass FCM-1B and to progress to the third semester. A passing grade on the FCM-1C OSCE is required to pass FCM-1C and begin clerkships. A failure on the FCM 1 B or 1C OSCE is referred to ASAC for review and action. Typically, ASAC allows a student in good standing to remediate and retest. A second failure of the FCM OSCEs results in an F in the corresponding course and the student will be referred to ASAC for review and action. The FCM-1B OSCE must be passed prior to starting the third semester and the FCM-1C OSCE must be passed prior to starting clerkships.

Completion of the National Board of Medical Examiners Comprehensive Basic Science Exam in the third semester is a requirement of the pre-clerkship curriculum.

**Promotion to Clerkships:** Students who achieve a passing grade in Integrated Systems I, Integrated Systems II, Integrated Systems III, FCM-1A-B-C, PSP-1A-B-C, SIM, have taken USMLE Step 1 and have achieved a passing grade in the Transitions Course may progress to

clerkships. If notification of a failing score on Step 1 is received after a student has begun a clerkship, they generally will be allowed to complete that clerkship. The student will be removed from subsequent clerkships until a retest is completed.

Students in the dual MD/PhD degree program must take USMLE Step 1 prior to entering the PhD portion of the program and must pass Step 1 in order to continue in the graduate program.

**Remediation of Academic Deficiencies in Clerkships**: A passing cumulative numerical score of 70% must be achieved in order to pass a clerkship. The score achieved correlates to an assigned letter grade of A+, A, A-, B+, B, B-, C+, C or C-. Earning a cumulative score of less than 70% constitutes a failure and automatic referral to ASAC, and also requires repeating the clerkship and all its requirements. Even if a student numerically achieves a passing score of 70%, the Clerkship Director may decline to pass a student based upon poor clinical performance and/or concerning issues of professionalism. In this circumstance, the clerkship director will make a recommendation to ASAC regarding their concerns with appropriate documentation. If failure is upheld by ASAC, remediation likely will include repeating the clerkship. When a clerkship requires repeating it will be noted in the MSPE, and the student's transcript will show two enrollments in the same course with two separately determined and reported grades.

**USMLE Subject Examinations in Clerkships**: A passing score on each subject (shelf) examination will be set by the annual recommended passing score determined by the National Board of Medical Examiners. Not achieving this score constitutes a failure of the examination and therefore a deficiency for the clerkship. The student will be assigned an Incomplete on their transcript until the deficiency is removed when the examination is passed. Students who do not achieve a passing score on a shelf examination will be referred to ASAC with the recommendation from the clerkship director for appropriate remediation. Generally, if the student performed well clinically and is in good standing professionally, the student would be able to take a reexamination unless the score on the subject examination is so low that removing the deficiency still will result in a failure. The reexamination grade, if passing, will remove the deficiency from the course; however, the initial score is the only one that will be factored into the final clerkship grade. The final grade then will replace the Incomplete on the transcript. A second failure of the shelf exam will be referred to ASAC for review and action. Should ASAC permit the student to take the shelf examination a third time and the student passes, the clerkship deficiency will be satisfied; however, the first score is still the only one calculated into the clerkship grade. Failure to pass a shelf examination on the third attempt constitutes a failure of the clerkship and will be referred to ASAC for review and action. If approved, shelf reexaminations will occur at the completion of the student's third year. By special arrangement with the clerkship director, a shelf re-examination may be scheduled during summer break, Thanksgiving break, or during the winter holiday break. Depending upon the timing of the clerkship with the deficiency, a student with an outstanding deficiency in a single clerkship may be allowed to continue into the elective portion of the curriculum but will not be allowed to take an elective in the discipline of the clerkship deficiency until the deficiency has been remediated. If a student fails shelf examinations in three different clerkships, the student will be referred to ASAC for review and, unless there are mitigating circumstances, will be considered for dismissal from school.

**Remediation of Academic Deficiencies in the Post-clerkship Phase:** A passing cumulative score of 70% must be achieved to pass the Geriatrics Clerkship in fourth year. Earning less than a 70% constitutes a failure and requires repeating the clerkship and all its requirements. The ACE is a required single 4-week clinical experience selected by the student and is graded Pass/Fail. Students must achieve a passing grade in this course to receive credit. Remediation of a deficiency in an ACE is required. A student must pass the Geriatrics clerkship as well as their selected ACE to meet graduation requirements. Remediation of a deficiency in an elective is not required, however the student will not receive credit toward the MD degree for that elective. A student must meet the elective credit requirements in order to fulfill graduation requirements.

**Incompletes and University Withdrawals**: An Incomplete may be assigned to a course or clerkship on a student's transcript should an emergent situation, e.g., death of immediate family member, illness or accident, etc., arise after the student successfully has completed the majority of the requirements. An Incomplete cannot be assigned as a grade when the student is failing the course or clerkship. When the requirements have been completed, the Incomplete will be removed and replaced by the course or clerkship grade. An Incomplete grade will become an *F* one year after it is issued if not remediated. Grades of *F* will not be changed after remediation.

Should a student need extended time off from medical school, interrupting a course or clerkship, the student must request a leave of absence or withdrawal per School of Medicine Leave of Absence, Withdrawal, Readmission Policy. Any course or clerkship in progress will be graded as *W*. If and when the student is readmitted from a withdrawal, ASAC will determine how much, if any, of the course or clerkship will need to be repeated. The grade of *W* will remain on the student's transcript.

**Graduation**: In order receive the recommendation from ASAC for graduation and conferral of the MD degree, a student must satisfy all academic and professionalism graduation requirements with no outstanding deficiencies. In addition, passing scores on the CPX, USMLE Step 1, USMLE Step 2 Clinical Knowledge and the USMLE Step 2 Clinical Skills are required for graduation.

**Steps 1 and 2 of United States Medical Licensing Examination (USMLE):** In order to advance to the clerkships, a student must successfully complete the pre-clerkship curriculum and must have taken USMLE Step 1 at least 10 days before the Transition course. A student may begin the clerkships pending notification of their Step 1 score. If notification of a failing score on Step 1 is received after a student has begun a clerkship, they generally will be allowed to complete that clerkship. The student then will discontinue clerkships in order to concentrate on retaking and passing Step 1. The Step 1 examination may be taken no more than three times. Three failures of Step 1 will result in the student's dismissal from the School of Medicine, without recourse to the appeals process. The college deans in consultation with the Director of Academic Enhancement may determine, based on a student's academic performance, that the student is at risk of failing USMLE Step 1 and may recommend that the student delay sitting for the examination in order to have more time for preparation. In this circumstance, the student will complete the Transitions Course so the student can return to the clerkships upon satisfactory completion of USMLE Step 1. After successful completion of the core clerkships, the student must take both parts of Step 2 of the USMLE (2 CK and 2 CS). Passing both Step 2

CK and Step 2 CS is required for graduation. Students are allowed a total of three attempts to pass each of the two Step 2 examinations; failure to pass either Step 2 examination for a third time will result in dismissal from medical school, without recourse to the appeals process. Students must pass all required clerkships and take USMLE Step 2 CS and 2 CK no later than November 1 of their last academic year in medical school to ensure an opportunity for remediation prior to residency match and graduation, should a failure occur.

**Clinical Performance Examination**: Students are required to take and pass the Clinical Practice Examination (CPX) after the completion of the clerkships. This is a requirement for graduation. Students failing the CPX are referred to ASAC and should review their performance and address their deficiencies prior to retaking the examination.

**Overall Time Limits**: All requirements for graduation, including passing Step 1, Step 2 CK and Step 2 CS of the USMLE, must be completed within six years from the date the student matriculated in the School of Medicine. For students in the MD/PhD dual degree program, graduation requirements must be completed within nine years; students in the MD/JD program must complete graduation requirements within eight years; for students in other dual degree programs graduation requirements must be completed within seven years. Exceptions to this policy are rare and must be approved by ASAC.

**Testing Accommodations:** When testing accommodations have been granted to a student by the SOM, a student must share their desire to invoke that accommodation at least two weeks prior to a summative assessment and at the time of orientation for clerkships.

**Procedure for Handling a Deficiency or Failure**:

- The Course, System or Clerkship Director notifies both the student and the School of Medicine Registrar/college dean of deficiency or failure.
- The student is withdrawn from clinical responsibilities (if applicable).
- The student is required to meet with their college dean. At this meeting, the Policy on Academic and Professional Advancement is discussed and the student is notified of the next ASAC meeting. The ASAC meetings usually occur monthly. In the pre-clerkship phase of the curriculum, a student who scores less than 70% on a summative assessment shall meet with the system leader and/or the Director of Academic Enhancement to discuss learning strategies to improve performance.
- The student shall be reviewed by ASAC.
- Students may submit a written statement, results of a drug test, results of a Counseling and Psychological Services (CAPS) screening or any other relevant data to ASAC and/or request to meet in person with ASAC.
- All students subject to dismissal or who may be required to repeat an academic period will be offered the opportunity to meet with ASAC.
- ASAC reviews each student's academic record, takes into account any other relevant information or data and recommendations from a Course or Clerkship Director, and determines remediation or other action based upon the Policy on Academic and Professional Advancement.
- The Chair of ASAC notifies the student in writing of the Committee's decision.

- If applicable and approved, the Office of Student Affairs schedules the remediation required by ASAC in collaboration with Course or Clerkship Directors taking into account the make-up schedule for that academic year.
- In the cases where a student is asked to repeat an entire segment of the curriculum or is dismissed from the School of Medicine, they can appeal the decision of ASAC following the Appeals Process described below.
- ASAC decisions regarding promotion or graduation due to failure to pass Steps 1, 2 CK or 2 CS of the USMLE or dismissal resulting from three failures cannot be appealed.
- The SOM registrar shall communicate with student, college dean and ASAC to confirm when deficiencies or examination failures have been remediated.

**Academic Appeals Process:**

- If ASAC requires a dismissal from the School of Medicine or repetition of an academic period, the notification to the student will provide the option of an appeal and a description of the appeals process. This option will not be granted to those students failing to pass Steps 1, 2 CK or 2 CS of the USMLE within three attempts. The student may formally request that the Associate Dean for Student Affairs appoint an ad hoc Appeals Committee to review the decision of ASAC. The student must file their appeal no later than 14 days from receipt of notification or lose the right to appeal.
- The three-person ad hoc Appeals Committee is drawn from a pool of 10 faculty members named by the Associate Dean for Student Affairs, none of whom are current members of ASAC. The student selects one member, the Senior Associate Dean for Education selects one member, and the Dean selects the third member (who chairs the ad hoc Appeals Committee). The Associate Dean for Student Affairs serves as staff liaison, ex officio, without vote.
- The student is permitted to inspect their entire medical school file, including any material upon which the decision of ASAC was based.
- The student is permitted to have counsel, to submit affidavits and exhibits and to summon witnesses at the Appeals Committee hearing. Legal counsel may be present to provide advice, but legal counsel will not be permitted to participate actively in presentation of testimony, examination/cross examination of witnesses or oral arguments.
- The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days) and will uphold, modify or reverse the decision(s) of ASAC.
- The Appeals Committee will provide the student with all the evidence against him or her, including the academic grades and written evaluations, and will base its recommendations upon the evidence presented at the hearing.
- The Appeals Committee will send its decision, along with a written record of its proceedings, to the Dean of the School of Medicine.
- The decision of the Appeals Committee will be final.

**General Operational Procedures:** ASAC will schedule monthly meetings and will also meet on an as-needed basis (within 10 days of a report, e.g., egregious behavior) to address immediate issues. ASAC may be superseded by University policy or legal action.

**Definitions of Academic Status:** A student may be placed on *academic warning* by ASAC during a specified period in which the student's academic and/or professional deficiencies must be remediated or they will risk progression to *academic probation.*

A student may be placed on *academic probation* by ASAC during a specified period in which the student's academic progress and/or professional behaviors are monitored closely with periodic required reviews by ASAC. The student remains enrolled during this time. The committee may appoint specific faculty to implement remediation and evaluate the student's progress. If deficiencies or failures are not rectified according to the remediation plan set by ASAC within the specified period of time, the student is subject to dismissal from the University. *Academic probation* is reflected on the MSPE.

**Definitions of Academic Standing:** A student is in *good academic standing* if the student makes satisfactory progress, defined as progressing at a pace of completion allowing the student to meet academic requirements to achieve the Doctor of Medicine degree within a six-year limit (150% of the program length) set from matriculation.

A student is *not in good academic standing* if making inadequate academic progress that threatens their ability to achieve the Doctor of Medicine degree within a six-year limit set from matriculation as determined by the Academic Standards and Achievement Committee.

The following are standards for each phase of the curriculum to determine whether or not students are maintaining Satisfactory Academic Progress (SAP).

**Pre-clerkship Phase:** A student is declared *not in good academic standing* if they have failures or an unsatisfactory in any course or system that are not successfully remediated at the time of the first day of class, third semester.

A student is declared *not in good academic standing* if they have >2 course Incompletes and/or Withdrawals and if the Incompletes or Withdrawals are not remedied at the time of the first day of class, third semester.

A student is declared *not in good academic standing* if they have failures or an unsatisfactory in any course that are not successfully remediated at the time of the first day of period one of the clerkships.

A student is declared *not in good academic standing* if they have >2 course Incompletes and/or Withdrawals and if the Incompletes or Withdrawals are not remedied at the time of the first day of period one of the clerkships.

A student is declared *not in good academic standing* if they do not pass USMLE Step 1 on the second attempt.

**Clerkship Phase:** A student is declared not *in good academic standing* if they have >2 deficiencies (failing 2 or more clerkships with an *F*) and if the deficiencies are not remediated at the time of four months from the end of the 48-week clerkship period.



A student is declared *not in good academic standing* if they have >2 Incompletes or Withdrawals and if the Incompletes and/or Withdrawals are not remedied at the time of four months from the end of the 48-week clerkship period.

A student is declared *not in good academic standing* if they fail to pass either part of USMLE Step 2 on the second attempt.

**The Post- Clerkship (Elective) Phase:** The student is declared *not in good academic standing* if not making adequate progress to achieve the Doctor of Medicine degree within the time limit set from matriculation.

The student is declared *not in good academic standing* if they receive two or more unsatisfactory elective evaluations.

**Original Effective Date April 1, 2012. Revised August 15, 2013; August 15, 2014; July 2015; November, 2015 ; July, 2016; June 2017 and July 2018**



**From:** [redacted] on behalf of [redacted]
**Sent:** Friday, May 4, 2018 10:52 AM
**To:** [redacted]
**Subject:** [som-studentaffairs] Concern Card

# Concern Card

**Faculty Information:**

**From:**
**Name: Attendance Monitor**
**Department: MedEd**
**Phone Number:**
**E-mail:**

**Student Information:**

**Student Name: Kieran Bhattacharya**
**Class Year: SMD21**
**Date: May 4, 20018**

**Concerns Based On:**

**Areas:**

**Comments:**

**Student did not attend the required Patient Presentation on May 2, 2018.**

**Contact Issues:**

**I have discussed my concerns with the student: no**

**I feel uncomfortable discussing my concerns with the student: no**

**Please call me about these concerns: no**

(9)

- 1 hour audio recording of Social Issues in Medicine (SIM) discussion on microaggressions hosted by American Medical Women's Association at a lecture hall in the University of Virginia School of Medicine
- Plaintiff participates in discussion from 28:40 to 34:00



 Gmail

3 messages

## Forwarded Conversation
**Subject: Fw: The panel today**
------------------------

From: **Bhattacharya, Kieran R *HS**
Date: Thu, Nov 29, 2018 at 2:31 AM

From: Peterson, Christine M
Sent: Thursday, October 25, 2018 2:59 PM
To: Bhattacharya, Kieran R *HS
Subject: The panel today

Kieran,
I was at the noontime "Microaggressions" panel today and observed your discomfort with the speaker's perspective on the topic.
Would you like to come share your thoughts with me? I think I can provide some perspective that will reassure you about what you are and are nor responsible for in interactions that could be uncomfortable even when that's not intended. If you'd prefer to talk with your own college dean, that's fine too. I simply want to help you understand and be able to cope with unintended consequences of conversations.
Dr. Peterson

----------
From: **Bhattacharya, Kieran R *HS**

From: Bhattacharya, Kieran R *HS
Sent: Thursday, October 25, 2018 4:30 PM
To: Peterson, Christine M
Subject: Re: The panel today

?Dr. Peterson,

Your observed discomfort of me from wherever you sat was not at all how I felt. I was quite happy that the panel gave me so much time to engage with them about the semantics regarding the comparison of microagressions and barbs. I have no problems with anyone on the panel; I simply wanted to give them some basic challenges regarding the topic. And I understand that there is a wide range of acceptable interpretations on this. I would be happy to meet with you at your convenience to discuss this further.



10.

Sincerely,

Kieran Bhattacharya

----------
From: **Bhattacharya, Kieran R *HS** [redacted]

From: Peterson, Christine M [redacted]
Sent: Thursday, October 25, 2018 7:1
To: Bhattacharya, Kieran R *HS
Subject: RE: The panel today

Kieran,
I understand. I don't know you at all so I may have misinterpreted your challenges to the speaker.
Would Wed 10/31 at 4 pm work for you?
I'll be in my Student Health office in the Gyn Clinic. Please let the receptionist know when you arrive.
Many thanks,
Dr. P.

-----Original Message-----
From: Bhattacharya, Kieran R *HS [redacted]
Sent: Thursday, October 25, 2018 4:30 PM

----------
[redacted]

[redacted]
From: Bhattacharya, Kieran R *HS
Sent: Saturday, October 27, 2018 2:46 PM
To: Peterson, Christine M
Subject: Re: The panel today

10/31 at 4pm works fine; I'll see you then!

----------
From: **Bhattacharya, Kieran R *HS** [redacted]

From: Peterson, Christine M [redacted]
Sent: Monday, October 29, 2018 11:28 AM
To: Bhattacharya, Kieran R *HS
Subject: RE: The panel today

Great - thanks.
Dr. P.

-----Original Message-----
From: Bhattacharya, Kieran R *HS [redacted]
Sent: Saturday, October 27, 2018 2

[redacted]



**From:**
**Sent:** Thursday, October 25, 2018 9:04 PM
**To:**
**Subject:**

# Concern Card

**Faculty Information:**

**From:**
**Name: Nora Kern**
**Department: Urology**
**Phone Number:**
**E-mail:**

**Student Information:**

**Student Name: Kieran Bhattacharya**
**Class Year: 2**
**Date: 10/25/18**

**Concerns Based On:**

**Areas:**

**Respect for Others**
**Respect for Differences**

**Comments:**

**For a AMWA session, we held a panel on micro aggression. Myself and 2 other faculty members were invited guests. This student asked a series of questions that were quite antagonistic toward the panel. He pressed on and stated one faculty member was being contradictory. His level of frustration/anger seemed to escalate until another faculty member defused the situation by calling on another student for questions. I am shocked that a med student would show so little respect toward faculty members. It worries me how he will do on wards.**

**Contact Issues:**

**I have discussed my concerns with the student: no**

**I feel uncomfortable discussing my concerns with the student: no**

[redacted]

(12.)

Gmail [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

From: **Bhattacharya, Kieran R *HS** [redacted]
Date: Thu, Nov 29, 2018 at 2:44 AM
To: [redacted]

---

From: Densmore, John J *HS (MD-Internal Medicine)
Sent: Friday, October 26, 2018 1:12 PM
To: Bhattacharya, Kieran R *HS
Subject:

Hi Kieran,
I just wanted to check in and see how you were doing. I hope the semester is going well.
I'd like to meet next week if you have some time.

JJD

----------
From: **Bhattacharya, Kieran R *HS** [redacted]
Date: Thu, Nov 29, 2018 at 2:44 AM
To: [redacted]

---

From: Bhattacharya, Kieran R *HS
Sent: Saturday, October 27, 2018 2:48 PM
To: Densmore, John J *HS (MD-Internal Medicine)
Subject: Re:

Hi Dean Densmore,

I would be happy to meet with you at your convenience next week.

Sincerely,

Kieran Bhattacharya

----------
[redacted]



[redacted]

Date: Thu, Nov 29, 2018 at 2:45 AM
To: [redacted]

---

From: Densmore, John J *HS (MD-Internal Medicine)
Sent: Monday, October 29, 2018 5:19 PM
To: Bhattacharya, Kieran R *HS
Subject: RE:

Great. would noon Thursday work?

---

----------
From: **Bhattacharya, Kieran R *HS** [redacted]
Date: Thu, Nov 29, 2018 at 2:45 AM
To: [redacted]

---

From: Bhattacharya, Kieran R *HS
Sent: Tuesday, October 30, 2018 5:55 PM
To: Densmore, John J *HS (MD-Internal Medicine)
Subject: Re:

Yup! See you then!

---

[redacted]





(13.)

SCHOOL OF MEDICINE

# MINUTES
## Academic Standards & Achievement Committee
## MR 5 3005
## Wednesday, November 14, 2018

The meeting was called to order at 4:03 p.m. Present were Drs. Jim Tucker (chair), Brian Behm, Donna Chen, Stephen Culp, Pam Herrington, Nicholas Intagliata, Nora Kern, Wilson Miller, Barnett Nathan, Catherine Shaffrey, as well as [redacted] (students)
Non- voting members: Megan Bray, Lesley Thomas, Selena Noramly, and Katherine Yates.
Guests: David Lewis, Lynne Fleming, Chris Peterson, Sean Reed.
Absent: Drs. Roger Abounader, Robert Bloodgood, Sharon Diamond-Myrsten, and Angelique Redus-McCoy.
On leave: Dr. Katheryn Frazier.

**Minutes**
Committee voted unanimously to accept minutes from October 17, 2018.

**Professionalism Issues**

The committee voted unanimously to send Kieran Bhattacharya (Densmore) a letter reminding him of the importance in medicine to show respect to all: colleagues, other staff, and patients and their families.

The meeting was adjourned at 5:18 pm.
Minutes respectfully submitted by:
Katherine Yates 11/27/18

PO BOX 800739 • CHARLOTTESVILLE, VA 22908-0739 • PHONE (434) 924-5579 • FAX (434) 982-4073
http://www.med-ed.virginia.edu/

# Academic Standards and Achievement Committee Operating Procedures

The Academic Standards and Achievement Committee (ASAC) of the University of Virginia School of Medicine (UVA SOM) is charged with the responsibility of ensuring that each student in the School of Medicine masters the education program objectives. These objectives include assuring that each student demonstrate the required level of academic accomplishment and the required level of professionalism as set forth in the Twelve Competencies Required of the Contemporary Physician (http://www.medicine.virginia.edu/education/medical-students/UMEd/curriculum/competencies-page) in order to be promoted and to graduate with the degree of Doctor of Medicine. As part of these Competencies, students must develop the ability to understand the nature of and demonstrate professional and ethical behavior in the act of medical care. Among the attributes that go into making up these Competencies are respect, responsibility and accountability, excellence and scholarship, honor and integrity, altruism, leadership, cultural competency, caring and compassion, and confidentiality. The UVA SOM Curriculum Committee establishes these educational and professionalism standards. The ASAC oversees, monitors and enforces these standards. Comprised of faculty in the school of medicine who do not assign final grades to students as well as student representatives, the role of the ASAC is to promote students who meet these required standards, to recommend remedial action for those who do not meet the standards, and to suspend or to recommend dismissal of those students who are incapable or who choose not to meet the required standards of achievement within the time frame allotted for completion of the M.D. degree.

It is the policy of the School of Medicine to give every qualified and committed student the opportunity to graduate; however, the School reserves the right, in its sole and absolute discretion, to make judgments about who has or has not demonstrated the necessary qualifications to earn a degree and to practice medicine competently.

**I. Name and Mission**

This committee of the Faculty and students shall be called the Academic Standards and Achievement Committee (ASAC). The mission of the ASAC is twofold. The first is to review the UVA SOM transcripts of students who have failed one or more required activities. Depending on the circumstance, the committee can recommend review, remediation or repeating the activity. The second is to review evidence of unprofessional, unethical or illegal activities or behaviors by the students. Recommendations, based on the severity and persistence of these activities or behaviors, can result in a broad range of actions from remediation to dismissal from the university. The committee shall follow the guidance of the Policy on Academic and Professional Advancement and the Policy on Technical Standards Required for Matriculation, Progression and Graduation.

The ASAC will meet monthly and as often as necessary to carry out these missions assuming an agenda to be discussed.

**II. Composition**

The Committee shall consist of several groups of voting members and non-voting members.

**Voting members:**

The Senior Associate Dean for Education solicits nominations from department chairs and the faculty at large and recommends potential members to the UVA SOM Dean for appointment. A minimum of 15 voting members are appointed with a maximum of 21 voting members. Two fourth-year medical students shall serve as ex officio voting members of the ASAC. These shall be the President of the Mulholland Society and the fourth-year class President. Generally, the term will be three years with the possibility of one consecutive reappointment; former members may return for a new appointment after a two-year hiatus. Student members will serve for one year. The Chair is appointed by the Dean of the School of Medicine. A vice-chair is elected by a majority vote of the ASAC. The vice chair may call and chair an ASAC meeting in the event that the chair is unavailable.

Members who fail to attend the majority of meetings during a given calendar year without cause shall be excused from the Committee. Members who cannot attend the majority of the meetings due to illness or sabbatical, etc. may request that the ASAC Chair, in consultation with the Senior Associate Dean and subject to the approval of the Dean, appoint a substitute for them for the duration of their absence.

**Non-voting members:**

The Associate Dean for Admissions and Student Affairs, Associate Dean for Diversity and Inclusion, the Director of Academic Enhancement, and the Assistant Dean for Medical Education shall be non-voting ex officio members of the ASAC. The Registrar shall staff the committee and keep minutes as described below.

## III. General policies

A. Official votes may be taken when a quorum (greater than 50% of voting members) is present. All motions, except for a motion for dismissal, shall pass by majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members. Voting members will be recused from participating and shall not be counted in the quorum if they have (or have had) a personal, mentoring or advising relationship with the student beyond that of usual student-faculty contact in class or clinical environment. This restriction includes faculty mentors on research projects, family members, anyone with a physician-patient relationship with the student or other personal relationship.

B. All members are required to sign a confidentiality agreement at the beginning of each academic year.

C. The Registrar shall take minutes of each meeting with special emphasis being applied to recording every official motion, and the numerical vote taken on that motion. Official letters sent to students also will constitute part of the minutes of each meeting, as they summarize the decisions of the Committee. Minutes of all meetings will be kept in the Office of Student Affairs and will be made available to the Dean. Letters from the chair to individual students shall be kept in the students' academic file in the Office of Student Affairs. A notice is sent to the Dean after

each meeting indicating that a meeting was held and that the confidential minutes are available for review in the Office of Student Affairs.

D. When there are severe professional transgressions or the Committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken by the Committee only after the student has been offered an opportunity to address the Committee in person, and to respond to questions from members of the Committee. Also, the student should be notified by the Committee in writing before the meeting as to what the major concerns of the Committee are likely to be during the coming meeting. Assistant Deans for Student Affairs (College Deans) as well as relevant teaching faculty may also be invited to attend committee meetings to provide information.

E. Consistent with the requirements of law, decisions made by the Committee may be revealed to authorized university personnel, to the student, and in appropriate circumstances, to the student's parents or guardians (especially when the personal safety of the student is a concern). Other individuals may be notified as appropriate.

F. Official notification of Committee actions shall be made by the Registrar as soon as possible after the action is taken by the ASAC (and after the student has been notified of the action, as in III.C above, III.I below). All individuals and departments with a need to know will be so notified.

G. The official medical school transcript shall accurately reflect the actual academic record of the student, and important decisions reached by the Committee about each student's academic performance or misconduct (for example, reflecting change in student status, systems failed, grades changed through re-examination, suspensions, etc.).

H. When a student addresses the Committee, the student will act as his or her own advocate. In some sensitive situations, the student may be accompanied by a current member of the medical school community (e.g. classmate, faculty member, etc.) for support or advice. Such a guest must be approved by the committee chair prior to the meeting. Since these are not formal legal proceedings, but internal meetings of an official school committee, no counsel representing a student shall be allowed.

I. The formal decisions of the ASAC shall be communicated by the Chair to the student in a timely fashion, usually on the night of the meeting or the next day. Copies of this communication will be placed in the student's academic record, and into the minutes of the ASAC. In some situations, such as when news of a decision is given verbally to the student, the Chair may invite one of the college deans to be present.

J. Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the Committee should be guided by several important general principles, including: fairness to students; following due process; promptness of action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to the Faculty, patients and to society to train graduates who demonstrate the highest standards of academic performance and conduct.

K. Administrative support to the Committee will be provided by the Registrar who will work with the Chair to set the agenda; inform members of meeting dates and times; take and maintain the minutes; maintain official student folders; maintain copies of all letters sent by the Chair; invite guests, e.g. system or clerkship directors when necessary, etc.

L. These policies concerning the ASAC, and various types of student status changes, must be updated as needed. The updated version must be posted in the online Student Handbook. The incoming first year class must receive a URL link to the latest version at the time of matriculation.

M. No student will be formally dismissed or suspended prior to an appropriate hearing by the ASAC, as outlined in other sections. However, on rare occasions an emergency may arise in which the health of a student, faculty member, patient, or other member of the community is placed at risk by the presence of a student. In such an unusual situation, the Chair of the ASAC may recommend to the Dean or Senior Associate Dean for Education that a student be suspended provisionally, pending formal consideration of the relevant issues by the full Committee at the earliest possible opportunity. It is anticipated that this action will be required only under very rare circumstances.

N. When a student wishes to contest a decision of the ASAC, the student must follow the process as outlined in the Policy on Academic and Professional Advancement.

- If the ASAC requires a student to be dismissed from the School of Medicine or to repeat an academic period, the notification to the student will provide the option of an appeal and a description of the appeals process. This option will not be granted to those students failing to pass Steps 1 or 2CK of the USMLE within three attempts. The student may formally request that the Associate Dean for Admissions and Student Affairs appoint an ad hoc Appeals Committee to review the decision of the ASAC. The student must file his or her appeal no later than 14 days from receipt of notification or lose the right to appeal.
- The three-person ad hoc Appeals Committee is drawn from a pool of 10 faculty members named by the Associate Dean for Admissions and Student Affairs, none of whom is a current member of the ASAC. The student selects one member, the Senior Associate Dean for Education selects one member, nd the Dean selects the third member (who chairs the ad hoc Appeals Committee). The Associate Dean for Admissions and Student Affairs serves as staff liaison, ex officio, without vote.
- The student is permitted to inspect his/her entire medical school file including any material upon which the decision of the ASAC was based.
- The student is permitted to have counsel, to submit affidavits and exhibits, and to summon witnesses at the Appeals Committee hearing. Legal counsel may be present to provide advice but legal counsel will not be permitted to participate actively in presentation of testimony, examination/cross examination of witnesses or oral arguments.
- The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days) and will uphold, modify or reverse the decision(s) of the ASAC.
- The Appeals Committee will provide the student with all the evidence against him/her, including the academic grades and written evaluations, and will base its recommendations upon the evidence presented at the hearing.



- The Appeals Committee will send its decision, along with a written record of its proceedings, to the Dean of the School of Medicine.
- The decision of the Appeals Committee will be final.



Jim Tucker's Bio

# Jim Tucker's Bio

## Jim B. Tucker, M.D.

**Address:**

*University of Virginia Health System*
*Department of Psychiatry & Neurobehavioral Sciences*
*Division of Perceptual Studies*
*P.O. Box 800152*



*Charlottesville, VA 22908-0152*
*Phone: 434-924-2281*
*Fax: 434-924-1712*

email: jbt8n@virginia.edu

Website: www.jimbtucker.com

**Director of the Division of Perceptual Studies,** University of Virginia Health System. September 2014-present.

**Bonner-Lowry Professor of Psychiatry and Neurobehavioral Sciences,** University of Virginia Health System. 2017-present.

**Bonner-Lowry Associate Professor of Psychiatry and Neurobehavioral Sciences,** University of Virginia Health System. 2012-2017.

**Associate Professor of Psychiatry and Neurobehavioral Sciences,** University of Virginia Health System. 2010 – 2012.

**Assistant Professor:** Division of Perceptual Studies, Department of Psychiatry and Neurobehavioral Sciences, University of Virginia Health System. 1999-2010.

**Assistant Professor:** Division of Child and Family Psychiatry, Department of Psychiatry and Neurobehavioral Sciences, University of Virginia Health System. 2000 – 2010.

**Interim Division Director:** July 1, 2000 – June 20, 2001.

**Medical Director:** Child and Family Psychiatry Clinic. July 1, 2003 – June 30, 2012.

**Private Practice of Child, Adolescent, and Adult Psychiatry:**

- Psychiatric Associates of the Shenandoah, Fishersville, VA. 1995-2000.


- Piedmont Psychiatric Professionals, Waynesboro, VA. 1991-1995.

**Attending Psychiatrist:**

- **Service Director:** Adolescent Residential Treatment Program, Charter Behavioral Health System, Charlottesville, VA. 1997 – 1999.
- DeJarnette Center, Staunton, VA. 1991 – 1992.

## Board Certification

### American Board of Psychiatry and Neurology

- General Psychiatry 1992
- Child and Adolescent Psychiatry 1992

## Postgraduate Training

- **General Psychiatry:** Department of Psychiatric Medicine, University of Virginia Health Sciences Center. 1986-1989.
- **Child Psychiatry:** Division of Child and Family Psychiatry, University of Virginia Health Sciences Center. 1989-1991.

## Education

**M.D.:** University of North Carolina School of Medicine, 1986.

**B.A.:** University of North Carolina-Chapel Hill, 1982.

- B.A. in Psychology
- Phi Beta Kappa

## Publications

Tucker JB. Religion and medicine. [Letter] *Lancet* 353:1803, 1999.



## ASAC Committee Members

### Chair

Jim Tucker, M.D. (Child Psychiatry) *3 years, 2017-2020*

### Committee Members

- Roger Abounader, M.D., Ph.D. (Microbiology) 3 years, 2017-2020
- Taison Bell (Medicine, Pulmonary and Critical Care) 3 years, 2019-2022
- Donna Chen, M.D., M.P.H. (Psychiatry and Public Health Sciences) 3 years, 2017-2020
- Sharon Diamond-Myrsten, M.D. (Family Medicine) 3 years 2018-2021
- Linda Duska, M.D. (Obstetrics and Gynecology) 3 years, 2019-2022
- Jay Fox, Ph.D. (Microbiology, Immunology, and Cancer Biology) 3 years, 2019-2022
- Katheryn Frazier, M.D., (Pediatrics) 3 years, 2018-2021
- James Gorham, M.D., Ph.D. (Pathology) 3 years, 2019-2022
- Pamila Herrington, M.D. (Psychiatry) 3 years, 2019-2022
- Nicolas Intagliata, M.D. (Medicine GI) 3 years, 2018-2021
- Jessica Meyer, M.D. (Pediatrics) 3 years, 2019-2022
- Wilson Miller, Ph.D. (Radiology) 3 years, 2018-2021
- Catherine Shaffrey, M.D., (Anesthesiology) 3 years, 2018-2021


## Students (appointed for one year):

- Sarah Dudley (President of Mulholland Society), SMD'20
- John-Henry Dean (President of Fourth-year Class), SMD'20

## Non-voting, ex-officio

- Megan Bray, M.D. (Associate Dean for Curriculum)
- John Densmore, M.D., Ph.D. (Associate Dean for Admissions and Student Affairs)
- Selina Noramly, Ph.D. (Director of Academic Enhancement)
- Lesley Thomas, J.D. (Assistant Dean for Medical Education)
- Gregory Townsend, M.D. (Associate Dean for Diversity and Inclusion)
- Katherine Yates (Registrar)

## On Leave

- Brian Behm, M.D. (Medicine GI) 3 years, 2017-2020









# Brian W Behm, MD

**Division:** Gastroenterology and Hepatology

**Department:** Medicine

**Call 434.243.3090**

**Primary Location:**
Digestive Health Center
1215 Lee St.
Charlottesville, VA 22903

Directions

**Fax:** 434.244.7527

**Secondary Locations:** Endoscopy Monroe Lane, Endoscopy Unit



## Expertise

**ABMS Certification:** Internal Medicine; Gastroenterology

**Research Interests:** Dr. Behm's research interests include understanding the pathogenesis of intestinal inflammation, methods to improve patient medication adherence, and clinical trials evaluating new therapies for Crohn's disease and ulcerative colitis.

**Clinical Practice:** Inflammatory Bowel Disease (IBD), Ulcerative Colitis, Colonoscopy, Flexible Sigmoidoscopy, Upper GI Endoscopy, Crohn's Disease, Endoscopy

## About

**Title:** Associate Professor

**Biography**

Dr. Brian Behm is a gastroenterologist focused on treating patients with inflammatory bowel disease (IBD). He is an associate professor of medicine and is board certified in gastroenterology.

Dr. Behm was born in northeast Ohio. He completed his undergraduate studies at Cornell University, graduating with distinction. He earned his medical degree at the University of Virginia, then completed an internal medicine residency at the University of California, San Francisco. He returned to UVA for his gastroenterology fellowship, then joined the UVA faculty in 2006. He went on to earn a master's degree in health evaluation sciences from UVA in 2007.

Along with other services, Dr. Behm treats microscopic colitis, pouchitis and indeterminate colitis.

Dr. Behm lives in Charlottesville and enjoys hiking, bicycling and kayaking.

## Education

**Primary:** University of Virginia School of Medicine, 1999

**Residency:** Internal Medicine, University of California at San Francisco

**Fellowships:** Gastroenterology, University of Virginia

## Media

**Publications:** View all publications on PubMed



Department of Psychiatry and Neurobehavioral Sciences

# Donna T. Chen, M.D., MPH

no picture available

**Donna T. Chen, M.D.,MPH**
Associate Professor in Psychiatry
Associate Professor in Health Evaluation Sciences

**Department of Psychiatry and Neurobehavioral Sciences**
Division of Outpatient Psychiatry

| | |
|---|---|
| **M.D. Degree:** | University of California, San Francisco, 199 |
| **Residency:** | Psychiatry, Columbia Universit |
| **Fellowship** | Bioethics and Psychiatry, NIH/NIMH |
| **Certification:** | American Board of Psychiatry and Neurology, 2001 |
| **Research Interests:** | Bioethics, research ethics |



**Department Web Site:** http://www.healthsystem.virginia.edu/i...

**Phone:** (434) 924-2241

**Fax:** (434) 924-5149

**Email:** dtc6k@virginia.edu

Filed Under: Clinical Faculty

## Menu

## Categories

CLINICAL FACULTY

RESEARCH FACULTY

200 Jeanette Lancaster Way
Charlottesville, VA 22903
Map and directions
SCHOOL OF MEDICINE

# Stephen H. Culp, MD PhD



**Stephen H. Culp, M.D., Ph.D.**

**Faculty Rank:** Associate Professor of Urology

**M.D. Degree:** Medical College of Virginia Commonwealth, 2002

**Ph.D. Degree:** Medical College of Virginia Commonwealth, 2002

**Residency:** Urology, University of Washington School of Medicine

**Fellowship:** Urologic Oncology, University of Texas M.D. Anderson Cancer Center

**ABMS Certification:** Urology

**Clinical Practice:** General Urology, Oncology

**Research Interests:** Molecular characterization of renal cell carcinoma, Resistance to targeted therapy in kidney cancer, Development of xenograft models in kidney and bladder cancer





20.

Department of Psychiatry and Neurobehavioral Sciences

# Pamila Herrington, M.D.

**Pamila Herrington, M.D.**
Assistant Professor of Psychiatric Medicine

**Department of Psychiatry and Neurobehavioral Sciences**
Division of Inpatient Psychiatry
Division of Outpatient Psychiatry

| | |
|---|---|
| **M.D. Degree:** | University of Virginia, 1993 |
| **Residency:** | Psychiatry, University of Virginia |
| **Certification:** | Psychiatry and Neurology-Psychiatry, 1998 |
| **Clinical Interests:** | General adult psychiatry |
| **Research Interests:** | Psychopharmacology |

Case 3:19-cv-00054-NKM-JCH Document 1-2 Filed 09/16/19 Page 53 of 62 Pageid#: 103



Frequently Seen:

| | |
|---|---|
| **Department Web Site:** | http://www.healthsystem.virginia.edu/i... |
| **Phone:** | (434) 924-2241 |
| **Fax:** | (434) 924-5149 |
| **Email:** | pah5g@virginia.edu |









# Nicolas Intagliata, MD

**Division:** Gastroenterology and Hepatology

**Department:** Medicine

**Call 434.243.3090**

**Primary Location:**
Digestive Health Center
1215 Lee St.
Charlottesville, VA 22903

Directions

**Fax:** 434.244.9465

**Secondary Locations:** Endoscopy Unit, Transplant Center



(21.)

## Expertise

**ABMS Certification:** Internal Medicine; Gastroenterology
Transplant Hepatology

**Research Interests:** Coagulopathy of liver disease, thrombosis in liver disease, infectious complications of liver disease, outcomes in liver transplantation

**Clinical Practice:** Ascites, Liver Cancer, Esophageal Varices, Hemochromatosis, Hepatic Encephalopathy, Abdominal Paracentesis, Cirrhosis, Liver Biopsy, Upper GI Endoscopy, Endoscopy, Liver Transplant, Liver Care

## About

**Title:** Assistant Professor

**Biography**

Dr. Nicolas Intagliata treats patients with liver disease in both inpatient and outpatient settings. He is an assistant professor of medicine in the Division of Gastroenterology and Hepatology and is board-certified in internal medicine, gastroenterology and transplant hepatology.

Dr. Intagliata grew up in Denver, attending the University of Colorado for his undergraduate studies. He earned his medical degree from Wake Forest University in Winston-Salem, N.C., and then came to the University of Virginia to complete a residency in internal medicine and two fellowships — one in gastroenterology and hepatology and the other in transplant hepatology. He joined the UVA faculty in 2014.

His wife, Valentina Intagliata, is also a University of Virginia faculty member, specializing in developmental pediatrics. They have two boys. Dr. Intagliata enjoys running and reading fiction.

## Education

**Primary:** Wake Forest School of Medicine, 2007

**Residency:** University of Virginia, Internal Medicine

**Fellowships:** University of Virginia, Gastroenterology University of Virginia, Transplant Hepatology

## Media

## Dr. Nora Kern

Faculty Rank: Assistant Professor of Urology

M.D. Degree: University of Virginia School of Medicine

Residency: Boston University (Urology)

Fellowship: Children's National Health System/George Washington University (Pediatric Urology)

Board Certifications: Urology

Clinical Practice: Pediatric Urology

Research Interests: Hydronephrosis, Vesicoureteral reflux, Pediatric genitourinary imaging, Quality of care/Education

Publications: https://www.ncbi.nlm.nih.gov/pubmed/?term=kern+n and

(23.)

## Wilson Miller, PhD

**Wilson Miller, PhD**

**Assistant Professor of Radiology and Medical Imaging**

PhD, Nuclear Physics, Princeton University, 2000
BS, Mathematics, University of Maryland, 1993

University of Virginia
Department of Radiology and Medical Imaging
480 Ray C Hunt Drive
Snyder Building
Charlottesville, VA 22903

434-243-9216
gwm2n@virginia.edu



University of Virginia Health System

[redacted]

Bart Nathan, MD
Neurocritical Care

# Barnett R Nathan, MD

**Division:** General Neurology Appointment

**Department:** Neurology

**Call 434.924.8371**

**Primary Location:**
PO Box 800394
Charlottesville, VA 22908-0394

Directions

**Fax:** 434.982.1726

## Expertise

**ABMS Certification:** Neurology; Vascular Neurology; Neurocritical Care

**Research Interests:** Experimental meningitis and brain abscess|the role of substance P and nitric oxide on microglia in CNS inflammation

**Clinical Practice:** Neurocritical Care, Neurology Services

## About

**Title:** Professor

**Biography**

I was born in the suburbs of Philadelphia, PA, and attended Harriton High School. I attended Washington College (800 students) on the eastern shore of Maryland. After college, I coached a local high school rowing team while going to graduate school at Villanova University to earn my master's degree in biology. I then attended Hahnemann University School of Medicine (now Drexel University) and moved to Charlottesville in 1993 for my neurology residency. I've been here ever since.

After completing my residency in 1996, I began my two-year fellowship in neurocritical care. I also completed a research fellowship in neuro-infectious diseases. I was awarded a K08 NIH training grant from the Institute of Allergy and Infectious Disease for my work with microglia in bacterial meningitis. I became faculty in 1999 and have taken on the leadership role as one of the course directors and system leaders for neurology and neuroscience courses for first and second year medical students.

My current clinical focus is exclusively inpatient. I work in the neuro ICU and care for critically ill neurology and neurosurgery patients.

I am married to Kathy Nathan. She is a physical therapist at Martha Jefferson Hospital. Together we have three children: Isaak, Ari and Asher. Nature photography is one of my passions.

## Education

**Primary:** Hahnemann University, 1992

**Residency:** Neurology, University of Virginia

**Fellowships:** Neurologic Intensive Care/Neuroinfectious Diseases, University of Virginia

1215 Lee Street
Charlottesville, VA 22903







# Catherine C Shaffrey, MD

**Division:** General Anesthesiology Appointment

**Department:** Anesthesiology

**Call 434.924.2283**

**Primary Location:**
PO Box 800710
Charlottesville, VA 22908-0710

Directions

**Fax:** 434.982.0019

## Expertise



**ABMS Certification:** Anesthesiology, 1996

**Research Interests:** Clinical research in ambulatory surgery outcomes

## About

**Title:** Assistant Professor

## Education

**Primary:** Dartmouth Medical School, 1988

**Residency:** Anesthesiology, University of Virginia

**Fellowships:** Advanced Clinical Anesthesia and Pain Management, Derriford Hospital, Plymouth, England

1215 Lee Street
Charlottesville, VA 22903

Map & Directions

**UVA HEALTH**

About Us

Contact Us

Clinical Trials & Research

News

Services

Quality & Safety

**COMMUNITY**

Community Outreach

Find a Job

Donate

Volunteer

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/1/2019
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 3:19-cv-00054 |
| | ) | |
| **RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA** | ) | |

# PRETRIAL ORDER

*The court proposes the following as a pretrial order pursuant to Federal Rule of Civil Procedure 16(b). If no party requests changes within 10 days, it will constitute the scheduling order in this case. The court may amend the order on its own motion, or* ***the parties may amend the order's disclosure and discovery provisions by submitting an agreed written plan that satisfies the requirements of Rule 26(f).***

## Summary

**TRIAL DATE:** **Contact Heidi Wheeler, scheduling clerk, at (434) 296-9284, within 14 days of this order for the purpose of setting a trial date.**

**PLACE:** **UNITED STATES DISTRICT COURT
255 West Main Street
Charlottesville, VA 22902**

| | |
|---|---|
| **FED.R.CIV.P.26(f) CONFERENCE:** | **14 days from this order** |
| **INITIAL DISCLOSURES UNDER FED.R.CIV.P.26(a):** | **30 days from this order** |
| **PLAINTIFF(S) INITIAL EXPERT DISCLOSURE:** | **75 days from this order** |
| **DEFENDANT(S) INITIAL EXPERT DISCLOSURE:** | **90 days from this order** |
| **DEADLINE TO COMPLETE DISCOVERY:** | **90 days before trial date** |
| **DEADLINE TO FILE DISPOSITIVE MOTIONS:** | **75 days before trial date** |
| **DEADLINE FOR HEARING DISPOSITIVE MOTIONS:** | **45 days before trial date** |

## Trial and Settlement

1. This case is set for a jury trial.

2. Proposed jury instructions and special interrogatories must be filed with the clerk of the court at least 7 days prior to trial, with copies provided to opposing counsel.

3. Motions in limine must be filed with the clerk of court at least 14 days prior to trial, with copies provided to opposing counsel. Opposition briefs to any motion in limine must be filed with the clerk of the court at least 7 days prior to trial.

4. If the case settles before trial and the court does not receive a proposed final order within 30 days after the court received oral or written notification of the settlement, the court will dismiss the case with prejudice.

## Motions

5. All dispositive motions must be filed no later than 75 days before trial and must be heard or submitted for decision no later than 45 days before trial. If the parties agree that a dispositive motion is appropriate for decision without oral argument they must file a stipulation no later than 45 days before trial stating that the motion is ripe for decision.

6. A supporting brief must accompany all pretrial motions, unless the motion contains the legal argument necessary to support it or is certified to be unopposed. If a motion that is not unopposed has been filed before this order without legal argument to support it, the movant must file a supporting brief within 14 days of the date of this order or the motion will be dismissed.

7. If any motion, properly filed and briefed, is to be opposed, a brief in opposition must be filed within 14 days of the date of service of the movant's brief (or within 14 days of this order if a motion and supporting brief were served before this order). Except for good cause shown, if a brief opposing a motion is not timely filed, the court will consider the motion to be

unopposed.  If a moving party desires to submit a reply brief, it must be filed within 7 days of the date of service of the brief opposing the motion.  A surreply brief may not be filed without prior leave of the court.

8.      Exclusive of any accompanying exhibits, a brief may not exceed 25 pages in length using standard margins, double-spaced lines, and a font no smaller than 12-point Times, unless the filing party first obtains leave of the court after showing good cause why a longer brief is necessary.

9.      When a dispositive motion, together with its supporting brief and exhibits (or any other brief combined with exhibits), consists of 50 or more pages, the filing party must send a paper courtesy copy of the documents to the chambers of the presiding District Judge at 1101 Court Street, Room 390, Lynchburg, VA 24504.

10.     No motion, brief, or exhibit may be filed under seal, except as allowed by the mandatory provisions of W.D. Va. Gen. R. 9.  The requirements of Rule 9 may not be modified by a stipulated protective order or other agreement of the parties.  *See* W.D. Va. Gen. R. 9(g).

11.     If any party desires a hearing on any dispositive or nondispositive motion, then no later than 14 days after the filing of the last brief on the motion, that party must contact Heidi Wheeler, scheduling clerk, to set a hearing date.  If no hearing on the motion is necessary, the moving party must file a notice that the motion is ripe for decision, no later than 14 days after the filing of the last brief on the motion.  In any event, if within 45 days of the filing of any dispositive or nondispositive pretrial motion, no party has scheduled the motion for hearing or advised the court that the motion is ripe for decision, the court may deny the motion with or without prejudice.

12.     Nondispositive motions, including motions for enlargement of time, whether or not opposed, may be acted upon at any time by the court, without awaiting a response, and any party adversely affected by such action may request reconsideration, vacation or modification.

13. All nondispositive pretrial motions and issues, including any requested changes in this order, are hereby referred to United States Magistrate Judge Joel C. Hoppe pursuant to 28 U.S.C. § 636(b)(1)(A).

## Discovery

14. Unless the parties stipulate otherwise, within 14 days of the date of this Order, the parties must confer and develop a discovery plan as required by Rule 26(f).

15. Unless the parties stipulate otherwise, initial disclosures as required by Rule 26(a)(1) must be made within 30 days of the date of this Order.

16. All discovery must be completed at least 90 days prior to trial. This schedule requires that written discovery be served in sufficient time to allow the responding party time to respond before the cutoff date for discovery.

17. Except for disclosures under Rule 26(a)(3) of trial witnesses and exhibits, which the parties **must** file, the parties are not to file discovery and disclosure material unless and until actually used in the proceeding.

## Expert Witnesses

18. Expert witnesses who are retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony must prepare a written report that conforms to the requirements of Rule 26(a)(2)(B). Unless the parties otherwise agree or the court otherwise directs, the plaintiff must submit the written report of each expert not later than 75 days from the date of this order, and the defendant must submit the written report of each expert no later than 90 days from the date of this order. Supplemental and additional reports may be thereafter submitted, if submitted "in sufficient time"

that discovery, if desired, can be completed reasonably by the discovery cutoff date without undue duplication and expense.

19. With respect to expert witnesses who are not retained or specially employed to provide expert testimony or whose duties as an employee of the party do not regularly involve giving expert testimony, such as a treating physician or clinician, the plaintiff must disclose the identity of any such witness and provide a summary of all opinions the witness will render and the basis therefore not later than 75 days from the date of this order, and the defendant must disclose the identity of any such witness and provide a summary of all opinions the witness will render and the basis therefore not later than 90 days from the date of this order. Supplemental and additional disclosures may be thereafter submitted, if submitted "in sufficient time" that discovery, if desired, can be completed reasonably by the discovery cutoff date without undue duplication and expense.

20. Any motion to exclude the testimony of an expert based on the sufficiency or reliability of the expert's testimony must be filed no later than the deadline for filing motions for summary judgment.

## Witness Lists and Anticipated Testimony Summaries

21. The parties shall exchange lists of the witnesses they expect to call at trial no later than 21 days prior to trial. For each witness, the list shall include the witness's name and address and a summary of the witness's anticipated testimony.

## Mediation

22. At the request of any party, the court will refer the case to the magistrate judge to conduct mediation.

## Joinder of Other Parties

23. The court shall consider motions to join other parties in accordance with Rules 19, 20, and 21 of the Federal Rules of Civil Procedure. Except for good cause shown, any such motion must be filed no later than 45 days from the date of this order.

## Amendment of Pleadings

24. The court shall consider a party's motion to amend pleadings in accordance with Rule 15 of the Federal Rules of Civil Procedure. Except for good cause shown, any such motion must be filed no later than 45 days from the date of this order.

## Integrated Pretrial Order

25. No later than 7 days before trial the parties shall jointly file a proposed pretrial order briefly summarizing the following:

- any contested issues of law that require a ruling before trial;
- the essential elements that a party must prove to establish any meritorious claims remaining for adjudication, and the damages or other relief sought;
- the essential elements that a party must prove to establish any meritorious defenses;
- the material facts and theories of liability or defense;
- the issues of fact contested by each party;
- any contested issues of law that do not require a ruling before trial;
- any stipulations; and
- any special voir dire questions.

For those items, if any, on which the parties are unable to agree, each party shall briefly summarize its position in a separately filed addendum to the joint proposed pretrial order.

It is so **ORDERED**.

ENTERED this 1st day of October, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

CLERK'S OFFICE U.S. DIST. COURT AT CHARLOTTESVILLE, VA FILED

02/19/2020

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

**KIERAN RAVI BHATTACHARYA,**

**Plaintiff,**

**v.**

**JAMES B. MURRAY JR., in his official capacity as Rector of the Board of Visitors of the University of Virginia; WHITTINGTON W. CLEMENT, in his official capacity as Vice Rector of the Board of Visitors of the University of Virginia; ROBERT M. BLUE; MARK T. BOWLES; L.D. BRITT, M.D., M.P.H.; FRANK M. CONNER III; ELIZABETH M. CRANWELL; THOMAS A. DEPASQUALE; BARBARA J. FRIED; JOHN A. GRIFFIN; LOUIS S. HADDAD; ROBERT D. HARDIE; MAURICE A. JONES; BABUR B. LATEEF, M.D.; ANGELA HUCLES MANGANO; C. EVANS POSTON JR.; JAMES V. REYES; and PETER C. BRUNJES, in their respective official capacities as Members of the Board of Visitors of the University of Virginia; TIMOTHY LONGO SR., in his official capacity as Chief of Police of the University of Virginia; MELISSA FIELDING, in her official capacity as Deputy Chief of Police of the University of Virginia; JOHN J. DENSMORE, M.D., Ph.D., in his official capacity as Associate Dean for Admissions and Student Affairs of the University of Virginia School of Medicine; and JIM B. TUCKER, M.D., in his official capacity as Chair of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine; and CHRISTINE PETERSON, M.D., Assistant Dean for Medical Education of the University of Virginia School of Medicine; NORA KERN, M.D.; and SARA K. RASMUSSEN, M.D., Ph.D., each in her official and individual capacity,**

**Defendants.**

**Civil Action No. 3:19-CV-00054-NRM-JCH**

**<u>JURY TRIAL DEMANDED</u>**

**<u>FIRST AMENDED COMPLAINT</u>**

4841-6080-5040.8

Plaintiff Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, respectfully states as for his First Amended Complaint against the following Defendants: (1) the Rector, Vice Rector, and Members of the Board of Visitors of the University of Virginia, all of whom are named in their respective official capacities (collectively, the "Board of Visitors Defendants"), along with Timothy Longo, Sr., Interim Chief of Police of the University of Virginia, who is named in his official capacity ("Mr. Longo"), and Melissa Fielding, Deputy Chief of Police of the University of Virginia, who is named in her official capacity ("Ms. Fielding") (collectively, the "University Defendants"); (2) John J. Densmore, M.D., Ph.D., Associate Dean for Admissions and Student Affairs, University of Virginia School of Medicine ("Dean Densmore"), and Jim B. Tucker, M.D., Chair of the Academic Standards and Achievement Committee, University of Virginia School of Medicine ("Dr. Tucker"), each of whom is named in his official capacity (collectively, the "UVA Med School Defendants"); and (3) Christine Peterson, M.D., Assistant Dean for Medical Education, University of Virginia School of Medicine ("Dean Peterson"), Nora Kern, M.D., Assistant Professor of Urology, University of Virginia School of Medicine ("Professor Kern"), and Sara K. Rasmussen, M.D., Ph.D., Associate Professor, University of Virginia School of Medicine ("Professor Rasmussen"), each of whom is named in both her official and individual capacity (collectively, the "Individual Co-Conspirators").

## NATURE OF THE ACTION

1. This Complaint seeks redress for the violation of Plaintiff's constitutional rights by the University of Virginia, which was founded more than 200 years ago by Thomas Jefferson. Before founding the University of Virginia—during the time that ratification of the Constitution was being debated—Mr. Jefferson wrote a December 20, 1787 letter to James Madison expressing the view that "a bill of rights is what the people are entitled to against every government on earth, general

or particular, and what no just government should refuse." Of the various provisions of the Bill of Rights that later became part of the Constitution of the United States, the First Amendment's guarantee of free speech is of paramount importance to the mission of any public university, including the University of Virginia. Ever since enactment of the Fourteenth Amendment in 1868, the guarantees of free speech and due process have applied with equal force to the several States—including the Commonwealth of Virginia and state agencies such as the University of Virginia.

2. If its treatment of Mr. Bhattacharya is any indication, however, the University that Mr. Jefferson founded now seems to think that it is above the law of the land, including the Bill of Rights. The UVA Med School Defendants—acting in concert, combination, and conspiracy with the Individual Co-Conspirators—have acted to deprive and have in fact deprived Mr. Bhattacharya of his right to free speech protected by the First Amendment and his right to due process protected by the Fourteenth Amendment.

3. Before the UVA Med School Defendants and the Individual Co-Conspirators violated and conspired to violate his civil rights, Mr. Bhattacharya was a student enrolled in the University of Virginia School of Medicine ("UVA Med School"). All that changed, however, as a result of Mr. Bhattacharya's questions and comments during an October 25, 2018 panel discussion on "microaggression" (the "AWMA Microaggression Panel Discussion") sponsored by the newly formed UVA Med School chapter of the American Medical Women's Association ("AMWA").[1] At the time of the October 25, 2018 AWMA Microaggression Panel Discussion, Mr. Bhattacharya was a second-year medical student in good standing at UVA Med School. Nevertheless—in retaliation for his questions and comments at the AWMA Microaggression Panel Discussion to which the

[1] Since October 25, 2018, the AMWA has posted on its website a description of the AMWA Microaggression Panel Discussion proclaiming it to have been a "success." A printout of the website posting under the heading "New AMWA Chapter at the University of Virginia — First Event a Success!" (https://www.amwa-doc.org/news/new-amwa-chapter-at-the-university-of-virginia) is attached as **Exhibit 1**.

Individual Co-Conspirators objected—Mr. Bhattacharya was disciplined, suspended, and ultimately banished altogether from UVA Med School. As a result, Mr. Bhattacharya is now unable to pursue his chosen career in medicine.

4. The organizers of the AWMA Microaggression Panel Discussion included two of the Individual Co-Conspirators, Professors Kern and Rasmussen, both of whom were also panelists at the October 25, 2018 event. Following a presentation by a Professor of Psychology at the University of Virginia—Beverly Colwell Adams, Ph.D. ("Professor Adams")—Mr. Bhattacharya asked questions and made comments that organizers of the AWMA Microaggression Panel Discussion later characterized as "antagonistic." The audio recording of the AMWA Microaggression Panel Discussion (attached as **Exhibit 2)** demonstrates that this characterization is neither fair nor accurate. The audio recording establishes that Mr. Bhattacharya and the speaker, Professor Adams, had a rational and calm discussion about the theory of microaggression. The only person whose behavior was questionable was one of the two AMWA members on the panel, Individual Co-Conspirator Professor Rasmussen. Professor Rasmussen interrupted the dialogue between Mr. Bhattacharya and Professor Adams, launched into a diatribe about microaggressions that she personally had experienced as a native of West Virginia, and raised her voice in anger at Mr. Bhattacharya before cutting him off altogether. Ultimately, however, it is immaterial whether UVA Med School's characterization of Mr. Bhattacharya's questions and comments as "antagonistic" is a fair one. The First Amendment does not permit the government to censor speech that it considers to be antagonistic.

5. Unfortunately for Mr. Bhattacharya, Professor Rasmussen's angry outburst at the AMWA Microaggression Panel Discussion was just the beginning rather than the end of UVA Med School's efforts—so far successful—to silence and punish anyone who dared to even question the

theories being espoused that day. Beginning immediately after the event, UVA Med School responded to Mr. Bhattacharya's dissident speech in a way that would make the rulers of the former Soviet Union proud. That same day, one of Professor Rasmussen's colleagues at UVA Med School who was also a member of the AMWA Microaggression Panel Discussion—Individual Co-Conspirator Professor Kern—surreptitiously lodged a "professionalism concern" complaint against Mr. Bhattacharya, citing him for asking a "series of questions that were quite antagonistic toward the panel." Meanwhile—without ever disclosing that his record now included a "professionalism concern" citation as required by UVA Med School's own policies and procedures— Individual Co-Conspirator Dean Peterson "invited" Mr. Bhattacharya to a meeting for the stated purpose of "help[ing] you understand and be able to cope with unintended consequences of conversations." Although Dean Peterson never disclosed this during their subsequent meeting on October 31, 2018, one of the "unintended consequences" to which she was referring included the formal discipline that Mr. Bhattacharya was soon to receive. This discipline was the result of two later meetings of UVA Med School's Academic Standards and Achievement Committee ("ASAC" or the "Committee") in which Dean Peterson participated even though she is not now and was not at the time a member of the Committee.

6. The first such Committee meeting, which took place on November 14, 2018, was a secret meeting to consider the "professionalism concern" complaint lodged by Professor Kern, who also happened to be a member of the Committee and—along with Dean Peterson—was present for its deliberations. During this meeting, of which Mr. Bhattacharya had no notice, the Committee did not bother to listen to the actual audio recording of the AMWA Microaggression Panel Discussion. Instead, the Committee relied upon Professor Kern's characterization of Mr. Bhattacharya's questions and comments as the basis for its decision to reprimand Mr. Bhattacharya.

7. The reprimand took the form of a letter the following day signed by Committee Chair Dr. Tucker. By correspondence dated November 15, 2018, UVA Med School admonished Mr. Bhattacharya to "show mutual respect to all" and "express [his opinions] in appropriate ways" and advised him to "consider getting counseling" to improve his communication skills. By the end of Thanksgiving break, however, UVA Med School's advice to "consider getting counseling" had become a prerequisite for Mr. Bhattacharya to continue his medical school education. On November 26, 2018, Mr. Bhattacharya was notified by email that he needed to be evaluated by a counselor or psychiatrist before he could return to his classes at UVA Med School. The following day, November 27, 2018, Mr. Bhattacharya was notified that he could not resume his studies until he had undergone psychological evaluation and received "medical clearance."

8. Two days later—following a hastily convened "emergency" meeting of the Academic Standards Committee—Mr. Bhattacharya received correspondence dated November 29, 2018 notifying him that he had been suspended from UVA Med School until August 2019 because "your aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday, constitute a violation of the School of Medicine's Technical Standards." Thereafter, Mr. Bhattacharya was denied the opportunity to appeal the one-year suspension or apply for readmission because the University of Virginia issued a no trespass warning to Mr. Bhattacharya for a four-year period. In short, Mr. Bhattacharya's comments and questions during the AMWA Microaggression Panel Discussion—"antagonistic" or not—resulted in his permanent exile to the UVA Med School equivalent of Siberia.

## PARTIES

**(Plaintiff)**

9. Kieran Ravi Bhattacharya ("Mr. Bhattacharya") is an individual who resides at 70 Hale Pili Way, Haiku, Hawaii 96708. Mr. Bhattacharya was a student at the University of Virginia School of Medicine before his suspension and dismissal as alleged in this Complaint.

**(The University Defendants)**

10. The University of Virginia is a public university owned and operated by the government of the Commonwealth of Virginia.

11. The Rector, Vice Rector, and Members of the Board of Visitors of the University of Virginia (collectively, the "Board of Visitors Defendants") are, and were at all times relevant to this Complaint, officials of the University of Virginia responsible for the adoption and enforcement of policies applicable to students attending the University of Virginia—including policies to ensure that students' rights of free speech and due process are protected.

12. Timothy Longo, Sr., Interim Chief of Police of the University of Virginia ("Mr. Longo"), is responsible for overseeing safety and security functions of the University of Virginia and enforcing no trespass orders.

13. Melissa Fielding, Deputy Chief of Police of the University of Virginia ("Ms. Fielding"), was at all times relevant to this Complaint a member of the police force at the University of Virginia with responsibility for overseeing safety and security functions of the University of Virginia.

14. Each of the Board of Visitors Defendants, Mr. Longo, and Ms. Fielding (collectively, the "University Defendants") is sued in his or her official capacity for injunctive and declaratory relief and for damages resulting from the acts and omissions alleged in this Complaint.

**(The UVA Med School Defendants)**

15. John J. Densmore, M.D., Ph.D. ("Dean Densmore") is Associate Dean for Admissions and Student Affairs, University of Virginia School of Medicine.

16. Jim B. Tucker, M.D. ("Dr. Tucker") is Chair of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine.

17. The University of Virginia School of Medicine ("UVA Med School") is a public medical college that is part of the University of Virginia.

18. Dean Densmore and Dr. Tucker (collectively, the "UVA Med School Defendants") are both members of the faculty and administration of UVA Med School responsible for the adoption and enforcement of policies applicable to students attending UVA Med School—specifically including UVA Med School's Policy on Academic and Professional Enhancement and, more generally, policies to ensure that medical students' rights of free speech and due process are protected.

19. Each of the UVA Med School Defendants is sued in his official capacity for injunctive and declaratory relief and for damages resulting from the acts and omissions alleged in this Complaint.

**(The Individual Co-Conspirators)**

20. Christine Peterson, M.D. is Assistant Dean for Medical Education, University of Virginia School of Medicine ("Dean Peterson").

21. Nora Kern, M.D. ("Professor Kern") is Assistant Professor of Urology at the University of Virginia School of Medicine and former member of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine.

22. Sara K. Rasmussen, M.D., Ph.D. ("Professor Rasmussen") is an Associate Professor at the University of Virginia School of Medicine.

23. Professor Kern and Professor Rasmussen (collectively, the "Individual Co-Conspirators") are both members of AMWA who helped organize and participated in the AMWA Microaggression Panel Discussion.

24. As members of the faculty of UVA Med School, the Individual Co-Conspirators are required to comply with policies applicable to students attending UVA Med School—specifically including UVA Med School's Policy on Academic and Professional Enhancement and, more generally, policies to ensure that medical students' rights of free speech and due process are protected.

25. With respect to Mr. Bhattacharya, however, the Individual Co-Conspirators subordinated their responsibilities to UVA Med School—including students and faculty alike—to their personal ideologies and prejudices and their loyalty to AMWA. Professor Kern and Professor Rasmussen acted in combination and conspiracy with other UVA Med School Defendants—including Dean Peterson—to deprive Mr. Bhattacharya of his constitutional rights of free speech and due process and to cause injury to Mr. Bhattacharya in his chosen profession. Dean Peterson also acted in combination and conspiracy with third parties to subvert and corrupt the activities of the Academic Standards and Achievement Committee and abuse its processes for improper purposes.

26. Dean Peterson, Professor Kern, and Professor Rasmussen each had an independent personal stake in the foregoing conspiracy.

27. Each of the Individual Co-Conspirators is sued in her official capacity for injunctive and declaratory relief and for damages resulting from the acts and omissions alleged in this Complaint.

28. Each of the Individual Co-Conspirators is also sued in her individual capacity for damages resulting from the acts and omissions alleged in this Complaint.

## JURISDICTION AND VENUE

29. This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985(3).

30. This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

31. This Court has authority to award the requested damages pursuant to 28 U.S.C. §§ 1343 and 42 U.S.C. §§ 1983 and 1985(3); the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 28 U.S.C. § 1343, 42 U.S.C. § 1983, and Fed. R. Civ. P. 65; and costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

32. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts conduct described in this Complaint occurred in this district.

## FACTS COMMON TO ALL COUNTS

### (Before His Attendance at the AMWA Microaggression Panel Discussion, Mr. Bhattacharya Was a Medical Student in Good Standing at UVA Med School)

33. Mr. Bhattacharya enrolled in UVA Med School and began the fall 2016 semester as a member of the Class of 2020 on August 4, 2016.

34. During the fall 2016 semester, Mr. Bhattacharya participated in UVA Med School's mandatory Social Issues in Medicine ("SIM") course through shadowing and direct client contact at the Albemarle County Department of Social Services, Foster Care Unit. In the Agency Evaluation of Student attached as **Exhibit 3**, Supervisor Beckie Aderholz reported that Mr. Bhattacharya

attended all scheduled sessions, conformed to expectations with respect to different metrics, and received no negative responses.

35. During the fall 2016 semester, Mr. Bhattacharya participated in Team-Based Learning ("TBL") exercises and received five Student Performance Evaluations (hereinafter "SPE") from five medical students in Mr. Bhattacharya's six-person TBL team for that semester. Three of the five medical students rated Mr. Bhattacharya's TBL performance as "Frequently exceeds expectations;" one medical student rated Mr. Bhattacharya's TBL performance as "Meets and sometimes exceeds expectations;" and one medical student rated Mr. Bhattacharya's TBL performance as "Meets expectations." All five of Mr. Bhattacharya's SPEs from TBLs in the fall 2016 Semester are attached as **Exhibit 4**, which has been redacted to remove personal identifiers of each of the other five medical students in Mr. Bhattacharya's TBL group.

36. During the fall 2016 semester, Mr. Bhattacharya participated in Clinical Performance Development ("CPD") 1A and received one SPE from his CPD mentor, Andrew Wolf, MD ("Dr. Wolf"). In this SPE, attached as **Exhibit 5**, Dr. Wolf marked "Strongly Agree" with respect to the following assertions:

a. "The student participates in and contributes to small group discussion"

b. "The student is willing to help others in the group"

c. "The student exhibits humanism, compassion, and empathy during small group"

d. "The student demonstrates engagement in the SIM community service experience"

e. "The student demonstrates awareness of the political and economic forces that impact the delivery of health care"

    f. "The student demonstrates awareness of the socio-cultural forces that impact the delivery of health care."

37. On December 18, 2016, Mr. Bhattacharya completed the fall 2016 semester at UVA Med School in good academic standing as a member of the Class of 2020.

38. Mr. Bhattacharya began the spring 2017 semester at UVA Med School on January 2, 2017 as a member of the Class of 2020.

39. On February 7, 2017, Mr. Bhattacharya took a one-year leave of absence (the "LOA") from UVA Med School. On the University of Virginia Official Withdrawal Form, attached as **Exhibit 6**, Plaintiff cited his reason for withdrawal as "Personal."

40. During Mr. Bhattacharya's LOA from UVA Med School in 2017, he engaged in a number of activities related to his career objective of becoming a medical doctor. These include the following:

a. On September 30, 2017, Mr. Bhattacharya presented—in conjunction with a former UVA Med School classmate—an abstract that the two of them had co-authored at the Fourth Annual Symposium on Academic Interventional Radiology in Washington, D.C.

b. On November 7, 2017, Mr. Bhattacharya presented—in conjunction with a former UVA Med School classmate—a poster that the two of them had co-authored entitled "Characterization of trends in medical student indebtedness with current and potentially new repayment options for young physicians" at the Sixteenth Annual Medical Student Research Symposium at UVA Med School.

c. Throughout 2017, Mr. Bhattacharya authored—in conjunction with a former UVA Med School classmate—a paper entitled "Endovascular Management of Acute Mesenteric Ischemia," the findings of which the two of them presented orally at the 43rd

Annual Scientific Meeting of Society of Interventional Radiology on March 19, 2018 in Los Angeles.

  d. Throughout 2017, Mr. Bhattacharya authored a textbook chapter entitled "Special Considerations:  Revision Anterior Cruciate Ligament" that was published in 2018 in the first edition of the textbook entitled *ACL Injuries in Female Athletes*.

  e. Throughout 2017, Mr. Bhattacharya authored a textbook chapter entitled "Head and Spine Diagnosis and Decision Making" that was published in the fifth edition of *Delee, Drez, and Miller's Orthopaedic Sports Medicine* in 2019.

  f. Throughout 2017, Mr. Bhattacharya edited and contributed to a manuscript entitled "Endovascular Management of Acute Mesenteric Ischemia" that was accepted for publication in the *Annals of Gastroenterology* on August 13, 2019 and published online on September 26, 2019 (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6826075).

41. Mr. Bhattacharya returned to UVA Med School on January 3, 2018 to begin the spring 2018 semester as a member of the Class of 2021.

42. During the spring 2018 semester, Mr. Bhattacharya participated in TBL exercises and received five SPEs from five medical students in Mr. Bhattacharya's six-person TBL.  Three of the five medical students rated Mr. Bhattacharya's TBL performance as "Frequently exceeds expectations;" and two medical students rated Mr. Bhattacharya's TBL performance as "Meets and sometimes exceeds expectations."  All five complete SPEs from the spring 2018 Semester are attached as **Exhibit 7**, which has been redacted to remove personal identifiers of each of the other five medical students in the TBL group.

43. During the spring 2018 semester, Mr. Bhattacharya participated in CPD 1B and received one SPE (attached as **Exhibit 8**) from his CPD mentor, James Moak, MD (hereinafter "Dr. Moak").

44. A "Professionalism Concern Card" ("PCC") at UVA Med School is punitive administrative action taken against medical students for a variety of forms of misconduct, including unexcused absences and violations of professionalism. According to UVA Med School's Policy on Academic and Professional Enhancement (**Exhibit 9**), "Any breach of professionalism resulting in a recorded observation, e.g., Professionalism Concern Card, letter, written report, etc., must be addressed with the student by their college dean and documentation of the discussion must be recorded."

45. During the spring 2018 semester, at 10:52 a.m. on May 4, 2018, an attendance monitor submitted the Professionalism Concern Card attached as **Exhibit 10** (the "First Professionalism Concern Card") to Mr. Bhattacharya's medical student file. The First Professionalism Concern Card stated as follows with respect to Mr. Bhattacharya: "Student did not attend the required Patient Presentation on May 2, 2018." In the First Professionalism Concern Card, the attendance monitor reported that he or she did not notify Mr. Bhattacharya of this concern card; that he or she did not feel uncomfortable in reporting this concern card to Mr. Bhattacharya; and that he or she did not request to be contacted about the action taken.

46. Mr. Bhattacharya did not become aware of the First Professionalism Concern Card until after receiving his medical student file more than seven and a half months later on December 20, 2018.

47. Contrary to the report contained in the First Professionalism Concern Card, Mr. Bhattacharya in fact attended the May 2, 2018 patient presentation but was not recorded as present due to a lapse in Mr. Bhattacharya's subscription to UVA Med School's attendance technology.

48. By way of background, attendance at UVA Med School is monitored using technology known as "Turning Point Login." As of the May 2, 2018 patient presentation, Mr. Bhattacharya's subscription to Turning Point Login had expired during his LOA in calendar year 2017. At that time, Mr. Bhattacharya was notified of the lapse in his subscription by Dr. Mary Kate Warden ("Dr. Warden")—a "system leader" for the area of study for which the May 2, 2018 patient presentation was focused—and Mr. Bhattacharya promptly resolved the issue with UVA Med School's technical support.

49. Notwithstanding Mr. Bhattacharya's resolution of the subscription issue and communication of the resolution to Dr. Warden, the attendance monitor did not rescind the First Professionalism Concern Card. Again, Mr. Bhattacharya had no knowledge at the time that the First Professionalism Concern Card had even been recorded in his medical student file.

50. Mr. Bhattacharya was unaware of the existence of the First Professionalism Concern Card because neither Dean Densmore nor any other faculty or staff member of UVA Med School ever notified him of its existence or discussed it with him as required by UVA Med School's Policy on Academic and Professional Enhancement.

51. On May 27, 2018, Mr. Bhattacharya completed the spring 2018 semester at UVA Med School in good academic standing as a member of the Class of 2021.

52. On July 30, 2018, Mr. Bhattacharya began the fall 2018 semester at UVA Med School as a member of the Class of 2021.

53. Mr. Bhattacharya was in good standing at UVA Med School as of October 25, 2018, when he attended the AMWA Microaggression Panel Discussion.

**(During the Question and Answer Period at the AMWA Microaggression Panel Discussion, Mr. Bhattacharya Politely Challenged Certain Statements by a Professor of Psychology Before Professor Rasmussen Interrupted the Exchange in Anger)**

54. The official title of the AMWA Microaggression Seminar was "Microaggressions: Why are 'They' So Sensitive?" The AMWA website description of the event (https://www.amwa-doc.org/news/new-amwa-chapter-at-the-university-of-virginia), entitled "New AMWA Chapter at the University of Virginia — First Event a Success!" (**Exhibit 1**), conflates "microaggression" with "gender harassment" and "gender inequity," describing it as follows:

> One of the goals for University of Virginia AMWA Chapter's first semester as a chapter was to highlight the micro-aggressions female medical students and providers can face in the workplace, and subsequently equip our classmates with tools to both handle these issues in the moment as well as report them. We approached this in two ways. First, we collected anonymous stories of micro-aggressions/gender harassment from medical students at UVA, and got an amazing, yet terribly sad, volume of responses. We collected all the stories and put up a display in our student lounge so that our classmates could read the responses and reflect on them. Second, we arranged a panel of three incredible female faculty to speak on micro-aggressions and how they handle them in the workplace. Dr. Beverly Adams, a psychology professor from the College of Arts and Sciences opened up our lecture by discussing the history, definitions, and her personal research on micro-aggressions. This was followed by Dr. Nora Kern and Dr. Sara Rasmussen, two powerhouse female surgeons at UVA discussing their personal experiences with gender inequity as healthcare providers. Our event was attended by members of all classes, and caught the attention of our college deans and directors of education, prompting discussion within our administration about harassment and how we can handle it better as an institution. The UVA chapter hopes that publicizing this event will help other chapters hold similar events and prompt discussion nation-wide!

55. If the reaction of Professors Kern and Rasmussen is any indication, however, the "discussion nation-wide" that AMWA's UVA Med School chapter hoped to prompt was not intended to include any questions or comments perceived as critical of the theory of

microaggression—even though it is in fact controversial.[2] Following Professor Adams' remarks, Individual Co-Conspirator opened the floor to questions and called upon Mr. Bhattacharya. His questions and comments had nothing to do with "gender harassment" or "gender inequity." Nor were the content and tone of Mr. Bhattacharya's questions and comments inappropriate as Professor Kern later claimed. The audio link of the exchange establishes that Mr. Bhattacharya's questions and comments were logical and not something that should have prompted any concern—let alone retaliation or discipline—from either UVA Med School as an institution or the Individual Co-Conspirators.

56. Mr. Bhattacharya asked four questions, as follows:

a. Question #1**:** "Hello, thank you for your presentation. I had a few questions just to clarify your definition of microaggressions. Is it a requirement to be a victim of microaggression that you are a member of a marginalized group? In the definition it just said you had to be a member of a marginalized group—in the definition you just provided it in the last slide. So that's contradictory."

b. Question #2**:** "Follow up question. Exactly how do you define marginalized and who is a marginalized group. Where does that go? I mean it seems extremely non-specific."

c. Question #3**:** **"**Third component about your definition of microaggression and how you said 'oh ha' it is distinguished from rude statements you clarified that is because the person who is receiving the microaggressions somehow knows the intention of the person who made it. Somehow knows whether or not the person is educated, whether that person actually is intentionally harming them or whether or not they are unintentionally harming

[2] *See, e.g.*, Althea Nagai, "The Pseudo-Science of Microaggressions," Academic Questions (Spring 2017) (www.nas.org/academic-questions/30/1/the_pseudo_science_of_microaggressions), attached as **Exhibit 11**.

them (1), (2) the distinguishing factor that we should also make between what a rude statement is and what you are now defining as a microaggression is that a microaggression is entirely dependent on how the person who is receiving it is reacting. It could be dependent upon a previous relationship and it is not exactly what the person is saying. So the evidence that you provided, and you said you studied this for years, which is just one anecdotal case, I mean do you have—have you studied anything else about microaggression that you know in the last few years."

d. Question #4**:** **"**Yeah but isn't it really out of my control what hurts somebody? I can't control what offends. I can punch the air, and if that makes someone mad, that's really not my problem or fault. If I punch someone in the face, and it directly hurts them, I incited at them, that is completely different. So, again, what is the basis for what you are going to tell someone that they have committed a microaggression? You hear a story from someone but how do you know that their interpretation is not subject to bias, that they do not have a prejudice towards the person that they're saying made it. I mean, where are you getting this basis from? How are you studying this? And collecting evidence on this and making presentations from it?"

57. In response to Mr. Bhattacharya's first three questions, Professor Adams took them in stride, providing answers that were logical and complete regardless of whether the entire audience found them to be persuasive. Individual Co-Conspirator Professor Rasmussen would not allow Professor Adams to answer Question #4. Instead, Professor Rasmussen interrupted, provided lengthy anecdotes about microaggressions that she had allegedly suffered as a native of West Virginia, and then—when Mr. Bhattacharya attempted to respond—raised her voice in anger and cut him off.

58. Rather than answer Question #4 or permit Professor Adams to do so, Professor Rasmussen provided the following anecdote(s) based on her personal experience:

> I am from West Virginia and on my father's side was sort of transplanted to West Virginia but my mother's side has been from West Virginia since the 1700s. And growing up, I was privileged enough to be able to go out of state to attend summer camps, and a rejoining refrain I heard all the time was oh you don't sound like you're from West Virginia. Or immediately lots of harmless jokes like oh but you are wearing shoes, oh but you are here at this math camp, oh but you're a girl, why are you bothering to get a …. These were all. You could argue it was said in good fun by people who don't know what they are saying. I grew up innocent to that and never pushed back on it but I tell you when I got to residency and I saw how people started thinking less of me because I was from a rural state. I began to understand the impact of these microaggressions. It doesn't matter. You have to learn to uncouple the intent of what you are saying and the impact it has on the audience. And you have to have a responsibility on the impact of your actions. And if you make a statement that someone considers insensitive, the first thing you can say is oh my gosh that it wasn't my intent. But don't get frustrated with that person for bringing it to your attention.

59. In response to Professor Rasmussen, Mr. Bhattacharya stated: "I have to respond to that because I never talked about getting frustrated at a person for making the statement. I never would condone any statements that you are making like that. What I'm saying is that what you are providing is anecdotal evidence. That's what you provided. That's what she provided."

60. At that point, Professor Rasmussen raised her voice in anger, stated as follows: "No, I think she provided a lot of citations and the literature and I'm sorry…I was just reading your body language," and then cut off Mr. Bhattacharya altogether, asking another student "Would you like to ask a question?"

**(Immediately After the AMWA Microaggression Panel Discussion, the Two AMWA Members Who Participated in the Panel Discussion Conspired With Dean Peterson to Retaliate Against Mr. Bhattacharya for His Questions and Comments)**

61. Beginning shortly after the October 25, 2018 Microaggression Panel Discussion—and continuing through the November 14, 2018 and November 28, 2018 ASAC meetings that

resulted in official communications from UVA Med School censuring and later suspending Mr. Bhattacharya—the Individual Co-Conspirators collaborated with one another, with the UVA Med School Defendants, and with other UVA Med School faculty members and students who shared their personal ideology. The objective of the foregoing conspiracy was to punish Mr. Bhattacharya for his questions and comments during the AMWA Microaggression Panel Discussion and to deter others from questioning or challenging the ideology of the Individual Co-Conspirators. Dean Peterson also injected herself into the functions of ASAC for the improper purpose of abusing its disciplinary powers for personal reasons.

62. The conduct in furtherance of this conspiracy included:

a. emails from Dean Peterson to Mr. Bhattacharya that resulted in an October 31, 2018 meeting between her and Mr. Bhattacharya;

b. inappropriate and unprofessional communications among Professor Kern, Professor Rasmussen, and Dean Peterson with one another and third parties before and after the October 31, 2018 meeting between Mr. Bhattacharya and Dean Peterson, and before and after the November 14, 2018 and November 28, 2018 ASAC meetings in which Professor Kern participated and which Dean Peterson attended as a "guest" even though she was not a member of the Committee;

c. the surreptitious submission by Professor Kern of a "Professionalism Concern Card" to Mr. Bhattacharya's UVA Med School student file and the wrongful concealment of that submission by Professor Kern, Dean Peterson, and other UVA Med School Defendants—including Dean Densmore—who had a duty to disclose it to Mr. Bhattacharya; and

d. orchestrating the November 14, 2018 and November 28, 2018 ASAC meetings described herein and the discipline against Mr. Bhattacharya that resulted from these meetings.

The evidence of this conspiracy includes email and text message traffic to and from Professor Rasmussen, Professor Kern, Dean Peterson, the UVA Med School Defendants, and others within UVA Med School to which Mr. Bhattacharya does not have access. The Individual Co-Conspirators, the UVA Med School Defendants, and UVA Med School had a duty to preserve and hopefully have preserved such evidence. To the extent that the Individual Co-Conspirators, the UVA Med School Defendants, and UVA Med School destroyed rather than preserved such evidence, Mr. Bhattacharya is entitled to adverse inferences with respect to the conspiracy.

63. In furtherance of the conspiracy to violate Mr. Bhattacharya's civil rights described herein, at 2:59 p.m. on October 25, 2018, Dean Peterson sent Mr. Bhattacharya the email attached as **Exhibit 12** stating:

> Kieran, I was at the noontime "Microaggressions" panel today and observed your discomfort with the speaker's perspective on the topic. Would you like to come share your thoughts with me? I think I can provide some perspective that will reassure you about what you are and are not responsible for in interactions that could be uncomfortable even when that's not intended. If you'd prefer to talk with your own college dean, that's fine too. I simply want to help you understand and be able to cope with unintended consequences of conversations. Dr. Peterson

64. Before receiving Dean Peterson's October 25, 2018 email, Mr. Bhattacharya had never met or hand any other direct contact with Dean Peterson. The reference to "your own college dean" was to Dean Densmore, who—pursuant to UVA Med School's Policy on Academic and Professional Advancement—was responsible for addressing Professor Kern's Professionalism Concern Card with Mr. Bhattacharya and documenting that discussion. Although Mr. Bhattacharya

never had any prior communications with Dean Peterson, she had—unbeknownst to Mr. Bhattacharya at the time—been in contact with Professors Kern and Rasmussen and others about Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion.

65. By email that same day, October 25, 2018 at 4:30 p.m. (**Exhibit 12**), Mr. Bhattacharya responded to Dean Peterson's October 25, 2018 as follows:

> Your observed discomfort of me from wherever you sat was not at all how I felt. I was quite happy that the panel gave me so much time to engage with them about the semantics regarding the comparison of microaggressions and barbs. I have no problems with anyone on the panel; I simply wanted to give them some basic challenges regarding the topic. And I understand that there is a wide range of acceptable interpretations on this. I would be happy to meet with you at your convenience to discuss this further.

Dean Peterson's response later that day stated in pertinent part: "Kieran, I understand. I don't know you at all so I may have misinterpreted your challenges to the speaker." The exchange closed with an agreement for the two of them to meet in Dean Peterson's Student Health office at 4 p.m. on October 31, 2018.

66. Once the meeting with Dean Peterson had been set, at 9:04 p.m. on October 25, 2018, Professor Kern issued the Professionalism Concern Card against Mr. Bhattacharya attached as **Exhibit 13** (the "Second Professionalism Concern Card"). Professor Kern was a speaker at the AMWA Microaggression Panel Discussion who called on Mr. Bhattacharya to ask questions after the presentation but did not respond to any of his questions or comments—at least not to his face.

67. The Second Professionalism Concern Card against Mr. Bhattacharya identified relevant areas of concern as "Respect for Others" and "Respect for Differences," referred to Mr. Bhattacharya as "this student" and "med student," and described the basis for it as follows:

> For a AMWA session, we held a panel on microaggression. Myself [sic] and 2 other faculty members were invited guests. This student asked a series of questions that were quite antagonistic toward the

> panel. He pressed on and stated one faculty member was being contradictory. His level of frustration/anger seemed to escalate until another faculty member defused the situation by calling on another student for questions. I am shocked that a med student would show so little respect toward faculty members. It worries me how he will do on wards.

68. The supporting commentary from Professor Kern in the Second Professionalism Concern Card against Mr. Bhattacharya does not directly quote Mr. Bhattacharya, Professor Rasmussen, or Professor Adams from the 5 minutes and 20 seconds of available audio discussion among these three individuals.

69. The Second Professionalism Concern Card stated that Professor Kern had not discussed her concerns with Plaintiff and that she did not feel uncomfortable discussing her concerns with Mr. Bhattacharya. When she issued the Professional Concern Card on October 25, 2018, Professor Kern did not disclose that she had reported its issuance to anyone other than the registrar at UVA Medical School who was the standard recipient of such concern card notifications at the email address som-studentaffairs@virgina.edu. In fact, however, Professor Kern disclosed her submission of the Professionalism Concern Card to others—including the other Individual Co-Conspirators—who used this information to punish Mr. Bhattacharya for his questions and comments at the AMWA Microaggression Panel Discussion with which they took issue. This Professionalism Concern Card was not made available to Mr. Bhattacharya until 56 days after its issuance as part of his medical student file that he received on December 20, 2018 following his suspension from UVA Med School on November 29, 2018.

70. Professor Kern never notified Mr. Bhattacharya of the issuance of the Second Professionalism Concern Card and never spoke with him about it. In fact, Mr. Bhattacharya has no recollection of ever having spoken to Professor Kern at any time during his enrollment at UVA

Medical School. Nor has Professor Kern ever contacted Mr. Bhattacharya or been contacted by Mr. Bhattacharya for any reason during his enrollment at UVA Medical School.

71. The day after Professor Kern submitted the Professionalism Concern Card to Mr. Bhattacharya's medical student file, Mr. Bhattacharya received an email from Dean Densmore—the member of the UVA Med School faculty and administration who, under UVA Med School's policies and procedures, was required to discuss the Professionalism Concern Card with Mr. Bhattacharya and document the discussion. In fact, he never did so that day or at any other time. On October 26, 2018 at 1:12 p.m., Dean Densmore sent Mr. Bhattacharya the e-mail attached as **Exhibit 14** stating: "Hi Kieran, I just wanted to check in and see how you are doing. I hope the semester is going well. I'd like to meet next week if you have some time. JJD."

72. In response, Mr. Bhattacharya agreed to meet with Dean Densmore at noon on November 1, 2018.

73. The day before his scheduled meeting with Dean Densmore, Mr. Bhattacharya met with Dean Peterson as previously agreed. The meeting between Mr. Bhattacharya and Dean Peterson took place on October 31, 2018 beginning at 4 p.m. and lasted for approximately one hour. In addition to prying into Mr. Bhattacharya's personal life, Dean Peterson spent much of their time together trying to ascertain Mr. Bhattacharya's views on various social and political issues—including sexual assault, affirmative action, and the election of President Trump. Dean Peterson barely mentioned the ostensible purpose of the meeting, *i.e.*, to discuss Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion. At no time during Mr. Bhattacharya's hour-long meeting with Dean Peterson on October 31, 2018 did she tell him about the Professionalism Concern Card against him that had been issued by Professor Kern.

74.     The following day, November 1, 2018, Mr. Bhattacharya met with Dean Densmore as previously agreed.  The meeting took place in Dean Densmore's personal office starting at noon on November 1, 2018 and lasted approximately ten minutes.  The scope of the discussion with Dean Densmore was limited to study strategies for UVA Med School's "summative exams" and the United States Medical Licensing Exam ("USMLE") Step 1, which Mr. Bhattacharya was scheduled to take on February 1, 2019.

75.     At no time during this November 1, 2018 meeting—or at any other time—did Dean Densmore inform Mr. Bhattacharya that Professor Kern had issued a Professionalism Concern Card against him.  In fact, Dean Densmore did not even raise the issue of Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion during the November 1, 2018 meeting.  Toward the end of the meeting, Mr. Bhattacharya himself brought up the fact that he had been called to meet with Dean Peterson the preceding day.  At that point, Dean Densmore informed Mr. Bhattacharya that he was aware of the discussions with Dean Peterson.  Dean Densmore did not inform Mr. Bhattacharya that he had anything to be concerned about.  Again, he did not let Mr. Bhattacharya know about Professor Kern's Professionalism Concern Card.

76.     After meeting with Dean Densmore on November 1, 2018, Mr. Bhattacharya had no reason to know, believe, or even suspect that there were any Professionalism Concern Cards in his medical student file.  In fact, however, two Professionalism Concern Cards had been placed in Mr. Bhattacharya's medical student file at the time of the November 1, 2018 meeting with Dean Densmore.  Dean Densmore knew of the two Professionalism Concern Cards but affirmatively concealed their existence from Mr. Bhattacharya.  By doing so, Dean Densmore violated UVA Med School's Policy on Academic and Professional Advancement.  No member of the faculty or administration of UVA Medical School ever informed Mr. Bhattacharya of and/or discussed with

Mr. Bhattacharya these two serious, punitive administrative decisions. In both the First Professionalism Concern Card (**Exhibit 10**) issued by an attendance monitor and the Second Professionalism Concern Card issued by Professor Kern (**Exhibit 13**), the attendance monitor and Professor Kern did not report feeling uncomfortable discussing their concerns with Mr. Bhattacharya. Nevertheless, neither the attendance monitor nor Professor Kern ever reported these punitive administrative actions to Mr. Bhattacharya. Nor did they arrange to have anyone else report either or both of these Professionalism Concern Cards to Mr. Bhattacharya at any time during Mr. Bhattacharya's enrollment at UVA Med School.

**(Based Upon the "Professionalism Concerns" Raised by Professor Kern, UVA Med School's Academic Standards and Achievement Committee Cited and Ultimately Suspended Mr. Bhattacharya for Being "Antagonistic")**

77. Unbeknownst to Mr. Bhattacharya at the time, UVA Med School's Academic Standards and Achievement Committee ("ASAC" or the "Committee") met on November 14, 2018 from 4:03 p.m. until 5:18 p.m. to discuss the Second Professionalism Concern Card that had been issued by Professor Kern, according to the meeting minutes attached as **Exhibit 15**.

78. The November 14, 2018 Committee was presided over by UVA Med School Defendant Dr. Tucker, whose publicly available biography is attached as **Exhibit 16**. Dr. Tucker serves as the Chair of the Committee according to the UVA Med School Office of Student Affairs publication attached as **Exhibit 17.**

79. Individual Co-Conspirator Professor Kern, whose publicly available biography is attached as **Exhibit 18**, was also present at the November 14, 2018 Committee meeting. The November 14, 2018 meeting minutes listed Professor Kern as a voting member of the Committee even though the Committee was voting upon Professor Kern's Professionalism Concern Card that day.

80. In addition to Dr. Tucker and Professor Kern, the voting members of the Committee present for the November 14, 2018 meeting, according to the minutes, were as follows:

a. Brian Behm, M.D., whose publicly available biography is attached as **Exhibit 19**;

b. Donna Chen, M.D., M.P.H., whose publicly available biography is attached as **Exhibit 20**;

c. Stephen Culp, M.D., Ph.D., whose publicly available biography is attached as **Exhibit 21**;

d. Pamila Herrington, M.D., whose publicly available biography is attached as **Exhibit 22**;

e. Nicolas Intagliata, M.D. whose publicly available biography is attached as **Exhibit 23**;

f. Wilson Miller, Ph.D., whose publicly available biography is attached as **Exhibit 24**;

g. Barnett R Nathan, M.D., whose publicly available biography is attached as **Exhibit 25**;

h. Catherine Shaffrey, M.D., whose publicly available biography is attached as **Exhibit 26**; and

i. two students at UVA Medical School.

81. Of the twelve voting members present for the November 14, 2018 ASAC meeting, Mr. Bhattacharya had previously had no contact with ten of them—including Dr. Tucker, who presided over the November 14, 2018 Committee meeting, and Professor Kern, whose "Professionalism Concern Card" was the subject of the meeting.

82. In addition to the voting members present for the November 14, 2018 ASAC meeting, the minutes reflect that the following four "non-voting members" were also present:

a. Megan Bray, M.D. ("Dr. Bray"), whose publicly available biography is attached as **Exhibit 27**;

b. Lesley Thomas, Assistant Dean for Medical Education ("Dean Thomas"), who—according to publicly available information from UVA Med School's webpage on "Medical Student Advocacy" attached as **Exhibit 28**—is "available to hear reports of mistreatment," including "reports involv[ing] sexism, racism, harassment, discrimination, verbal abuse, and other types of unprofessional behavior directed at students;"

c. Selina Noramly, Ph.D., Director of Academic Enhancement at UVA Med School ("Dr. Noramly"), whose publicly available biography is attached as **Exhibit 29**; and

d. Katherine Yates ("Ms. Yates"), who—according to the UVA Med School Office of Student Affairs contact list attached as **Exhibit 30**—is the registrar and should be contacted for "Clerkship Scheduling, Enrollment, Leaving and Returning from the University."

83. Of the four non-voting members present for the November 14, 2018 ASAC meeting, Mr. Bhattacharya had previously had contact with only two of them—one of whom was the registrar, Ms. Yates, who kept the meeting minutes.

84. In addition to the voting and non-voting members present for the November 14, 2018 ASAC meeting, the minutes reflect that the following four "guests" were also present:

a. David Charles Lewis, who is identified as "Business Intelligence Lead" on the excerpt from UVA Med School's website attached as **Exhibit 31**;

      b. Lynne Fleming, Esq., whose available publicly available biography (**Exhibit 32**) identifies her as Associate University Counsel at the Office of the University Counsel at the University of Virginia;

c. Dean Peterson, whose publicly available biography is attached as **Exhibit 33**: and

d. Sean Reed, M.D. ("Dr. Reed"), whose publicly available biography is attached as **Exhibit 34.**

85. At no time on or before November 14, 2018 UVA Med School ASAC meeting did Mr. Bhattacharya have any direct contact or communication with any of the "guests" who were present except for Dean Peterson. Mr. Bhattacharya's communications with Dean Peterson had been limited to the October 31, 2018 meeting described herein and the email exchanges preceding that meeting.

86. The minutes of the November 14, 2018 UVA Med School ASAC meeting (**Exhibit 35**), under the heading "Professionalism Issue," state as follows:

> Kieran Bhattacharya (Densmore) concern card for professionalism
>
> – From the reporter: "For a AMWA session, we held a panel on micro aggression. I and 2 other faculty members were invited guests. This student asked a series of questions that were quite antagonistic toward the panel. He pressed on and stated one faculty member was being contradictory. His level of frustration/anger seemed to escalate until another faculty member defused the situation by calling on another student for questions. I am shocked that a med student would show so little respect toward faculty members. It worries me how he will do on wards."
>
> – One prior concern card (attendance of a mandatory activity).

87. Except for the reference to the prior concern card, the November 14, 2018 meeting minutes track—verbatim—the language of the October 25, 2018 Professional Concern Card submitted by Professor Kern.

88. According to the minutes of the November 14, 2018 UVA Med School ASAC meeting: "The committee voted unanimously to send Kieran Bhattacharya (Densmore) a letter reminding him of the importance in medicine to show respect to all: colleagues, other staff, and patients and families." The minutes do not reflect that Professor Kern abstained from voting as she was required to do.

89. At no time during the November 14, 2018 meeting of the UVA Med School ASAC meeting did those present listen to any portion of the audio of the October 25, 2018 AMWA Microaggression Panel Discussion.

90. At no time before or immediately after the November 14, 2018 ASAC meeting did anyone present inform Mr. Bhattacharya that Dr. Kern had issued a Professionalism Concern Card against him on October 25, 2018.

91. On November 15, 2018, Dr. Tucker sent Mr. Bhattacharya correspondence by email (**Exhibit 36)** stating as follows:

> Dear Mr. Bhattacharya:
>
> The Academic Standards and Achievement Committee has received notice of a concern about your behavior at a recent AMWA panel. It was thought to be unnecessarily antagonistic and disrespectful. Certainly, people may have different opinions on various issues, but they need to express them in appropriate ways.
>
> It is always important in medicine to show respect to all: colleagues, other staff, and patients and their families. We would suggest that you consider getting counseling in order to work on your skills of being able to express yourself appropriately.
>
> Sincerely,
>
> Jim B. Tucker, M.D.

92. Dr. Tucker's recommendation that Mr. Bhattacharya "consider getting counseling" set forth in the November 15, 2018 letter on behalf on UVA Med School ASAC was not included in

the reminder that was unanimously voted upon by the Committee members on November 14, 2018 according to the minutes taken by Ms. Yates.

93. Dr. Tucker's November 15, 2018 correspondence failed to disclose to Mr. Bhattacharya that it was Professor Kern who viewed Mr. Bhattacharya's conduct as "antagonistic."

94. Dr. Tucker's November 15, 2018 correspondence failed to disclose to Mr. Bhattacharya that Professor Kern had issued a Professionalism Concern Card against him on October 25, 2018.

95. Professor Kern was the only individual who was witness to the AMWA Microaggression Panel Discussion on October 25, 2018 and also present and voting at the UVA Med School ASAC meeting on November 14, 2018.

96. At 5:45 p.m. on November 26, 2018, Dean Densmore sent Mr. Bhattacharya an email (**Exhibit 37)** stating: "Hi Kieran, I hope you're doing well. We were notified by the Dean of Students Office that you were heading back to Charlottesville. You will need to be seen by CAPS before you can return to classes. Let me know if you have questions. Best regards, JJD."

97. "CAPS" is an acronym for "Counseling and Psychological Services" at the Elson Student Health Center of the University of Virginia. To receive treatment from CAPS, Mr. Bhattacharya would have to provide express written consent.

98. In response to Dean Densmore's email, Mr. Bhattacharya sent Dean Densmore an email (**Exhibit 37)** at 5:00 a.m. on November 27, 2018 stating as follows:

> How can it be legal to mandate psychiatric evaluations to continue my education? "Public colleges responding to clearly protected expressions by prescribing mandatory counseling or psychological evaluation violates both students' rights to free speech and private conscience." – Kelly Sarabyn, FIRE (Foundation for Individual Rights in Education).

The Foundation for Individual Rights in Education ("FIRE") was founded in 1999 and describes its mission (**Exhibit 38)** as being to "defend and sustain individual rights of students and faculty members at America's colleges and universities. These rights include freedom of speech, freedom of association, due process, legal equality, religious liberty, and sanctity of conscience." The quotation in Mr. Bhattacharya's November 27, 2018 email came from a December 31, 2007 article (**Exhibit 39**) by Kelly Sarabyn, an author for and contributor to FIRE, which stated in part:

> Public colleges responding to clearly protected expressions by prescribing mandatory counseling or psychological evaluation violates both students' rights to free speech and private conscience. Unlike a suspension from school, which offends a student's right to free speech, ordering psychological counseling for protected speech compounds the offense to the Constitution by violating both a student's right to free speech and his right to private conscience.

99. UVA Med School apparently was not persuaded by the foregoing constitutional arguments. Instead, at 11:48 a.m. on November 27, 2018, Randolph J. Canterbury, M.D. ("Dr. Canterbury") sent Mr. Bhattacharya an email (**Exhibit 40**) stating:

> Dear Kieran, I have heard from Dr. Densmore that you have been calling him about your desire to return to classes today. You are not cleared to return to class until you have been evaluated by CAPS at the Student Health Service. Do not attend your CPD group today. Make an appointment with CAPS to initiate the medical clearance process. Best regards, R.J. Canterbury, M.D.

According to his publicly available biography (**Exhibit 41**), Dr. Canterbury is Professor of Psychiatric Medicine and Internal Medicine as well as Senior Associate Dean for Education at UVA Med School.

100. At the time of Dr. Canterbury's November 27, 2018 email and even to this day, Mr. Bhattacharya did not and still does not have any understanding or awareness as to the "medical clearance process" to which Dr. Canterbury's email referred.

101. The following day, November 28, 2018, at 1:00 p.m., UVA Med School Registrar Ms. Yates sent Mr. Bhattacharya an email (**Exhibit 42**) stating as follows:

> Hello Kieran, The Academic Standards and Achievement Committee will be meeting today to discuss your current enrollment status. You are invited to attend to share your insights with the committee. The meeting will take place at 5:00 in the Claude Moore Medical Education Building, in room G 165. Please arrive at 5:00. The meeting has some business to attend to before they have questions for you, so we will have someone waiting to let you know when they are ready for you. Please reply and let us know if you will be in attendance. Thank you, Katherine M. Yates.

102. Within less than half an hour, at 1:28 p.m. on November 28, 2018, Mr. Bhattacharya responded to Ms. Yates with an email (**Exhibit 43**) stating: "Who exactly will be present? Do you normally just give students 3 hours to prepare after indirectly threatening to kick them from medical school? Why exactly is my enrollment status up for discussion?" Mr. Bhattacharya also asked whether he could have a lawyer present. Thereafter, Mr. Bhattacharya attempted to retain counsel but did not have sufficient time to obtain legal advice before the disciplinary hearing that afternoon or have a lawyer present.

103. The only written response from Ms. Yates or anyone else at UVA Med School in advance of the ASAC meeting scheduled for 5:00 p.m. that day took the form of an email from Ms. Yates sent at 1:37 p.m. on November 28, 2018 (**Exhibit 44**) stating as follows:

> Hello, Here is the information about the committee's make up policies, and procedures:
>
> https://med.virginia.edu/student-affairs/policies/academic-standards-and-achievement-committee-operating-procedures/
>
> https://med.virginia.edu/student-affairs/policies/academic-standards-achievement-policy/
>
> https://med.virginia.edu/school-administration/standing-committees/academic-standards-and-achievement-committee/
>
> Regards,

Katherine

104. The materials linked to Ms. Yates' email sent at 1:37 p.m. on November 28, 2018 included the following provisions of the Academic Standards and Achievement Committee Operating Procedures (**Exhibit 45**) (the "Operating Procedures") that the Committee violated that day:

a. The introductory paragraph of the Operating Procedures concludes with the following statement:

> Comprised of faculty in the school of medicine who do not assign final grades to students as well as student representatives, the role of ASAC is to promote students who meet these required standards, to recommend remedial action for those who do not meet the standards, and to suspend or recommend dismissal of those students who are incapable or who choose not to meet the required standards of achievement within the time frame allotted for completion of the M.D. degree.

It also declares:

> It is the policy of the School of Medicine to give every qualified and committed student the opportunity to graduate; however, the School reserves the right, in its sole and absolute discretion, to make judgments about who has or has not demonstrated the necessary qualification to earn a degree and to practice medicine competently.

b. Section III.A. of the Operating Procedures states as follows:

> Official votes may be taken when a quorum (greater than 50% of the voting members) is present. All motions, except for a motion of dismissal, shall pass by a majority of voting members present. A motion for dismissal requires a two-thirds majority of voting members. Voting members will be recused from participating and shall not be counted in the quorum if they have (or have had) a personal, mentoring, or advising relationship with the student beyond that of usual student-faculty contact in class or clinical environment. This restriction includes faculty mentors on research projects, family members, anyone with a physician-patient relationship with the student or other personal relationship.

    c.       Section III.D. of the Operating Procedures states as follows:

> When there are severe professional transgressions or the Committee is to consider serious actions such as suspension or dismissal of a student, a final vote should be taken by the Committee only after the student has been offered an opportunity to address the Committee in person, and to respond to questions from members of the Committee. Also, the student should be notified by the Committee in writing as to what the major concerns of the Committee are likely to be during the coming meeting. Assistant Deans for Student Affairs (College Deans) as well as relevant teaching faculty may also be invited to attend committee meetings to provide information.

    d.       The beginning portion of Section III.H. of the Operating Procedures states as follows: "When a student addresses the Committee, the student will act as his or her own advocate."

    e.       Section III.J. of the Operating Procedures states as follows:

> Guidelines and policies written in advance cannot cover all possible scenarios. When in doubt, the Committee should be guided by several important general principles, including: fairness to students; following due process; promptness of action and notification; maintaining confidentiality when possible; and, balancing the best interests of each student with its obligations to the Faculty, patients and to society to train graduates who demonstrate the highest standards or academic performance and conduct.

105.    At no time before its November 28, 2018 meeting did the Committee comply with Paragraph 3 of the "Professionalism" subsection of UVA Med School's Policy on Academic and Professional Advancement (**Exhibit 9**).  Paragraph 3 states as follows: "Any breach of professionalism resulting in a recorded observation, e.g., Professionalism Concern Card, letter, written report, etc., must be addressed with the student by their [sic] college dean and documentation of the discussion must be recorded."  At the time that Mr. Bhattacharya received an email from Ms. Yates at 1:00 p.m. on November 28, 2018 notifying him of the ASAC disciplinary hearing that

afternoon, Mr. Bhattacharya had received no specific written notice or documentation from his college dean or anyone else at UVA Med School regarding either or both of the Professionalism Concern Cards that were in his student file at the time.

106.    Although Section III.D. of the Operating Procedures states that in instances in which the Committee is to consider serious actions such as suspension or dismissal of the student, "the student should be notified by the Committee in writing as to what the major concerns of the Committee are likely to be during the coming meeting," Mr. Bhattacharya received no written notification of specific allegations in which he was expected to explain and/or defend against in advocating for his continued enrollment status at UVA Med School.  As a result, Mr. Bhattacharya was effectively denied the opportunity to advocate for himself at the November 28, 2018 disciplinary hearing as contemplated by Section III.H. of the Operating Procedures.  Moreover, the Committee cited Mr. Bhattacharya's effort to advocate for himself as a basis for his suspension from UVA Med School.

107.    Although Mr. Bhattacharya responded to Ms. Yates within 28 minutes of receiving notice of the ASAC disciplinary hearing scheduled for later that day (November 28, 2018) and asked specifically what its rationale was, neither Ms. Yates nor any other member of the faculty or administration at UVA Med School provided Mr. Bhattacharya with any written statement of the allegations against him during the remaining 3 hours and 32 minutes that he had to prepare to advocate for his continued enrollment status at UVA Med School.

108.    In addition to his efforts to obtain additional information from Ms. Yates about the ASAC disciplinary hearing scheduled for the afternoon of November 28, 2018, Mr. Bhattacharya made nine telephone phone calls between 1:23 p.m. and 2:06 p.m. that day (**Exhibit 46**) to various members of the UVA Med School faculty and administration attempting to obtain more information

about what to expect and the potential consequences of the upcoming ASAC disciplinary hearing. During this time, Mr. Bhattacharya also attempted to contact an attorney in Charlottesville with whom he had previously spoken but was unable to obtain any advice before the ASAC disciplinary hearing or arrange for her presence on such short notice.

109. In response to one of these calls, Mr. Bhattacharya received a telephone call at 2:12 p.m. on November 28, 2018 (**Exhibit 46**) from Sean Reed, M.D. ("Dr. Reed"). During the call, Dr. Reed informed Mr. Bhattacharya of a Professionalism Concern Card resulting from Mr. Bhattacharya's participation in the AMWA Microaggression Panel Discussion. In response to Mr. Bhattacharya's statement that he was unaware of having received any Professionalism Concern Cards, Dr. Reed expressed doubt that Mr. Bhattacharya had not received such notice. In fact, at no time before or at the November 28, 2018 ASAC disciplinary hearing did Dr. Reed or any other member of the faculty or administration of UVA Med School provide Mr. Bhattacharya with a copy of the Professionalism Concern Card that had been issued against him or a description of its contents. During his November 28, 2018 telephone call with Dr. Reed, Mr. Bhattacharya informed Dr. Reed that he intended to record the meeting. Dr. Reed thanked Mr. Bhattacharya for providing this information.

110. At 5:00 p.m. on November 28, 2018, Mr. Bhattacharya attended the ASAC disciplinary hearing to discuss his enrollment status. Mr. Bhattacharya documented the hearing via a photograph of the attendees (**Exhibit 47**) and an audio recording of the entire disciplinary hearing (**Exhibit 48**). The hearing lasted approximately 28 minutes.

111. During the November 28, 2018 ASAC disciplinary hearing against Mr. Bhattacharya, Dr. Tucker referred—erroneously—to the statement in Dean Densmore's November 26, 2018 email (**Exhibit 37**) that "[y]ou will need to be seen by CAPS" as merely a "recommendation" to be

evaluated by CAPS. Dr. Tucker refused to acknowledge his error even after Mr. Bhattacharya read the contents of the email out loud during the ASAC disciplinary hearing.

112. According to the minutes of the November 28, 2018 ASAC disciplinary hearing (**Exhibit 49**), twelve voting members of the Committee were present. Nine of the twelve ASAC members present at the November 28, 2018 ASAC disciplinary hearing had also been present at the November 14, 2018 ASAC meeting. According to the minutes, these nine members were—in addition to UVA Med School Defendant Dr. Tucker and Individual Co-Conspirator Professor Kern—Dr. Behm, Dr. Chen, Dr. Intagliata, Dr. Miller, Dr. Nathan, Dr. Shaffrey, and one fourth year medical student. However, Professor Kern is not in the photograph of attendees that Mr. Bhattacharya took on November 28, 2018 (**Exhibit 47**).

113. The other three voting members of the Committee present at the November 28, 2018 ASAC disciplinary hearing were:

a. Roger Abounader, MD, PhD ("Dr. Abounader"), whose publicly available biography is attached as **Exhibit 50**;

b. Robert Bloodgood, PhD ("Dr. Bloodgood"), whose publicly available biography is attached as **Exhibit 51**; and

c. Sharon Diamond-Myrsten, M.D. ("Dr. Diamond-Myrsten"), whose publicly available biography is attached as **Exhibit 52**.

Before the November 28, 2018 ASAC disciplinary hearing, Mr. Bhattacharya had no prior direct contact with Dr. Abounader, Dr. Bloodgood, or Dr. Diamond-Myrsten.

114. According to the minutes of the November 28, 2018 ASAC disciplinary hearing (**Exhibit 49**), four non-voting members of the Committee members who had been present for the November 15, 2018 ASAC meeting were also present during the November 28, 2018 disciplinary

hearing, along with three "guests," as follows: Plaintiff Mr. Bhattacharya, Individual Co-Conspirator Dean Peterson, and University Counsel Ms. Fleming.

115. The minutes of the November 28, 2018 ASAC disciplinary hearing (**Exhibit 49**) contain five paragraphs under the heading "Professionalism Issues," as follows.

a. The first paragraph states:

> The committee convened to discuss concerning behaviors exhibited by Kieran Bhattacharya (Densmore) over the past weeks after members of the Technical Standards Committee determined that the concerns were best addressed by the ASAC. The ASAC convened an emergency meeting on Wednesday November 28. Kieran Bhattacharya was invited to attend the meeting to discuss his enrollment status and did attend the meeting.

b. The second paragraph states: "The student was given the opportunity to address concerns about his behavior. He asked questions of members of the Committee and responded to questions asked by the Committee."

c. The third paragraph states: "The Committee reviewed the list of technical standards that are acknowledged annually by the students especially the Emotional, Attitudinal and Behavioral Skills."

d. The fourth paragraph states:

> Because the student's behavior demonstrated his inability to meet several of those standards. Dr. Nathan made a motion to suspend Kieran Bhattacharya (Densmore) from the School of Medicine, effective immediately, with the option to petition to return in August of 2019. Dr. Behm seconded this motion. The committee voted unanimously to accept the motion. Nora Kern did not vote on the matter, as personal business required her to leave before the vote was executed.[3]

[3] Although the minutes do not reflect this, Professor Kern was not present for any portion of the November 28, 2018 meeting that Mr. Bhattacharya attended.

e. The fifth paragraph states: "A letter will be sent to Kieran Bhattacharya's email, informing him of the decision and explaining the appeals process."

116. On November 29, 2018 at 5:30 p.m., Dr. Tucker sent Mr. Bhattacharya an email (**Exhibit 53**) stating as follows:

> Dear Mr. Bhattacharya, See the attached letter from the Academic Standards and Achievement Committee. Please know that Drs. Densmore, Reed, and Keeley are available for support. Also, in response to your question about ID access, suspension involves a deactivation of your ID per standard university procedure, but you can make an appointment should you need to meet with your college dean.

The attachment to the November 29, 2018 email was correspondence notifying Mr. Bhattacharya that he was being suspended from UVA Med School for a period of one year (the "November 29, 2018 Suspension Letter").

117. The November 29, 2018 Suspension Letter consisted of four paragraphs.

a. The first paragraph stated:

> The Academic Standards and Achievement Committee ("ASAC") convened on November 28, 2018 to review concerns that your recent behavior in various settings demonstrated a failure to comply with the School of Medicine's Technical Standards. Members of the Technical Standards Committee determined that the concerns about your recent behavior should be addressed by the Academic Standards and Achievement Committee. The ASAC decided that the nature of the concerns necessitated the calling of an emergency meeting. You were notified of that meeting on November 28, 2018 and provided an opportunity to be heard and to respond to the concerns about your recent behavior. You attended the meeting, asked and answered questions and presented information.

b. The second paragraph stated:

> The Academic Standards and Achievement Committee has determined that your aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday, constitute a violation of the School of

    Medicine's Technical Standards that are found at: https://med.virginia.edu/student-affairs/policies/technical-standards/

c. The third paragraph stated:

> Those Standards, in relevant and as part of professionalism, state that each student is responsible for: Demonstrating self-awareness and self-analysis of one's emotional state and reactions; Modulating affect under adverse and stressful conditions and fatigue; Establishing effective working relationships with faculty, other professionals and students in a variety of environments; and Communicating in a non-judgmental way with persons whose beliefs and understandings differ from one's own.

d. The fourth paragraph stated:

> The committee has voted to suspend you from school, effective immediately. You may apply for readmission to return to class no earlier than August, 2019. A student suspended for academic, professionalism, or administrative reasons or a student who has academic or Technical Standards/professionalism deficiencies at the time of suspension must be reviewed and approved to return by ASAC. The committee would only approve your return if you are able to provide evidence that further violations of the Technical Standards are unlikely to occur. You may appeal your suspension, in accordance with the SOM's appeal procedures.

118. Other than the November 29, 2018 Suspension Letter, the only documentation that Mr. Bhattacharya ever received from UVA Med School about "aggressive and inappropriate interactions" that allegedly occurred in "public settings" was the November 15, 2018 correspondence attached as **Exhibit 36** regarding his questions and comments during the October 25, 2018 AWMA Microaggression Panel Discussion. The November 29, 2018 Suspension Letter provided no details as to the nature, timing, location, severity, and/or identity of individuals reporting the "multiple aggressive and inappropriate interactions" that Mr. Bhattacharya had allegedly exhibited in "public settings."

119. During the November 28, 2018 ASAC disciplinary hearing, no member of the Committee made any specific reference to or allegation of Mr. Bhattacharya's alleged "multiple aggressive and inappropriate interactions" in multiple "public settings." Nor did the Committee listen to the audio recording of what had transpired at the October 25, 2018 AMWA Microaggression Panel Discussion. Instead, the Committee relied upon the inaccurate and ideologically motivated characterization of Mr. Bhattacharya's October 25, 2018 questions and comments by Individual Co-Conspirator Professor Kern—who also happened to be a member of the Committee. Professor Kern was, along with Individual Co-Conspirator Dean Peterson, present for the Committee meetings on November 14, 2018 and November 28, 2018.

120. Before the November 28, 2018 ASAC disciplinary hearing, Mr. Bhattacharya was not provided with written documentation from UVA Med School of the "aggressive and inappropriate interactions" that Mr. Bhattacharya allegedly had "with [his] dean" (or the identity of the dean with whom he allegedly had such interaction).

121. The November 29, 2018 Suspension Letter asserted that Mr. Bhattacharya's conduct at the November 28, 2018 ASAC disciplinary hearing itself qualified as "aggressive and inappropriate" but provided no details to support this allegation. The minutes of the November 28, 2018 ASAC disciplinary hearing provide no support for the characterization in the November 29, 2018 Suspension Letter that Mr. Bhattacharya's efforts to defend his continuing enrollment in UVA Med School had violated the Technical Standards by being "aggressive and inappropriate."

**(Mr. Bhattacharya Was Prevented From Appealing His Suspension and Applying for Readmission to UVA Med School Because the University Issued a Four-Year "No Trespass" Order Against Him)**

122. The November 29, 2018 Suspension Letter advised Mr. Bhattacharya that he had the option of appealing the suspension if he filed his appeal within 14 days. As a practical matter,

however, UVA Med School denied Mr. Bhattacharya the right to appeal his suspension and to apply for readmission based on a series of subterfuges, as described in the paragraphs that follow.

123. Mr. Bhattacharya timely filed an appeal of his suspension by sending an email to Dr. Densmore on December 4, 2018 (**Exhibit 54**) to initiate the appeals process. Dr. Densmore responded by email later that day (**Exhibit 55**) acknowledging that the appeal process had been initiated and that additional information would be provided to Mr. Bhattacharya relating to the appeal.

124. University Counsel, Ms. Fleming, did not acknowledge Mr. Bhattacharya's interest in completing the appeals process until after he sent information about what had happened to him to a website known as Secure Drop. The SecureDrop website (https://securedrop.org) describes itself as "an open source whistleblower submission system that media organizations and NGOs can install to securely accept documents from anonymous sources. It was originally created by the late Aaron Swartz and is now managed by Freedom of the Press Foundation." The website goes on to state that SecureDrop "is used at over 50 news organizations worldwide, including The New York Times, The Washington Post, ProPublica, The New Yorker, and The Intercept."

125. Had UVA Med School complied with its own appeal procedures (**Exhibit 56**), UVA Med School have conducted a hearing "as soon as possible (ordinarily within 14 days)" to review the suspension decision made on November 28, 2018. In this case, however, Mr. Bhattacharya did not receive his medical student file to prosecute his appeal until December 20, 2018—16 days after he initiated the appeals process. It was at this time, more than three weeks after his one-year suspension, that Mr. Bhattacharya was able to review for the very first time the Professional Concerns Card(s) in his medical student file. Mr. Bhattacharya did not receive his medical student file until several days after sending information about his situation to SecureDrop.

126. Meanwhile, on December 7, 2018—three days after Mr. Bhattacharya had initiated an appeal of his suspension—he received notice (**Exhibit 57**) from the National Board of Medical Examiners ("NBME") that his registration for the United States Medical Licensing Exam Step 1 ("USMLE Step 1") had been cancelled because he was no longer enrolled at UVA Med School. Previously, Mr. Bhattacharya had been scheduled to take the USMLE Step 1 on February 1, 2019.

127. On December 30, 2018, University Defendant Ms. Fielding—who was at the time a Police Captain with the University of Virginia Police Department (the "UVA Police Department")—called Mr. Bhattacharya and advised him that the UVA Police Department was issuing him a "no trespass" warning. Mr. Bhattacharya requested additional information regarding the reason that he would no longer be welcome on the grounds of the University of Virginia, including UVA Med School. Ms. Fielding was unable or unwilling to provide any additional information regarding the reason for the "no trespass" warning.

128. On January 2, 2019, Ms. Fielding sent a letter to Mr. Bhattacharya attaching a no trespass warning (the "No Trespass Order") issued by the UVA Police Department (**Exhibit 58**). The No Trespass Order did not state the basis for its directive that "You are not to come on **any** property or facility on the Grounds of the University of Virginia **except** as a patient at the University of Virginia Medical Center." (*Id.*) (emphasis in original).

129. On January 3, 2019, Dr. Densmore sent Mr. Bhattacharya an email (**Exhibit 59**) stating that UVA Med School would "not be able to proceed with an appeal to your suspension at this time" because of the No Trespass Order.

130. Thereafter, Mr. Bhattacharya contacted Ms. Fielding and requested that the No Trespass Order be rescinded. Ms. Fielding was unable or unwilling to do so and—once again—provided no information about the basis for the No Trespass Order. Ms. Fielding asserted that there

was no possibility of appeal at that time. At that point Mr. Bhattacharya said "thank you very much." Ms. Fielding said "what?" In response, Mr. Bhattacharya again said "thank you very much" and ended the phone call.

131. Following the telephone call, Ms. Fielding sent Mr. Bhattacharya an email (**Exhibit 60**) stating in part as follows:

> I am writing as a follow up to my call to you at 4:10 p.m. (EST), today. You hung up on me before I could relay all of the information that I was calling to discuss with you. As I stated on the phone, **the trespass notice issued to you is active and will remain active for the period of time indicated on the form.** If you violate it, you will be arrested.

(emphasis in original).

132. On July 7, 2019, Mr. Bhattacharya sent an email to UVA Med School Defendants Dr. Tucker and Dean Densmore inquiring about the possibility of readmission to the UVA Med School 2019. By email dated July 12, 2019 (**Exhibit 61**), Dean Densmore responded as follows:

> Dear Kieran, Thank you for your email. The School of Medicine is aware that a no trespass order was issued by the University Police Department (UPD) on January 2, 2019 prohibiting you from University Grounds for four years. We cannot address your request for readmission while a no trespass order is in effect. Should you have questions about that order, you will need to contact UPD directly. Best regards, John Densmore.

133. Therefore, Mr. Bhattacharya sought to have the UVA Police Department rescind the No Trespass Order and sought additional information from the UVA Police Department about the rationale for it.

134. Following a telephone conversation with Ms. Fielding, Mr. Bhattacharya sent Ms. Fielding an email on July 13, 2019 at 6:16 a.m. (**Exhibit 62**). The email, on which Dean Densmore was shown as a cc: recipient, stated as follows:

> During your time as Support Services Captain between December 2018-January 2019, you issued an NTO in my name (Kieran Ravi Bhattacharya) and failed to provide me with any specific reasons for

> this order in your initial phone call before issuing it; failed to provide me with any specific reason in the PDF that was forwarded to me by John Densmore; failed to provide me with any specific reasons in the physical document sent to the Haiku Post post office addressed 70 Hale Pili Way, failed to me [sic] with provide me with any specific reasons during the attached e-mail follow up phone call that is mentioned below, failed to provide any specific reasons during the phone call mentioned in this e-mail, and finally: you failed to mention in this e-mail that I ended this phone call after twice providing you a curt parting gesture of "Thank you very much" after you in a rather emotionally charged tone announced to me that there was no possibility for appeal…and unsurprisingly failed again to provide me with specific details as to what exactly I was appealing in this NTO. I had already for this more than than [sic] 6 months ago. I again ask that you provide me with specific reasons in painstaking detail, dissolve the order immediately, or do both to avoid the costly risk of taking this matter, should it be found to be applicable under Diversity Jurisdiction (28 U.S.C. ss 1332) to the United States District Court for the Western District of Virginia at the earliest convenience of any and all parties involved.
>
> Sincerely,
> Kieran Ravi Bhattacharya

135. On July 18, 2019, Mr. Bhattacharya received an email from Ms. Fielding, who had subsequently been promoted to Deputy Chief of the UVA Police Department. The July 18, 2019 letter (**Exhibit 63**) stated that the No Trespass Order was issued "after concerns were raised about comments on a chat room that were perceived as threats." The UVA Police Department did not identify who made the "comments," the identity of the "chat room" on which the comments had been posted, the substance of the comments, and why they were "perceived as threats." Mr. Bhattacharya was provided this scanty information seven months after receiving the No Trespass Order.

136. By email that same day (**Exhibit 64**), Mr. Bhattacharya asked Ms. Fielding the following questions, to which she never responded:

> -What comments specifically?
> -Who threatened who exactly?

> -What chat room are you referring to and how does this at all relate to my or anyone else's safety at UVA?
> -What community are you referring to?
> -Who exactly, if not you, told you to issue this NTO?
> -Why was none of this mentioned on the NTO issued more than 6 months ago?
> -Was UPD able to make any arrests towards any of these perceived threats?
> -What exactly do you mean when you affirm that the NTO was not a result of the suspension?

137. On July 21, 2019, Mr. Bhattacharya submitted an appeal of the No Trespass Order to the UVA Police Department (**Exhibit 65**). By way of a letter from the UVA Police Department dated August 7, 2019 (**Exhibit 66**), the University upheld the No Trespass Order, stating:

> The conduct you directed at members of the university community compromised safety and security and caused fear. You are not permitted to be on University property throughout the duration of this trespass warning, which is currently effective until January 2, 2023. This decision is final.

To this day, Mr. Bhattacharya has not been told what conduct on his part supposedly "compromised safety and security and caused fear." Absent this information, no neutral third party—such as this Court—can decide whether the University had any objectively reasonable basis for the No Trespass Order or whether it was part of the continuing effort by UVA Med School—at the behest of the Individual Co-Conspirators and others—to punish Mr. Bhattacharya for questions and comments during the October 25, 2018 AMWA Microaggression Panel Discussion with which certain individuals took issue.

138. The No Trespass Order from the UVA Police Department does not expire until January 3, 2023. By the time that the No Trespass Order is scheduled to expire, Mr. Bhattacharya would be unable to complete his medical education even if his appeal were granted. UVA Med School's Policy on Academic and Professional Advancement states: "All requirements for

graduation, including passing Step 1, Step 2 CK and Step 2 CS of the USMLE, must be completed within six years from the date the student matriculated in the School of Medicine."

**COUNT I**

**DEPRIVATION OF FIRST AMENDENT RIGHT OF FREE SPEECH IN VIOLATION OF 42 U.S.C. § 1983**

**(Against the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators)**

139. Mr. Bhattacharya hereby incorporates by reference the allegations of Paragraphs 1 through 138 of this Complaint.

140. By asking questions and making comments at the October 25, 2018 AMWA Microaggression Panel Discussion, attempting to defend himself at the November 28, 2018 ASAC disciplinary hearing, and seeking to obtain press coverage of his wrongful suspension as described in the foregoing Paragraph 139, Mr. Bhattacharya engaged in speech that is protected by the First Amendment to the U.S. Constitution (the "Protected Free Speech").

141. By virtue of the Fourteenth Amendment to the U.S. Constitution, the University of Virginia—including UVA Med School—is subject to the First Amendment because it is an agency of the Commonwealth of Virginia.

142. By engaging in the conduct described in the foregoing Paragraph 139—including retaliating against Mr. Bhattacharya for his Protected Free Speech by, *inter alia*, issuing a Professionalism Concern Card, disciplining Mr. Bhattacharya for his Protected Free Speech, requiring Mr. Bhattacharya to undergo counseling and obtain "medical clearance" as a prerequisite for remaining enrolled at UVA Med School, suspending Mr. Bhattacharya from UVA Med School, and preventing Mr. Bhattacharya from appealing his suspension or applying for readmission to UVA Med School by issuing and refusing to remove the No Trespass Order (collectively, the "Retaliatory

Conduct")—the University of Virginia (including University Defendant Ms. Fielding), UVA Med School (including the UVA Med School Defendants), and the Individual Co-Conspirators infringed upon, chilled, and otherwise adversely affected Mr. Bhattacharya's Protected Free Speech.

143. The Retaliatory Conduct would deter a person of normal resolve from speaking freely at the University of Virginia, including UVA Med School.

144. The Retaliatory Conduct is causally related to Mr. Bhattacharya's Protected Free Speech. The UVA Med School Defendants and Individual Co-Conspirators have admitted this causal relationship in writing, *e.g.*, in the following documents:

a. Professor Kern's Professionalism Concern Card (**Exhibit 13**);

b. the minutes of the November 14, 2018 ASAC meeting (**Exhibit 15**);

c. the November 15, 2018 ASAC correspondence (**Exhibit 36**);

d. the minutes of the November 28, 2018 ASAC disciplinary hearing (**Exhibit 49**); and

e. the November 29, 2018 Suspension Letter (**Exhibit 53**).

145. But for Mr. Bhattacharya's Protected Free Speech, the University of Virginia (including University Defendant Ms. Fielding), UVA Med School (including the UVA Med School Defendants), and the Individual Co-Conspirators would not have engaged in the Retaliatory Conduct.

146. By engaging in the Retaliatory Conduct, the University of Virginia (including University Defendant Ms. Fielding), UVA Med School (including the UVA Med School Defendants), and the Individual Co-Conspirators violated 42 U.S.C. § 1983—making the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators liable for injunctive relief, damages, and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

## COUNT II

### DEPRIVATION OF FOURTEENTH AMENDENT RIGHT OF DUE PROCESS IN VIOLATION OF 42 U.S.C. § 1983

**(Against the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators)**

147. Mr. Bhattacharya hereby incorporates by reference the allegations of Paragraphs 1 through 146 of this Complaint.

148. Mr. Bhattacharya had a liberty interest in the Protected Free Speech.

149. Mr. Bhattacharya had a liberty and property interest in continuing his medical studies at UVA Med School and pursuing the practice of medicine.

150. By engaging in the Retaliatory Conduct, the University of Virginia (including University Defendant Ms. Fielding), UVA Med School (including the UVA Med School Defendants), and the Individual Co-Conspirators deprived Mr. Bhattacharya of the liberty and property interests described in Paragraphs 148 and 149.

151. By engaging in the Retaliatory Conduct, the University of Virginia (including University Defendant Ms. Fielding), UVA Med School (including the UVA Med School Defendants), and the Individual Co-Conspirators violated the policies and procedures of UVA Med School, including the Academic Standards and Achievement Committee Operating Procedures (**Exhibit 45**), by, *inter alia*:

a. failing to notify Mr. Bhattacharya of the issuance of the Professionalism Concern Card issued by Professor Kern and affirmatively concealing its existence from him;

b. failing to have Mr. Bhattacharya's "college dean" discuss the Professionalism Concern Card with him and document the discussion;

    c. failing to provide Mr. Bhattacharya with the Professionalism Concern Card issued by Professor Kern in advance of the November 28, 2018 ASAC disciplinary hearing or at any other time before his suspension from UVA Med School;

d. allowing Professor Kern to vote at the November 14, 2018 ASAC meeting;

e. failing to provide Mr. Bhattacharya with sufficient notice of the November 28, 2018 ASAC disciplinary hearing or its basis for Mr. Bhattacharya to have adequate opportunity to defend himself; and

f. using Mr. Bhattacharya's defense of himself at the November 28, 2018 ASAC disciplinary hearing as a basis for his suspension as set forth in the November 29, 2019 Suspension Letter.

152. The conduct described in the foregoing Paragraphs 147 through 151 deprived Mr. Bhattacharya of notice and opportunity to be heard and otherwise deprived Mr. Bhattacharya of due process in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983—making the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators liable for injunctive relief, damages, and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**COUNT III**

**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATIONOF 42 U.S.C. § 1985(3)**

**(Against the Individual Co-Conspirators)**

153. Mr. Bhattacharya hereby incorporates by reference the allegations of Paragraphs 1 through 152 of this Complaint.

154. By engaging in the conduct described in Paragraph 153 of this Complaint, the Individual Co-Conspirators conspired with one another and with the University of Virginia

(including University Defendant Ms. Fielding) and UVA Med School (including the UVA Med School Defendants) to deprive Mr. Bhattacharya of the equal enjoyment of rights secured to all by law, including the First and Fourteenth Amendments to the U.S. Constitution (the "Unlawful Conspiracy").

155. The Individual Co-Conspirators had a meeting of the minds to deprive Mr. Bhattacharya of his First and Fourteenth Amendment rights.

156. The Unlawful Conspiracy was motivated by a specific class-based, invidiously discriminatory animus against anyone who disagrees with the ideological views of the Individual Co-Conspirators and the sponsors of the AMWA Microaggression Panel Discussion.

157. The Unlawful Conspiracy resulted in injury to Mr. Bhattacharya—including deprivation of his First and Fourteenth Amendment rights, his suspension from UVA Med School, and his inability to pursue his chosen profession of medicine.

158. The conduct described in the foregoing Paragraphs 153 through 157 of this Complaint violated 42 U.S.C. § 1985(3), entitling Mr. Bhattacharya to recover damages from the Individual Co-Conspirators.

**COUNT IV**

**CONSPIRACY TO INJURE MR. BHATTACHARYA IN HIS TRADE, BUSINESS, AND PROFESSION**

**(Against the Individual Co-Conspirators)**

159. Mr. Bhattacharya hereby incorporates by reference the allegations of Paragraphs 1 through 158 of this Complaint.

160. With the willful and malicious intention of injuring Mr. Bhattacharya in his trade, business, and profession, the Individual Co-Conspirators conspired with one another and with third parties. These third parties with whom the Individual Co-Conspirators conspired in violation of

Virginia Code § 18.2-499 include the UVA Med School Defendants, Dean Thomas, and other individuals who disagreed with Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion. The unlawful purposes of the foregoing conspiracy included depriving Mr. Bhattacharya of the ability to complete his medical school studies and enter the medical profession.

161. Although the Individual Co-Conspirators are employees of UVA Med School, they had an independent personal stake in the conspiracy that went beyond—and was actually contrary to—their duties and responsibilities as members of the faculty and administration of UVA Med School. The Individual Co-Conspirators' independent personal stake included their allegiance to the AMWA chapter for which the AMWA Microaggression Panel Discussion was the first scheduled event, and their ideology.

162. By engaging in the conduct described in Paragraphs 159 through 161 of this Complaint, the Individual Co-Conspirators acted intentionally, purposefully, and without legal justification to injure Mr. Bhattacharya in his trade, business, and profession.

163. The damage caused by the combined acts of the Individual Co-Conspirators described in Paragraphs 159 through 161 of this Complaint was committed in pursuance of the foregoing conspiracy.

164. As a result of the conspiracy described in Paragraphs 159 through 161 of this Complaint, Mr. Bhattacharya is entitled by virtue of Virginia Code § 18.2-500 to three times his actual damages (including tuition and expenses associated with his attendance at UVA Med School and the net present value of his anticipated earnings as a physician), together with prejudgment and post-judgment interest thereon, and reasonable attorneys' fees and costs.

165. Va. Code § 18.2-500 also allows for the issuance of injunctive relief to prevent the continuance of the conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kieran Bhattacharya prays that the Court:

(A) Order the University Defendants to dissolve the existing No Trespass Order issued by the UVA Police Department;

(B) Order the UVA Med School Defendants to remove all references to the Professionalism Concern Cards, the AMWA Microaggression Panel Discussion, and his suspension from Mr. Bhattacharya's medical student file;

(C) Order the UVA Med School Defendants to allow Mr. Bhattacharya to re-enroll in UVA Med School as soon as possible and to deem his matriculation date, for purposes of fulfilling UVA Med School's graduation requirements, to be the date of reenrollment;

(D) Order the UVA Med School Defendants to allow Mr. Bhattacharya to register for the USMLE Step 1 as soon as possible by immediately notifying the NBME of Mr. Bhattacharya's enrollment status at UVA Med School;

(E) Award compensatory damages in favor of Mr. Bhattacharya for lost potential future income, harm to professional reputation, and out-of-pocket expenses against the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators;

(F) Award Mr. Bhattacharya treble damages against the Individual Co-Conspirators pursuant to Virginia Code § 18.2-500;

(G) Award Mr. Bhattacharya costs and attorneys' fees against the University Defendants, the UVA Med School Defendants, and the Individual Co-Conspirators; and

(H) Award Mr. Bhattacharya such other and further relief as this Court deems just and proper under the circumstances.

**JURY TRIAL DEMANDED**

Mr. Bhattacharya hereby demands trial by jury of all issues so triable.

Date: February 3, 2020

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: *s/ Michael J. Lockerby*
Counsel

Michael J. Lockerby (VSB No. 24003)
Jack G. Haake (VSB No. 87590)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
Email: mlockerby@foley.com
Email: jhaake@foley.com

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February, 2020, I electronically filed the foregoing FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system and will send the foregoing FIRST AMENDED COMPLAINT via email to the following counsel of record:

Madeline M. Gibson, Esq.
Assistant Attorney General
Office of the Virginia Attorney General
Commonwealth of Virginia
202 North Ninth Street
Richmond, Virginia 23219

*s/ Michael J. Lockerby*
Michael J. Lockerby (VSB No. 24003)
Jack G. Haake (VSB No. 87590)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

# EXHIBIT 2

JA259

Audio recording of AMWA Microaggression Panel Discussion on 25 October, 2018.

# EXHIBIT 9

JA261

## POLICY ON ACADEMIC AND PROFESSIONAL ADVANCEMENT

**Objective**: The purpose of this policy is to promote student academic achievement, maintain academic and professional standards (knowledge, skills, attitudes and behaviors) and achieve fairness and consistency in decisions regarding students with academic or professional deficiencies. It is the policy of the School of Medicine to give every qualified and committed student the opportunity to graduate; however, the School reserves the right, in its sole and absolute discretion, to make judgments about who has or has not demonstrated the necessary qualifications to earn the M.D. degree and to practice medicine competently.

**Outline of Policy**: All academic deficiencies, patterns of unprofessional behavior and egregious violations of professionalism will be presented to the Academic Standards and Achievement Committee (ASAC) that acts on behalf of the faculty of the School of Medicine. This policy specifies how ASAC will deal with student academic deficiencies in courses, clerkships, electives, the Clinical Practice Examination (CPX) and with failures on the United States Medical Licensing Examination (USMLE) Step 1 and Step 2 examinations, including compliance with the Standards for Academic Standing (see end of this document).

**Definition of Academic Failure**: The courses and electives in the pre-clerkship and post-clerkship phases of the Next Generation Curriculum, the Family Medicine, Perioperative Medicine and Surgical Subspecialties clerkships are graded as pass/fail (P/F); any F constitutes a failure. The other clerkships are graded with letter grades (A, B, C or F). With the exception of the Patient-Student Partnership Course, a score of 70% or higher is required for successful completion of each course and clerkship. A score lower than 70% constitutes an F; each F constitutes a failure and is documented on the official transcript and the Medical Student Performance Evaluation (MSPE). The Patient-Student Partnership Course requires a score of 80% or higher to pass. Failure to achieve an 80% in this course constitutes a failure and would likewise be documented on the official transcript and the MSPE.

**Professionalism**: Professional attitudes and behaviors are components of the 12 Competencies Required of the Contemporary Physician that enable the independent performance of the responsibilities of a physician and therefore are a requirement for the successful award of the degree of Doctor of Medicine. The School of Medicine's Professionalism Objectives (https://med.virginia.edu/ume/wp-content/uploads/sites/216/2015/09/Professionalism-objectives-clerkships3.pdf) establish general standards applicable to all students in the School of Medicine. However, it is the responsibility of the faculty and the ASAC, as appropriate, to interpret and apply the general Professionalism Objectives to specific situations when concerns are raised about student performance or behaviors.

Evaluation of professional attitudes and behaviors is an integral part of a student's assessment and generally is accomplished through observation and narrative recording. Praise/Concern Cards and written narratives are assessment tools used to describe behaviors in areas of altruism; honesty and integrity; caring, compassion and communication; respect for others; respect for differences; responsibility and accountability; excellence and scholarship; leadership and knowledge and other skills related to professionalism. These professional attitudes and behaviors are monitored and recorded throughout undergraduate medical education.

Any breach of professionalism resulting in a recorded observation, e.g., Professionalism Concern Card, letter, written report, etc., must be addressed with the student by their college dean and documentation of the discussion must be recorded. If a student receives three or more written observations of concern or is reported for two breaches of the Health Insurance Portability and Accountability Act (HIPAA), or is cited for a single egregious breach of professionalism, notice will be sent to ASAC for review. A student identified as having a pattern of unprofessional behavior may be directed to further counseling and /or to supportive remediation and/or placed on *academic warning* or *academic probation* (as defined below), or if the professional violations are severe, a student may be dismissed from school even if they have passing grades in all courses. ASAC will assess the severity of the problem, the management and the consequences, including possibly reporting the behaviors in the student's Medical Student Performance Evaluation (MSPE). Egregious behaviors, such as but not limited to assault on or threat to a patient, patient's family member, student, GME trainee or faculty member, conduct that may constitute a felony, etc., regardless of whether criminal prosecutions are initiated or pursued, will be referred immediately to ASAC, irrespective of whether previous observations of concern exist, with the recommendation for dismissal from school.

**Medical Scientist Training Program Students:** Decisions regarding academic deficiencies of MSTP students during their MD coursework are governed by the ASAC. Final decisions regarding academic deficiencies of MSTP students during their doctoral coursework are determined by the ASAC, but the decision is weighted heavily upon the recommendation of the BIMS Academic Progress and Achievement Committee (BAPAC), which acts as a subcommittee to the ASAC with respect to MSTP students. The BAPAC serves as an institutional oversight committee with representation from all Biomedical Sciences (BIMS)-affiliated degree-granting programs to ensure that individual programs have followed their processes regarding remediation and dismissal for academic deficiencies, ensuring due process for students. The BAPAC assesses whether the policies have been followed and assures fairness and consistency across the interdisciplinary programs comprising BIMS. See individual BIMS-affiliated PhD program standards and "BAPAC Operating Procedures" at http://bims.virginia.edu/bims-committee-membership/bims-academic-progress-and-achievement-committee/.

Reports of an MSTP student's unprofessional, unethical, or illegal activities or behaviors are reviewed and acted upon by the ASAC.

**MD/Public Health Sciences Dual Degree Students:** Decisions regarding academic deficiencies of PHS graduate students during their MD coursework are governed by the ASAC. Final decisions regarding academic deficiencies of PHS graduate students during their PHS coursework are determined by the ASAC, but the decision is weighted heavily upon the recommendation of the PHS Academic Promotion and Achievement Committee (PHS APAC), which acts as a subcommittee to the ASAC with respect to PHS graduate students. See SOM Bylaws, Section 8, Standing Committees, PHS Academic Promotion and Achievement Committee, https://med.virginia.edu/school-administration/wp-content/uploads/sites/304/2018/02/BYLAWS-February-21-2018.pdf.

Reports of a PHS graduate student's unprofessional, unethical, or illegal activities or behaviors are reviewed and acted upon by the ASAC.

**Grading during the Pre-clerkship phase:** The pre-clerkship phase of the Next Generation Curriculum comprises the first three semesters of the educational program. This phase consists of ten graded courses, each assigned a pass/fail grade at the end of the course:

1. Integrated Systems I (first semester)
2. Integrated Systems II (second semester)
3. Integrated Systems III (third semester)
4. Foundations of Clinical Medicine 1-A (FCM 1-A)
5. Foundations of Clinical Medicine 1-B (FCM 1-B)
6. Foundations of Clinical Medicine 1-C (FCM 1-C)
7. Patient Student Partnership 1-A (PSP 1-A)
8. Patient Student Partnership 1-B (PSP 1-B)
9. Patient Student Partnership 1-C (PSP 1-C)
10. Social Issues in Medicine (SIM) (either semester one or two during the first year).

Integrated Systems I consists of the following course components or "systems": Cells to Society, Foundations of Medicine (FoM), Cells, Blood and Cancer (CBC) and Microbes, Immunity, Transfusion and Transplantation (MITT). Integrated Systems II consists of the following course components: Musculoskeletal Integument System (MSI), Gastrointestinal System (GI) and Mind, Brain and Behavior (MBB). Integrated Systems III consists of the following course components: Cardiovascular System (CV), Pulmonary System (Pulm), Renal System, Endocrine-Reproductive System (Endo-Repro) and Hematology (Heme). In order to receive a passing grade for an integrated system course, a student must have an average score for all systems of 70% or above.

Patient Student Partnership 1 (three courses) runs in tandem with Foundations of Clinical Medicine 1 and introduces students to a longitudinal patient experience. Performance is assessed in at each semester by a P/F grade. Students must achieve an 80% or greater on the requirements for this course in order to pass.

In order to progress to the third semester of the curriculum, a student must have achieved an average score of 70% or higher on Integrated Systems I and Integrated Systems II and have received a P for FCM-1A and 1B, PSP-1A and 1B, as well as Social Issues in Medicine. Failure to meet any one of these criteria will result in a referral to ASAC for review and action. Any requirement for remediation must be completed prior to the beginning of the third semester.

Successful completion of the third semester requires an average score of 70% or higher in the Integrated Systems III course, and a grade of P in FCM-1C and PSP-1C. Failure to meet any one of these criteria will result in a referral to the ASAC for review and action.

**Summative Examinations**: A passing score on a summative examination within a course is 70%. Students achieving less than 70% on a summative assessment will be referred to ASAC with the recommendation from the respective system leader for remediation. If the student is in

good standing professionally, has done well formatively, and has no other academic deficiencies, ASAC generally will allow the student to take a reexamination. The reexamination score, if passing, will be an additional score factored into the cumulative total. If the summative examination is failed the second time with a score lower than 70%, ASAC will review the student's performance again and decide either to allow the student to make a third attempt at a reexamination or repeat the course. The final decision regarding reexamination rests with ASAC. Failure to pass a summative on the third attempt constitutes a failure of the system and therefore failure of the course. Any approved summative reexaminations must be taken according to the approved make-up schedule for the current academic year at the next available examination time as determined by ASAC. A student failing 5 total summative examinations in the pre-clerkship phase of the curriculum will be referred to ASAC and will be considered for dismissal. A student who does not take an examination and who does not have an excused absence, will receive a professionalism concern card and a referral to ASAC.

With regard to anatomy practical examinations, a score of 70% or higher is passing. Individual anatomy practical exam scores factor into the respective organ system grades, e.g., an anatomy practical examination score in MSI factors into the MSI grade and an MBB anatomy practical exam score factors into the MBB grade. Anatomy practical examinations also are graded as a thread across the Integrated System in which they occur, i.e., Integrated Systems II or III. A cumulative score of 70% or higher across the anatomy thread is required to progress to the clerkship phase of the curriculum. Students achieving a cumulative anatomy score of less than 70% for Integrated Systems II (consisting of anatomy practical examinations from MSI, GI and MBB) or Integrated System III (consisting of anatomy practical examinations from CV, Pulmonary, Renal and Endo-Repro) will be referred to ASAC and require remediation. Any remediation required by ASAC will include all anatomy from the semester failed, and the format for reexamination will be at the discretion of the anatomy director. Reexamination must occur by the end of the semester break immediately following the course in which the failure occurred. With approval of the Anatomy Director, remediation may occur during spring break, early summer break or fall break.

One component of assessment in FCM-1 is OSCEs. Students must achieve a passing grade on the OSCEs in FCM to pass the FCM course. A passing graded on the FCM-1B OSCE is required to pass FCM-1B and to progress to the third semester. A passing grade on the FCM-1C OSCE is required to pass FCM-1C and begin clerkships. A failure on the FCM 1 B or 1C OSCE is referred to ASAC for review and action. Typically, ASAC allows a student in good standing to remediate and retest. A second failure of the FCM OSCEs results in an F in the corresponding course and the student will be referred to ASAC for review and action. The FCM-1B OSCE must be passed prior to starting the third semester and the FCM-1C OSCE must be passed prior to starting clerkships.

Completion of the National Board of Medical Examiners Comprehensive Basic Science Exam in the third semester is a requirement of the pre-clerkship curriculum.

**Promotion to Clerkships:** Students who achieve a passing grade in Integrated Systems I, Integrated Systems II, Integrated Systems III, FCM-1A-B-C, PSP-1A-B-C, SIM, have taken USMLE Step 1 and have achieved a passing grade in the Transitions Course may progress to

clerkships. If notification of a failing score on Step 1 is received after a student has begun a clerkship, they generally will be allowed to complete that clerkship. The student will be removed from subsequent clerkships until a retest is completed.

Students in the dual MD/PhD degree program must take USMLE Step 1 prior to entering the PhD portion of the program and must pass Step 1 in order to continue in the graduate program.

**Remediation of Academic Deficiencies in Clerkships**: A passing cumulative numerical score of 70% must be achieved in order to pass a clerkship. The score achieved correlates to an assigned letter grade of A+, A, A-, B+, B, B-, C+, C or C-. Earning a cumulative score of less than 70% constitutes a failure and automatic referral to ASAC, and also requires repeating the clerkship and all its requirements. Even if a student numerically achieves a passing score of 70%, the Clerkship Director may decline to pass a student based upon poor clinical performance and/or concerning issues of professionalism. In this circumstance, the clerkship director will make a recommendation to ASAC regarding their concerns with appropriate documentation. If failure is upheld by ASAC, remediation likely will include repeating the clerkship. When a clerkship requires repeating it will be noted in the MSPE, and the student's transcript will show two enrollments in the same course with two separately determined and reported grades.

**USMLE Subject Examinations in Clerkships**: A passing score on each subject (shelf) examination will be set by the annual recommended passing score determined by the National Board of Medical Examiners. Not achieving this score constitutes a failure of the examination and therefore a deficiency for the clerkship. The student will be assigned an Incomplete on their transcript until the deficiency is removed when the examination is passed. Students who do not achieve a passing score on a shelf examination will be referred to ASAC with the recommendation from the clerkship director for appropriate remediation. Generally, if the student performed well clinically and is in good standing professionally, the student would be able to take a reexamination unless the score on the subject examination is so low that removing the deficiency still will result in a failure. The reexamination grade, if passing, will remove the deficiency from the course; however, the initial score is the only one that will be factored into the final clerkship grade. The final grade then will replace the Incomplete on the transcript. A second failure of the shelf exam will be referred to ASAC for review and action. Should ASAC permit the student to take the shelf examination a third time and the student passes, the clerkship deficiency will be satisfied; however, the first score is still the only one calculated into the clerkship grade. Failure to pass a shelf examination on the third attempt constitutes a failure of the clerkship and will be referred to ASAC for review and action. If approved, shelf reexaminations will occur at the completion of the student's third year. By special arrangement with the clerkship director, a shelf re-examination may be scheduled during summer break, Thanksgiving break, or during the winter holiday break. Depending upon the timing of the clerkship with the deficiency, a student with an outstanding deficiency in a single clerkship may be allowed to continue into the elective portion of the curriculum but will not be allowed to take an elective in the discipline of the clerkship deficiency until the deficiency has been remediated. If a student fails shelf examinations in three different clerkships, the student will be referred to ASAC for review and, unless there are mitigating circumstances, will be considered for dismissal from school.

**Remediation of Academic Deficiencies in the Post-clerkship Phase:** A passing cumulative score of 70% must be achieved to pass the Geriatrics Clerkship in fourth year. Earning less than a 70% constitutes a failure and requires repeating the clerkship and all its requirements. The ACE is a required single 4-week clinical experience selected by the student and is graded Pass/Fail. Students must achieve a passing grade in this course to receive credit. Remediation of a deficiency in an ACE is required. A student must pass the Geriatrics clerkship as well as their selected ACE to meet graduation requirements. Remediation of a deficiency in an elective is not required, however the student will not receive credit toward the MD degree for that elective. A student must meet the elective credit requirements in order to fulfill graduation requirements.

**Incompletes and University Withdrawals**: An Incomplete may be assigned to a course or clerkship on a student's transcript should an emergent situation, e.g., death of immediate family member, illness or accident, etc., arise after the student successfully has completed the majority of the requirements. An Incomplete cannot be assigned as a grade when the student is failing the course or clerkship. When the requirements have been completed, the Incomplete will be removed and replaced by the course or clerkship grade. An Incomplete grade will become an *F* one year after it is issued if not remediated. Grades of *F* will not be changed after remediation.

Should a student need extended time off from medical school, interrupting a course or clerkship, the student must request a leave of absence or withdrawal per School of Medicine Leave of Absence, Withdrawal, Readmission Policy. Any course or clerkship in progress will be graded as *W*. If and when the student is readmitted from a withdrawal, ASAC will determine how much, if any, of the course or clerkship will need to be repeated. The grade of *W* will remain on the student's transcript.

**Graduation**: In order receive the recommendation from ASAC for graduation and conferral of the MD degree, a student must satisfy all academic and professionalism graduation requirements with no outstanding deficiencies. In addition, passing scores on the CPX, USMLE Step 1, USMLE Step 2 Clinical Knowledge and the USMLE Step 2 Clinical Skills are required for graduation.

**Steps 1 and 2 of United States Medical Licensing Examination (USMLE):** In order to advance to the clerkships, a student must successfully complete the pre-clerkship curriculum and must have taken USMLE Step 1 at least 10 days before the Transition course. A student may begin the clerkships pending notification of their Step 1 score. If notification of a failing score on Step 1 is received after a student has begun a clerkship, they generally will be allowed to complete that clerkship. The student then will discontinue clerkships in order to concentrate on retaking and passing Step 1. The Step 1 examination may be taken no more than three times. Three failures of Step 1 will result in the student's dismissal from the School of Medicine, without recourse to the appeals process. The college deans in consultation with the Director of Academic Enhancement may determine, based on a student's academic performance, that the student is at risk of failing USMLE Step 1 and may recommend that the student delay sitting for the examination in order to have more time for preparation. In this circumstance, the student will complete the Transitions Course so the student can return to the clerkships upon satisfactory completion of USMLE Step 1. After successful completion of the core clerkships, the student must take both parts of Step 2 of the USMLE (2 CK and 2 CS). Passing both Step 2

CK and Step 2 CS is required for graduation. Students are allowed a total of three attempts to pass each of the two Step 2 examinations; failure to pass either Step 2 examination for a third time will result in dismissal from medical school, without recourse to the appeals process. Students must pass all required clerkships and take USMLE Step 2 CS and 2 CK no later than November 1 of their last academic year in medical school to ensure an opportunity for remediation prior to residency match and graduation, should a failure occur.

**Clinical Performance Examination**: Students are required to take and pass the Clinical Practice Examination (CPX) after the completion of the clerkships. This is a requirement for graduation. Students failing the CPX are referred to ASAC and should review their performance and address their deficiencies prior to retaking the examination.

**Overall Time Limits**: All requirements for graduation, including passing Step 1, Step 2 CK and Step 2 CS of the USMLE, must be completed within six years from the date the student matriculated in the School of Medicine. For students in the MD/PhD dual degree program, graduation requirements must be completed within nine years; students in the MD/JD program must complete graduation requirements within eight years; for students in other dual degree programs graduation requirements must be completed within seven years. Exceptions to this policy are rare and must be approved by ASAC.

**Testing Accommodations:** When testing accommodations have been granted to a student by the SOM, a student must share their desire to invoke that accommodation at least two weeks prior to a summative assessment and at the time of orientation for clerkships.

**Procedure for Handling a Deficiency or Failure**:

- The Course, System or Clerkship Director notifies both the student and the School of Medicine Registrar/college dean of deficiency or failure.
- The student is withdrawn from clinical responsibilities (if applicable).
- The student is required to meet with their college dean. At this meeting, the Policy on Academic and Professional Advancement is discussed and the student is notified of the next ASAC meeting. The ASAC meetings usually occur monthly. In the pre-clerkship phase of the curriculum, a student who scores less than 70% on a summative assessment shall meet with the system leader and/or the Director of Academic Enhancement to discuss learning strategies to improve performance.
- The student shall be reviewed by ASAC.
- Students may submit a written statement, results of a drug test, results of a Counseling and Psychological Services (CAPS) screening or any other relevant data to ASAC and/or request to meet in person with ASAC.
- All students subject to dismissal or who may be required to repeat an academic period will be offered the opportunity to meet with ASAC.
- ASAC reviews each student's academic record, takes into account any other relevant information or data and recommendations from a Course or Clerkship Director, and determines remediation or other action based upon the Policy on Academic and Professional Advancement.
- The Chair of ASAC notifies the student in writing of the Committee's decision.

- If applicable and approved, the Office of Student Affairs schedules the remediation required by ASAC in collaboration with Course or Clerkship Directors taking into account the make-up schedule for that academic year.
- In the cases where a student is asked to repeat an entire segment of the curriculum or is dismissed from the School of Medicine, they can appeal the decision of ASAC following the Appeals Process described below.
- ASAC decisions regarding promotion or graduation due to failure to pass Steps 1, 2 CK or 2 CS of the USMLE or dismissal resulting from three failures cannot be appealed.
- The SOM registrar shall communicate with student, college dean and ASAC to confirm when deficiencies or examination failures have been remediated.

**Academic Appeals Process:**

- If ASAC requires a dismissal from the School of Medicine or repetition of an academic period, the notification to the student will provide the option of an appeal and a description of the appeals process. This option will not be granted to those students failing to pass Steps 1, 2 CK or 2 CS of the USMLE within three attempts. The student may formally request that the Associate Dean for Student Affairs appoint an ad hoc Appeals Committee to review the decision of ASAC. The student must file their appeal no later than 14 days from receipt of notification or lose the right to appeal.
- The three-person ad hoc Appeals Committee is drawn from a pool of 10 faculty members named by the Associate Dean for Student Affairs, none of whom are current members of ASAC. The student selects one member, the Senior Associate Dean for Education selects one member, and the Dean selects the third member (who chairs the ad hoc Appeals Committee). The Associate Dean for Student Affairs serves as staff liaison, ex officio, without vote.
- The student is permitted to inspect their entire medical school file, including any material upon which the decision of ASAC was based.
- The student is permitted to have counsel, to submit affidavits and exhibits and to summon witnesses at the Appeals Committee hearing. Legal counsel may be present to provide advice, but legal counsel will not be permitted to participate actively in presentation of testimony, examination/cross examination of witnesses or oral arguments.
- The Appeals Committee is to conduct a hearing as soon as possible (ordinarily within 14 days) and will uphold, modify or reverse the decision(s) of ASAC.
- The Appeals Committee will provide the student with all the evidence against him or her, including the academic grades and written evaluations, and will base its recommendations upon the evidence presented at the hearing.
- The Appeals Committee will send its decision, along with a written record of its proceedings, to the Dean of the School of Medicine.
- The decision of the Appeals Committee will be final.

**General Operational Procedures:** ASAC will schedule monthly meetings and will also meet on an as-needed basis (within 10 days of a report, e.g., egregious behavior) to address immediate issues. ASAC may be superseded by University policy or legal action.

**Definitions of Academic Status:** A student may be placed on *academic warning* by ASAC during a specified period in which the student's academic and/or professional deficiencies must be remediated or they will risk progression to *academic probation.*

A student may be placed on *academic probation* by ASAC during a specified period in which the student's academic progress and/or professional behaviors are monitored closely with periodic required reviews by ASAC. The student remains enrolled during this time. The committee may appoint specific faculty to implement remediation and evaluate the student's progress. If deficiencies or failures are not rectified according to the remediation plan set by ASAC within the specified period of time, the student is subject to dismissal from the University. *Academic probation* is reflected on the MSPE.

**Definitions of Academic Standing:** A student is in *good academic standing* if the student makes satisfactory progress, defined as progressing at a pace of completion allowing the student to meet academic requirements to achieve the Doctor of Medicine degree within a six-year limit (150% of the program length) set from matriculation.

A student is *not in good academic standing* if making inadequate academic progress that threatens their ability to achieve the Doctor of Medicine degree within a six-year limit set from matriculation as determined by the Academic Standards and Achievement Committee.

The following are standards for each phase of the curriculum to determine whether or not students are maintaining Satisfactory Academic Progress (SAP).

**Pre-clerkship Phase:** A student is declared *not in good academic standing* if they have failures or an unsatisfactory in any course or system that are not successfully remediated at the time of the first day of class, third semester.

A student is declared *not in good academic standing* if they have >2 course Incompletes and/or Withdrawals and if the Incompletes or Withdrawals are not remedied at the time of the first day of class, third semester.

A student is declared *not in good academic standing* if they have failures or an unsatisfactory in any course that are not successfully remediated at the time of the first day of period one of the clerkships.

A student is declared *not in good academic standing* if they have >2 course Incompletes and/or Withdrawals and if the Incompletes or Withdrawals are not remedied at the time of the first day of period one of the clerkships.

A student is declared *not in good academic standing* if they do not pass USMLE Step 1 on the second attempt.

**Clerkship Phase:** A student is declared not *in good academic standing* if they have >2 deficiencies (failing 2 or more clerkships with an *F*) and if the deficiencies are not remediated at the time of four months from the end of the 48-week clerkship period.

A student is declared *not in good academic standing* if they have >2 Incompletes or Withdrawals and if the Incompletes and/or Withdrawals are not remedied at the time of four months from the end of the 48-week clerkship period.

A student is declared *not in good academic standing* if they fail to pass either part of USMLE Step 2 on the second attempt.

**The Post- Clerkship (Elective) Phase:** The student is declared *not in good academic standing* if not making adequate progress to achieve the Doctor of Medicine degree within the time limit set from matriculation.

The student is declared *not in good academic standing* if they receive two or more unsatisfactory elective evaluations.

**Original Effective Date April 1, 2012. Revised August 15, 2013; August 15, 2014; July 2015; November, 2015 ; July, 2016; June 2017 and July 2018**

# EXHIBIT 65

JA272

Gloria Graham
Associate Vice President
Safety and Security
GloriaGraham@virginia.edu
**P** 434.243.2173 **C** 312.206.3785

Appeal to Trespass Warning (21 July, 2019)

I, Kieran Bhattacharya, do understand that this appeal is being submitted well after 5 calendar days from when NTO was issued by Deputy Chief Melissa Fielding on January 2, 2019.

1. Kieran Ravi Bhattacharya, 256 72nd Street, Brooklyn, NY, 11209; 1-808-344-9928; kieran0696@gmail.com

2. January 2, 2019. 2018-33244

3. I believe that it would be in the best interest of UPD to dissolve the NTO without prejudice.

4. I was not explicitly informed by any employee or student of UVA (or anyone else) as to what conduct precipitated the Trespass Warning when it was delivered to me by e-mail on January 2, 2019 or by physical mail on or around January 6, 2019. However, on July 18, Deputy Chief Melissa Fielding sent the following by email:

"Dear Kieran,

The NTO was issued by the University of Virginia Police Department after concerns were raised about comments on a chat room that were perceived as threats. These comments raised safety concerns for the community and UPD issued the NTO. The NTO was not a result of your suspension. The NTO remains in effect. The appeal process is printed on the back page of the NTO. As previously communicated, you did not appeal the NTO as specified in the appeal process instructions.

Sincerely,
Melissa"

It is not clear to me what Deputy Chief Melissa Fielding was referring to by the term "chat room." I have posted on publicly available internet forums which include but are not limited to the following: StudentDoctorNetwork, CollegeConfidential, Reddit, 4chan, and others. The term "internet forum" itself is ambiguous and difficult for one to distinguish from "social media". This includes but is not limited to the following: Facebook, Twitter, Google hangounts, Skype, and others.

Furthermore, Deputy Chief Melissa Fielding mentions that concerns were raised about comments on a chat room that were perceived as threats. It is unclear from this correspondence as to who exactly perceived such threats; likewise, it is unclear to me as to who created the perception of threats to UPD. It is also unclear as to what, if any, perceived threats were a direct result of any actions that I have taken or statements that I have made. I do not want anyone to feel threatened.

I hope that UVA can sympathize my prior frustration with this process. I am willing and very much eager to return to classes. I would very much like to avoid the prospect of mutually exorbitant legal action.

5. To graduate from medical school in the year 2022.

6. Promptness in response time would be greatly appreciated.

# EXHIBIT 66

JA275



Gmail gg6bd@virginia.edu

3,905

# Trespass Appeal Decision

Inbox ×

**Graham, Gloria (gg6bd)** gg6bd@virginia.edu via myuva.onmicrosoft.com
to me

Dear Kieran,

Attached is a letter containing the response to your trespass appeal submitted July 21, 2019.

Gloria S. Graham
*Associate Vice President*
*Safety and Security*
E GloriaGraham@virginia.edu
P 434.243.2173

University of Virginia

Department of Safety and Security
O'Neil Hall
445 Rugby Road
Charlottesville, VA 22904-4228
www.safetyandsecurity.virginia.edu

KB Draft Appeal Le..

**Kieran Ravi** <kieran0696@gmail.com>
to Gloria

Associate Vice President of Safety and Security Gloria Graham,



August 7, 2019

*By electronic mail and U.S. mail*
Mr. Kieran Ravi Bhattacharya
256 72nd Street
Brooklyn, NY 11209
E-mail: kieran0696@gmail.com

Re: Appeal of Trespass Warning, IBR# 2018-0033244

Dear Mr. Bhattacharya,

Pursuant to PRM-018: Issuance of Trespass Warnings, the University of Virginia Police served you with a Trespass Warning on January 2, 2019, for engaging in conduct that threatened the well-being of members of the community through various social media platforms. On December 30, 2019 a member of the University of Virginia Police Department attempted to communicate that you had been trespassed, and your reaction was uncooperative. On January 8, 2019 you requested that the trespass warning be rescinded.

The Trespass Warning served on January 2, 2019 contained the procedures to appeal the Trespass Warning. On January 8, 2019 you contacted a staff member to request the trespass be rescinded. That request did not meet the appeal instructions and you were again directed to the appropriate protocol. On July 21, 2019 you submitted a written appeal to the trespass order issued on January 2, 2019.

Upon consideration of your appeal, the Trespass Warning is

__X___ Upheld

_____ Modified:

____ Withdrawn

The conduct you directed at members of the university community compromised safety and security and caused fear. You are not permitted to be on University property throughout the duration of this trespass warning, which is currently effective until January 2, 2023. This decision is final.

Sincerely,

Gloria Graham, Associate Vice President for Safety and Security

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KIERAN RAVI BHATTACHARYA,<br>*Plaintiff,*<br>v.<br>JAMES B. MURRAY, JR., *et al.*,<br>*Defendants.* | CASE NO. 3:19-cv-00054<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Plaintiff Kieran Ravi Bhattacharya filed an amended four-count complaint against various individuals at the University of Virginia in relation to his suspension and dismissal from the University of Virginia School of Medicine.

Bhattacharya seeks injunctive relief and damages pursuant to 42 U.S.C. § 1983 for retaliation in violation of his First Amendment right of free speech (Count I) and for deprivation of his Fourteenth Amendment right of due process (Count II) from various individuals at the University of Virginia and its medical school.[1] Bhattacharya also seeks damages for conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) (Count III) and conspiracy to injure

[1] The following defendants are sued in their official capacities only: Rector, Vice Rector, and Members of the Board of Visitors of the University of Virginia ("Board of Visitors Defendants"); Timothy Longo, Sr., Interim Chief of Police, and Melissa Fielding, Deputy Chief of Police of the University of Virginia ("UVA Defendants"); John J. Densmore, M.D., Ph.D., Associate Dean for Admissions and Student Affairs, and Jim B. Tucker, M.D., Chair of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine ("UVA Medical School Defendants"). The following defendants are sued in both their official and individual capacities: Christine Peterson, M.D., Assistant Dean for Medical Education, Nora Kern, M.D., Assistant Professor of Urology, and Sara K. Rasmussen, M.D., Ph.D., Assistant Professor ("Individual Defendants").

him in his trade, business, and profession under Virginia Code § 18.2-499 (Count IV) from the Individual Defendants in their official and individual capacities.

Defendants[2] filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 112. The Court will grant Defendants' motion to dismiss Counts II, III, and IV, but will deny Defendants' motion to dismiss Count I.

## I. ALLEGED FACTUAL BACKGROUND

For the purposes of ruling on Defendants' motion to dismiss, the Court accepts as true the following allegations set forth in the amended complaint and attached exhibits.

### A. The October 25 Microaggression Panel Discussion

On October 25, 2018, Bhattacharya—then a second-year medical student at the University of Virginia School of Medicine ("UVA Medical School")—attended a panel discussion on "microaggressions." Dkt. 33 ¶ 3. During the event, UVA Professor Beverly Colwell Adams, Ph.D., gave a roughly seventeen-minute presentation about her research on microaggressions, and Bhattacharya asked Adams some questions. *Id.* The exchange began:

> Bhattacharya: Hello. Thank you for your presentation. I had a few questions just to clarify your definition of microaggressions. Is it a requirement, to be a victim of microaggression, that you are a member of a marginalized group?
>
> Adams: Very good question. And no. And no—
>
> Bhattacharya: But in the definition, it just said you have to be a member of a marginalized group—in the definition you just provided in the last slide. So that's contradictory.
>
> Adams: What I had there is kind of the generalized definition. In fact, I extend it beyond that. As you see, I extend it to any marginalized group, and sometimes it's not a marginalized group. There are examples that you would think maybe not fit, such as body size,

[2] Defendants are all represented by the Attorney General of Virginia and have filed a joint motion to dismiss.

height, [or] weight. And if that is how you would like to see me expand it, yes, indeed, that's how I do.

Bhattacharya: Yeah, follow-up question. Exactly how do you define marginalized and who is a marginalized group? Where does that go? I mean, it seems extremely nonspecific.

Adams: And—that's intentional. That's intentional to make it more nonspecific . . . .

Dkt. 33-2 (audio recording of panel discussion).

After the initial exchange, Bhattacharya challenged Adams's definition of microaggression. He argued against the notion that "the person who is receiving the microaggressions somehow knows the intention of the person who made it," and he expressed concern that "a microaggression is entirely dependent on how the person who's receiving it is reacting." *Id.* He continued his critique of Adams's work, saying, "The evidence that you provided—and you said you've studied this for years—which is just one anecdotal case—I mean do you have, did you study anything else about microaggressions that you know in the last few years?" *Id.* After Adams responded to Bhattacharya's third question, he asked an additional series of questions: "So, again, what is the basis for which you're going to tell someone that they've committed a microaggression? . . . Where are you getting this basis from? How are you studying this, and collecting evidence on this, and making presentations on it?" *Id.*; *see also* Dkt. 33 ¶ 56.

At that point, Assistant Professor Sara Rasmussen, a fellow panelist who helped organize the event, responded, "OK, I'll take that. And I think that we should make sure to open up the floor to lots of people for questions." Dkts. 33-2; 33 ¶ 4. Bhattacharya agreed, "Of course, yeah." Dkt. 33-2. Rasmussen then told a story about how her former peers and colleagues had subjected her to "harmless jokes" and microaggressions related to stereotypes about those who come from rural states, as she did. *Id.* She concluded:

> You have to learn to uncouple the intent of what you're saying and the impact it has on the audience. And you have to have a responsibility for the impact of your actions. And if you make a statement that someone considers insensitive, the first thing you can say is, "Oh my gosh, that was not my intent." But don't get frustrated with that person for bringing it to your attention.

*Id.*; *see also* Dkt. 33 ¶ 58. Bhattacharya responded to Rasmussen, saying:

> Bhattacharya: I have to respond to that because I never talked about getting frustrated at a person for making a statement. I never condoned any statements that you are making like that. But what I am saying is that what you're providing is anecdotal evidence. That's what you provided. That's what she provided—
>
> Rasmussen: No, I think she's provided a lot of citations in the literature. And I'm sorry—I was just reading your body language.

Dkt. 33-2; *see also* Dkt. 33 ¶¶ 59–60. Bhattacharya then began to speak over Rasmussen, who called on someone else to ask a question. Dkts. 33-2; 33 ¶ 60. Bhattacharya's dialogue with Adams and Rasmussen lasted approximately five minutes and fifteen seconds. Dkt. 33-2.

**B. Kern's October 25 Professionalism Concern Card**

Assistant Professor of Urology Nora Kern, who helped organize the panel and attended it, filed a Professionalism Concern Card ("Card") against Bhattacharya on the same day as the event. Dkt. 33-13; *see also* Dkt. 33 ¶ 66.[3] Kern's Card identified "Respect for Others" and "Respect for Differences" as areas of concern. Dkt. 33-13; *see also* Dkt. 33 ¶ 67. The comments section reads:

> For [an] AMWA session, we held a panel on micro aggression. Myself and 2 other faculty members were invited guests. This student asked a series of questions that were quite antagonistic toward the panel. He pressed on and stated one faculty member was being contradictory. His level of frustration/anger seemed to escalate until another faculty member defused the situation by calling on another student for questions. I am shocked that a med student would show so little respect toward faculty members. It worries me how he will do on wards.

---

[3] Professionalism Concern Cards are records of students' violations of UVA Medical School's professionalism standards. Dkt. 33 ¶ 44. *See* Dkt. 33-9 at 2.

Dkt. 33-13; *see also* Dkt. 33 ¶ 67. The Card noted that Kern had not discussed her concerns with Bhattacharya, but it also noted that she did not feel uncomfortable discussing her concerns with him. Dkt. 33-13; Dkt. 33 ¶ 69. Kern told Rasmussen and Peterson about the Card she filed, but Kern did not directly notify Bhattacharya. Dkt. 33 ¶ 69. Bhattacharya did not receive a copy of the Card until December 20, 2018, after his suspension. *Id.*

### C. Peterson's October 25 Email and October 31 Meeting

Hours after the panel, Christine Peterson, Assistant Dean for Medical Education, sent Bhattacharya an email with the subject "The panel today." Dkt. 33-12. The email read:

> Kieran,
> I was at the noontime "Microaggressions" panel today and observed your discomfort with the speaker's perspective on the topic.
> Would you like to come share your thoughts with me? I think I can provide some perspective that will reassure you about what you are and are not responsible for in interactions that could be uncomfortable even when that's not intended. If you'd prefer to talk with your own college dean, that's fine too. I simply want to help you understand and be able to cope with unintended consequences of conversations.
> Dr. Peterson

*Id.*; *see also* Dkt. 33 ¶ 63. Kieran responded a couple of hours later:

> Dr. Peterson,
> Your observed discomfort of me from wherever you sat was not at all how I felt. I was quite happy that the panel gave me so much time to engage with them about the semantics regarding the comparison of microaggressions and barbs. I have no problems with anyone on the panel; I simply wanted to give them some basic challenges regarding the topic. And I understand that there is a wide range of acceptable interpretations on this. I would be happy to meet with you at your convenience to discuss this further.
> Sincerely,
> Kieran Bhattacharya

Dkt. 33-12; *see also* Dkt. 33 ¶ 65. That evening, Peterson replied: "I understand. I don't know you at all so I may have misinterpreted your challenges to the speaker." Dkt. 33-12; *see also* Dkt. 33 ¶ 65. The two agreed to meet on October 31. Dkt. 33-12; *see also* Dkt. 33 ¶ 65.

During Bhattacharya and Peterson's one-hour meeting, Peterson "barely mentioned" Bhattacharya's questions and comments at the panel discussion. Dkt. 33 ¶ 73. Instead, Peterson attempted to determine Bhattacharya's "views on various social and political issues—including sexual assault, affirmative action, and the election of President Trump." *Id.*

**D. The November 1 Meeting with Densmore**

On October 26, the day after the panel discussion, Densmore—Associate Dean for Admissions and Student Affairs, and Bhattacharya's assigned academic dean—emailed Bhattacharya. *Id.* ¶ 71. Densmore's email read:

> Hi Kieran,
> I just wanted to check in and see how you were doing. I hope the semester is going well. I'd like to meet next week if you have some time.
> JJD

*Id.*; *see also* Dkt. 33-14. Bhattacharya agreed to meet with Densmore on November 1. Dkt. 33 ¶ 72. During their ten-minute meeting, Densmore did not inform Bhattacharya about Kern's Card, nor did he mention Bhattacharya's questions and comments at the panel discussion. *Id.* ¶¶ 74–75. When Bhattacharya mentioned his meeting with Peterson, Densmore informed Bhattacharya that he was aware of that meeting. At no point during the meeting did Densmore convey any concerns related to his meeting with Peterson or to Bhattacharya's behavior during the panel. *Id.*

**E. The November 14 Academic Standards and Achievement Committee ("ASAC") Meeting and Tucker's November 15 Letter**

At an ASAC meeting on November 14, the committee considered Kern's Card against Bhattacharya. *Id.* ¶ 77. UVA Medical School's Policy on Academic and Professional Advancement vests the ASAC with the power to act on behalf of the School of Medicine's faculty with respect to "patterns of unprofessional behavior and egregious violations of professionalism." Dkt. 33-9 at 2. The policy includes the following provision:

> If a student receives three or more written observations of concern . . . , or is cited for a single egregious breach of professionalism, notice will be sent to ASAC for review. A student identified as having a pattern of unprofessional behavior may be directed to further counseling and/or to supportive remediation and/or placed on *academic warning* or *academic probation* . . . , or if the professional violations are severe, a student may be dismissed from school even if they have passing grades in all courses. . . . . Egregious behaviors, such as but limited to assault on or threat to a patient, patient's family member, student, GME trainee or faculty member, conduct that may constitute a felony, etc., regardless of whether criminal prosecutions are initiated or pursued, will be referred immediately to ASAC, irrespective of whether previous observations of concern exist, with the recommendation for dismissal from school.

*Id.* at 3 (emphasis in original).

Kern, a voting ASAC member, attended and voted at the meeting. Dkt. 33 ¶ 79. She was the only voting member at the meeting who witnessed the events at the microaggression panel. *Id.* ¶ 95. Peterson also attended the meeting as a guest. *Id.* ¶ 84. The meeting minutes memorialized the text of the Card that Kern submitted. Dkts. 33-35; 33 ¶¶ 86–87. Under "Professionalism Issues," the meeting minutes state: "The committee voted unanimously to send Kieran Bhattacharya (Densmore) a letter reminding him of the importance in medicine to show respect to all: colleagues, other staff, and patients and their families." Dkt. 33 ¶¶ 77, 88; *see also* Dkt. 33-15. At the time, Bhattacharya remained unaware that Kern had issued a Card against him. Dkt. 33 ¶ 90.

The ASAC's letter, in its entirety, dated and emailed to Bhattacharya on November 15, reads as follows:

> Dear Mr. Bhattacharya:
>
> The Academic Standards and Achievement Committee has received notice of a concern about your behavior at a recent AMWA panel. It was thought to be unnecessarily antagonistic and disrespectful. Certainly, people may have different opinions on various issues, but they need to express them in appropriate ways.
>
> It is always important in medicine to show mutual respect to all: colleagues, other staff, and patients and their families. We would suggest that you consider getting counseling in order to work on your skills of being able to express yourself appropriately.

> Sincerely,
> Jim B. Tucker, M.D.
> Chair, Academic Standards and Achievement Committee

*Id.* ¶ 91; Dkt. 33-36.

### F. The November 28 ASAC Suspension Hearing

Eleven days later, on the afternoon of November 26, Densmore sent Bhattacharya an email stating, "We were notified by the Dean of Students Office that you were heading back to Charlottesville. You will need to be seen by CAPS [Counseling and Psychological Services] before you can return to classes." *Id.* ¶ 96–97; *see also* Dkt. 33-37.

On the morning of November 27, Bhattacharya responded in an email questioning UVA Medical School's ability to "mandate psychiatric evaluations" before allowing him to continue his education. Dkt. 33 ¶ 98; Dkt. 33-37.

The same day, R. J. Canterbury, Senior Associate Dean for Education at UVA Medical School, emailed Bhattacharya telling him that he was not permitted to return to class until he had "been evaluated by CAPS at the Student Health Service." Dkt. 33 ¶ 99; Dkt. 33-40.

On the afternoon of November 28, UVA Medical School Registrar Katherine Yates emailed Bhattacharya notifying him that "The Academic Standards and Achievement Committee will be meeting today to discuss your current enrollment status. You are invited to attend to share your insights with the committee." Dkt. 33 ¶ 101; Dkt. 33-42. Within ten minutes, Bhattacharya responded:

> []Who exactly will be present? Do you normally just give students 3 hours to prepare after indirectly threatening to kick them from medical school? Why exactly is my enrollment status up for discussion?

Dkt. 33 ¶ 102; Dkt. 33-43. Bhattacharya asked whether he could have legal representation at the meeting, but he did not have time to obtain legal advice or counsel before the meeting. Dkt. 33

¶¶ 102, 108. Yates responded to Bhattacharya's email with hyperlinks to the ASAC's policies. *Id.* ¶ 103; Dkt. 33-44. Section III.D of the ASAC Operating Procedures requires the Committee to notify a student "in writing as to what the major concerns of the Committee are likely to be during the coming meeting." Dkt. 33 ¶ 104; Dkt. 33-45 at 4. Bhattacharya did not obtain "any written statement of the allegations against him" before the hearing. Dkt. 33 ¶¶ 105, 107.

Bhattacharya attended the hearing that evening. Dkt. 33 ¶ 110. He photographed the attendees, Dkt. 33-47, and recorded audio of the hearing, Dkt. 33-48. Dkt. 33 ¶ 110. Tucker and Kern both attended the hearing. *Id.* ¶ 112; Dkt. 33-49.

Bhattacharya first asked Tucker to explain why the ASAC was meeting to discuss his enrollment status. Tucker referred to the November 15 letter, which "was talking about some interactions [Bhattacharya] had at a forum on microaggression." Dkt. 33-48. Bhattacharya repeatedly denied receiving the letter.[4] *Id.*

Tucker explained that the ASAC was "concerned with the interactions [Bhattacharya] had since [the microaggression panel discussion]." *Id.* Tucker repeated, "What we're concerned about is some of the behaviors you've shown since then. . . . There's concern about your interactions and behaviors most recently." *Id.* When Bhattacharya pressed Tucker to identify what interactions were concerning and who found them concerning, Tucker mentioned "interactions" with Densmore as well as "students" and "other administrators." *Id.* Tucker elaborated that he "suspect[ed] [Bhattacharya's behavior in those interactions] was similar to what [Bhattacharya was] showing" at the hearing. *Id.*

[4] Bhattacharya admits that he had in fact received the letter. *See* Dkts. 33 ¶ 91; 33-36.

Tucker then noted that "Dr. Canterbury recommended that [Bhattacharya] go to CAPS before returning to class and [Bhattacharya had] been resisting that." *Id.* Bhattacharya objected to Tucker's use of the word "recommend," saying it was "a very key mistake." *Id.* He read the subject line of Canterbury's email: "required process to attend class." *Id.* Bhattacharya also told the ASAC that "it's not about whether or not [he wanted] to go to CAPS, it's about being told to go to CAPS. It's about being required to receive a . . . psychiatric evaluation to attend school, a public university." *Id.*

After several minutes, another voting ASAC member, Dr. Bart Nathan, said that the ASAC was holding the hearing because of concerns "about [Bhattacharya's] professionalism and [his] professional behavior in medical school." *Id.* Nathan mentioned "[Bhattacharya's] behavior at a panel meeting and other subsequent behaviors, including the behavior [Bhattacharya was] exhibiting right" then. *Id.* Nathan described Bhattacharya as "extremely defensive" and noted that Bhattacharya's "recording" of the hearing "[was] unusual behavior" not "typical" of "a medical student." *Id.* Nathan said that the ASAC was "requiring [Bhattacharya] to change" his "aggressive, threatening behavior." *Id.* Bhattacharya retorted that Nathan was "just projecting." *Id.* Nathan replied, "Any patient that walked into the room with [Bhattacharya] would be scared." *Id.* Nathan characterized that as "the professionalism issue that [the ASAC was] having." *Id.* Bhattacharya insisted that "[he had] been near patients as part of the training here, and [he had] never received any complaints from any patients about that." *Id.*

Toward the end of the hearing, Tucker told Bhattacharya that "[t]he concern [was] how [Bhattacharya had] been coming across to people in the last few weeks." *Id.* Bhattacharya said that "[he] just wish[ed] [the ASAC members] would provide a specific example of what exactly [he

had] said and done." Another doctor stated that the "entire episode . . . [was] a very good example of inappropriate behavior and aggressive behavior." *Id.*

Under the heading "Professionalism Issues," the minutes of the hearing state that "[t]he committee convened to discuss concerning behaviors exhibited by Kieran Bhattacharya (Densmore) over the past weeks after members of the Technical Standards Committee determined that the concerns were best addressed by the ASAC." Dkt. 33 ¶ 115; Dkt. 33-49. After noting that Bhattacharya attended and participated in the hearing when "given the opportunity to address concerns about his behavior," the minutes note that "[t]he Committee reviewed the list of technical standards that are acknowledged annually by the students[,] especially the Emotional, Attitudinal and Behavioral Skills." Dkt. 33 ¶ 115; Dkt. 33-49. The minutes then state:

> Because the student's behavior demonstrated his inability to meet several of those standards, Dr. Nathan made a motion to suspend Kieran Bhattacharya (Densmore) from the School of Medicine, effective immediately, with the option to petition to return in August of 2019. . . . The committee voted unanimously to accept the motion. Nora Kern did not vote on the matter, as personal business required her to leave before the vote was executed.

Dkt. 33 ¶ 115; Dkt. 33-49.

### G. The November 29 Suspension Letter

The day after the hearing, Tucker sent Bhattacharya an email with a letter attached. The letter, in relevant part, reads:

> The Academic Standards and Achievement Committee ("ASAC") convened on November 28, 2018 to review concerns that your recent behavior in various settings demonstrated a failure to comply with the School of Medicine's Technical Standards. . . . The ASAC decided that the nature of the concerns necessitated the calling of an emergency meeting. . . .
>
> The Academic Standards and Achievement Committee has determined that your aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday, constitute a violation of the School of Medicine's Technical Standards that are found at: https://med.virginia.edu/student-affairs/policies/technical-standards/

> Those Standards, in relevant part and as related to professionalism, state that each student is responsible for: Demonstrating self-awareness and self-analysis of one's emotional state and reactions; Modulating affect under adverse and stressful conditions and fatigue; Establishing effective working relationships with faculty, other professionals and students in a variety of environments; and Communicating in a non-judgmental way with persons whose beliefs and understandings differ from one's own.
>
> The committee has voted to suspend you from school, effective immediately. You may apply for readmission to return to class no earlier than August, 2019. . . . The committee would only approve your return if you are able to provide evidence that further violations of the Technical Standards are unlikely to occur. . . .

Dkts. 33 ¶ 116–17; 33-53 at 2–3. The suspension letter also states that Bhattacharya could file an appeal of his suspension within 14 days and explains the appeal procedures. Dkts. 33 ¶ 122; 33-53 at 4.

Five days later, on December 4, Bhattacharya emailed Densmore to initiate an appeal of the ASAC's decision to suspend him. Dkts. 33 ¶ 123; 33-54. Densmore replied later that day and acknowledged that the appeal process had started. Dkts. 33 ¶ 123; 33-55. In the meantime, Bhattacharya sent information about these events to SecureDrop, a website through which individuals can anonymously transmit documents to dozens of news organizations. Dkt. 33 ¶ 124. In addition, because he was no longer actively enrolled in medical school, the National Board of Medical Examiners canceled Bhattacharya's registration for the United States Medical Licensing Exam Step 1 ("USMLE Step 1"). *Id.* ¶ 126; Dkt. 33-57.

**H. The January 2019 No Trespass Order**

On December 30, Deputy Chief of Police of the University of Virginia Melissa Fielding called Bhattacharya to inform him that the UVA Police Department would be issuing a No Trespass Order ("NTO") against him. Dkt. 33 ¶ 127. When Bhattacharya inquired into the basis for the NTO, Fielding did not provide any additional information. *Id.* On January 2, 2019, Fielding sent Bhattacharya a letter with the NTO attached. *Id.* ¶ 128; Dkt. 33-58. The NTO stated that, for

four years from its effective date of January 3, Bhattacharya was "not to come on **any** property or facility on the Grounds of the University of Virginia **except** as a patient at the University of Virginia Medical Center." Dkt. 33 ¶ 28; Dkt. 33-58 at 3 (emphasis in original). The NTO also stated that it "must be appealed in writing to the Associate Vice President for Safety and Security within five (5) calendar days" after service; failure to deliver or postmark an appeal within that timeframe would constitute "waive[r of] the opportunity to appeal." Dkt. 33-58 at 4.

The next day, Densmore informed Bhattacharya that UVA Medical School would "not be able to proceed with an appeal of [his] suspension" because of the NTO. Dkt. 33 ¶ 129; Dkt. 33-59. Bhattacharya spoke with Fielding by phone on January 15. Despite his request that UVA rescind the NTO, Fielding refused to do so, and she told Bhattacharya that he could not appeal at that time. Dkt. 33 ¶ 130.

After six months, in early July 2019, Bhattacharya emailed Densmore regarding readmission to UVA Medical School. Densmore informed Bhattacharya that the school "cannot address [his] request for readmission while a no trespass order is in effect." *Id.* ¶ 132; Dkt. 33-61. In response, Bhattacharya called and emailed Fielding asking for "specific reasons" why the NTO was issued, for the NTO to be "dissolve[d] . . . immediately," or "both." Dkts. 33 ¶ 134; 33-62. Fielding responded that the UVA Police Department had issued the NTO "after concerns were raised about comments on a chat room that were perceived as threats." Dkts. 33 ¶ 135; 33-63. She said that those "comments raised safety concerns for the community" and that "[t]he NTO was not a result of [Bhattacharya's] suspension." *Id.* Fielding also noted that Bhattacharya "did not appeal the NTO as specified in the appeal process instructions." *Id.* Bhattacharya responded with a list of questions asking for further details. Dkt. 33 ¶ 136.

A week after his exchange with Fielding, Bhattacharya appealed the NTO in writing to the Associate Vice President for Safety and Security. *Id.* ¶ 137; Dkt. 33-65. In the appeal letter, Bhattacharya wrote:

> It is not clear to me what Deputy Chief Melissa Fielding was referring to by the term "chat room." I have posted on publicly available internet forums which include but are not limited to the following: StudentDoctorNetwork, CollegeConfidential, Reddit, 4chan, and others. The term "internet forum" itself is ambiguous and difficult for one to distinguish from "social media." This includes but is not limited to the following: Facebook, Twitter, Google hangou[]ts, Skype, and others.
>
> Furthermore, Deputy Chief Melissa Fielding mentions that concerns were raised about comments on a chat room that were perceived as threats. . . . It is [] unclear as to what, if any, perceived threats were a direct result of any actions that I have taken or statements that I have made. I do not want anyone to feel threatened.

Dkt. 33-65.

On August 7, UVA upheld the NTO because Bhattacharya had "engag[ed] in conduct that threatened the well-being of members of the community through various social media platforms," Dkt. 33 ¶ 137; Dkt. 33-66, and because "[t]he conduct [Bhattacharya] directed at members of the university community compromised safety and security and caused fear." *Id.*; Dkt. 33 ¶ 137.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotations omitted). And the court cannot "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics"; instead, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

## III. ANALYSIS

### A. Count I: First Amendment Retaliation

The First Amendment protects not only the affirmative right to speak, but also the "right to be free from retaliation by a public official for the exercise of that right." *Adams v. Trs. of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000)). Under § 1983, a student at a public university may state a plausible claim for First Amendment retaliation if he alleges that (1) he "engaged in protected First Amendment activity," (2) "the defendants took some action that adversely affected [his] First Amendment rights," and (3) "there was a causal relationship between [his] protected activity and the defendants' conduct." *Buxton v. Kurtinitis*, 862 F.3d 423, 427 (4th Cir. 2017) (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (citing *Suarez*, 202 F.3d at 686)).

Defendants argue that Bhattacharya's claim fails because his speech was not protected. They submit that Bhattacharya was dismissed not because of his speech but because he violated the school's professional standards. They also argue that the Individual Defendants—Peterson, Kern, and Rasmussen—to the extent that they are sued in their individual capacities, are entitled to qualified immunity. Dkt. 113 at 20–25; Dkt. 116 at 3–7.

But, as discussed below, the Court disagrees with Defendants' arguments and concludes that Bhattacharya states a plausible claim for First Amendment retaliation.

**1. Protected Speech**

The first prong of the First Amendment retaliation test asks whether the plaintiff "engaged in protected First Amendment activity." *Buxton*, 862 F.3d at 427. Students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969); *see also Papish v. Bd. of Curators of Univ. of Missouri*, 410 U.S. 667, 670 (1973) (per curiam) (emphasizing that "'state colleges and universities are not enclaves immune from the sweep of the First Amendment'") (quoting *Healy v. James*, 408 U.S. 169, 180 (1972)). But the Supreme Court has recognized two major categories of speech that public schools, including public universities, may regulate.

First, schools may regulate "conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 513; *see also Papish*, 410 U.S. at 669–70 (recognizing "a state university's undoubted prerogative to enforce reasonable rules governing student conduct" and "legitimate authority to enforce reasonable regulations as to the time, place, and manner of speech and its dissemination").

Second, schools "need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986)). For example, school officials can punish students for "vulgar and lewd" speech at school because it "undermine[s] the school's basic educational mission" and "is wholly inconsistent with the 'fundamental values' of public school education." *Fraser*, 478 U.S. at 685–86. School officials also may "exercis[e] editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Kuhlmeier*, 484 U.S. at 273. Expressive activities are school-sponsored when the school "lend[s] its name and resources to the dissemination of student expression" such that "students, parents, and members of the public might reasonably perceive [that student's expression] to bear the imprimatur of the school." *Id.* at 271–73.

Finally, the First Amendment does not protect "true threats" within or beyond the schoolhouse gates. *United States v. Bly*, 510 F.3d 453, 458–59 (4th Cir. 2007); *see Virginia v. Black*, 538 U.S. 343, 359 (2003).

Still, where speech occurs off campus, school officials may regulate that speech only if it has a "sufficient nexus with the school." *Kowalski v. Berkeley Cnty. Schools*, 652 F.3d 565, 577 (4th Cir. 2011). In *Kowalski*, the Fourth Circuit found that a school did not violate the First Amendment when it suspended a student who created a webpage ridiculing a fellow student. The court rejected the student's argument that the webpage was not school-related, noting that the student "designed the website for 'students' . . . ; she sent it to students inviting them to join; . . .

those who joined were mostly students[;] . . . and [t]he victim understood the attack as school-related, filing her complaint with school authorities." *Id.* at 576.

Bhattacharya claims that Defendants retaliated against him for his questions and comments during the Microaggression Panel Discussion, his attempt to defend himself at his ASAC hearing, and his attempt to seek press coverage of his suspension. Dkt. 33 ¶ 140. He also alleges that Defendants informed him that the NTO was issued "for engaging in conduct that threatened the well-being of members of the community through various social media platforms." *Id.* ¶ 137; Dkt. 33-66. The Court examines each of these expressive activities in turn to determine which, if any, were protected by the First Amendment.

**i. Comments and Questions at the Microaggression Panel Discussion**

Bhattacharya's speech at the panel discussion—questioning and critiquing the theory of microaggression—does not clearly fall into any category of speech that UVA Medical School can regulate or prohibit. His comments and questions did not "materially disrupt[] classwork or involve[] substantial disorder or invasion of the rights of others." *Tinker*, 393 U.S. at 513. Defendants argue that because "the purpose of the panel discussion was to teach students about a social issue in medicine, it was not the time or place for Plaintiff to dispute the validity of the subject matter, argue with faculty, or disparage a professor's substantial research in the field." Dkt. 113 at 23. To support this contention, Defendants assert that "speech reflecting non-compliance with [a professional conduct] [c]ode that is related to academic activities materially disrupts the [p]rogram's legitimate pedagogical concerns." *Keefe v. Adams*, 840 F.3d 523, 531 (8th Cir. 2016).

In *Keefe*, the Eighth Circuit upheld, at the summary judgment stage, a school's decision to dismiss Keefe, a nursing student, for Facebook posts that were offensive and threatening to other

students. *Id.* at 532. The court found that Keefe's "posts were directed at classmates, involved their conduct in the Nursing Program, and included a physical threat related to their medical studies—'I'm going to . . . give someone a hemopneumothorax.[5]'" *Id.* Considering that fellow students reported these posts and their resulting fears to instructors, Keefe's "disrespectful and threatening statements toward his colleagues had a direct impact on the students' educational experience. They also had the potential to impact patient care" because students who cannot communicate and collaborate in a clinical setting may cause "poor outcomes for the patients." *Id.* The court concluded that the First Amendment did not prevent the school from dismissing Keefe because he "had crossed the professional boundaries line, but . . . he had no understanding of what he did or why it was wrong, and he evidenced no remorse for his actions." *Id.* at 532–33.

Here, Bhattacharya's comments and questions were directed at the professors participating in the panel during a time designated for asking questions. His statements were academic in nature. Bhattacharya challenged one professor's definitions of "microaggression" and "marginalized group" as "contradictory" and "extremely nonspecific." Dkt. 33-2. He also asked several questions about the "evidence" underlying that professor's claims, critiquing it—and the professor's research over "years"—as "anecdotal." *Id.* These comments and questions might be forward or pointed, but—as alleged—they did not materially disrupt the discussion or substantially invade the professor's, or anyone else's, rights. Certainly, Bhattacharya's line of questioning concerned Rasmussen enough that she mentioned the need to "make sure to open up the floor to lots of people for questions" and ultimately called on another student to ask a question. *Id.* But Bhattacharya's allegations do not show that his statements had a "direct impact on [other] students' educational

[5] In *Keefe*, the plaintiff testified that a hemopneumothorax is "a 'trauma' where the lung is punctured and air and blood flood the lung cavity." *Id.* at 527.

experience" or "had the potential to impact patient care." *Keefe*, 840 F.3d at 531. Indeed, Bhattacharya's comments are a far cry from the comments at issue in *Keefe*.

Nor were Bhattacharya's comments and questions at the panel "vulgar," "lewd," "indecent," or "plainly offensive." *See Fraser*, 478 U.S. at 685–86. Defendants argue that Bhattacharya's comments meet these criteria because they were "insulting, disrespectful, and uncivil" to the faculty. Dkt. 113 at 23. In *Fraser*, the Supreme Court upheld the school district's decision to suspend a high school student who gave a speech at a school assembly in which he described a student he was nominating for student elective office "in terms of an elaborate, graphic, and explicit sexual metaphor." 478 U.S. at 678. But Bhattacharya's comments were not offensive or indecent in this manner. Indeed, the comments did not involve ad-hominem attacks or curse words. At worst, they were aggressive critiques.

Accordingly, the Court concludes that the amended complaint alleges sufficient facts to find that Bhattacharya's questions and comments at the microaggression panel were protected speech. His expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive.

**ii. Speech at the ASAC Suspension Hearing**

Similarly, Bhattacharya's comments at his suspension hearing were not materially disruptive or offensive. The panel convened to give Bhattacharya a chance to explain to faculty members on the ASAC why he should be able to remain enrolled at UVA Medical School. He inquired why the hearing had been convened and complained about the lack of due process and transparency. Dkt. 33-48. Indeed, Bhattacharya fixated on whether or not he had received the November 15 letter from the ASAC, and he contested—at length—Tucker's statement that Canterbury had "recommended" that Bhattacharya go to CAPS in order to attend class. *Id.* In

addition, several ASAC members told Bhattacharya that his behavior was "extremely defensive," "aggressive," "threatening," and "inappropriate," and that his insistence on recording the meeting was "unusual." *Id.* But the Fourth Circuit has held that "the First Amendment protects bizarre behavior," and "bizarre does not equal disruptive." *Tobey v. Jones*, 706 F.3d 379, 388 (4th Cir. 2013). Furthermore, the audio recording did not contain "true threats," *Black*, 538 U.S. at 359, nor did the ASAC members say that the *content* of Bhattacharya's speech was threatening or might scare patients. Even if Bhattacharya's comments were contentious, rude, and defensive, they did not materially disrupt the hearing or substantially invade the ASAC members' rights. *Tinker*, 393 U.S. at 513. Nor did they "undermine the school's basic educational mission." *See Fraser*, 478 U.S. at 685–86.

Accordingly, the Court concludes that the amended complaint alleges sufficient facts to find that Bhattacharya's expressions at the ASAC suspension hearing were protected speech. His expressions were not made at inappropriate times or places, nor were his comments disruptive or offensive.

**iii. Online Speech**

Defendants argue that Bhattacharya has not alleged enough facts about the social media statements that drove UVA's decision to issue an NTO against him. Dkt. 113 at 24. Defendants also argue that Bhattacharya's statements that triggered the NTO were not protected speech because they were "true threats" related to the school. *Id.* But Bhattacharya alleges that Defendants have not disclosed any social media statements to him, even after he repeatedly requested them. Dkts. 33 ¶ 136–37; 33-65. In his appeal, Bhattacharya provided UVA with a list of social media platforms and other online forums he had been active on at the time the NTO was issued. *See id.* Without the statements, the Court cannot determine whether they are "true threats" related to the

school. But Bhattacharya's amended complaint makes clear that the statements in question are those that UVA used as the basis for issuing the NTO against him. Of course, once UVA discloses the statements underlying the issuance of the NTO, UVA may again then that the statements are "true threats" that receive no First Amendment protection. *Black*, 538 U.S. at 359. At this stage, however, the Court concludes that Bhattacharya has sufficiently alleged that his statements were protected speech.

**2. Adverse Action**

The second prong of the First Amendment retaliation test asks whether "the defendants took some action that adversely affected [the student's] First Amendment rights." *Buxton*, 862 F.3d at 427. "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018). Indeed, because "conduct that tends to chill the exercise of constitutional rights might not itself deprive such rights, . . . a plaintiff need not actually be deprived of [his] First Amendment rights in order to establish . . . retaliation." *Constantine*, 411 F.3d at 500.

Bhattacharya sufficiently alleges that Defendants retaliated against him. Indeed, they issued a Professionalism Concern Card against him, suspended him from UVA Medical School, required him to undergo counseling and obtain "medical clearance" as a prerequisite for remaining enrolled, and prevented him from appealing his suspension or applying for readmission by issuing and refusing to remove the NTO. *Id.* ¶ 142. Because a student would be reluctant to express his views if he knew that his school would reprimand, suspend, or ban him from campus for doing so, the Court concludes that Bhattacharya has adequately alleged adverse action.

**3. Causal Connection**

The third prong of the First Amendment retaliation test asks whether "there was a causal relationship between [the student's] protected activity and the defendants' conduct." *Buxton*, 862 F.3d at 427. To allege a causal connection between the protected speech and the adverse action, a plaintiff must show (1) the defendants' awareness of the plaintiff's protected speech and (2) "some degree of temporal proximity" between that awareness and the adverse action. *Constantine*, 411 F.3d at 501.

Bhattacharya alleges that Defendants were aware of his comments and questions at the microaggression panel discussion and suspension hearing. *Id.* ¶ 144. Certainly, the faculty members present at the microaggression panel discussion and those present at the suspension hearing were aware of his speech. In addition, he points to Kern's Card, which stated that Bhattacharya "asked a series of questions that were quite antagonistic toward the panel" and "stated one faculty member was being contradictory." Dkts. 33 ¶ 67; 33-13. He also points to the November 15 letter from the ASAC, which states that his "behavior" at the panel was "thought to be unnecessarily antagonistic and disrespectful." Dkts. 33 ¶ 91; 33-35. The November 29 suspension letter, too, states that his "aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture, with your Dean, and during the committee meeting yesterday, constitute a violation of the School of Medicine's Technical Standards." Dkts. 33 ¶ 116–17; 33-51. Finally, Bhattacharya also alleges that UVA Defendants were aware of some unidentified comments on "various social media platforms," which UVA informed him were the basis of the NTO banning him from campus. Dkts. 33 ¶ 137; 33-66. These

allegations are sufficient to show that Defendants were aware of Bhattacharya's speech at the panel discussion, suspension hearing, and on social media.[6]

In terms of temporal proximity, Bhattacharya's comments and questions at the microaggression panel discussion occurred on October 25, 2018, Dkt. 33 ¶ 3, and his suspension hearing occurred on November 28, *id.* ¶ 110. UVA Medical School suspended him on November 29, *id.* ¶ 116—just over a month after the panel discussion and one day after the suspension hearing. UVA issued the NTO against him on January 2, 2019, *id.* ¶ 128—just over two months after the panel discussion and one month after his suspension hearing. The Court is satisfied that the time that elapsed between Bhattacharya's protected speech and his suspension and ban from the UVA Grounds is sufficient to raise a plausible inference of a causal connection. *Constantine*, 411 F.3d at 501 (finding a causal connection where "[a]t most, four months elapsed from the time [plaintiff] complained about [a professor's] exam and the grade appeals process to the time of the defendants' alleged retaliatory conduct"). At this stage, no more is needed.

**i. But-For Causation**

Defendants contest causation and argue that they suspended Bhattacharya for behavior that violated UVA Medical School's professional code of conduct, and not for the content of his speech or his viewpoint. *See, e.g.*, Dkt. 116 at 3–5. Defendants rely on the same exhibits that Bhattacharya does. They point to Kern's Card, which stated that Bhattacharya's "level of frustration/anger seemed to escalate" and expressed "shock" that Bhattacharya showed "so little respect toward faculty members." Dkts. 33 ¶ 67; 33-13. They also note that the November 15 letter from the ASAC emphasized that "people may have different opinions on various issues, but they need to

[6] However, Bhattacharya does not allege any facts from which the Court can draw the inference that Defendants were aware of his attempts to gain publicity about his situation by submitting documents to SecureDrop.

express them in appropriate ways," and that "[i]t is always very important in medicine to show mutual respect to all." Dkts. 33 ¶ 91; 33-35. In addition, the physicians at the suspension hearing told Bhattacharya that his behavior *since* the panel discussion was the primary focus on their meeting, and that they felt patients in the room during the suspension hearing would be "scared" of him. Dkt. 33-48. Finally, Defendants point to the same language as Bhattacharya does in the November 29 suspension letter to underscore that the letter cited specific UVA Medical School Technical Standards that Bhattacharya violated, including "[d]emonstrating self-awareness and self-analysis of one's emotional state and reactions, . . . [e]stablishing effective working relationships with faculty, other professionals and students in a variety of environments; and [c]ommunicating in a non-judgmental way with persons whose beliefs and understandings differ from one's own." Dkts. 33 ¶ 116–17; 33-51.

But to survive a motion to dismiss, Bhattacharya does not need to establish that but for his protected speech he would not have been suspended from UVA Medical School or banned from the UVA Grounds. Of course, Bhattacharya must clear a higher hurdle to *prevail* on a First Amendment retaliation claim. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). In *Mount Healthy City School Board of Education v. Doyle*, for example, the Supreme Court held that even if a teacher's "protected conduct played a part, substantial or otherwise, in [the] decision not to rehire," he was not entitled to reinstatement "if the same decision would have been reached" absent his protected speech. 429 U.S. 274, 285 (1977).

Although the Fourth Circuit has yet to address this question, several courts have found that schools may enforce academic professionalism requirements in programs that train licensed medical professionals without violating the First Amendment. *Keefe*, 840 F.3d at 532–33; *Ward v. Polite*, 667 F.3d 727, 734 (6th Cir. 2012); *Keeton v. Anderson-Wiley*, 664 F.3d 865 (11th Cir. 2011). "Given the strong state interest in regulating health professions, teaching and enforcing viewpoint-neutral professional codes of ethics are a legitimate part of a professional school's curriculum that do not, at least on their face, run afoul of the First Amendment." *Keefe*, 840 F.3d at 530. Still, a university may violate the First Amendment if it uses a professional code of conduct or ethics as a pretext to punish the content of a student's speech. *Ward*, 667 F.3d at 785 (denying university's motion for summary judgment because student produced sufficient evidence to show that university's decision to dismiss counseling student from training program on basis that student's request for a referral to avoid counseling gay and lesbian clients violated professional code of ethics may have been "deployed as a pretext for punishing" student's speech). *See also Papish*, 410 U.S. at 671 (ordering a student's reinstatement where the facts "show[ed] clearly that petitioner was expelled because of the disapproved content of the newspaper rather than the time, place, or manner of its distribution").

Bhattacharya's amended complaint and attached exhibits provide some evidence regarding Defendants' justifications for their actions. Yet Bhattacharya adequately alleges that Defendants used the professionalism standards as a pretext for engaging in content-based or viewpoint discrimination, thereby calling that justification into question. *See* Dkt. 33 ¶¶ 144–45. Bhattacharya also adequately alleges that UVA's issuance of the NTO was pretextual. *Id.* ¶ 137.

The record is not developed sufficiently at this stage to determine whether Bhattacharya's First Amendment retaliation claim fails as a matter of law. Moreover, such fact-intensive

arguments about causation are better evaluated on summary judgment. "Based on [Bhattacharya's amended] complaint, it is unclear whether [Defendants'] behavior was reasonably motivated by [his] 'disruptive' conduct or unreasonably motivated by his protected [speech]." *Tobey*, 706 F.3d at 389 (finding, at the motion to dismiss stage, that plaintiff who was arrested when he "removed his sweatpants and t-shirt to reveal the text of the Fourth Amendment on his chest" at airport screening checkpoint had stated a valid First Amendment retaliation claim).

**4. Qualified Immunity for Individual Defendants**

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)) (internal quotation marks omitted). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987)). To determine whether a complaint should survive a motion to dismiss on grounds of qualified immunity, the Court asks (1) "whether a constitutional violation occurred" and (2) "whether the right violated was clearly established." *Tobey v. Jones*, 706 F.3d at 385 (4th Cir. 2011). But the Court need not address the questions in that order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotation marks and alteration omitted).

Based on Bhattacharya's allegations, the Court cannot conclude that the Individual Defendants are entitled to qualified immunity on the First Amendment retaliation claim.

A defendant is entitled to raise a qualified immunity defense at the motion to dismiss stage of litigation, and later on a motion for summary judgment. *Tobey*, 706 F.3d at 393–94. In *Tobey*, the Fourth Circuit affirmed the denial of qualified immunity on a motion to dismiss. The court concluded that "[t]he question whether Mr. Tobey's conduct was so 'bizarre' and 'disruptive' that Appellant's reaction was reasonable" in "jump[ing] straight to arrest" Tobey could not "be decided at the 12(b)(6) stage." *Id.* at 393. Here, the ultimate question whether Individual Defendants in fact violated Bhattacharya's First Amendment rights by retaliating against him because of his protected speech—and accordingly, whether the First Amendment right violated was clearly established—requires a more developed record. Indeed, "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005). Thus, while the Court reviews this issue based on the allegations in the complaint now, "[i]t may be that discovery will reveal there is no genuine issue of material fact," and Peterson, Kern, and Rasmussen "can move for summary judgment" on qualified immunity grounds. *See Tobey*, 706 F.3d at 393.

At this stage of the litigation, the Court finds that Peterson, Kern, and Rasmussen are not entitled to qualified immunity on the First Amendment retaliation claim.

Accordingly, the Court will deny Defendants' motion to dismiss Count I of the amended complaint.

**B. Count II: Constitutional Due Process**

The Due Process Clause of the Fourteenth Amendment provides that "no state shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. To state a procedural due process claim, Bhattacharya must allege: "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that

the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009) (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).

Bhattacharya argues that he had a "liberty interest in [his] Protected Free Speech" and a "liberty and property interest in continuing his medical studies at UVA Med School and pursuing the practice of medicine." Dkt. 33 ¶¶ 148–49. He claims that Defendants deprived him of these interests without proper notice and the opportunity to be heard. *Id.* ¶ 152. Specifically, when UVA Medical School suspended him, it failed to accord with all of its internal policies and procedures, including the ASAC Operating Procedures. *Id.* ¶ 151.

**1. Liberty Interest in Protected Free Speech**

Defendants' purported deprivation of Bhattacharya's free speech interest is not cognizable as a procedural due process claim.

The Supreme Court's decision in *Board of Regents of State Colleges v. Roth* addressed this issue directly. 408 U.S. 564 (1972). In *Roth*, a university professor claimed that his removal could have been based in part on the exercise of his First Amendment right to freedom of speech. *Id.* The Court remarked that "[w]hen a State would directly impinge upon interests in free speech or free press, this Court has on occasion held that opportunity for a fair adversary hearing must precede the action, whether or not the speech or press interest is clearly protected under substantive First Amendment standards." *Id.* at 575 n.14. However, the Court went on to note that actions requiring such procedural safeguards were those in which the core interest at stake was "itself a free speech interest," such as "before an injunction is used against the holding of rallies and public meetings" or "before a State makes a large-scale seizure of a person's allegedly obscene books, magazines, and so forth." *Id.* (internal citations omitted). The Supreme Court reasoned that the deprivation of

the plaintiff's free speech rights was not "directly impinged . . . in any way comparable to a seizure of books or an injunction against meetings." *Id.* It concluded that "[w]hatever may be a teacher's rights of free speech, the interest in holding a teaching job at a state university, simpliciter, is not itself a free speech interest." *Id.*

In this case, Bhattacharya has faced no direct deprivation of his free speech rights comparable to the examples the Supreme Court highlighted. Indeed, Bhattacharya does not allege that Defendants prohibited him from expressing his views at all. Whatever may be Bhattacharya's free speech rights as a medical student, his interest in continuing his medical studies and pursuing a career in the medical profession "is not itself a free speech interest" cognizable under procedural due process. *Id.*

**2. Liberty and Property Interest in Continued Enrollment and Practice of Medicine**

Bhattacharya claims a purported liberty and property interest in continuing his studies at UVA Medical School and pursuing the practice of medicine. Assuming such interests are cognizable,[7] this procedural due process claim also would fail.

---

[7] The Court doubts that Bhattacharya has sufficiently pled either a property or a liberty interest in continued enrollment. "A protected property interest cannot be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source." *Equity In Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011) (citing *Roth*, 408 U.S. at 577). For example, in *Goss v. Lopez*, 419 U.S. 565, 573–74 (1975), the Supreme Court held that a student had a property interest in continued public school enrollment because the student located a state statute creating an entitlement to a free education to all residents between 5 and 21 years old. Here, Bhattacharya's amended complaint "fails to cite or to identify any statute or other source of a legitimate claim of entitlement to [Bhattacharya's] continued enrollment at [UVA Medical School]." *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 720 (E.D. Va. 2015). Furthermore, "[n]either the Supreme Court nor the Fourth Circuit has held that such a property interest exists in connection with higher education, either categorically or specifically with regard to Virginia law." *Id.* at 720–21. But the Supreme Court and Fourth Circuit have assumed without deciding that students have a protected property right to continued enrollment, as the Court does here. *See Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002).

When determining what procedural safeguards are required under the Due Process Clause, courts distinguish between academic and disciplinary dismissals. A disciplinary dismissal is one in response to charges of misconduct; in such circumstances, a hearing at which a student can present his side of a factual issue could "provide a meaningful hedge against erroneous action." *Goss v. Lopez*, 419 U.S. 565, 583 (1978) (classifying as disciplinary students' suspension for participating in demonstrations that had disrupted classes, attacking a police officer, and damaging school property). In contrast, an academic dismissal is one related to performance in studies; an academic "judgment is by its nature more subjective and evaluative than the typical factual questions presented in the average disciplinary decision" and requires "expert evaluation of cumulative information." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978) (classifying as academic a student's dismissal because she lacked "the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal"). A public university must give a student notice and an opportunity to be heard when taking disciplinary action. *Goss*, 419 U.S. at 581. But the Due Process Clause does not require such "stringent procedural protection[s]" for academic dismissals. *Henson v. Honor Comm. of Univ. of*

Bhattacharya also argued that he has alleged a liberty interest in his reputation. A plaintiff has a right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), as long as a "tangible interest such as employment"—or perhaps suspension from a public school—is involved. *Paul v. Davis*, 434 U.S. 693, 701 (1976). In *Goss*, the Supreme Court found that public school students suspended for misconduct allegations had been deprived of a reputational liberty interest. 419 U.S. at 575. To state a claim for procedural due process violations based on a reputational interest in the context of suspension from a public university, a student must allege (1) a stigmatizing statement (2) made public by the public university, (3) in conjunction with his suspension from the university, and (4) that the charge triggering his suspension was false. *Doe*, 132 F. Supp. 3d at 723–24 (citing *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007)). Here, Bhattacharya's amended complaint has not alleged any of these elements. His allegations do not raise the inference that he was suspended for misconduct, nor that UVA Medical School made public a stigmatizing statement about him. If anything, Bhattacharya alleges that *he* sought to make information about his suspension public. *See* Dkt. 33 ¶ 124.

*Va.*, 719 F.2d 69, 75 (4th Cir. 1983); *see also Horowitz*, 435 U.S. at 86 (1978). Indeed, no formal hearing at all is required for an academic dismissal. *Id.* at 90.

Bhattacharya's due process claim faces an uphill climb because the allegations in the amended complaint demonstrate that the decision to suspend Bhattacharya from the medical school was an academic judgment, not a disciplinary one. The ASAC members who suspended Bhattacharya from the medical program were evaluating whether Bhattacharya met the professionalism standards set by the institution.[8] Dkt. 33-49 at 2. Professionalism is a core competency of the degree program at UVA Medical School, evaluated by faculty along with any other competency required to obtain a medical degree. *See* Dkt. 33-9 at 2. And evaluating professionalism is a subjective inquiry best suited for the judgment of medical educators, not the Court. *See Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 462 (4th Cir. 2012) ("[T]he Supreme Court has held that a court should defer to a school's professional judgment regarding a student's academic or professional qualifications."). *See also Al-Dabagh v. Case Western Reserve Univ.*, 777 F.3d 355, 359–60 (6th Cir. 2015) (holding that a medical student's dismissal for failing to meet the school's professionalism standards was an academic judgment that deserved deference under procedural due process analysis); *Nofsinger v. Va. Commonwealth Univ.*, 3:12-cv-236, 2012 WL 2878608, at *7 (E.D. Va. July 13, 2012), *aff'd* 523 F. App'x 204 (4th Cir. 2013) (holding on a motion to dismiss that plaintiff who was a graduate student in physical

[8] This section focuses, of course, on the process that plaintiff was afforded. The analysis is different from that for a First Amendment retaliation claim. A university is not required under the Constitution to provide a hearing for academic dismissals, but that does not mean that university officials who retaliate against students for their speech under the guise of dismissing them for academic reasons do not violate the Constitution. *See Booker v. S.C. Dep't of Corrs.*, 855 F.3d 533, 542 (4th Cir. 2017) ("That a prison is not required under the Constitution to provide access to a grievance process does not mean that prison officials who retaliate against inmates for filing grievances do not violate the Constitution.").

therapy was "well aware that professionalism was a criterion used to evaluate her in her Clinical, and was also on notice that professionalism was at the very core of the Department's philosophy—and thus necessary for her success in the program," making dismissal based in part on professionalism an academic judgment).

Accordingly, Bhattacharya was given more process than the Constitution required. Indeed, although the Constitution does not require a hearing before rendering an academic judgment, *Horowitz*, 435 U.S. at 90, Bhattacharya received one.[9] Further, the Constitution, not university policies and procedures, determines the process that is required. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Thus, Bhattacharya's allegations that ASAC failed to abide by its own policies and procedures cannot support a claim that he did not receive constitutional due process.

Finally, nothing in Bhattacharya's amended complaint suggests that he was denied due process with respect to the NTO. Bhattacharya does not claim to have a property or liberty interest in being present on the UVA Grounds. In any event, he was given the right to appeal the NTO, which he did in July 2019. Dkt. 33-65. His appeal was subsequently denied. Dkt. 33-66.

For these reasons, Bhattacharya's procedural due process claim under Count II will be dismissed.

**C. Count III: § 1985(3) Civil Rights Conspiracy**

Bhattacharya must plausibly allege the following elements to state a Section 1985(3) claim:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

[9] Bhattacharya also had notice of the professional standards he was expected to abide by, as well as notice of the consequences of failing to meet them, Dkt. 33-9 at 2–3.

*A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). "To meet the requirement of a class-based discriminatory animus, under this section the class must possess the 'discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex.'" *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985) (citation omitted).

Bhattacharya argues that the class-based animus requirement should be read to encompass those who are discriminated against based on their political views. He points to the Supreme Court's decision in *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 836 (1983), as evidence that § 1985(3) has not been interpreted to exclude conspiracies motivated by bias against groups who hold particular political views. Dkt. 115 at 30–32. Indeed, Bhattacharya argues that the Supreme Court expressly left this question open when it said, "[I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." *Scott*, 463 U.S. at 836.

What Bhattacharya leaves out of his quotation, however, is what the Court went on to state in the following sentences: "the predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters."[10] Moreover, the Supreme Court has expressed reservation in expanding the scope of § 1985(3) beyond race discrimination. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993).

[10] The Fourth Circuit provides additional detail of § 1985(3)'s history: "[The] failure or inability on the part of local southern governments to control the Klan was particularly troubling to Republican Congressmen. During this period, Republicans were leading supporters of the emancipation of blacks, and as a result frequently joined the blacks as common victims of Klan intimidation and violence." *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 157 (4th Cir. 1985).

To the extent the Supreme Court left the issue Bhattacharya presents open, the Fourth Circuit has foreclosed his argument. *Harrison v. KVAT Food Mgmt., Inc.*, 766 F.2d 155, 157 (4th Cir. 1985); *see also Farber v. City of Paterson*, 440 F.3d 131, 139, 143 (3rd Cir. 2006) (noting a circuit split over the question and siding with the Fourth, Seventh, and Eighth Circuits in holding that § 1985(3) "does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation").

In *Harrison v. KVAT Food Mgmt., Inc.*, the Fourth Circuit specifically held that the Supreme Court's reasoning in *Scott* could not be extended to include claims citing discriminatory animus against a class formed around purely political views. 766 F.2d at 157. In coming to this conclusion, the Court addressed how the legislative history of § 1985, also known as the "Ku Klux Klan Act," made clear that the statute was intended to provide relief for those who suffered at the hands of Klan violence. *Id.* at 160–61. It also explained that the Supreme Court's opinion in *Scott* "exhibits a noticeable lack of enthusiasm for expanding the coverage of § 1985(3) to any classes other than those expressly provided by the Court." *Id.* at 161. The Court's later decision in *Bray* not to extend the scope of invidious class-based animus in § 1985(3) to include discrimination based on opposition to abortion only serves to emphasize this point. 506 U.S. at 269; *see also Buschi*, 775 F.2d at 1258 ("It is obvious that, whether we take the majority or the dissenting view in *Scott*, the class protected can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan violence.'") (quoting *Scott*, 463 U.S. at 851 (Blackmun, J., dissenting)).

Bhattacharya has expressly acknowledged that the bias against him was not motivated by any discriminatory animus toward his race or national origin. Dkt. 115 at 31. Rather, his contention is that the alleged conspiracy was motivated by animus based on "ideological views." Dkt. 33 at

52. But this is not the type of class-based discriminatory animus that is cognizable under § 1985(3) in this Circuit. *See Harrison*, 766 F.2d at 157. The class Bhattacharya cites is not one in "unprotected circumstances" remotely similar to those who were victims of Klan violence, nor does he cite political views in support of such victims that might subject him to such violence. *See Buschi*, 775 F.2d at 1258.

Finally, Bhattacharya's conspiracy claim also fails because Peterson, Kern, and Rasmussen are protected by the intracorporate conspiracy doctrine, which the Fourth Circuit has applied in the civil rights context. *Id.* at 1251–52. The intracorporate conspiracy doctrine protects individual defendants who are employees of a corporation and were acting in their capacities as employees in connection with the alleged conspiracy. *Id.* at 1252. "Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The plaintiff must also allege that they acted other than in the normal course of their corporate duties." *Id.* (internal quotation marks and citation omitted). Only if corporate employees have "an independent personal stake in achieving the corporation's illegal objective," *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974), or if corporate employees' acts in furtherance of a conspiracy were "unauthorized," *Buschi*, 775 F.2d at 1253 (internal quotation marks and citation omitted).

Here, Bhattacharya's amended complaint and attached exhibits allege that Peterson, Kern, and Rasmussen were UVA Medical School faculty members. Dkt. 33 at 1. None of his allegations support a reasonable inference that Peterson, Kern, or Rasmussen conspired with anyone outside UVA, or that they were not acting in their capacities as UVA Medical School faculty members in participating in the decision to suspend Bhattacharya. To the contrary, Rasmussen's discussion with Bhattacharya at the microaggression panel discussion, Peterson's meeting with Bhattacharya,

Kern's Card, and Kern's attendance at the ASAC's meetings all occurred at UVA Medical School and in relation to the Individual Defendants' responsibilities as faculty members. Moreover, Bhattacharya's conclusory allegations, Dkt. 33 ¶¶ 161–62, lack factual support and do not support an inference that the Individual Defendants' acts were unauthorized or that they had an independent personal stake in Bhattacharya's suspension. Thus, the Court concludes that the Individual Defendants are protected by the intracorporate conspiracy doctrine.

For these reasons, Bhattacharya's § 1985(3) claim will be dismissed.

**D. Count IV: Va. Code § 18-499–500 Conspiracy to Injure in Trade, Business, or Profession**

Bhattacharya alleges that Defendants Peterson, Kern, and Rasmussen are liable to him for violating Virginia Code § 18.2-499. The statute states in relevant part, "Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever . . . shall be jointly and severally guilty of a Class 1 misdemeanor." Va. Code. § 18.2-499.[11] "To ultimately prevail under the Virginia conspiracy statute, a plaintiff must prove by clear and convincing evidence the following elements: (1) concerted action; (2) legal malice; and (3) causally related injury." *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 325 (W.D. Va. 2007).

A claim under these statutes "focuses upon conduct directed at property, that is, one's business, and applies only to conspiracies resulting in business-related damages." *Buschi*, 775 F.2d at 1259 (internal quotation marks omitted); *see Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (stating it is "well-settled" that the Va. Code § 18-499 does not apply to "personal

[11] Section 18.2-500 creates a private cause of action for parties injured under this statute, permitting them to recover treble damages.

or employment interests”) (citing *Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003)). The statute does not cover a claim that only relates to “employment and possible injury to their employment reputation” because the claim does not include any “business-related injury.” *Buschi*, 775 F.2d at 1259.

Bhattacharya alleges that the purported co-conspirators conspired to deprive him “of the ability to complete his medical school studies and enter the medical profession.” Dkt. 33 at 53. He does not raise anything more than a harm to his interest in pursuing employment.[12] He does not allege to have any existing stake or interest in a business, let alone one that was the target of a conspiracy. Rather, he claims injury to a future interest in employment, which does not raise a right to relief under the statute. *See Shirvinski*, 673 F.3d at 321 (denying claim under Va. Code § 18-499 where plaintiff suffered harm to only his “personal employment prospects”); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 636 (W.D. Va. 2015) (holding that harm to a future business or employment interest is not cognizable under Va. Code. § 18-499).

Finally, for the same reasons noted above, Bhattacharya’s conspiracy claim also must fail because Peterson, Kern, and Rasmussen’s actions fall under the intracorporate conspiracy doctrine. *See Buschi*, 775 F.2d at 1251–53.

Accordingly, because Bhattacharya’s alleged harm falls outside the scope of the statute and the Individual Defendants are protected by intracorporate immunity, the Court will dismiss the conspiracy claim under Virginia Code § 18.2-499.

---

[12] Bhattacharya argues that his pursuit of the practice of medicine is an interest in a *profession*, not *employment*. The Court sees no cognizable difference between the two for purposes of the Virginia statute, and moreover, Bhattacharya has provided no argument delineating the difference.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss. The Court will grant the motion to dismiss Counts II, III, and IV with prejudice. The Court will deny the motion to dismiss Count I.

An appropriate Order will issue.

The Clerk of Court is directed to send this Memorandum Opinion to all counsel of record.

ENTERED this 31st day of March, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KIERAN RAVI BHATTACHARYA, *Plaintiff,* v. JAMES B. MURRAY, JR., *et al.*, *Defendants.* | CASE NO. 3:19-cv-00054 ORDER JUDGE NORMAN K. MOON |

Defendants' motion to dismiss Plaintiff Kieran Ravi Bhattacharya's amended complaint is before the Court. Dkt. 112.

For the reasons set forth in the accompanying Memorandum Opinion, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss, Dkt. 112. The Court **GRANTS** Defendants' motion to dismiss Counts II, III, and IV and **DISMISSES** Counts II, III, and IV with prejudice. The Court **DENIES** Defendants' motion to dismiss Count I.

It is so **ORDERED**.

The Clerk of Court is directed to send this Order to all counsel of record.

ENTERED this 31st day of March, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| KIERAN RAVI BHATTACHARYA, Plaintiff, | ) | Civil Action No. 3:19cv00054 |
| v. | ) | REPORT & RECOMMENDATION |
| JAMES B. MURRAY, et al., Defendants. | ) | By: Joel C. Hoppe, United States Magistrate Judge |

This matter is before the Court on Plaintiff Kieran Bhattacharya's motion for leave to file a second amended complaint. ECF No. 149; *see* ECF No. 156. The motion has been fully briefed and argued. ECF Nos. 149, 149-1, 154, 155, 173. For the reasons explained below, I respectfully recommend that the motion be granted only to the extent that Bhattacharya proposes to delete the three Counts that have been dismissed with prejudice and to add one new individual-capacity defendant and two new official-capacity defendants to the existing § 1983 claim in Count I. The motion should be denied in all other respects. If this recommendation is accepted, Bhattacharya should be instructed to strike from his proposed pleading all allegations concerning non-party Angel Hsu, M.D., and file a Second Amended Complaint containing only Count I, as amended, and the facts relevant thereto. *See* Fed. R. Civ. P. 12(f)(1).

I. The Legal Framework

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading before trial once as a matter of course and then "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)–(2). "This liberal [leave] rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). The Fourth Circuit has held that "such leave should be denied

only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002) (emphasis omitted). "[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party," but the "basis for a finding of prejudice" under such circumstances "essentially applies [only] where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). "Bad faith includes seeking to amend a complaint for an improper purpose," *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 124, 127 (E.D. Va. 2017) (citing *Peamon v. Verizon Corp.*, 581 F. App'x 291, 292 (4th Cir. 2014) (holding that it was bad faith to seek to amend complaint to "artificially inflate . . . damages in order to obtain subject matter jurisdiction")), or seeking leave despite "repeated failure[s] to cure deficiencies by amendments previously allowed," *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See Wilkins*, 320 F.R.D. at 127 (citing *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013)). An amendment to a complaint is futile if the proposed change "fails to satisfy the requirements of the federal rules" and applicable standards of review, *Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011), including those governing a motion to dismiss under Rule 12(b)(6), *see Wilkins*, 320 F.R.D. at 127 (E.D. Va. 2017) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

II. Background

This case relates to Bhattacharya's suspension and dismissal from the University of Virginia ("UVA") School of Medicine in the fall of 2018. *See generally Bhattacharya v. Murray*, 515 F. Supp. 3d 436, 444–52 (W.D. Va. 2021) (Moon, J). Bhattacharya filed the case pro se in September 2019. Compl., ECF No. 1. In early February 2020, after counsel entered an

appearance on his behalf, the Court granted Bhattacharya leave to amend his complaint under Rule 15(a)(2). *See* ECF Nos. 29, 32. The Amended Complaint sought injunctive relief and damages against UVA, its Medical School, and several UVA employees for "retaliation in violation of his First Amendment right of free speech (Count I) and for deprivation of his Fourteenth Amendment right of due process (Count II)," 42 U.S.C. § 1983, as well as damages against three Medical School faculty (Defendants Nora Kern, Christine Peterson, and Sara K. Rasmussen) in their official and individual capacities "for conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985(3) (Count III) and conspiracy to injure him in his trade, business, and profession under Virginia Code § 18.2-499 (Count IV)," *Bhattacharya*, 515 F. Supp. 3d at 444. *See generally* Am. Compl. ¶¶ 139–46 (Count I), 147–52 (Count II), 153–58 (Count III), 159–65 (Count IV), ECF No. 33.

In March 2021, Judge Moon dismissed with prejudice the § 1983 due process claim (Count II) and the two claims alleging conspiracy (Counts III & IV). *See Bhattacharya*, 515 F. Supp. 3d at 466; Order of Mar. 31, 2021, ECF No. 130. As relevant here, Judge Moon held that the Amended Complaint failed to state a claim for conspiracy because the three faculty members who allegedly conspired against Bhattacharya were protected from liability by the intracorporate conspiracy doctrine. *See Bhattacharya*, 515 F. Supp. 3d at 465–66. This "doctrine protects individual defendants who are employees of a corporation and were acting in their capacities as employees in connection with the alleged conspiracy" *Id.* at 465 (citing *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985)); *see Balt.-Wash. Tele. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 744 (D. Md. 2008) ("[T]he 'intracorporate conspiracy doctrine' holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot

conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves."). "'Simply joining corporate officers as defendants in their individual capacities,'" as Bhattacharya's Amended Complaint purported to do, "'is not enough to make them persons separate from the corporation in legal contemplation.'" *Bhattacharya*, 515 F. Supp. 3d at 465 (quoting *Buschi*, 775 F.2d at 1252). Rather, the complaint must plausibly allege that an employee of the defendant-corporation acted without authorization beyond "'the normal course of their corporate duties,'" *id.* (quoting *Buschi*, 775 F.2d at 1252), or had "'an independent personal stake in achieving the corporation's illegal objective,'" *id.* (quoting *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974)). *But see Tomlin v. Int'l Bus. Machs. Corp.*, No. CL-2011-8763, 2012 WL 7850902, at *14 (Va. Cir. Feb. 13, 2012) (concluding that "the independent personal stake exception would not apply to negate the intra-corporate immunity doctrine" because "the Virginia Supreme Court has not recognized an exception" to that doctrine). Plausibly alleging that an employee and someone outside the defendant-corporation conspired to achieve "the same unlawful objective," *Cabbagestalk v. Cartledge*, No. 3:12cv3182, 2013 WL 5409204, at *4 (D.S.C. Sept. 25, 2013) (citing *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) ("While [civil-rights plaintiffs] need not produce direct evidence of a meeting of the minds, [they] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.")); *see also Ratcliffe v. Walker*, 85 S.E. 575, 580 (Va. 1915) (explaining that "the essence" of a conspiracy claim under Virginia law is that two or more persons shared a "common design" and "pursued by their acts the same object . . . with a view to the attainment of that same object"), would also defeat intracorporate immunity, *see, e.g.*, *Balt.-Wash. Tele. Co.*, 584 F. Supp. 2d at 744. Judge Moon concluded that none of the well-pled factual allegations in

Bhattacharya's Amended Complaint supported a reasonable inference that Kern, Peterson, or Rasmussen

> conspired with anyone outside UVA, or that they were not acting in their capacities as UVA Medical School faculty members in participating in the decision to suspend Bhattacharya. To the contrary, Rasmussen's discussion with Bhattacharya at the microaggression panel discussion, Peterson's meeting with Bhattacharya, Kern's Card, and Kern's attendance at the ASAC's meetings all occurred at UVA Medical School and in relation to the Individual Defendants' responsibilities as faculty members. Moreover, Bhattacharya's conclusory allegations, [Am. Compl.] ¶¶ 161–62, lack factual support and do not support an inference that the Individual Defendants' acts were unauthorized or that they had an independent personal stake in Bhattacharya's suspension.

*Bhattacharya*, 515 F. Supp. 3d at 465.

As the case stands now, Bhattacharya's operative complaint, ECF No. 33, asserts one claim for violating his First Amendment right to free speech, *see* 42 U.S.C. § 1983, against the following individuals and entities: The University of Virginia, the University's Rector, Vice Rector & Members of the Board of Visitors, Interim Chief of University Police Timothy Longo, and Deputy Chief of University Police Melissa Fielding[1]; The University of Virginia School of Medicine, Dr. John Densmore, Associate Dean for Admissions & Student Affairs, and Dr. Jim Tucker, Chair of the Academic Standards & Achievement Committee[2]; and Dr. Christine Peterson, Assistant Dean for Medical Education, Dr. Nora Kerns, Assistant Professor of Urology, and Dr. Sara K. Rasmussen, Associate Professor of Medicine.[3] *See generally* Am. Compl. ¶¶ 9–22, 139–46 (Count I); *Bhattacharya*, 515 F. Supp. 3d at 444, 452–60 & nn. 1–2 (denying Defendants' joint motion to dismiss Count I). Judge Moon denied Defendants' motion

---

[1] The Amended Complaint refers to these entities and individuals collectively as "The University Defendants." They are sued in their official capacities only. Am. Compl. ¶¶ 10–14.

[2] The Amended Complaint refers to these entities and individuals collectively as "The UVA Med School Defendants." They are sued in their official capacities only. *Id.* ¶¶ 15–19.

[3] These Individual Defendants are sued in their individual and official capacities. *Id.* ¶¶ 20–28.

to dismiss this claim because the facts alleged in the Amended Complaint supported a reasonable inference that Bhattacharya's statements and questions at the AMWA microaggression panel, as well as his online comments that prompted UVA to issue a no-trespass order, were protected speech; that the named Defendants retaliated against Bhattacharya by suspending him from UVA Medical School, requiring him to undergo counseling and obtain "medical clearance" in order to stay enrolled, and preventing him from appealing his suspension or applying for readmission by issuing and refusing to revoke a no-trespass order after Bhattacharya made those comments; and that there was a causal relationship between his protected speech and Defendants' adverse actions. *Bhattacharya*, 515 F. Supp. 3d at 452–60. The Amended Complaint seeks damages and injunctive relief under 42 U.S.C. § 1983. *See* Am. Compl. ¶¶ 14, 18, 27–28, 146; *Bhattacharya*, 515 F. Supp. 3d at 444.

*

Bhattacharya proposes several amendments. First, he would delete the counts that Judge Moon dismissed with prejudice, as well as "all allegations that were relevant only to those three counts." Pl.'s Mot. to Amend 2–3. Second, Bhattacharya finds it necessary to "publicly disclose and allege" additional facts relating to his First Amendment retaliation claim (Count I) and Defendants' Answer thereto. *See id.* at 3 (citing Answer ¶ 7, ECF No. 135). "These facts include a discussion [on] why [his] former girlfriend," Angel Hsu, M.D., "made certain claims [about Bhattacharya] at the time and why those claims were not credible." *Id.* at 4 ("The evidence will show that the former girlfriend collaborated with Dean Densmore and Dean Peterson to obtain revenge for Mr. Bhattacharya's decision to break up with her the night before the AMWA Microaggression Seminar. . . ."); *see, e.g.*, Prop. Second Am. Compl. ¶¶ 59–66, 95–96, 159, 161–76, ECF No. 149-1. Third, he would name Dr. Hsu as a new Defendant, Prop. Second Am.

Compl. ¶¶ 40–42, and add a state-law defamation claim (proposed Count III) against her, *see id.* ¶¶ 209–16. Fourth, Bhattacharya would add a new claim for civil conspiracy under Virginia common law (proposed Count II) against Dr. Hsu and Defendants Densmore, Kern, Peterson, and Rasmussen. *See id.* ¶¶ 28–42, 205–08. Fifth, Bhattacharya wishes to add Lesley Thomas ("Dean Thomas") and Dr. Randolph Canterbury ("Dean Canterbury"), in their official capacities as Deans at the School of Medicine, as Defendants in Count I. *See id.* ¶¶ 24, 27, 196–204. Finally, also in Count I, Bhattacharya wishes to "su[e] Dean Densmore in his induvial capacity in addition to his official capacity." Pl.'s Mot. to Amend 4–5; *compare* Am. Compl. ¶¶ 15, 19, *with* Prop. Second Am. Compl. ¶¶ 38–39. If this last amendment is allowed, Defendants Densmore, Kern, Peterson, and Rasmussen would be sued in both their individual and official capacities. *See* Prop. Second Am. Compl. ¶¶ 28–39.

"Defendants oppose the [m]otion primarily because the proposed amendments fail to state a claim" upon which relief can be granted and, as such, allowing leave to amend would be futile. Defs.' Br. in Opp'n 1, ECF No. 154. They argue that Bhattacharya's proposed conspiracy claim fails to cure pleading defects that Judge Moon identified in dismissing the prior conspiracy claims under Rule 12(b)(6), *see id.* at 6–8, and that the proposed claims against Dr. Hsu, Dean Canterbury, and Dean Thomas are time barred, *see id.* at 4–5 (citing *Harvey v. Landauer*, No. 7:18cv97, 2020 WL 1904458, at *8–9 (W.D. Va. Apr. 17, 2020)). They do not specifically address Bhattacharya's proposal to add Defendant Densmore as an individual-capacity defendant to the § 1983 damages claim in Count I. *See generally id.* at 2–8. Defendants also argue that allowing Bhattacharya "to add a host of new allegations to support" his First Amendment retaliation claim (Count I) "would serve no apparent purpose" because Judge Moon already held that the facts alleged in the operative complaint were sufficient to survive under Rule 12(b)(6).

*Id.* at 1–2; *see id.* at 2 ("The new allegations, which span approximately thirty additional pages . . . primarily discuss Plaintiff's three involuntary hospitalizations for psychiatric care in January 2017 and November 2018 and Plaintiff's former relationship with Dr. Hsu from 2016 to 2018.").

III. Discussion

*A. Proposed Changes to Count I: New Defendants & Allegations*

Bhattacharya seeks to add Defendant Densmore as an individual-capacity defendant and to add Dean Canterbury and Dean Thomas as defendants, in their official capacities only, to the First Amendment retaliation claim in Count I. As currently pled, that Count states a claim for relief under 42 U.S.C. § 1983, against Defendants Board of Visitors, Longo, Fielding, Densmore, and Tucker in their official capacities, and against Defendants Kern, Peterson, and Rasmussen in their individual and official capacities. *Bhattacharya*, 515 F. Supp. 3d at 444 & n.1. Defendants do not address Bhattacharya's request to add Densmore as an individual-capacity defendant to Count I. *See generally* Defs.' Br. in Opp'n 2–8. This change would allow Bhattacharya to hold Densmore personally liable for damages, 42 U.S.C. § 1983, if he can prove that Densmore, "through [his] own individual actions," *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), retaliated against Bhattacharya for engaging in constitutionally protected speech, *Bhattacharya*, 515 F. Supp. 3d at 459–60 ("At this stage of the litigation, the Court finds that Peterson, Kern, and Rasmussen are not entitled to qualified immunity on the First Amendment retaliation claim."). *See generally Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).

In his proposed Second Amended Complaint, Bhattacharya alleges that Densmore knew about his comments at the AMWA microaggression panel and his discussions with Peterson, *see* Prop. Second Am. Compl. ¶¶ 6–9, 43, 89–91, 94, 109, before Densmore "coerced" Bhattacharya "to undergo a psychiatric 'evaluation'" at the University's student health center on November 14,

2018, *id.* ¶ 13(a). Bhattacharya acquiesced "out of fear of retaliation if he did not comply" with Densmore's demand. *Id.* ¶ 166. Densmore did not tell Bhattacharya about the Professionalism Concern Card ("PCC") that Kern submitted after the AMWA microaggression panel or indicate that Bhattacharya "had anything to be concerned about." *See id.* ¶¶ 109–10. Kern's PCC was the subject of the November 14, 2018 ASAC meeting that resulted in Dr. Tucker's letter suggesting Bhattacharya "'consider getting counseling in order to work on [his] skills of being able to express [himself] appropriately'" when interacting with patients, families, and other healthcare providers. *Id.* ¶ 125. Densmore and Peterson attended the ASAC meeting as guests. *See id.* ¶ 149. On November 26, 2018, Densmore sent Bhattacharya an email stating, "You will need to be seen by CAPS before you can return to classes." *Id.* ¶ 130. Judge Moon concluded that the Amended Complaint's factual allegations describing Kern's and Peterson's personal involvement in these events stated a First Amendment retaliation claim against those Defendants in their individual capacities. *See generally Bhattacharya*, 515 F. Supp. 3d at 453–60. The allegations in Bhattacharya's proposed Second Amended Complaint describing Densmore's personal involvement are similar enough to those Judge Moon has found sufficient that the amendment would not be futile at this point in the litigation. *See id.*

The Court should also consider whether Densmore would be prejudiced if the amendment is allowed and whether Bhattacharya's amendment is made in bad faith. *See Franks*, 313 F.3d at 193. Bhattacharya explains that he wishes to sue Densmore in his individual capacity, as well as his official capacity, because Defendants' Answer states that Bhattacharya's suspension from UVA Medical School "'was triggered by events including'" his "'erratic,'" "'aggressive,'" and "'troubling'" behavior during two meetings with Densmore. *See* Pl.'s Mot. to Amend 3 (quoting Answer ¶ 7 (filed Apr. 14, 2021)). These circumstances do not suggest that Bhattacharya acted in

bad faith by failing to name Densmore as an individual-capacity defendant in the Amended Complaint, or that allowing the unopposed amendment would be prejudicial to Densmore at this relatively early stage of the case. *See Wilkins*, 320 F.R.D. at 127–28 (discussing bad faith and prejudice); *Bhattacharya*, 515 F. Supp. 3d at 444 n.2 (noting that the Virginia Attorney General's Office represents all Defendants in this case, including those sued in both their individual and official capacities); *cf. Francis v. Woody*, No. 3:09cv235, 2009 WL 2371509, at *8–9 (E.D. Va. July 31, 2009) (concluding that § 1983 plaintiff's "change from suing [sheriff] in his official capacity to suing [him] in his individual capacity relates back to the date of the original complaint" under Rule 15(c)(1) and was not prejudicial). Accordingly, I will recommend allowing Bhattacharya leave to amend to add Densmore in an individual capacity to Count I.

Defendants argue that Bhattacharya's proposed § 1983 claim against Dean Canterbury and Dean Thomas in their official capacities are time-barred by the applicable two-year statute of limitations. *See* Defs.' Br. in Opp'n 4–5 (citing *Harvey*, 2020 WL 1904458, at *9 ("Section 1983 claims brought in this court are governed by Virginia's two-year limitations period for personal injury claims.")). Bhattacharya's cause of action under § 1983 "accrued, and the statute of limitations began to run, when he knew, or through reasonable diligence should have known, of the [constitutional] injury he had suffered," *Harvey*, 2020 WL 1904458, at *9 (citing *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 388–89 (4th Cir. 2014)). *See, e.g.*, *Peirce v. Bryant*, No. 4:14cv2927, 2016 WL 11410276, at *3 (D.S.C. Feb. 1, 2016) (plaintiff's § 1983 "cause of action for retaliation in violation of the First Amendment" accrued on the date she was arrested because "her arrest was, as she alleged, in retaliation for her speech on matters of public concern"). Defendants note that the proposed Second Amended Complaint affirmatively alleges that Bhattacharya knew about his comments and the Defendants' retaliatory conduct—including

the PCC, the mandatory counseling or medical clearance before returning to class, his suspension from school, and the no-trespass order—around the time each event occurred between October 2018 and January 2019. *See* Defs.' Br. in Opp'n 4–5. Thus, his two-year limitations period expired, at the latest, in January 2021. Bhattacharya filed this motion to add Deans Canterbury and Thomas as official-capacity defendants to Count I on June 10, 2021. ECF No. 149.

Bhattacharya responds that the expired limitations period is irrelevant because his proposed amendment "'relates back to the date of the original'" complaint that he filed pro se in September 2019. Pl.'s Reply Br. 10 (quoting Fed. R. Civ. P. 15(c)(1)), ECF No. 155. As relevant here, Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading" either when it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), or when it "changes the party or the naming of the party against whom [such] a claim is asserted," "the party to be brought in by amendment received such notice of the action that it will not be prejudiced in defending on the merits," and the party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii). *See* Fed. R. Civ. P. 15(c)(1)(C) (allowing relation back only "if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment" received adequate notice).

I find that Rule 15(c)(1)(C) allows relation back in this case. To start, Bhattacharya's proposed § 1983 claim against Deans Canterbury and Thomas in their official capacities as administrators for UVA's School of Medicine does not seek to impose personal liability upon the officials for any action that they took under color of state law. *See Graham*, 473 U.S. at 165. The

proposed official-capacity claim is merely "'another way of pleading an action against'" UVA, the government "'entity of which [each] officer is an agent.'" *Id.* at 165–66 (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 5 (1978); *see Weihua Huang v. Rector & Visitors of Univ. of Va.*, No. 3:11cv50, 2011 WL 6329755, at *5 (W.D. Va. Dec. 19, 2011) (Moon, J.). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 166 (internal citation omitted).

Bhattacharya's original complaint named the "Rector and Visitors of the University of Virginia" as the sole Defendant and attempted to set out a claim for damages and injunctive relief arising out of various officials' alleged retaliation against him for engaging in protected speech at a university-sponsored event. *See generally* Compl. 1–48. On September 30, 2019, the Attorney General's Office filed a waiver of service acknowledging receipt of the complaint and agreeing to waive service of summons on UVA's behalf. ECF No. 2. Bhattacharya then amended his complaint, and named the Board of Visitors and several UVA employees as official-capacity defendants to the First Amendment retaliation claim in Count I. After UVA moved to dismiss on the merits, Judge Moon concluded that Count I stated an official-capacity claim for relief against UVA under § 1983 insofar as it plausibly alleged that Defendants used UVA Medical School's professionalism standards as a pretext for violating Bhattacharya's right to free speech. *See generally Bhattacharya*, 515 F. Supp. 3d at 444, 452–59. Bhattacharya's proposal to name Dean Canterbury and Dean Thomas as additional official-capacity defendants to Count I will not alter the fundamental nature of his cause of action against UVA, which remains the "real party in

interest" under § 1983. *Graham*, 473 U.S. at 166. Accordingly, the amendment should be allowed.

Finally, Defendants argue that allowing Bhattacharya "to add a host of new allegations to support" his First Amendment retaliation claim "would serve no apparent purpose" because Judge Moon already held that the facts alleged in the operative complaint were sufficient to survive under Rule 12(b)(6). Defs.' Br. in Opp'n 1–2; *see id.* at 2 ("The new allegations, which span approximately thirty additional pages . . . primarily discuss Plaintiff's three involuntary hospitalizations for psychiatric care in January 2017 and November 2018 and Plaintiff's former relationship with Dr. Hsu from 2016 to 2018."). I agree, but only to the extent that the new factual allegations concern Dr. Hsu. *See* Fed. R. Civ. P. 12(f)(1). Defendants do not specifically argue that they will be prejudiced by responding to the allegations concerning Dean Canterbury and Dean Thomas, *see* Defs.' Br. in Opp'n 1–3, 10–11, some of which are in the Amended Complaint, *compare* Am. Compl. ¶¶ 82, 99–100, 160, *with* Prop. Second Am. Compl. ¶¶ 7, 94, 133. Bhattacharya's new allegations concerning Densmore are relevant to his proposed § 1983 claim against Densmore in his individual capacity, and Defendants would not be prejudiced in responding to those allegations at this stage of the case. *See Wilkins*, 320 F.R.D. at 128.

*B. Proposed Count II: Common Law Civil Conspiracy*

Bhattacharya seeks leave to add a new claim for common law civil conspiracy against Dr. Hsu and Defendants Densmore, Kern, Peterson, and Rasmussen. *See* Pl.'s Mot. to Amend 2, 4–5; Prop. Second Am. Compl. ¶¶ 28–42, 205–08. "Under Virginia law, the elements of a common law civil conspiracy are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) result[ed] in damage to plaintiff through an overt [tortious] action done pursuant to the agreement."

*Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 634 (W.D. Va. 2015) (internal quotation marks omitted) ("There must also be an underlying tort committed."); *see Gelber v. Glock*, 800 S.E.2d 800, 821 (Va. 2017) ("The object of a civil conspiracy claim is to spread liability to persons other than the primary tortfeasor. Consequently, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed."). Additionally, because "the essence" of a conspiracy is that two or more persons agreed to a "common design . . . with a view to the attainment of th[e] same object," *Ratcliffe*, 85 S.E. at 579, the complaint must plead facts showing that each member of the alleged conspiracy shared "the *same unlawful* objective," *Cabbagestalk*, 2013 WL 5409204, at *4 (emphasis added) (citing *Hinkle*, 81 F.3d at 421). *Cf. Hinkle*, 81 F.3d at 421 (explaining at the summary judgment stage that plaintiff's "evidence must, at least, reasonably lead to the inference that [defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."). Factual allegations showing that a member of the purported conspiracy intended to achieve a lawful objective, or the absence of factual allegations showing that this person agreed with someone else to accomplish her lawful objective through unlawful means, would defeat a conspiracy claim as to that person. *Cf. Ratcliffe*, 85 S.E. at 579 (explaining that a jury would be justified in finding a conspiracy between two defendants who "maliciously sought to deprive the plaintiff of the society of his wife," then a tort under Virginia law, if the evidence showed "that the defendants pursued by their acts the same [unlawful] object . . . with a view to the attainment of that same object"); *Dunlap v. Cottman Transmission Sys., Inc.*, 754 S.E.2d 313, 317 (Va. 2015) ("Because there can be no conspiracy to do an act that the law allows, . . . actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." (cleaned up)).

The factual allegations supporting Bhattacharya's proposed Count II describe two groups of persons who, through their alleged efforts to get Bhattacharya suspended or expelled from UVA Medical School in the fall of 2018, were pursuing two independent and fundamentally different objectives. *See* Pl.'s Reply Br. 8 (asserting that Dr. Hsu and the UVA faculty members all intended to harm Bhattacharya, but that each person "had different motives for entering the conspiracy" and pursued distinct objectives consistent with those motivations). On one hand, Dr. Hsu wanted revenge against Bhattacharya after he ended their romantic relationship on October 24. *See, e.g.*, Prop. Second Am. Compl. ¶ 42 (alleging that Bhattacharya told Dr. Hsu "he wished to end their relationship," that Dr. Hsu "did not take this news well," and that Deans Peterson and Densmore "were active participants in [Dr.] Hsu's subsequent efforts to obtain retribution"); *id.* ¶ 95 (alleging that Dr. Hsu wanted to "obtain vengeance for his breaking off their relationship"); *id.* ¶ 157 (alleging that Bhattacharya's formal suspension from UVA Medical School on November 29, 2018, "followed more than two weeks of efforts" by Dr. Hsu "to retaliate against [him] for ending [their] personal relationship" on October 24, 2018); *id.* ¶ 172 (referencing "the efforts of [Dr.] Hsu to retaliate against him for ending their relationship"); *see also id*. ¶ 207 (asserting that Dr. Hsu "conspired with" four UVA faculty members, including Densmore and Peterson, "for the purpose of obtaining retribution for personal reasons"); Pl.'s Mot. to Amend 4 (seeking to add allegations showing "that the former girlfriend collaborated with Dean Densmore and Dean Peterson to obtain revenge for [his] decision to break up with her the night before the AMWA Microaggression Seminar"). On the other hand, UVA faculty members Densmore, Peterson, Kern, and Rasmussen collectively sought to punish Bhattacharya for his unpopular—but constitutionally protected—speech at the AMWA microaggression panel on October 25. *See, e.g.*, Prop. Second Am. Compl. ¶¶ 5, 13, 38, 94–95, 103, 157, 172; *see also*

*id.* ¶ 206 (asserting that the UVA faculty members, including Densmore and Peterson, "conspired with [Dr. Hsu] for the purpose of depriving Mr. Bhattacharya of his First Amendment right of free speech"); Pl.'s Mot. to Amend 4 (seeking leave to add allegations "show[ing] that Defendants—particularly Dean Densmore and Dean Peterson—collaborated with the former girlfriend to punish Mr. Bhattacharya for his exercise of his free speech rights"); Pl.'s Reply Br. 7 (citing Prop. Second Am. Compl. ¶ 95). These facts do not support a reasonable inference that Dr. Hsu "shared the same unlawful objective," *Cabbagestalk*, 2013 WL 5409204, at *4 (citing *Hinkle*, 81 F.3d at 421), as Densmore, Peterson, Kern and/or Rasmussen.[4] The different objectives of the two groups—Dr. Hsu and the UVA faculty members—defeats Bhattacharya's conspiracy claim. Moreover, his allegations that Dr. Hsu collaborated with the UVA faculty defendants to punish Bhattacharya for exercising his free speech rights is wholly conclusory. To the extent Bhattacharya's proposed Count II asserts a common-law conspiracy claim against the UVA faculty members, *see* Pl.'s Reply Br. 7–9, that claim still fails under Virginia's

[4] Moreover, Bhattacharya does not adequately describe the nature of Dr. Hsu's allegedly "retaliatory conduct," Prop. Second Am. Compl. ¶ 68, or her involvement in the purported conspiracy between herself and the UVA faculty members, *see id.* ¶¶ 42, 95–96, 157. According to the proposed Second Amended Complaint, Dr. Hsu discussed Bhattacharya's mental-health condition with someone within the UVA Medical School community after the couple argued on October 24, 2018, *see id.* ¶¶ 158–64, and that on November 14, Densmore asked Bhattacharya to meet with him "after hearing of concerns that his girlfriend had about his condition worsening." *Id.* ¶ 164. Around November 19, Dr. Hsu sent Peterson a text message suggesting that Bhattacharya made her feel unsafe, which Peterson then forwarded to Densmore and another UVA official. *See id.* ¶¶ 168, 172–74. On November 28, Peterson sent Dr. Hsu a text message indicating that Bhattacharya would be suspended, but not expelled, from UVA Medical School. *Id.* ¶ 176. *See generally* Pl.'s Reply Br. 3–5 (discussing the same allegations). These allegations cannot support Bhattacharya's claim for common-law civil conspiracy against Dr. Hsu because such conduct is not "*itself* wrongful or tortious" under Virginia law, *Dunlap*, 754 S.E.2d at 317 (emphasis added) ("Because there can be no conspiracy to do an act that the law allows, we have held that an allegation of conspiracy . . . must at least allege an unlawful act or an unlawful purpose to survive demurrer." (cleaned up)). *Cf. Jackson v. Liberty University*, No. 6:17cv41, 2017 WL 3326972, at *12–13 (W.D. Va. Aug. 3, 2017) (Moon, J.) (male student's allegations that female student, who told various university officials that male student sexually assaulted her, "improperly used the Title IX proceedings to carry out her ulterior motives of getting revenge for her expulsion and harming the Liberty football team" failed to state a claim for "malicious abuse of legal process" against female student because university's internal Title IX investigation was not "legal process" under Virginia law).

intracorporate conspiracy doctrine, *see Bhattacharya*, 515 F. Supp. 3d at 466; *Tomlin*, 2012 WL 7850902, at *14.[5] Accordingly, allowing the amendment would be futile.

*C. Proposed Count III: Defamation*

Finally, Bhattacharya proposes to sue Dr. Hsu for defamation. *See* Pl.'s Mot. to Amend 5; Prop. Second Am. Compl. ¶¶ 209–16. "Under Virginia law, the elements of defamation are '(1) publication of (2) an actionable statement with (3) the requisite intent.'" *Gilmore v. Jones*, 370 F. Supp. 3d 630, 666 (W.D. Va. 2019) (Moon, J.) (quoting *Choi v. Kyu Chul Lee*, 312 F. App'x 551, 552 (4th Cir. 2009). "[P]ublication . . . requires that [the statement] be communicated to a third party 'so as to be heard and understood by such person.'" *Katz v. Odin, Feldman & Pittleman, P.C.*, 332 F. Supp. 2d 909, 915 (E.D. Va. 2004) (quoting *Thalhimer Bros. v. Shaw*, 159 S.E. 87, 90 (Va. 1931)). "An actionable statement must be both false and 'defamatory,' meaning that the statement 'tend[s] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Rosenthal v. R.W. Smith Co.*, 260 F. Supp. 3d 588, 594 (W.D. Va. 2017) (Moon, J.) (quoting *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015)). Subjective opinions, statements that "do[] not contain a provably false factual connotation, [and] statements which cannot reasonably be interpreted as stating actual facts about a person," *Fuste v. Riverside Healthcare Assoc., Inc.*,

[5] At oral argument, Bhattacharya's counsel asserted that even if the allegations linking Dr. Hsu to the alleged conspiracy failed to state a claim, the conspiracy claim could nonetheless proceed against the UVA faculty defendants and the four "Non-Party Speech Suppressors," Prop. Second Am. Compl. ¶¶ 43–46, some of whom are anonymous, because the intracorporate immunity doctrine would not bar such claim. I need not decide whether the intracorporate immunity doctrine would bar such a recast claim because it is plainly inadequate for other reasons. Bhattacharya has not alleged that any of the four "Non-Party Speech Suppressors" were a part of the alleged conspiracy. Rather, he merely asserts that they filed complaints. *See* Prop. Second Am. Compl. ¶¶ 89–94, 205–08. Moreover, none of his allegations raise an inference that any of the "Non-Party Speech Suppressors" were part of an agreement or had an unlawful purpose (or lawful purpose obtained through unlawful means) that they shared with the UVA faculty defendants.

575 S.E.2d 858, 861 (Va. 2003), generally are "not actionable because such statements cannot be objectively characterized as true or false," *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).[6] Finally, the requisite-intent element "depends upon the plaintiff's status as a public or private figure and the damages sought." *Jordan*, 612 S.E.2d at 207. A private-figure plaintiff need only allege facts "showing that the defendant published the statement knowing it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Steele v. Goodman*, 382 F. Supp. 3d 403, 420 (E.D. Va. 2019) (quoting *Gazette Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985) (other quotation marks omitted)).

Bhattacharya's complaint must "plead the *exact* defamatory words allegedly spoken by" Dr. Hsu. *Tomlin*, 2012 WL 7850902, at *9 (citing *Fuste*, 575 S.E.2d at 862 (explaining that Virginia law requires the complaint to plead "the exact words spoken or written," but "does not require that a [complaint] alleging defamation identify to whom the statements were made and under what circumstances")); *see also Fed. Land Bank of Balt. v. Birchfield*, 3 S.E.2d 405, 410 (Va. 1939) (explaining that a complaint alleging defamation "must purport to give the exact words" spoken or written, and that "[w]ords equivalent or of similar import are not sufficient"). The only words that Bhattacharya attributes to Dr. Hsu appear in paragraph 174 of the proposed Second Amended Complaint, which discusses a text message that Dr. Hsu allegedly sent to Peterson around November 19, 2018. *See* Prop. Am. Compl. ¶ 174. In the text message, Dr. Hsu asked Peterson "'to write a letter documenting all the distress Kieran has caused me and how I perceived him as a danger to me when I spoke to you.'" *Id.* Bhattacharya also alleges that Dr.

[6] "Whether a statement is an actionable statement of fact or non-actionable opinion is a matter of law to be determined by the court." *Jordan*, 612 S.E.2d at 206–07.

Hsu told Peterson that Bhattacharya had "'a giant shovel in his room'" and that her friend's key was missing. According to the proposed complaint, Dr. Hsu wrote, "'it's gone and I can't find it anywhere and I'm an organized person and don't misplace keys especially my friends key.'" *Id.*

Dr. Hsu's statement that Bhattacharya caused her "distress" and that she "perceived him as a danger when [she] spoke to" Peterson, *id.,* is not actionable because it "plainly expresses [her] subjective view" of how she perceived Bhattacharya, and it does not "claim to be in possession of any objectively verifiable false facts" about him or his conduct. *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (cleaned up). Dr. Hsu's comment about the shovel is true. Bhattacharya admits that he did, in fact, have a shovel in his room at the time—"a shovel that [he] had been using both to clean up after their dog and to jam his bedroom door shut so that she could not come in." Prop. Second Am. Compl. ¶ 174. Accordingly, that statement also cannot support his proposed defamation claim. *Jordan*, 612 S.E.2d at 206. Finally, Bhattacharya alleges that Dr. Hsu's comment about the missing key reflected Dr. Hsu's "stated belief that [he] had taken a spare key to her friend's house," and that this belief was false because Bhattacharya "did not take and knew nothing about" the key. Prop. Second Am. Compl. ¶ 174. Even assuming that Dr. Hsu's exact words—"it's gone and I can't find it anywhere and I'm an organized person and don't misplace keys especially my friends key," *id.*—falsely imply that Bhattacharya took her friend's house key, that statement cannot reasonably be interpreted as tending to "'so harm [his] reputation . . . as to lower him in the estimation of the community or to deter [others] from associating or dealing with him,'" *Rosenthal*, 260 F. Supp. 3d at 594 (quoting *Schaecher*, 772 S.E.2d at 596–97. *Cf. Schaecher*, 772 S.E.2d at 599 (public official's comment that plaintiff was "not totally truthful" in submitting a permit application did "not meet the threshold for defamatory 'sting' to engender disgrace, shame, scorn, or contempt, or to render

[plaintiff] odious, infamous, or ridiculous"). Accordingly, granting Bhattacharya leave to add that claim would be futile.

IV. Conclusion

For the foregoing reasons, I respectfully recommend that Bhattacharya's motion to file a second amended complaint, ECF No. 149, be **GRANTED in part** to the extent that it seeks to (1) delete Counts II, III, and IV from the Amended Complaint; (2) add Dr. John Densmore, in his individual capacity, as a Defendant to the § 1983 claim in Count I; and (3) name Lesley Thomas and Dr. Randolph Canterbury, in their official capacities only, to the § 1983 claim in Count I. The motion should be **DENIED** in all other respects. If this recommendation is accepted, Bhattacharya should be instructed to strike from his proposed pleading all allegations concerning non-party Angel Hsu, M.D., *see, e.g.*, Prop. Second Am. Compl. ¶¶ 40–42, 59–68, 95, 156–64, 167–74, 176, and file a Second Amended Complaint containing only Count I, as amended, and the factual allegations relevant thereto. *See* Fed. R. Civ. P. 12(f)(1).

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Norman K. Moon, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: November 12, 2021

Joel C. Hoppe
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| **KIERAN RAVI BHATTACHARYA,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.: 3:19-CV-00054** |
| **JAMES B. MURRAY, JR., et. al.,** | |
| **Defendants.** | |

**PLAINTIFF'S OBJECTIONS TO**
**MAGISTRATE'S REPORT AND RECOMMENDATIONS**

Plaintiff Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, respectfully states as follows for his objections to the November 12, 2021 Report & Recommendation (Dkt. #230) (the "R&R") of the Honorable Joel C. Hoppe, United States Magistrate Judge (the "Magistrate"), who recommended that the pending Motion for Leave to File Second Amended Complaint (Dkt. #149)[1] be granted in part and denied in part.

With all due respect to the Magistrate, Plaintiff objects to the recommendation that leave to amend "be granted only to the extent that [Plaintiff] proposes to delete the three Counts that have been dismissed with prejudice and to add one new individual-capacity defendant and two new official-capacity defendants to the existing § 1983 claim in Count I." (Dkt. #230-1, p. 1 of 21.) The facts and law set forth herein establish that the other proposed amendments would not be "futile" and would be supported by the evidence at trial for purposes of Fed. R. Civ. P. 15(b).

[1] The proposed Second Amended Complaint ("SAC") is on file with the Court as Dkt. #149-1.

4873-3590-7332.4

Even if no other defendants or causes of action are added, Plaintiff also objects to the Magistrate's recommendation that Plaintiff "should be instructed to strike from his proposed pleading all allegations concerning non-party Angel Hsu, M.D." (Dkt. #230-1, p. 1 of 21.) Accepting this recommendation would be extremely prejudicial to Mr. Bhattacharya. Defendants' Answer to ¶ 7 of the First Amended Complaint—which refers to Angel Hsu as "[Plaintiff's] girlfriend, who was also a Medical School student" (Dkt. #135, p. 4 of 21)—claims that alleged interactions between Mr. Bhattacharya and Angel Hsu warranted Mr. Bhattacharya's suspension. Angel Hsu has also been identified by Defendants as one of their key witnesses on all the bases for suspension that they have since contrived. Defendants' May 19, 2021 Initial Disclosures and September 20, 2021 Amended and Supplemental Initial Disclosures state that Angel Hsu "has knowledge of the Plaintiff's aggressive, abusive, unprofessional, and inappropriate behavior in 2017, 2018, and 2019."[2] Defendants' May 19, 2021 Initial Disclosures state that Dean Peterson—who is named in both her official and her individual capacity—has knowledge of "the negative impact that the Plaintiff's inappropriate and aggressive behavior had on a fellow student."[3] Defendants' September 20, 2021 Amended and Supplemental Initial Disclosures state that Dean Peterson has knowledge of "interactions between the Plaintiff and Angel Hsu including their relationship history, the Plaintiff's mental health issues, and the Plaintiff's aggressive, threatening, and intimidating

---

[2] Defendants' Initial Disclosures—like their September 20, 2021 "Final Supplemental Disclosures"—refused to provide Plaintiff's counsel with Angel Hsu's contact information until the Court entered a protective order in this case. The Court entered the parties' stipulated protective order on June 16, 2021 (Dkt. #150), but Defendants still refuse to provide contact information for Angel Hsu. Instead, Defendants obtained from Angel Hsu certain documents that ***they want to use*** and produced them as Bates Nos. HSU00003373-3430 along with only some of Defendants' text message exchanges with Angel Hsu, produced as Bates Nos. UVA00002246-2333. Meanwhile, Plaintiff's counsel has sought to subpoena documents from Angel Hsu for more than three months but has been unable to serve her at any of the publicly available addresses for her.

[3] On its face, Dean Peterson's purported "knowledge" is not personal knowledge. Consistent with the allegations of the proposed Second Amended Complaint, it all came from Angel Hsu.

behavior toward Dr. Hsu and Dr. Hsu's efforts to protect herself from the Plaintiff, the Plaintiff's difficulties managing his medication in the fall of 2018…."[4] In view of Defendants' pleadings and discovery responses alleging that testimony from and about Angel Hsu is necessary for their defense, there is no basis for preventing Mr. Bhattacharya from pleadings facts showing what actually transpired. These facts ***are*** relevant regardless of whether Angel Hsu is a named defendant.

Angel Hsu need not be a named defendant for Plaintiff's conspiracy claim to be viable. The conduct of the existing defendants related to Angel Hsu establishes that at least one of them, Dean Peterson, acted beyond the scope of her corporate duties as part of the conspiracy alleged in Count II. This *ultra vires* conduct on the part of Dean Peterson creates an exception to the intra-enterprise conspiracy doctrine even without the joinder of Angel Hsu or any other non-parties. The evidence of this unauthorized activity beyond the scope of Dean Peterson's employment includes the November 23, 2018 correspondence from Dean Peterson (Bates Nos. UVA00003371-72) attached as **Exhibit A** which expressed her personal opinions based on "information" obtained from Angel Hsu was sent on UVA Med School letterhead in violation of UVA policies.

## I. PRELIMINARY STATEMENT

These two causes of action that the R&R recommends denying leave to assert are Count II (Civil Conspiracy Against the UVA Medical School Co-Conspirators and the Third Party Co-Conspirator, Angel Hsu) and Count III (Defamation Against Angel Hsu). With or without these additional causes of action, factual allegations pertaining to Angel Hsu are relevant to Count I (Deprivation of First Amendment Right of Free Speech in Violation of 42 U.S.C. § 1983). Defendants themselves made Angel Hsu's active role in the First Amendment retaliation at issue in

[4] On its face, Dean Peterson's purported "knowledge" is not personal knowledge. Consistent with the allegations of the proposed Second Amended Complaint, it all came from Angel Hsu.

this case "front and center" in ¶ 7 of their Answer to the First Amended Complaint. Once the Court found Mr. Bhattacharya's First Amendment claims sufficient to withstand a Rule 12(b)(6) motion to dismiss, what Defendants previously told the Court was an "academic suspension"[5] suddenly had a new rationale. The November 29, 2018 Suspension Letter from UVA Med School's Academic Standards and Achievement Committee ("ASAC") (Dkt. #33-53) claimed that Mr. Bhattacharya had violated ASAC's "Technical Standards." The Suspension Letter made vague references to "aggressive and inappropriate interactions" that allegedly occurred in "public settings." But the only specific "interactions" referenced in ASAC's Suspension Letter and November 15, 2018 correspondence (Dkt. #33-36)—which admonished Mr. Bhattacharya to "show mutual respect to all" and "express [his opinions] in appropriate ways" and advised him to "consider getting counseling" to improve his communication skills—were Mr. Bhattacharya's questions and comments during the October 25, 2018 AWMA Microaggression Panel Discussion. Defendants' Answer to ¶ 7 of the First Amended Complaint serves up an entirely different rationale.

In response to ¶ 7 of Defendants' Answer, the Second Amended Complaint reveals other acts of retaliation for Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion that predated ASAC's November 15, 2018 correspondence and November 29, 2018 Suspension Letter. These include what the Second Amended Complaint refers to as the "November 14, 2018 Forced Psychiatric Evaluation" and the "November 19, 2018 Forced Psychiatric Evaluation." The stated rationale for this "medical treatment" included Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion.[6] Unlike the dissidents

[5] *See* Dkt. #113 (pp. 23, 30, 31, and 32 of 33); Dkt. #116 (pp. 2, 8, 11, 12, and 14 of 21).

[6] Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion are specifically referenced in various documents that have already been filed with Court under seal related to the November 14, 2018 ECO (Dkt. ##242-1, 242-2), November 14, 2018 TDO (Dkt.

in psychiatric hospitals in the former Soviet Union to which ¶ 13 of the Second Amended Complaint refers, Mr. Bhattacharya was soon released from captivity. Two sets of doctors at two different hospitals—including Defendants' own employees at UVA Medical Center—found no basis for the suggestion that Mr. Bhattachraya presented a threat to himself or anyone else.[7] The current and prospective defendants—including physicians who never had doctor-patient relationships with Mr. Bhattacharya,[8] physicians who are not psychiatrists,[9] and individuals with no medical training whatsoever[10]—had their own diagnosis.[11]

Having been unsuccessful in their Rule 12(b)(6) attack on Mr. Bhattacharya's claim of First Amendment retaliation, Defendants now deny that their insistence that Mr. Bhattacharya undergo a ***third*** psychiatric evaluation in November 2018 before returning to class "was related to or triggered by Plaintiff's speech at the panel discussion." (Dkt. #135) (p. 4 of 21). Instead, ¶ 7 of Defendants' Answer cites five "triggering" events. The fifth one expressly references Angel Hsu, and Defendants' own document production shows her active involvement in all five of them:

---

##242-3, 242-4), November 19, 2018 ECO (Dkt. #242-6), and November 19, 2018 TDO (Dkt. #242-7).

[7] With respect to the November 14, 2018 Forced Psychiatric Evaluation, documents establishing this undisputed fact are on file with the Court under seal as Dkt. #242-5. With respect to the November 19, 2018 Forced Psychiatric Evaluation, the medical records establishing this undisputed fact are on not on file with the Court, but Defendants' acknowledgement of this fact has been filed under seal as Dkt. #236-12.

[8] These include Dr. Tucker, Dean Densmore, Dean Peterson, and Dean Canterbury.

[9] For example, Dean Densmore's specialty is hematology and oncology (Dkt. #149-3), and Dean Peterson's specialty is obstetrics and gynecology (Dkt. #33-33).

[10] For example, Dean Thomas is a lawyer by training who is "available to hear reports of mistreatment," including "reports involv[ing] sexism, racism, harassment, discrimination, verbal abuse, and other types of unprofessional behavior directed at students." (Dkt. #33-28.)

[11] In fact, a subsequent email exchange among Dr. Tucker, Dean Canterbury, and Dean Thomas relied upon Defendants' alternative "diagnosis" as the basis for convening the "Emergency ASAC meeting" that resulted in Mr. Bhattacharya's suspension. This email exchange is on file with the Court under seal as Dkt. #236-12.

| # | Triggering Event (Answer ¶ 7) | Evidence of Angel Hsu's Involvement |
|---|---|---|
| 1 | "November 14, 2018 meeting between Plaintiff and John Densmore at which Plaintiff's behavior was erratic and troubling, to the point that Dean Densmore was sufficiently concerned about Plaintiff's health and welfare that he accompanied him to the University's counseling center" | By his own written admission, Dean Densmore required that Plaintiff be evaluated by CAPS on November 14, 2018 because of (1) Mr. Bhattacharya's speech at the AMWA Microaggression Panel Discussion; (2) information transmitted to Dean Densmore from Dean Peterson concerning Mr. Bhattacharya following a meeting between Dean Peterson and Mr. Bhattacharya on October 31, 2018; (3) information transmitted to Dean Densmore from Dean Peterson from Angel Hsu concerning Mr. Bhattacharya following a meeting between Dean Peterson and Angel Hsu on November 1, 2018; and (4) information transmitted to Dean Densmore from Dean Peterson from Angel Hsu concerning Mr. Bhattacharya during a meeting between Dean Peterson and Angel Hsu on November 13, 2018.[12] |
| 2 | "Plaintiff's involuntary admission to the hospital thereafter" | The ECO and TDO by which Mr. Bhattacharya was subjected to the November 14, 2018 Forced Psychiatric Evaluation referenced, in addition to Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion. information provided by Angel Hsu.[13] |
| 3 | "a later [November 19, 2018] meeting between Dean Densmore and Plaintiff during which Plaintiff's behavior was extremely erratic, aggressive, and concerning, to the point that Dean Densmore had to call the police" | Before, during and after the November 19, 2018 meeting cited in ¶ 7, Dean Peterson, Dean Densmore, and Angel Hsu were in communication with one another and with the Region Ten Community Services Board to have ***someone*** call the police for the purpose of subjecting Mr. Bhattacharya to the November 19, 2018 Forced Psychiatric Evaluation after Angel Hsu was unable to convince the police that Mr. Bhattacharya should be taken in on November 18, 2018.[14] |

[12] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #1 being submitted for filing under seal as **Exhibit B**.

[13] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #2 being submitted for filing under seal as **Exhibit C**.

[14] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #3 being submitted for filing under seal as **Exhibit D**.

| | | |
|---|---|---|
| 4 | "another involuntary hospitalization of Plaintiff" | The ECO and attempted TDO that resulted in the November 19, 2018 Forced Psychiatric Evaluation referenced—in addition to Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion—information provided by Angel Hsu.[15] |
| 5 | "the issuance of a restraining order against Plaintiff with respect to his girlfriend, who was also a Medical School student" | In exchange for Angel Hsu's help in procuring the November 19, 2018 Forced Psychiatric Evaluation, Dean Peterson submitted the November 23, 2018 correspondence attached as **Exhibit A** to a court in Charlottesville in support of an emergency protective order that Angel Hsu sought to obtain on an *ex parte* basis. That effort was unsuccessful, but shortly before Mr. Bhattacharya was released on November 26, 2018, Angel Hsu succeeded in obtaining an *ex parte* preliminary protective order. Defendants' internal communications at the time establish that Defendants' representations about this and related events—as set forth in its Answer to the First Amended Complaint—were demonstrably false.[16] |

In short, Defendants themselves have made Angel Hsu relevant to Mr. Bhattacharya's First Amendment claims. Because of Dean Peterson's actions beyond the scope of her corporate duties pursuant to the alleged conspiracy, Angel Hsu is not a necessary party for the civil conspiracy claim alleged in Count II to proceed, and the facts alleged are otherwise sufficient to establish that it would not be futile for the Court to permit an amendment allowing a cause of action for civil conspiracy to proceed. Although Angel Hsu is not a necessary party for the proposed Count II, she is a proper party in Counts II and III for the reasons set forth herein.

[15] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #4 being submitted for filing under seal as **Exhibit E**.

[16] Some of this evidence is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #5 being submitted for filing under seal as **Exhibit F**.

## II. ARGUMENT

### A. Granting Mr. Bhattacharya Leave to Amend to Assert a Claim for Civil Conspiracy (Count II) Would Not Be "Futile" As a Matter of Law.

#### 1. Dean Peterson's actions outside the scope of her duties at UVA make the intra-enterprise conspiracy doctrine inapplicable.

The context in which Dean Peterson sent the November 23, 2018 correspondence attached as **Exhibit A** is summarized in the Fed. R. Evid. 1006 Summary of Angel Hsu's Involvement in Alleged Triggering Event #5 being submitted for filing under seal as **Exhibit F**. This correspondence alone establishes action without authorization beyond "the normal course of their corporate duties"[17] sufficient to establish "an independent personal stake in achieving the corporation's illegal objective." *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). As these and other authorities cited in the R&R establish, plausible allegations that an employee and someone outside the defendant-corporation conspired to achieve "the same unlawful objective"[18] would defeat the UVA Med School Co-Conspirators' claim of intra-corporate immunity.[19]

Dean Peterson sent the November 23, 2018 correspondence to a judge on the letterhead of the University of Virginia School of Medicine's Office of Student Affairs to communicate with a judge without first obtaining permission from the University's president to represent her personal

---

[17] *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985).

[18] *Cabbagestalk v. Cartledge*, No. 3:12cv3182, 2013 WL 5409204, at *4 (D.S.C. Sept. 25, 2013) (citing *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) ("While [civil-rights plaintiffs] need not produce direct evidence of a meeting of the minds, [they] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective.")); *see also Ratcliffe v. Walker*, 85 S.E. 575, 580 (Va. 1915) (explaining that "the essence" of a conspiracy claim under Virginia law is that two or more persons shared a "common design" and "pursued by their acts the same object . . . with a view to the attainment of that same object")

[19] *Balt.-Wash. Tele. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 744 (D. Md. 2008).

opinions as required by the University's policy, *EXT-003: Communicating with Government Officials*:

> It is the affirmative responsibility of faculty and staff members not to represent their personal opinions as positions or policies of the University, unless the president has specifically authorized them to do so. University employees should use neither University letterhead nor electronic mail sent through University mail servers to communicate their personal opinions or positions.

Dean Peterson sent the foregoing correspondence in response to the November 19, 2018 request from Angel Hsu quoted in ¶ 174 of the Second Amended Complaint, one of the allegations addressed by the R&R. Dean Peterson had no personal knowledge of the various statements about Mr. Bhattacharya contained in the November 23, 2018 letter ***except*** what Dean Peterson characterized as "inappropriate and aggressive questioning of a guest speaker on a panel for an extracurricular program." Otherwise Dean Peterson simply repeated false, defamatory statements by Angel Hsu alleging, *inter alia*, that Mr. Bhattacharya "thought neighbors, the FBI and the CIA were pursuing him," drug use, and mistreatment of a pet. This was obviously beyond the scope of her duties and responsibilities as Assistant Dean of Medical Education—as were her demonstrably incorrect representations about the legal implications of the *ex parte* emergency protective order that she sought to help Angel Hsu obtain against Mr. Bhattacharya.

### 2. The possibility that Angel Hsu had different motives than existing Defendants does not defeat the conspiracy claim.

The evidence is uncontroverted that Angel Hsu knew that her collaboration with Dean Densmore, Dean Densmore, and others would help get Mr. Bhattacharya suspended if not expelled from UVA Med School. The evening of November 28, 2018—after ASAC had voted to suspend Mr. Bhattacharya, but before Mr. Bhattacharya himself received notice of the suspension—Dean Peterson sent text messages to Angel Hsu from November 28-29, 2018 suggesting that Mr. Bhattacharya would receive only a suspension rather than an expulsion from UVA Med School.

(SAC ¶ 176.) On November 29, 2018, when ASAC sent the Suspension Letter, Dean Peterson sent an email (Bates No. UVA00002735) reporting on a call to the UVA Med School "dean on call" from Angel Hsu and a call to Dean Peterson which Dean Peterson characterized as follows: Angel Hsu was "sobbing uncontrollably because (in her words) she got [Mr. Bhattacharya] kicked out of school." Whatever "buyer's remorse" Angel Hsu may have later demonstrated, she and Dean Peterson—among others—acted in concert to accomplish the illegal objective of having Mr. Bhattacharya "kicked out of school" for engaging in speech protected by the First Amendment. This illegal objective, whatever the co-conspirators' motives, is sufficient to establish an unlawful civil conspiracy as a matter of law.

The Fourth Circuit, analogizing to the context of criminal actions, has held that a conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a "tacit understanding" to accomplish the object of the alleged conspiracy. *Wallace v. United States*, 281 F.2d 656, 663 (4th Cir. 1960). "In fact, the Fourth Circuit has held that in assessing the deliberateness of an individual's conduct, the individual 'must necessarily be held to intend the reasonably foreseeable consequences of its actions.'" *Garrett v. Langley Fed. Credit Union*, 121 F. Supp. 2d 887, 907 (E.D. Va. 2000) (citing *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1355 (4th Cir.1995)).

Consistent with these Fourth Circuit precedents, this Court has previously found an actionable civil conspiracy based on analogous allegations. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Hoskins*, Civil Action No. 5:10–cv–00087, 2011 WL 1897683, at *3 (W.D. Va. May 18, 2011) ("St. Paul's pleadings show a civil conspiracy among defendants that *specifically targeted* American and that purposefully directed fraudulent conduct to American's home office in Virginia."); *Id.* at *3 (emphasis added); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 634 (W.D. Va. 2015)

(adequately pleading of a civil conspiracy involving a hazing incident where "as alleged, Defendants worked together to send the Mr. Mean emails, knew their content and plan, and orchestrated and directly participated in the Swim House ritual.").

Consistent with the foregoing precedents, the Court's November 19, 2021 Final Jury Instructions & Verdict Form in *Sines v. Kessler* (Dkt. #1461) also support the conclusion that Mr. Bhattacharya should be granted leave to assert a civil conspiracy:

"Final Jury Instructions #23" for "Civil Conspiracy – Under Virginia Law":

> "Plaintiffs must provide by a preponderance of evidence that an agreement to commit any one of these objects of the alleged conspiracy existed. It would be sufficient if Plaintiffs proved by a preponderance of the evidence that the alleged conspiracy existed to commit of those offenses. I previously instructed you as to the law governing the existence of a conspiracy and membership therein including Instructions 13-15, and those principles are applicable here."

"Final Jury Instructions #14" for "Membership in a Conspiracy":

> "Because there are multiple defendants in this case, you will also need to consider which, if any, of the Defendants was a member of the alleged conspiracy. One may be a member of the conspiracy without knowing all the details of the unlawful scheme or the identities of all of the other alleged conspirators. If a person understands the unlawful nature of a plan or scheme and knowingly and intentionally joins in that scheme on one occasion, that is sufficient to prove him as being a member of the conspiracy even though the person had not participated before and even though he only played a minor part."
>
> "The extent of a Defendant's participation, if any, has no bearing on the issue of a Defendant's membership, if any. A conspirator's membership is not measured by the extent or duration of his participation. Indeed, each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others plat minor parts in the scheme. As equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the ambit of a conspiracy."
>
> "Moreover, one a conspiracy is established, even a slight connection between the defendant and the conspiracy could be sufficient to include him in the plan. To be clear, that does not mean that Plaintiffs' burden of proof is "slight." Before a jury may find that a defendant, ***or any other person***, became a member of the conspiracy, the evidence that the defendant knew the purpose or goal of the agreement or understanding of that conspiracy and then deliberately entered into the agreement,

> intending in some way to accomplish the goal or purpose by this ***common plan or joint action***."
>
> "In attempting to prove a Defendant's membership in alleged conspiracy, Plaintiffs may rely on all direct and circumstantial evidence, including the nature of the alleged conspiracy, the Defendant's association to other members of the alleged conspiracy, if any, the Defendant's conduct before, during, and after the relevant events, and the Defendant's presence at the scene of events, if applicable."

(emphasis added).

**3. Plaintiff has alleged or can allege sufficient facts to establish an unlawful civil conspiracy involving certain Defendants**

With respect to the November 29, 2018 Suspension Letter—not to mention the November 14, 2018 and November 19, 2018 Forced Psychiatric Evaluations—there is more than sufficient evidence from which a jury could find an actionable civil conspiracy among various UVA Med School Co-Conspirators (including Dean Peterson and Dean Densmore) and Angel Hsu. Examples of such evidence include, in addition to Dean Peterson's November 23, 2018 correspondence attached as **Exhibit A**, the Rule 1006 summaries attached as **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, and **Exhibit F**.

**B. Granting Mr. Bhattacharya Leave to Amend to Assert a Defamation Claim Against Angel Hsu (Count III) Would Not Be "Futile" As a Matter of Law.**

If joined as a defendant, Angel Hsu could and presumably would seek dismissal of the conspiracy and defamation claims against her pursuant to Rule 12(b)(6). Such a motion would require the Court to accept the truth not only of the allegations of the Second Amended Complaint itself but also the documents attached as exhibits to the Second Amended Complaint and the other documents referenced and quoted in the Second Amended Complaint (along with the other documentary evidence attached as or summarized in the accompanying **Exhibit A**, **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, and **Exhibit F**. These documents establish numerous false, defamatory statements that Angel Hsu published to Defendants, including Dean Peterson, and those

responsible for the November 14, 2018 and November 19, 2018 Forced Psychiatric Evaluations, the November 26, 2018 *ex parte* preliminary protective order, the November 29, 2018 Suspension Letter, and the No Trespass Order. These false statements are sufficient to establish liability for defamation under the authorities cited in the R&R.

## III. CONCLUSION

It is unfortunate, to say the least, that faculty and administrators conspired with Angel Hsu—whose motives are laid out in excruciating detail in the Second Amended Complaint—to accomplish their mutual objective of kicking Mr. Bhattacharya out of UVA Med School. By way of its Answer and Initial Disclosures, Defendants themselves have made the allegations about Angel Hsu relevant. Regardless of whether Angel Hsu is joined as a defendant, although she should be, Dean Peterson in particular has established that the intra-enterprise conspiracy doctrine is inapplicable here. Mr. Bhattacharya therefore should be granted leave to assert Count II. Angel Hsu's demonstrably false statements about Mr. Bhattacharya are sufficient to allege a claim for defamation, so Mr. Bhattacharya should be granted leave to assert that claim as well.

Date: November 26, 2021

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: *s/ Michael J. Lockerby*
Counsel

Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
Email: mlockerby@foley.com

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **KIERAN RAVI BHATTACHARYA** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **JAMES B. MURRAY, JR., et. al.,** | ) | **Civil Action No.: 3:19-CV-00054** |
| **Defendants.** | ) | |

**REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S OBJECTIONS TO**
**MAGISTRATE'S REPORT AND RECOMMENDATIONS**

Plaintiff, Kieran Ravi Bhattacharya ("Mr. Bhattacharya"), by counsel, in further support of Plaintiff's Objections to Magistrate's Report and Recommendations (Dkt. #248) ("Plaintiff's Objections"), respectfully states as follows for his reply to Defendants' Response to Plaintiff's Objections to Magistrate Judge's Report and Recommendations (Dkt. #257) ("Defendants' Response").

## I. PRELIMINARY STATEMENT

Defendants' Response offers no factual or legal support for the Magistrate's recommendation that various references to Angel Hsu be ordered stricken from Mr. Bhattacharya's proposed Second Amended Complaint.[1] Defendants concede that these references are proper because Defendants themselves are relying upon her account of various events to try to justify

[1] Defined terms in Mr. Bhattacharya's proposed Second Amended Complaint (Dkt. #149-1) ("SAC") have the same meaning herein.

their suspension of Mr. Bhattacharya from UVA Med School.[2] The Magistrate's recommendation would prevent Mr. Bhattacharya from telling his side of the story.

Defendants' Response does not dispute that Dean Peterson was acting outside the scope of her authority as "Associate Professor of General Obstetrics and Gynecology" and/or (former) "Assistant Dean for Medical Education at UVA Med School" when she sent Angel Hsu the November 23, 2018 letter (Dkt. #248-1) referenced in ¶ 174 of the Second Amended Complaint. Dean Peterson provided Angel Hsu with this "To Whom It May Concern" letter with the stated understanding that Angel Hsu would then disseminate it to a magistrate in Charlottesville, the Charlottesville Juvenile & Domestic Relations Court, and/or anyone else to whom Angel Hsu wanted to disseminate it.[3] Defendants' Response does not dispute that this missive, which

[2] Defendants' response to ¶ 7 of the First Amended Complaint (Dkt. #135, p. 4 of 21) asserts that alleged interactions between Mr. Bhattacharya and Angel Hsu warranted Mr. Bhattacharya's suspension from UVA Med School. As set forth in Plaintiff's Objections, Defendants have identified Angel Hsu as a key witness in their initial disclosures. Defendants' discovery responses contain selective documents and information that Defendants obtained from Angel Hsu without the benefit of a subpoena. Meanwhile, Defendants have continued to refuse to provide Plaintiff's counsel with her contact information so that Plaintiff can subpoena documents and testimony to rebut Defendants' claims. *See* Plaintiff's Objections (Dkt. #248, pp. 2, 3 of 13, n. 2-4).

[3] The evidence is uncontroverted that Dean Peterson sent Angel Hsu this correspondence following a November 19, 2018 communication from Angel Hsu informing Dean Peterson that Angel Hsu would be returning to Charlottesville on November 23, 2018—at which point Angel Hsu was planning to use a letter that she had asked Dean Peterson to draft for the purpose of seeking an *ex parte* emergency protective order ("EPO") against Mr. Bhattacharya from a magistrate in Charlottesville. (SAC ¶ 174.) On November 23, 2018, Dean Peterson sent Angel Hsu the November 23, 2018 "To Whom It May Concern" letter via the UVA Health email system so that it could be submitted to a Charlottesville magistrate and/or Charlottesville Juvenile and Domestic Relations Court Judge as Angel Hsu in fact did or attempted to do. (SAC ¶ 174; Exhibits D and F to Plaintiff's Objections, Dkt. ##251-2 and 251-4, Bates No. UVA00002625.) The evening of November 23, 2018, Angel Hsu reported to Dean Peterson that an unidentified magistrate in Charlottesville had denied Angel Hsu's *ex parte* EPO petition. (Exhibits F to Plaintiff's Objections, Dkt. # 251-4, Bates Nos. UVA00002252-53.) Mr. Bhattacharya was not provided with a copy of Dean Peterson's November 23, 2018 correspondence and was not even aware of Angel Hsu's November 23, 2018 *ex parte* EPO petition until the foregoing documents were produced by Defendants in discovery on August 19, 2021 in response to Mr. Bhattacharya's document requests that required production on July 1, 2021.

expressed Dean Peterson's personal opinions based on "information" obtained from Angel Hsu, was sent on UVA Med School letterhead in violation of UVA policies.[4]

Similarly, Defendants' Response does not dispute that the November 28, 2018 text message from Dean Peterson to Angel Hsu described in ¶ 176 of the Second Amended Complaint[5] violated ASAC's procedures and federal law and was otherwise outside the scope of Dean Peterson's employment. There are two legal consequences of these and other *ultra vires* acts on the part of Defendants as alleged in the Second Amended Complaint.[6] First, such action without authorization beyond "the normal course of their corporate duties"[7] establishes "an independent personal stake in achieving the corporation's illegal objective." *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). Second, it is among the many examples of

---

[4] *See generally* Plaintiff's Objections (Dkt. #248, pp. 3, 8-9).

[5] The first sentence of SAC ¶ 176 alleges that "[t]he evening of November 28, 2018—after ASAC had voted to suspend Mr. Bhattacharya, but before Mr. Bhattacharya himself received notice of the suspension—Dean Peterson sent text messages to Angel Hsu the evening of November 28, 2018 suggesting that Mr. Bhattacharya would receive only a suspension rather than an expulsion from UVA Med School." The evidence in support of this allegation includes Bates No. UVA00002255, which establishes that—between 8:11:14 p.m. on November 28, 2018 and 10:46:18 a.m. on November 29, 2018—Dean Peterson exchanged text messages with Angel Hsu explaining that Mr. Bhattacharya would receive only a suspension rather than an expulsion from UVA Med School. Angel Hsu texted Dean Peterson as follows at 8:12 p.m. on November 28, 2018: "[Angel Hsu] doesn't want [Mr. Bhattacharya] expelled." Dean Peterson replied: "The ASAC has other options that are vastly more likely. See [Angel Hsu] at [3:30 p.m. on November 29, 2018]." ***Dean Peterson made no effort whatsoever to instruct Angel Hsu to keep such information regarding Mr. Bhattacharya's impending suspension confidential, thereby permitting unlimited dissemination by Angel Hsu of Mr. Bhattacharya's private academic record before even Mr. Bhattacharya had knowledge of the suspension.*** The foregoing facts support the allegations of the second sentence of SAC ¶ 176, which states: "By sending this text message, Dean Peterson—one day before Mr. Bhattacharya himself received the November 29, 2018 Suspension Letter, in violation of Mr. Bhattacharya's privacy rights, General Policies III.E. of ASAC's Operating Procedures, and the Family Educational Rights and Privacy Act of 1974."

[6] *See, e.g.*, SAC ¶¶ 13.c., 13.g., 13.h., 131, 132, 133, 134, 157, 167, 168, 170, 176.

[7] *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (quoting *Cole. v. University of Hartford*, 391 F. Supp. 888,893 (D. Conn. 1975)).

conduct in furtherance of the alleged conspiracy that demonstrates a common objective on the part of the UVA Med School Co-Conspirators and the Third-Party Co-Conspirator: banishing Mr. Bhattacharya from UVA Med School. This common objective on the part of the co-conspirators—regardless of their potentially differing motives—establishes an actionable conspiracy as a matter of law under the very authorities cited in Defendants' Response and under various authorities that they neglect to cite.

The Second Amended Complaint also alleges sufficient facts to show defamation by Angel Hsu. Defendants' arguments to the contrary are inconsistent with the law and ignore the procedural requirements for striking the voluminous evidence that is unhelpful to Defendants' cause. Throughout Defendants' Response, they wax indignant about evidence that they claim was not cited in or attached to the Second Amended Complaint. In fact, a good deal of this evidence ***was*** at least referenced in if not attached to the Second Amended Complaint—as catalogued in Plaintiff's Objections, the exhibits to it, and herein. But to the extent that it was not, Defendants have only themselves to blame. Defendants made the strategic decision to withhold critical documents—such as the November 23, 2018 "To Whom It May Concern" Letter from Dean Peterson attached as Exhibit A to Plaintiff's Objections (Dkt. #248-1)[8]—from Mr. Bhattacharya's UVA Med School student file to which he was granted access on December 20, 2018. Defendants also made the strategic decision to withhold critical documents that were due to be produced on July 1, 2021 until after Plaintiff's motion for leave to amend had been fully briefed.[9] The statutory

[8] Defendants have since insisted that this document be filed under seal, and it has been—even though Dean Peterson intended it for dissemination and publication at the time, and it was in fact disseminated and published by Angel Hsu at the time pursuant to the alleged conspiracy involving her, Dean Peterson, and Dean Densmore, among others.

[9] Defendants also waited until August 31, 2021 to come clean about the fact that they had deleted Mr. Bhattacharya's health systems email account at UVA Med School while his appeal from his suspension was still pending. This evidence that Defendants deliberately destroyed is obviously

framework by which this Court reviews the Magistrate's R&R does not allow Defendants to preclude the Court's search for the truth. Rather, it contemplates a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). As part this "de novo determination," the district court judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." In short, the statute expressly contemplates consideration of the very evidence that Defendants seek to exclude.

## II. ARGUMENT

### A. The Conspiracy Claim Is Not Barred By the Intra-Corporate Immunity Doctrine and Satisfies the Requirement that Co-Conspirators Have a Common Purpose.

Defendants' reliance on the Fourth Circuit's decision in *Buschi v. Kirven* for the notion that the intra-corporate immunity doctrine shields the conspiratorial conduct of certain UVA Med School faculty members is misplaced for two reasons. First, the alleged conspiracy involved Angel Hsu, an individual who was not an officer or agent of UVA. Second, *Buschi* notes an exception to the doctrine when officials act without authority,[10] as the UVA Med School Co-Conspirators did.

#### 1. The intra-corporate immunity doctrine does not bar Plaintiff's conspiracy claims because the alleged conspiracy involved a third party, Angel Hsu.

Intra-corporate immunity applies only when the alleged conspiracy is "between [a] defendant corporation and its officers, employees and agents." *Buschi*, 775 F.2d at 1251. If an alleged conspiracy involves a separate individual or entity, the doctrine does not apply. *See United States v. Berkeley Heartlab, Inc.*, 225 F. Supp. 3d 487, 502 (D.S.C. 2016) ("[t]he conspiracy that

---

not cited in support of Plaintiff's Objections except to the extent that Mr. Bhattacharya managed to preserve certain emails or otherwise obtain them before Defendants' acts of spoliation.

[10] *See Buschi*, 775 F.2d at 1252-53.

the Government alleges . . . is not only between BlueWave [and its officers]. It also includes HDL . . . HDL and BlueWave are separate entities."); *see also Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc.*, No. 3:05CV49-MU, 2005 U.S. Dist. LEXIS 31674, at *8 (W.D.N.C. Nov. 28, 2005) (holding that the doctrine applied because "[d]efendants ***are all agents*** of UMRMC.") (emphasis added).

In this case, the alleged conspirators are not limited to faculty members and administrators at UVA Med School. Rather, the alleged conspirators include Angel Hsu, who was not an officer or agent of UVA. The Second Amended Complaint contains several examples of collaboration between Angel Hsu and UVA Faculty. *See, e.g.*, SAC ¶¶ 96, 157, 164, 168-69, 172-74, and 176. Exhibits A – F to Plaintiff's Objections summarize some of the evidence supporting these allegations. (Dkt. ##248-1, 251, 251-1, 251-2, 251-3, and 251-4.) Regardless of whether Angel Hsu is a named defendant, Mr. Bhattacharya has alleged a conspiracy that involves an individual who is not an officer or agent of UVA. The intra-corporate immunity doctrine therefore does not apply. *See Berkeley Heartlab*, 225 F. Supp. 3d at 502.

**2. Because Defendants acted beyond the scope of their authority, the alleged conspiracy is within an exception to the intra-corporate immunity doctrine.**

Even if Angel Hsu were not part of the alleged conspiracy, *Buschi* recognizes an exception (*see Buschi*, 775 F.2d at 1252-53) when agents act beyond the scope of their authority. *Bumgardner v. Taylor*, No. RDB-18-1438, 2019 U.S. Dist. LEXIS 53759, at *15 (D. Md. Mar. 28, 2019). For this exception to apply, a plaintiff must allege specific unauthorized acts. *See Graves v. Dillon Cty. Bd. of Educ.*, No. 4:14-650-PMD-KDW, 2014 U.S. Dist. LEXIS 180390, at *19 (D.S.C. Sep. 8, 2014).

Here, Mr. Bhattacharya has alleged such acts. In the case of Dean Peterson alone, these unauthorized acts include the November 23, 2018 correspondence referenced in ¶ 174 of the Second Amended Complaint and the text messages between Angel Hsu and Dean Peterson

referenced in ¶ 176 of the Second Amended Complaint. The foregoing specific violation of ASAC's Operating Procedures referenced in ¶ 176 is one of many alleged violations of ASAC's Operating Procedures described in the Second Amended Complaint,[11] but Dean Peterson's *ultra vires* acts alone establish an exception to the intra-corporate immunity doctrine under *Buschi*, 775 F.2d at 1252-53.

Defendants' Response does not even try to explain how it was within the scope of Dean Peterson's duties and responsibilities as an "Associate Professor of General Obstetrics and Gynecology" and "Assistant Dean for Medical Education" at UVA Med School for Dean Peterson to prepare, publish, and disseminate the November 23, 2018 "To Whom It May Concern" letter for Angel Hsu to use against Mr. Bhattacharya. At Angel Hsu's request, Dean Peterson provided this document just in time for an *ex parte* EPO proceeding in court that Angel Hsu commenced while Mr. Bhattacharya was undergoing the November 19, 2018 Forced Psychiatric Evaluation that Dean Densmore, Dean Peterson, and Angel Hsu had orchestrated. By no stretch of the imagination can the foregoing conduct by Dean Peterson be characterized as being within the scope of employment of a UVA Med School faculty member and administrator. Unable to offer any credible explanation, Defendants' Response asserts that "the Magistrate Judge astutely noted" that "this argument is conclusory and is based upon Plaintiff's own opinion." (Dkt. #257, pp. 3-4.). To have reached the conclusion that Defendants' Response attributes to the Magistrate, the Magistrate would have to have been not only astute but clairvoyant. The November 23, 2018 correspondence was not attached to or quoted in the Second Amended Complaint. Defendants know why because they kept Dean Peterson's November 23, 2018 correspondence out of Mr. Bhattacharya's UVA Med School student file, did not reference it in their initial disclosures, and

[11] *See, e.g.*, SAC ¶¶ 8, 105, 115, and 140.

did not turn it over in discovery until August 19, 2021. Mr. Bhattacharya did not have the November 23, 2018 correspondence at the time that the proposed Second Amended Complaint was filed. He knew of its existence, however. The Second Amended Complaint quoted a November 19, 2018 text message in which Angel Hsu thanked Dean Peterson for calling her and asked Dean Peterson "to write a letter documenting all the distress Kieran [Bhattacharya] has caused me and how I perceived him as a danger to me when I spoke with you." (SAC ¶ 174.) This November 23, 2018 is further evidence of the independent personal stake that Dean Peterson, among the other UVA Med School Co-Conspirators, had in their conspiracy with Angel Hsu. (SAC ¶¶ 34-37.)

Now that this November 23, 2018 correspondence is on file with the Court (Dkt. #248-1), it is properly considered by the Court as "further evidence" pursuant to 28 U.S.C. § 636(b)(1)(C) to resolve Plaintiff's Objections to the R&R. On its face, this correspondence exceeded Dean Peterson's authority. She had ***no authority*** to make public disclosure of Mr. Bhattacharya's private student and medical information. It was far beyond the scope of Dean Peterson's employment to repeat Angel Hsu's defamatory statements about Mr. Bhattacharya's "mental health" history, to fabricate and publish a narrative about the history of the personal relationship between Angel Hsu and Mr. Bhattacharya of which Dean Peterson had no direct knowledge, or to serve as a character witness in a civil judicial proceeding initiated by one medical student against another. The November 23, 2018 correspondence from Dean Peterson reflects the understanding that she and Angel Hsu shared about the symbiotic relationship between Defendants' retaliation against Mr. Bhattacharya for his speech at the AMWA Microaggression Panel Discussion, the involuntary hospitalization of Mr. Bhattacharya, the issuance of an *ex parte* preliminary protective order against Mr. Bhattacharya, and the ultimate objective of the conspiracy: the banishment of

Mr. Bhattacharya from UVA Med School. Again, Defendants made these and other *ultra vires* acts by the UVA Med School Co-Conspirators relevant by filing their Answer, ¶ 7 of which cites "the issuance of a" November 26, 2018 *ex parte* preliminary protective order "against [Mr. Bhattacharya] with respect to [Mr. Bhattacharya's] girlfriend" as purportedly justifying the suspension from UVA Med School and related punishment at issue.

**3. For the conspiracy to be actionable, the co-conspirators need not have the same motive—only the same objective of ending Plaintiff's enrollment.**

The Second Amended Complaint alleges that Angel Hsu and the UVA Med School Co-Conspirators had the same objective but different ***motives***. Federal courts have repeatedly "recognize[d] the difference between motive and objective" in the context of a conspiracy claim, often in the antitrust context. *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 212 (3d Cir. 1992); *see also Spectators' Commc'n. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 221 (5th Cir. 2001) ("[a]lthough the wholesaler ***did not act from the same motive*** as the manufacturer, that did not mean that it had no motive to conspire.") (emphasis added). Even in cases where a party accedes to the coercion of another, a conspiracy can be found. *See, e.g.*, *Systemcare, Inc. v. Wang Laboratories Corp.*, 117 F.3d 1137 (10th Cir. 1997) (en banc); *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967 (7th Cir. 1995). In those cases, the motive of the party acceding is to avoid some consequence, a motive necessarily distinct from that of the party responsible for that consequence. *See id.* at 1143 (noting that a violation can result from either "reluctant combination" or "eager conspiracy").

Recognizing this distinction is sensible, as motive is inherently personal. *See United States v. Davis*, 183 F.3d 231, 244 (3d Cir. 1999) *amended*, 197 F.3d 662 (3d Cir. 1999). In *Davis*, the defendant appealed a conspiracy conviction in part on the grounds that he and his co-conspirators

had different motives for obstructing an investigation. *Id.* The Third Circuit rejected this argument:

> It is clear that the parties involved in this intrigue had different motives. Vittorio wanted to protect his confederates and himself; Davis wanted to hurt Sabol; Michael wanted to please Maria by helping her brother with his personal problems, and he also wanted to protect his childhood friend**. *Davis contends that this disproves a conspiracy. We disagree*.**

*Id.* (emphasis added); *see also United States v. Redifer*, 631 F. App'x 548, 553 (10th Cir. 2015) ("an identical . . . motive is not essential to a conspiracy"). Put another way, the "what" of a conspiracy must be the same, but the "why" need not. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) (holding that co-conspirators' motives "need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes.").

Here, Mr. Bhattacharya has not alleged different unlawful objectives, only different motives for pursuing that objective. The ***what*** is the derailing of Mr. Bhattacharya's career by "disciplin[ing], suspend[ing], and ultimately banish[ing]" him from UVA Medical School. (SAC ¶ 3.) The ***why*** varies by defendant. The UVA Med School Co-Conspirators had "the purpose of depriving Mr. Bhattacharya of his First Amendment right of free speech" whereas Angel Hsu's motive was personal "retribution." (SAC ¶¶ 206-07.) These differing motives do not defeat a conspiracy claim. *See Davis*, 183 F.3d at 244. There is a "difference between motive and objective." *Fineman*, 980 F.2d at 212. Mr. Bhattacharya must allege one "conspiratorial objective," not one motive. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). He has met this burden.

**B. Mr. Bhattacharya's Proposed Second Amended Complaint Alleges the Essential Elements of a Claim for Defamation Against Angel Hsu.**

From the evidence summarized in support of Plaintiff's Objections,[12] there is no question that Angel Hsu made statements about Mr. Bhattacharya that—whether characterized as fact or opinion—is defamatory as a matter of law. Much of this evidence is referenced in the Second Amended Complaint, to the extent that it was obtained before the deadline for seeking leave to amend. Contrary to Defendants' Response, the defamatory statements by Angel Hsu alleged in the Second Amended Complaint are ***not*** limited to those of ¶ 174. The defamatory statements attributed to Angel Hsu in the Second Amended Complaint include those referenced in ¶ 164 (alleging that on November 14, 2018 Dean Densmore learned directly or indirectly from Angel Hsu that Mr. Bhattacharya's condition was worsening); ¶ 168 (alleging that Angel Hsu changed her story about whether Mr. Bhattacharya posed a threat to her after the November 14, 2018 Forced Psychiatric Evaluation did not result in the involuntary commitment that Dean Densmore, Dean Peterson, and Angel Hsu sought); ¶ 172 (as part of the effort to obtain the November 19, 2018 Forced Psychiatric Evaluation, Angel Hsu sent a text message to Dean Peterson claiming, "I just really fear for my safety and I don't [sic] my parents to worry and I know they'll be upset if I get myself killed or hurt because of him"); ¶ 174 (quoting a text message from Angel Hsu to Dean Peterson claiming that Angel Hsu had previously stated that she perceived Mr. Bhattacharya as a danger to her).

[12] This evidence includes the defamatory statements by Angel Hsu that Dean Peterson published and disseminated in her November 23, 2018 correspondence (Dkt. #248-1) and the other evidence of defamation supporting the allegations of the Second Amended Complaint summarized in the Federal Rule of Evidence 1006 Summary attached as Exhibits B, C, D, E, and F to Plaintiff's Objections (Dkt. ##251, 251-1, 251-2, 251-3, and 251-4).

While not specifically addressing all of these allegations, Defendants' Response asserts that such statements are not actionable as defamation because they merely reflected Angel Hsu's subjective perception of Mr. Bhattacharya. Defendants are certainly entitled to their opinion about what is actionable as defamation. The Fourth Circuit, however, does not agree. *See, e.g., Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993) (noting that "opinion *per se* is not immune from a suit for libel" when it "asserts a provably false fact or factual connotation."). "[A]n expression of opinion may remain actionable when it reasonably can be construed as a statement of fact because it is laden with factual content and the underlying facts are allegedly false . . . And, importantly, at the motion to dismiss stage, the Court must assume the falsity of any statements that the Complaint alleges to be false." *Meredith v. Nestle Purina Petcare Co.*, 516 F. Supp. 3d 542, 548-49 (E.D. Va. 2021).

**C.   The Voluminous Evidence Supporting the Second Amended Complaint's Allegations Is Properly Summarized Under Federal Rule of Evidence 1006.**

Faced with the overwhelming evidence supporting the new allegations of the Second Amended Complaint, as reflected in the Rule 1006 summaries accompanying Plaintiff's Objections, Defendants had two available options. They could have sought to demonstrate that the summaries were inaccurate. Or they could have prepared their own summaries of the allegations and supporting evidence. Instead, Defendants hope to avoid this damaging evidence by urging the Court to simply disregard Exhibits B-F to Plaintiff's Objections. Defendants' failure to move to strike these exhibits is fatal to this argument. *See, e.g., In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d. Cir. 1985) (noting that although an affidavit in support of a summary judgment motion may have been improper, plaintiff "waived any objection to the affidavit by failing to move to strike it."); *Buszkiewic v. State*, 424 P.3d 1272, 1281-82 (Wyo. 2018) (noting

that although defendant objected that cross was beyond scope of direct, he did not make the essential motion to strike any particular statement from the record).

Contrary to Defendants' argument, the fact that Rule 1006 summaries may be admissible at trial does not mean that they can be used only at trial. Rule 1006 summaries are properly used throughout the lifecycle of a case. *See, e.g., Russell v. Bonilla Escobar*, C.A. No. 18-660-BAJ-EWD, 2019 WL 2558258, at *7 (M.D. La. June 3, 2019) (using Rule 1006 summary to rule on subject matter jurisdiction); *Sec. and Exch. Comm'n v. End of the Rainbow Partners, LLC*, C.A. No. 17-cv-02670-MSK-NYW, 2019 WL 8348323, at *4 (D. Co. Nov. 25, 2019) (recommending admittance of Rule 1006 summaries in context of a temporary restraining order). In short, there is no legitimate basis for the Court to simply disregard the voluminous evidence that is unhelpful to Defendants' cause. As part of the "de novo determination" required by 28 U.S.C. § 636(b)(1)(C), the district court judge "may also receive further evidence or recommit the matter to the magistrate judge with instructions." Plaintiff respectfully requests that the Court do so.

## III. CONCLUSION

Even without the additional evidence that has come to light after the filing of the motion for leave to amend, the Second Amended Complaint properly alleges the essential elements of causes of action for civil conspiracy and defamation. In addition, the new allegations related to Angel Hsu are proper now that Defendants seek to use her allegations against Mr. Bhattacharya as justification for their permanent banishment of Mr. Bhattacharya from UVA Med School. Accordingly, Mr. Bhattacharya respectfully requests that the Court decline to adopt the Magistrate's recommendations that these claims not be added.

Date: December 17, 2021

Respectfully submitted,

KIERAN RAVI BHATTACHARYA

By: *s/ Michael J. Lockerby*
Counsel

Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
Telephone: (202) 672-5300
Facsimile: (202) 672-5399
Email: mlockerby@foley.com

*Counsel for Plaintiff, Kieran Ravi Bhattacharya*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| KIERAN RAVI BHATTACHARYA, *Plaintiff,* v. JAMES B. MURRAY, JR., *et al.*, *Defendants*. | Case No. 3:19-cv-54 MEMORANDUM OPINION & ORDER Judge Norman K. Moon |

**OPINION AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

## I. Introduction

This case relates to Plaintiff Kieran Bhattacharya's dismissal from the University of Virginia School of Medicine in fall 2018. He filed his original complaint, Dkt. 1, *pro se*, then obtained counsel, and his new counsel filed the Amended Complaint, Dkt. 3. The Amended Complaint sought injunctive relief against UVA, its medical school, and several employees for "retaliation in violation of his First Amendment right of free speech" (Count I) and for "deprivation of his Fourteenth Amendment right of due process" (Count II), 42 U.S.C. § 1983, as well as damages against three Medical School faculty (Defendants Nora Kern, Christine Peterson, and Sara K. Rasmussen) in their official and individual capacities "for conspiracy to interfere with civil rights" in violation of 42 U.S.C. § 1985(3) (Count III) and conspiracy to injure him in his trade, business, and profession under Virginia Code § 18.2-499 (Count IV). Dkt. 33 at ¶¶ 139–46 (Count I), 147–52 (Count II), 153–58 (Count III), 159–65 (Count IV).

Upon Defendants' motion, this Court then dismissed Counts II, III, and IV, leaving only Count I—the First Amendment retaliation claim. Dkt. 130. Bhattacharya then filed a Motion for

Leave to File a Second Amended Complaint, Dkt. 149. The motion proposes several modifications to the Amended Complaint. First, Bhattacharya would delete the counts that this Court dismissed with prejudice, as well as the facts relating only to those counts. Dkt. 149 at 2–3. Second, he would add additional facts relating to the First Amendment Retaliation claim. *Id.* at 3. Third, he would add Dr. Angel Hsu (his ex-girlfriend) as a new Defendant and add a state-law defamation claim against her. Dkt. 149-1 at ¶¶ 40–42, 209–16. Fourth, he would add a new claim for civil conspiracy under Virginia common law against some of the Defendants. *Id.* at 28–42, 205–08. Fifth, he would add Lesley Thomas ("Dean Thomas") and Dr. Randolph Canterbury ("Dean Canterbury"), in their official capacities as Deans at the School of Medicine, as Defendants in Count I. *Id.* at ¶¶ 24, 27, 196–204. Finally, also in Count I, he would "su[e] Dean Densmore in his individual capacity in addition to his official capacity." *Id.* at 38–39.

Defendants oppose the motion "primarily because the proposed amendments fail to state a claim" upon which relief can be granted and, as such, allowing leave to amend would be futile." Dkt. 154 at 1. They argue that Bhattacharya's proposed conspiracy claim fails to cure pleading defects that this Court identified in dismissing the prior conspiracy claims under Rule 12(b)(6), *see id.* at 6–8, and that the proposed claims against Dr. Hsu, Dean Canterbury, and Dean Thomas are time barred, *see id.* at 4–5. Defendants do not specifically address Bhattacharya's proposal to add Defendant Densmore as an individual-capacity defendant to the § 1983 damages claim in Count I. *See id.* at 2–8. Defendants also argue that allowing Bhattacharya "to add a host of new allegations to support" his First Amendment retaliation claim (Count I) "would serve no apparent purpose" because this Court already held that the facts alleged in the operative complaint were sufficient to survive under Rule 12(b)(6). *Id.* at 1–2.

The motion was referred to Judge Hoppe for a Report and Recommendation. Judge

Hoppe recommended that the motion be granted only to the extent that Bhattacharya proposes to delete the three Counts that have been dismissed with prejudice and to add one new individual-capacity defendant and two new official-capacity defendants to the existing § 1983 claim in Count I. Dkt. 230 at 1. Judge Hoppe recommended that the motion be denied in all other respects. *Id.*

Both parties filed objections to Judge Hoppe's R&R. *See* Dkt. 247 (Defendants' objections), Dkt. 248 (Plaintiff's objections). Because Judge Hoppe's primary reason for recommending denying most of Bhattacharya's proposed amendments was based in their futility, Bhattacharya objects by claiming that the proposed amendments would not be futile. Dkt. 247 at 2. Defendants agree with most of Judge Hoppe's recommendations, but object to Bhattacharya's attempt to add a claim against Defendant Dinsmore in his personal capacity (because, they say, it would be futile) and to add claims against Defendants Canterbury and Thomas in their official capacities (again, because they would be both redundant and futile). Dkt. 248.

## II. Legal Framework

Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading before trial once as a matter of course and then "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)–(2). "This liberal [leave] rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

The Fourth Circuit has held that "such leave should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002)

(emphasis omitted). "[P]rejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party," but the "basis for a finding of prejudice" under such circumstances "essentially applies [only] where the amendment is offered shortly before or during trial." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). "Bad faith includes seeking to amend a complaint for an improper purpose," *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 124, 127 (E.D. Va. 2017) (citing *Peamon v. Verizon Corp.*, 581 F. App'x 291, 292 (4th Cir. 2014) (holding that it was bad faith to seek to amend complaint to "artificially inflate . . . damages in order to obtain subject matter jurisdiction")), or seeking leave despite "repeated failure[s] to cure deficiencies by amendments previously allowed," *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See Wilkins*, 320 F.R.D. at 127 (citing *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013)). An amendment to a complaint is futile if the proposed change "fails to satisfy the requirements of the federal rules" and applicable standards of review, *Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011), including those governing a motion to dismiss under Rule 12(b)(6), *see Wilkins*, 320 F.R.D. at 127 (E.D. Va. 2017) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

A party has the right to file objections to a report and recommendation of a magistrate judge. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). The district judge reviews the objections de novo. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2).

## III. Discussion

### A. First Proposed Addition: Adding New Defendants & Allegations to Count I

Bhattacharya seeks to add Defendant Densmore as an individual-capacity defendant and to add Dean Canterbury and Dean Thomas as defendants, in their official capacities only, to the

First Amendment retaliation claim in Count I. As currently pled in the Amended Complaint, Dkt. 33, that Count states a claim for relief under 42 U.S.C. § 1983 against Defendants Board of Visitors, Longo, Fielding, Densmore, and Tucker in their official capacities, against Defendant Densmore in his personal capacity, and against Defendants Kern, Peterson, and Rasmussen in their individual and official capacities.

The proposed Second Amended Complaint also adds several facts relating to Bhattacharya's new claim against Densmore in his personal capacity, including that Densmore "coerced" Bhattacharya "to undergo a psychiatric 'evaluation'" at the University's student health center and that Bhattacharya acquiesced "out of fear of retaliation if he did not comply" with Densmore's demand. Dkt. 149-1 at ¶¶ 6–9, 43, 89–91, 94, 109, 166.

*1. New Claim Against Densmore in his Personal Capacity*

Judge Hoppe recommends that the Court allow Bhattacharya to amend his complaint to add a claim against Densmore in his personal capacity. Dkt. 230 at 9. Judge Hoppe notes that the allegations in Bhattacharya's proposed Second Amended Complaint describing Densmore's personal involvement are similar to his allegations relating to other Defendants' personal involvements, which this Court has already permitted to go forward in its prior opinion on Defendants' Motion to Dismiss. *See* Dkt. 130. Judge Hoppe also notes that Densmore would not be prejudiced by the proposed amendment (because he is already a party to the case in his official capacity, represented by counsel, and the claims relating to his personal involvement are substantially similar to the claims relating to his official involvement), that the proposed amendment was not filed in bad faith, and that the new claim is not time-barred by the statute of limitations because it "relates back" to the Amended Complaint. Dkt. 230 at 9–11. *See also* Fed. R. Civ. P. 15(c)(1)(C) (allowing relation back only "if Rule 15(c)(1)(B) is satisfied and if, within

the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment" received adequate notice).

Defendants object to this recommendation, arguing still that the proposed amendment to the Amended Complaint would be futile and time barred. Their argument is that the proposed amendment does not "relate back" to the Amended Complaint within the meaning of Rule 15(c)(3). Defendants argue that adding a claim against a party in their personal capacity after the first complaint alleges a cause of action only against the party's official capacity is the same as adding a new party, which does not "relate back" within the meaning of Rule 15. Dkt. 247 at 4–5. But Defendants do not cite any controlling case law on this point—that adding a new claim against a Defendant in their personal capacity after already having a claim against the Defendant is their official capacity is the same as adding a "new party" for Rule 15.

Therefore, the Court will adopt Judge Hoppe's finding that Bhattacharya may amend his complaint to add a claim against Densmore in his personal capacity. The new claim would not prejudice Densmore, was not filed in bad faith, and is not time-barred because it "relates back: to the Amended Complaint.

2. *New Claims Against Canterbury and Thomas in their Official Capacities*

Judge Hoppe also recommends that the Court grant Bhattacharya's motion with respect to his proposed additional claims against Canterbury and Thomas in their official capacities, finding that the new claims are not time-barred because they "relate back" to the Amended Complaint. Dkt. 230 at 10–12. Bhattacharya's motion to file a second amended complaint clearly came after the statute of limitations had run, so the only issue is whether the claims "relate back" to the Amended Complaint under Rule 15.

Judge Hoppe found that Rule 15(c)(1)(C) allows relation back with respect to these

claims because the Amended Complaint named the "Rector and Visitors of the University of Virginia" as a Defendant, and Bhattacharya's proposal to name Dean Canterbury and Dean Thomas as additional official-capacity defendants to Count I will not alter the fundamental nature of his cause of action against UVA, which remains the "real party in interest" under § 1983. Dkt. 230 at 11–13 (citing *Graham*, 473 U.S. at 166.)

Defendants' objection here is just that the addition of Canterbury and Thomas would be redundant for the same reason that Judge Hoppe noted—that adding a cause of action against them in their personal capacities is no different than suing UVA, which Bhattacharya has already done. Dkt. 247 at 11–12. Indeed, where a plaintiff seeks to add claims against a government officer in the officer's official capacity, having already named the relevant governmental entity, the claims are duplicative and must be dismissed. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

The Court will sustain Defendants' objections to the R&R here—under Fourth Circuit case law, as held in *Love-Lane*, where a Plaintiff seeks to add cause of action under § 1983 against a party in their official capacity after already having a cause of action against the relevant governmental entity, the proposed amendment is redundant and thus should be denied. Bhattacharya has already sued UVA. Therefore, Bhattacharya may not add claims against Canterbury and Thomas in their official capacities.

B. Second Proposed Addition: New Conspiracy Claims

Bhattacharya also seeks leave to add a new claim for common law civil conspiracy against Dr. Hsu and Defendants Densmore, Kern, Peterson, and Rasmussen. Dkt. 149 at 2, 4–5.

Judge Hoppe found that the amendment would be futile for two reasons. First, with respect to Bhattacharya's claims against Dr. Hsu (his ex-girlfriend), there is no allegation that Hsu shared an illegal objective with any of the other defendants, so she could not have entered into a conspiracy with them. Dkt. 230 at 15. Second, with respect to the proposed claims against Densmore, Kern, Peterson, and Rasmussen, the claims would fail under Virginia's intracorporate conspiracy doctrine. *Id.* at 16–17. Judge Hoppe noted that his finding on the intracorporate conspiracy doctrine would be on the same grounds that this Court dismissed Bhattacharya's original conspiracy claims. *Id.* at 16 (citing Dkt. 130, Order on Motion to Dismiss).

Bhattacharya argues that the possibility that Dr. Hsu had different motives from the UVA-affiliated defendants (Densmore, Kern, Peterson, and Rasmussed) does not defeat the conspiracy claim. Dkt. 248 at 10. He argues that the Fourth Circuit has held that "a conspiracy may be established if the conduct of the parties and the inferences to be drawn from such conduct indicate, at least, a tacit understanding to accomplish the object of the alleged conspiracy." *Id.* at 10 (citing *Wallace v. United States*, 281 F.2d 656, 663 (4th Cir. 1960)). But here there are no non-speculative allegations that Hsu and the UVA defendants shared a common objective at all, let alone an illegal one. Bhattacharya argues that their "illegal objective" was "having Mr. Bhattacharya 'kicked out of school' for engaging in speech protected by the first amendment." Dkt. 248 at 10. But he has offered no facts whatsoever that support the allegation that Hsu wanted him "kicked out of school" for engaging in protected speech. The suggestion in the proposed Second Amended Complaint is that Hsu collaborated with Dean Densmore and Dean Peterson to "obtain vengeance" on Bhattacharya because Bhattacharya had broken up with her, not because he had engaged in protected speech. Ex. 1 to Dkt. 149 at ¶ 95. In addition, Bhattacharya has not alleged that Dr. Hsu did anything wrongful or tortious, as is required to

state a claim for civil conspiracy under Virginia law. *Dunlap v. Cottman Transmission Sys., Inc.*, 754 S.E.2d 313, 317 (Va. 2015) ("Because there can be no conspiracy to do an act that the law allows, . . . actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious.") (cleaned up). As discussed further below with respect to Bhattacharya's proposed defamation claim against Dr. Hsu, he has not adequately stated a defamation claim, and he has not alleged that Dr. Hsu engaged in any other wrongful or tortious conduct.

In short, Bhattacharya has failed to state a claim for civil conspiracy among Dr. Hsu and the UVA-affiliated defendants because he has not alleged that they shared a common objective within the meaning of civil conspiracy law, and because he has not alleged that Dr. Hsu committed wrongful or tortious conduct that would authorize a civil conspiracy claim.

With respect to Judge Hoppe's finding on the intracorporate conspiracy doctrine, Bhattacharya argues that the doctrine does not apply because one of the Defendants, Dean Peterson, acted outside the scope of her duties as a UVA administrator. Dkt. 248 at 8–9. The intracorporate conspiracy doctrine does not apply when one of the alleged co-conspirators acts beyond "the normal course of their corporate duties" sufficient to establish "an independent personal stake in achieving the corporation's illegal objective." *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). Bhattacharya argues that Peterson acted outside the scope of her official duties when she submitted a letter in support of Hsu in Hsu's application for an emergency protective order against Bhattacharya. Dkt. 248 at 8.

However, as Judge Hoppe noted, Bhattacharya failed to allege in his proposed Second Amended Complaint that Peterson's letter was outside of Dean Peterson's duties, or make any allegation regarding the letter at all. Dkt. 230 at 16–17. Bhattacharya cannot retroactively attempt

to amend his Second Amended Complaint through his objections to the Magistrate Judge's R&R.

Therefore, the Court will adopt Judge Hoppe's R&R with respect to the new civil conspiracy claims. Bhattacharya may not amend his complaint to add them.

C. Third Proposed Addition: Defamation Claim Against Dr. Hsu

Finally, Bhattacharya proposes to sue Dr. Hsu for defamation. Dkt. 140-1 at ¶¶ 209–16. Judge Hoppe finds that this claim would be futile under Virginia defamation law because Bhattacharya failed to plead a statement that could possibly constitute defamation. Dkt. 230 at 17–18. Bhattacharya claims that Hsu defamed him by texting Defendant Peterson a request that Peterson write a letter "documenting all the distress Kieran has caused me and how I perceived him as a danger to me when I spoke to you." *Id.* at 18. Bhattacharya also alleges that Dr. Hsu told Peterson that Bhattacharya had "a giant shovel in his room," and that her friend's key was missing and that Bhattacharya might have taken it. *Id.* at 18–19.

These statements cannot possibly constitute defamation. The first is an expression of Hsu's subjective opinion. *See Fuste v. Riverside Healthcare Assoc., Inc.*, 575 S.E.2d 858, 861 (Va. 2003) (holding that statements that "do[] not contain a provably false factual connotation, [and] statements which cannot reasonably be interpreted as stating actual facts about a person," cannot be characterized as true or false). The second comment, regarding the shovel, Bhattacharya admits as true (Ex. 1 to Dkt. 149 at ¶ 174), so it cannot constitute defamation. *See id*. The third statement, about the key, is so benign that it could not reasonably impact Bhattacharya's reputation, and a defamation claim is only actionable when the alleged statement would harm the plaintiff's "reputation . . . [so] as to lower him in the estimation of the community or to deter [others] from associating or dealing with him." *Schaefer v. Bouffault*, 772 S.E.2d 589, 596–97 (Va. 2015). An alleged statement only so injures the reputation of the

plaintiff when it "engender[s] disgrace, shame, scorn, or contempt." *Id.* at 599. Even if it is taken as true that Hsu falsely accused Bhattacharya of taking her friend's key, the statement could not reasonably affect Bhattacharya's reputation to the extent that it would "engender disgrace, shame, scorn, or contempt." And it is not even clearly alleged that Hsu made such an accusation—her alleged statement was merely that she believed Bhattacharya had taken the key, not that he had actually done so. *See* Ex. 1 to Dkt. 149 at ¶ 174.

Therefore, the Court will adopt Judge Hoppe's recommendation. Bhattacharya may not amend his complaint to add a defamation claim against Dr. Hsu.

## IV. Conclusion

For the reasons stated, the Court will ADOPT Judge Hoppe's R&R in part. The Court will GRANT in part and DENY in part Plaintiff's motion for leave to file a second amended complaint, Dkt. 149. The motion is GRANTED to the extent that it seeks (1) to delete Counts II, III, and IV from the Amended Complaint, and (2) to add Dr. John Densmore, in his individual capacity, as a Defendant to the § 1983 claim in Count I. The motion is DENIED in all other respects.

Plaintiff is ORDERED to strike from his proposed pleading all allegations concerning non-party Dr. Hsu and is FURTHER ORDERED to file a Second Amended Complaint containing only Count I, as amended, and the factual allegations relevant thereto. *See* Fed. R. Civ. P. 12(f)(1).

The Clerk of Court is directed to send the Opinion and Order to all counsel of record.

Entered this 16th day of March 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE