In The
# United States Court of Appeals
### For The Fourth Circuit

## KIERAN RAVI BHATTACHARYA,

*Plaintiff – Appellant*,

**v.**

## JAMES B. MURRAY, JR., in his official capacity as Rector of the Board of Visitors of the University of Virginia; WHITTINGTON W. CLEMENT, in his official capacity as Vice Rector of the Board of Visitors of the University of Virginia; ROBERT M. BLUE; MARK T. BOWLES; L. D. BRITT, M.D., M.P.H.; FRANK M. CONNER, III; ELIZABETH M. CRANWELL; THOMAS A. DEPASQUALE; BARBARA J. FRIED; JOHN A. GRIFFIN; LOUIS S. HADDAD; ROBERT D. HARDIE; MAURICE A. JONES; BABUR B. LATEEF, M.D.; ANGELA HUCLES MANGANO; C. EVANS POSTON, JR.; JAMES V. REYES, in his official capacity as Member of the Board of Visitors of the University of Virginia; PETER C. BRUNJES, in his official capacity as Member of the Board of Visitors of the University of Virginia; MELISSA FIELDING, in her official capacity as Deputy Chief of Police of the University of Virginia; JOHN J. DENSMORE, M.D., Ph.D., in his official capacity as Associate Dean for Admissions and Student Affairs of the University of Virginia School of Medicine; JIM B. TUCKER, M.D., in his official capacity as Chair of the Academic Standards and Achievement Committee of the University of Virginia School of Medicine; CHRISTINE PETERSON, M.D., Assistant Dean for Medical Education of the University of Virginia School of Medicine; EVELYN R. FLEMING; CARLOS M. BROWN; LEWIS FRANKLIN (L. F.) PAYNE, JR.,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT CHARLOTTESVILLE

---

### FINAL BRIEF OF APPELLANT

---

Michael J. Lockerby
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC 20007
(202) 945-6079

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>22-1999</u>     Caption: <u>Bhattacharya v. Murray, et al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Kieran Ravi Bhattacharya</u>
(name of party/amicus)

_____

who is <u>appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:


3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _Michael J. Lockerby_____     Date: ____October 5, 2022____

Counsel for: _Appellant_____

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF JURISDICTION.................................................................2

STATEMENT OF THE ISSUES...................................................................2

STATEMENT OF THE CASE.......................................................................3

    I.     THE DISTRICT COURT RESOLVED DISPUTED ISSUES OF MATERIAL FACT ABOUT WHY UVA EXPELLED PLAINTIFF ...........................................................................3

    II.    THE DISTRICT COURT DENIED LEAVE TO AMEND THE COMPLAINT TO CONFORM TO SUPPORTING EVIDENCE ...........................................................................27

    III.   THE DISTRICT COURT DISMISSED MR. BHATTACHARYA'S CLAIM THAT UVA VIOLATED HIS DUE PROCESS RIGHTS ..............................................30

STATEMENT OF STANDARD OF REVIEW .....................................33

    I.     THE GRANT OF SUMMARY JUDGMENT IN FAVOR OF UVA ...........................................................................33

    II.    DENIAL OF LEAVE TO AMEND THE COMPLAINT ..................34

    III.   DISMISSAL OF MR. BHATTACHARYA'S DUE PROCESS CLAIM ...........................................................................35

SUMMARY OF ARGUMENT ...............................................................35

ARGUMENT ...........................................................................................38

I.     THE DISTRICT COURT VIOLATED RULE 56 BY
       RESOLVING DISPUTED ISSUES OF MATERIAL FACT IN
       FAVOR OF UVA..................................................................38

II.    THE DISTRICT COURT SHOULD HAVE GRANTED
       LEAVE TO AMEND AND CONSIDERED THE
       SUPPORTING EVIDENCE .............................................46

III.   THE DISTRICT COURT ERRED BY FINDING THE
       SUSPENSION AND NTO TO BE ACADEMIC RATHER
       THAN DISCIPLINARY ....................................................51

CONCLUSION.......................................................................57

REQUEST FOR ORAL ARGUMENT ..................................57

CERTIFICATE OF COMPLIANCE.....................................59

CERTIFICATE OF SERVICE ..............................................60

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbariao v. Hamline Univ. Sch. of Law*,
    258 N.W.2d 108 (Minn. 1977) ..................................................................53

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..........................................................................33, 41

*Barnes v. Zaccari*,
    669 F.3d 1295 (11th Cir. 2012) .............................................................52

*Bd. of Curators of Univ. of Missouri v. Horowitz*,
    435 U.S. 78 (1978)....................................................................................52

*Buschi v. Kirven*,
    775 F.2d 1240 (4th Cir. 1985) ..........................................................47, 49

*Byrnes v. Johnson Cty. Cmty. Coll.*,
    No. CIV.A. 10-2690-EFM, 2011 WL 166715 (D. Kan. Jan. 19, 2011)........52

*Clark v. Coleman*,
    335 F. Supp. 3d 818 (W.D. Va. 2018)..............................................36, 40, 43

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) ......................................................32, 36, 40, 43

*Dister v. Cont'l Grp. Inc.*,
    859 F.2d 1108 (2d Cir. 1988) ................................................................45

*Dixon v. Alabama State Bd. of Educ.*,
    294 F.2d 150 (5th Cir. 1961) ...................................................................53

*Doe v. Chao*,
    306 F.3d 170 (4th Cir. 2002), *aff'd*,
    540 U.S. 614 (2004)..........................................................................35, 51

*Douglass v. Sanok*,
No. 3:05-cv-00018, 2006 WL 2927780 (W.D. Va. Oct. 11, 2006) ..............46

*Escobar v. State Univ. of New York/Coll. at Old Westbury*,
427 F. Supp. 850 (E.D.N.Y. 1977) ................................................................54

*Faxon v. Univ. of Va. Health Sys.*,
Civil Action No. 3:10-cv-00049,
2011 WL 841279 (W.D. Va. Mar. 7, 2011) ...................................................38

*Fineman v. Armstrong World Indus., Inc.*,
980 F.2d 171 (3d Cir. 1992) ...................................................................49, 50

*Floyd v. State of Missouri Dep't of Soc. Servs., Div. of Fam. Servs.*,
188 F.3d 932 (8th Cir. 1999) .......................................................................45

*Forsyth Cty. v. Nationalist Movement*,
505 U.S. 123 (1992) ..................................................................................... 7

*Franks v. Ross*,
313 F.3d 184 (4th Cir. 2002) .......................................................................46

*Greenville Publ'g Co. v. Daily Reflector, Inc.*,
496 F.2d 391 (4th Cir. 1974) .......................................................................47

*Gresham v. Lumbermen's Mut. Cas. Co.*,
404 F.3d 253 (4th Cir. 2005) .......................................................................34

*Henson v. Honor Comm. of Univ. of Va.*,
719 F.2d 69 (4th Cir. 1983) .........................................................................53

*Hinkle v. City of Clarksburg*,
81 F.3d 416 (4th Cir. 1996) .........................................................................49

*Incumaa v. Stirling*,
791 F.3d 517 (4th Cir. 2015) ..................................................................55, 56

*Jiminez v. Mary Washington Coll.*,
57 F.3d 369 (4th Cir. 1995) .........................................................................44

iv

*Johnson v. Univ. of Va. Med. Ctr.*,
No. 3:06-cv-00061,
2007 U.S. Dist. LEXIS 3122 (W.D. Va. Jan. 17, 2007)................................38

*Katyle v. Penn. Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) ........................................................46

*Laber v. Harvey*,
438 F.3d 404 (4th Cir. 2006) ...............................................34, 46

*Lightsey v. King*,
567 F. Supp. 645 (E.D.N.Y. 1983) ................................................54

*M.L. v. Williamson Cty. Bd. of Educ.*,
No. 3:16-cv-1093,
2018 WL 2970704 (M.D. Tenn. June 12, 2018), *aff'd*,
772 F. App'x 287 (6th Cir. 2019)................................................45

*Martin Marietta Corp. v. Int'l. Tel. Satellite Org.*,
991 F.2d 94 (4th Cir. 1992) ........................................................35

*Mathews v. Eldridge*,
424 U.S. 319 (1976).....................................................................53

*Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc.*,
No. 3:05CV49-MU,
2005 U.S. Dist. LEXIS 31674 (W.D.N.C. Nov. 28, 2005) ...........49

*McCarthy v. Univ. of Va. Health Sys.*,
No. 3:18-cv-00121, 2019 WL 2610118 (W.D. Va. June 25, 2019)..............38

*MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*,
62 F.3d 967 (7th Cir. 1995) ........................................................49

*Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*,
403 F.3d 188 (4th Cir. 2005) ......................................................34

*Nzabandora v. Univ. of Va. Health Sys.*,
No. 3:17-cv-00003,
2017 U.S. Dist. LEXIS 9691 (W.D. Va. Jan. 24, 2017)................................38

*Perkins v. United States*,
    55 F.3d 910 (4th Cir. 1995) ........................................................46

*Podberesky v. Kirwan*,
    38 F.3d 147 (4th Cir. 1994) .......................................... 33-34, 41

*Pritchett v. Alford*,
    973 F.2d 307 (4th Cir. 1992) ......................................................46

*Rajaravivarma v. Bd. of Trustees for Conn. State Univ. Sys.*,
    862 F. Supp. 2d 127 (D. Conn. 2012) ........................................45

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000).....................................................................44

*Roncales v. Cty. of Henrico*,
    451 F. Supp. 3d 480 (E.D. Va. 2020) .........................................32

*Silvestri v. Gen. Motors Corp.*,
    271 F.3d 583 (4th Cir. 2001) ........................................................9

*Sparks v. Pilot Freight Carriers, Inc.*,
    830 F.2d 1554 (11th Cir. 1987) ..................................................45

*Spectators' Commc'n. Network, Inc. v. Colonial Country Club*,
    253 F.3d 215 (5th Cir. 2001) ......................................................49

*Springer v. Convergys Customer Mgmt. Grp. Inc.*,
    509 F.3d 1344 (11th Cir. 2007) ..................................................45

*Stevens v. Howard D. Johnson Co.*,
    181 F.2d 390 (4th Cir. 1950) ......................................................34

*Stewart v. Henderson*,
    207 F.3d 374 (7th Cir. 2000) ......................................................45

*Systemcare, Inc. v. Wang Labs. Corp.*,
    117 F.3d 1137 (10th Cir. 1997) ..................................................49

*Tolan v. Cotton*,
    572 U.S. 650 (2014)...........................................................45, 46

*United States ex. rel. Ahumada v. NISH*,
    756 F.3d 268 (4th Cir. 2014) .......................................34

*United States v. Berkeley Heartlab, Inc.*,
    225 F. Supp. 3d 487 (D.S.C. 2016) ...........................49

*United States v. Davis*,
    183 F.3d 231 (3d Cir. 1999), *amended*,
    197 F.3d 662 (3d Cir. 1999) ..................................49, 50

*United States v. Howell*,
    231 F.3d 615 (9th Cir. 2000) .....................................35

*United States v. Maldonado-Rivera*,
    922 F.2d 934 (2d Cir. 1990) ......................................50

*United States v. Redifer*,
    631 F. App'x 548 (10th Cir. 2015)........................ 49-50

*Wag More Dogs, Ltd. Liab. Corp. v. Cozart*,
    680 F.3d 359 (4th Cir. 2012) .....................................35

*Warren v. Halstead Indus., Inc.*,
    802 F.2d 746 (4th Cir. 1986), *on reh'g*,
    835 F.2d 535 (4th Cir. 1988) ..................................44, 45

*Webb v. Paine*,
    515 F. Supp. 3d 466 (S.D.W. Va. 2021) .....................41

*Wells v. Liddy*,
    186 F.3d 505 (4th Cir. 1999) .....................................33

*Wenk v. O'Reilly*,
    783 F.3d 585 (6th Cir. 2015) .....................................44

*Wilkins v. Wells Fargo Bank, N.A.*,
    320 F.R.D. 125 (E.D. Va. 2017)..................................46

*Wilkinson v. Austin*,
    545 U.S. 209 (2005).................................................................................55, 56

*Wojcicki v. Aiken Tech. Coll.*,
    360 F. App'x 484 (4th Cir. 2010)................................................................51

## **CONSTITUTIONAL PROVISION**

U.S. CONST. amend. I .........................................................................*passim*

## **STATUTES**

28 U.S.C. § 636(b)(1)..........................................................................*passim*

28 U.S.C. § 1291 ......................................................................................2

28 U.S.C. § 1331 ......................................................................................2

28 U.S.C. § 1343 ......................................................................................2

42 U.S.C. § 1983 ......................................................................................2

## **RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................*passim*

Fed. R. Civ. P. 15(a)...............................................................................46

Fed. R. Civ. P. 15(a)(2)...........................................................................34

Fed. R. Civ. P. 15(b) ..............................................................................50

Fed. R. Civ. P. 56 .......................................................................33, 35, 41

Fed. R. Civ. P. 56(c)...............................................................................33

Appellant Kieran Ravi Bhattacharya ("Bhattacharya"), by counsel, respectfully states as follows in support of his appeal from rulings by the U.S. District Court for the Western District of Virginia, Charlottesville Division (the "District Court"), culminating in the grant of summary judgment in favor of the University of Virginia ("UVA") on Plaintiff's Second Amended Complaint (the "SAC") (JA377-449).  The District Court's grant of summary judgment (the "MSJ Decision") (JA1312-1331) denied Bhattacharya his day in court on claims that UVA violated his First Amendment and other constitutional rights by expelling him from the School of Medicine ("UVA Med School").  The MSJ Decision disregarded the evidence cited in "Plaintiff's MSJ Opposition" (JA2739-2796)[1] from which a jury could find, and should have been permitted to find, that Bhattacharya was disciplined based on the ***content*** of his protected speech.  The protected speech at issue includes Bhattacharya's questions and comments at the "AMWA Microaggression Panel Discussion," an October 25, 2018 extracurricular event sponsored by the UVA Chapter of the American Medical Women's Association ("AMWA"), and his subsequent online postings seeking legal representation to challenge the suspension that soon became an expulsion.

---

[1] Plaintiff's MSJ Opposition is cited as "MSJ Opp.," and exhibits thereto are cited as "PX."  UVA's exhibits supporting its summary judgment motion are cited as "DX."  Citations to the Joint Appendix are identified with the prefix "JA."  Citations to the Sealed Joint Appendix are identified with the prefix "SJA."

## STATEMENT OF JURISDICTION

Bhattacharya appeals from the District Court's final September 30, 2022 Order (JA1333) closing the case following various rulings, including the August 19, 2022 MSJ Decision (JA1332) from which Bhattacharya also appeals. The District Court had original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because the SAC raises federal questions under the U.S. Constitution and Civil Rights Act of 1871, 42 U.S.C. § 1983. On September 16, 2022, Bhattacharya timely noticed his appeal from the District Court's August 19, 2022 MSJ Decision. On October 3, 2022, Bhattacharya timely noticed his appeal from the District Court's final September 30, 2022 Order. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Did the District Court err by granting summary judgment in favor of UVA by resolving disputed issues of material fact as to whether Bhattacharya's protected speech was the cause of the discipline of which he complains?

2.     Did the District Court err by denying Bhattacharya leave to amend to assert a civil conspiracy claim against UVA and non-party defendants whom he sought to join, and by refusing to consider evidence adduced in discovery in connection with his motion for leave to amend?

3. Did the District Court err by dismissing Bhattacharya's due process claims even though UVA admittedly failed to follow its own disciplinary procedures and failed to afford Bhattacharya notice of and an opportunity to defend the charges against him?

## STATEMENT OF THE CASE

## I. THE DISTRICT COURT RESOLVED DISPUTED ISSUES OF MATERIAL FACT ABOUT WHY UVA EXPELLED PLAINTIFF

The jury trial of Bhattacharya's First Amendment claims against UVA, which he had originally filed *pro se* on September 16, 2019 (JA85-194), was scheduled to begin October 24, 2022. October 24, 2022 was the four-year anniversary of the beginning of the end of Bhattacharya's career as a student at UVA Med School. Yesterday, January 3, 2023,[2] was the first day in more than four years that Bhattacharya can set foot on the UVA Grounds without being subject to arrest.[3] What happened between October 24, 2018 and January 3, 2019 that caused

---

[2] The Rule 30(c) Page-Proof Opening Brief was filed January 4, 2023.

[3] On January 3, 2019, the UVA Police mailed the No Trespass Order ("NTO") to the residence of Bhattacharya's parents in Hawaii. The NTO stated that Bhattacharya would be subject to arrest if he came on UVA Grounds except as a patient before January 3, 2023. (JA441) (¶163); (JA495-497). On January 3, 2019, Densmore sent Bhattacharya an email attaching a copy of the NTO (which the UVA Police had emailed to an incorrect address for Bhattacharya) and notifying Bhattacharya that, because of the NTO, UVA Med School "will not be able to proceed with an appeal of" Bhattacharya's November 29, 2018 suspension from UVA Med School "at this time." (JA499).

Bhattacharya to go from being a medical student in good standing to someone whom UVA had banished from its midst?

On October 25, 2018, after completing a required class, Bhattacharya chose to stay seated in the same room for the extracurricular AMWA Microaggression Panel Discussion, which was scheduled immediately thereafter. Following prepared remarks by the featured speaker, a psychologist, the floor was opened for questions and comments. Much to the chagrin of the event organizers, Bhattacharya did not fawn over the speaker or ask "softball" questions. His questions and comments set off a firestorm, as documented in the SAC, Plaintiff's MSJ Opposition, and otherwise in the extensive record below. The resultant complaints included reports to high ranking UVA Med School officials by each of the three students who were co-presidents of the AMWA UVA Chapter.[4]

None of the UVA officials involved in the disciplinary process took five minutes or so to listen to the recording of Bhattacharya's questions and comments[5] to hear for themselves what was supposedly so objectionable. The District Court did, summarizing them as follows in denying UVA's Rule 12(b)(6) motion to

---

[4] *See* UVA00004886 (JA1439); (JA1485); UVA00002446 (Canterbury Dep. Ex. 8).

[5] The audio recording of Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion has been on file with the District Court since September 16, 2019, when Mr. Bhattacharya filed his initial *pro se* complaint. (JA2836).

dismiss: "Bhattacharya challenged one professor's definitions of 'microaggression' and 'marginalized group' as 'contradictory' and 'extremely nonspecific.' Dkt. 33-2. He also asked several questions about the 'evidence' underlying that professor's claims, critiquing it—and the professor's research over 'years'—as 'anecdotal.' *Id.*" (JA296). The District Court also rejected UVA's insistence that Bhattacharya's speech was not protected by the First Amendment: "These comments and questions might be forward or pointed, but—as alleged—they did not materially disrupt the discussion or substantially invade the professor's, or anyone else's rights." (JA296).

UVA's witnesses had previously been to University-sponsored training sessions about microaggressions. Not one had ever been trained about compliance with the First Amendment, due process, and other constitutional rights that government officials are supposed to uphold. [6] It shows. Two of the instigators of the subsequent disciplinary proceedings against Bhattacharya—Nora Kern, one of the "moderators," and Dean Christine Peterson—were present at the October 25, 2018 event. The other UVA Med School faculty members and administrators responsible for the discipline that Bhattacharya later received were not. Instead, they based their decisions solely on the characterizations of others—including Kern and

---

[6] *See* Peterson Dep. 34:13-36:12; Canterbury Dep. 21:6-11, 212:2-9, 213:18-214:7; Stafford Dep. 83:19-84:8; 137:20-138:3.

Peterson, the co-presidents of UVA's AMWA Chapter, and numerous other UVA Med School students and faculty members who complained.

On October 25, 2018, complaints about Bhattacharya's remarks—along with demands that he face discipline for them—began pouring in shortly after the AMWA Microaggression Panel Discussion. Some of these complaints were submitted to the online "Listening Post" portal whereby students can report violators of UVA Med School's speech code. (JA461-462). Listening Post complaints purport to be anonymous, but at least one of them was solicited by UVA Med School "College Dean" Sean Reed (JA1495)—who later participated in the November 14 and November 28, 2018 proceedings before the Academic Standards and Achievement Committee ("ASAC") that led to Bhattacharya's suspension. The complaints about the **content** of Bhattacharya's speech included that he "called the legitimacy of one panelist's research into question" and "questioned the validity of the information that [the speaker] had presented, all over the microphone for the entire audience to hear."[7]

Whether the UVA Med School faculty members and administrators who disciplined Bhattacharya based on such complaints from students and faculty

---

[7] *See*, *e.g.*, (JA1019); (JA1021). Like other, similarly worded complaints at the time, both asserted that Bhattacharya repeatedly interrupted the speaker. The recording shows otherwise.

personally agreed or disagreed with Bhattacharya's speech is not material.  Silencing

Bhattacharya based on others' objections is, like a "heckler's veto," as impermissible

under the First Amendment as censoring speech based on their own personal views.[8]

In this case, however, students were not the only members of the UVA Med School

community who objected to the ***content*** of what Mr.  Bhattacharya had to say.

Regardless of what various faculty members and administrators later claimed as the

trial date approached, what they said and wrote at the time made it very clear they

objected to his ***opinions***.  The jury never got to see or hear these contemporaneous

statements by the same UVA faculty and administrators who later saw to it that

Bhattacharya could never express such opinions again at UVA Med School—and

that no one else would ever dare do so.

One student leader of the AMWA event who previously complained about

Bhattacharya's remarks and solicited complaints from others insisted that

Bhattacharya be barred from practicing medicine altogether.[9]  She was also among

the many students at UVA and other institutions of higher learning who—

dissatisfied with the fact that initially Bhattacharya had merely been suspended from

UVA Med School—later claimed on December 30, 2018 that Bhattacharya had

---

[8] *See*, *e.g.*, *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123 (1992).

[9] *See* (JA1485).

made threats against UVA on an "alt-right website." (JA1485).[10] The December 30, 2018 email reminded UVA Med School Deans Peterson and Canterbury that "you both expressed concerns when our AMWA group spoke with you about the microaggressions panel and our display regarding sexual harassment in medicine" before observing "it appears no one else is outspoken in support of Kieran's views or conduct." (JA1485). Shortly thereafter, the organizers of the AMWA event were able to take a "victory lap." On January 7, 2019—four days after Densmore emailed Bhattacharya the NTO barring Bhattacharya from UVA Grounds until after it was too late to complete his medical education (SAC ¶174) (JA444-445)—the AMWA proclaimed on its website that the October 25, 2018 event had been a "success." (JA451).

The recipients of the December 30, 2018 email, Peterson and Canterbury, led the charge in seeing to it that Bhattacharya was disciplined for ***the content of*** his October 25, 2018 questions and comments. Like many in the UVA Med School community, Peterson and Canterbury personally disagreed with ***Bhattacharya's***

---

[10] Examples of similar emails from other students at UVA Med School and as far away as Texas are in the District Court record. *See, e.g.*, (SJA99-100); (SJA92-96). Although UVA's "Director of Threat Assessment" found that Bhattacharya had made no such threats (JA2727), UVA nevertheless cited such alleged threats as the basis for the four-year NTO that expired January 3, 2023. (JA502).

*views*.[11]  Their personal disagreement was the driving force behind the retaliatory

conduct that they orchestrated.

Canterbury was not named as a defendant in any capacity only because UVA

withheld his emails showing that he directed the retaliatory conduct at issue before

and during much of the litigation.[12]  Canterbury's role in the conduct at issue is

nevertheless catalogued in detail in the SAC, which mentions him 10 times, and

Plaintiff's MSJ Opposition, which mentions him 51 times.  Even before the October

---

[11] *See, e.g.*, (JA1066-1067); (JA1230); (JA1239-1245) (32:16-35:24, 36:2-11, 37:23-38:2, 38:6-7); (JA1069); (JA1253); (JA1077-1081) (23:19-21, 23:25-24:25, 25:1-25:13, 25:17-20, 25:25, 26:2-3, 26:7-26:18, 27:5-8, 27:13-17); (JA1042) (132:13-17, 132:21-24); (JA2809).

[12] The District Court refused to allow Canterbury to be added as a defendant, even in his individual capacity, or to consider evidence in support of the motion for leave to amend that UVA withheld until after the proposed amendment was drafted.  In December 2018, UVA—after refusing for several weeks to turn over Bhattacharya's student file so that he could appeal his November 29, 2018 suspension—withheld from that file critical communications from Canterbury, who at the time was directing Individual Defendant John Densmore to "give your . . . notes [on Bhattacharya] and email communications—everything."  UVA00003084-85 (Densmore Dep. Ex. 77). Long after this litigation was underway, UVA withheld key documents from Canterbury and other witnesses until after the deadline for seeking leave to amend. This withholding is catalogued in detail in the briefing of Plaintiff's Motion to Remediate Defendants' Spoliation of Evidence and Amend Scheduling Order (Dkt.275, 276, 287, 296, 303, 320, 347, 396, 418). The District Court's denial of that motion (Dkt.330, 385, 410, 487, 488)—although prejudicial and contrary to this Court's precedents in cases like *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)—is not the subject of the pending appeal.  The evidence cited in Plaintiff's MSJ Opposition was more than sufficient to support a jury verdict of First Amendment retaliation (and deprivation of due process, had the District Court not previously dismissed that claim).

25, 2018 event, Canterbury conflated "lack of professionalism"—the ostensible reason, at least initially, for the discipline that Bhattacharya received—and disagreement with Canterbury's political views. On September 22, 2018, Canterbury tweeted that a UVA Med School student who made statements like those attributed to Mitch McConnell about Brett Kavanaugh's nomination to the Supreme Court would suffer adverse consequences: "If our students behaved so unprofessionally, they'd be called to task." (JA1069). On September 24, 2018, Canterbury invited the entire UVA Med School community to a "Diversity Dialogue" about microaggressions. (UVA00004856) (Canterbury Dep. Ex. 4). The "dialogue" that Canterbury was willing to tolerate, however, did not include Bhattacharya's subsequent questions and comments at the AMWA Microaggression Panel Discussion.

Shortly after the AMWA event, Canterbury received copies of various complaints from students after "hear[ing] about this in general from students," said that he "will follow up," and insisted that Bhattacharya be hauled before ASAC for what Canterbury called "unprofessional" behavior.[13] Canterbury never listened to what Bhattacharya actually said on October 25, 2015. Canterbury did immediately confirm, however, that the offender was the same individual—Bhattacharya—who

---

[13] *See, e.g.*, (JA1084-1086); (JA1066-1067).

had expressed "unprofessional" views about the 2016 election results[14] at two UVA Med School "town halls."[15]    In response to one complaint, Canterbury told Densmore and another UVA Med School Dean "I think this is the equivalent of a [Professionalism] [C]oncern [C]ard"[16] or "PCC."  UVA Med School uses such cards to document various forms of misconduct, including unexcused absences and violations of professionalism.  As it turned out, Kern had already lodged such a PCC on October 25, 2018 after consulting with Peterson about how and whether to do so.[17]  In violation of its own procedures, UVA Med School never disclosed the PCC to Bhattacharya or discussed it with him before November 28, 2018, when Sean Reed disclosed its existence but did not provide Bhattacharya with a copy before or during the "hearing" that day.[18]    In fact, UVA did not provide the PCC to Bhattacharya until December 2018.[19]

---

[14] In other words, he disagreed with Canterbury.  Densmore recalled that one of Bhattacharya's comments at the time was about the Trans-Pacific Partnership trade agreement, testifying that there was nothing inappropriate or unprofessional about the substance and tone of what Bhattacharya had to say.  (JA1078) (24:8-25).  Yet Peterson brought up these statements that Canterbury found objectionable when she met with Bhattacharya on October 31, 2018 to discuss his "words," "semantics," and "thoughts." (JA2798-2799); (JA2809-2814).

[15] *See* (JA1066-1067).

[16] *See* Thomas Dep. Ex. 9; (JA2787).

[17] *See* (JA756-757).

[18] *See* (JA400, JA413-414, JA425) (¶¶63, 95, 128).

[19] *See* (JA399, JA410-411, JA440) (¶¶59, 88, 159).

At Canterbury's insistence, ASAC met to consider Kern's PCC on November 14, 2018, when it voted to send the November 15, 2018 letter reprimanding Bhattacharya for his "behavior at a recent AMWA panel," admonishing him to "show mutual respect to all" and "express [his opinions] in appropriate ways," and advising him to "consider getting counseling." (JA465). (In fact, the "counseling" that Bhattacharya was told to "consider getting" was—because of the November 14, 2018 Forced Psychiatric Evaluation—already underway).

Canterbury himself imposed the November 27, 2018 requirement that Bhattacharya could not return to class without a third psychiatric evaluation (after two forced evaluations, on November 14 and November 19, 2018), by UVA Counseling and Psychiatric Services ("CAPS").[20] Canterbury invoked his so-called "emergency powers" to convene the November 28, 2018 "emergency meeting" at which ASAC voted to suspend Bhattacharya.[21] This resulted in the November 29, 2018 letter from ASAC stating that Bhattacharya's "aggressive and inappropriate interactions . . . during a speaker's lecture" violated "the School of Medicine's Technical Standards." (JA492).

Canterbury was also instrumental in procuring the NTO that expired January 3, 2023. For example, the December 30, 2018 report that led the UVA Police to

[20] *See* (JA2751, JA2772, JA2773, JA2777).
[21] *See* (JA2751, JA2765, JA2774, JA2794).

issue the NTO stated that Bhattacharya "had posted his story on an alt-right web site/chat room" based on Canterbury's concerns about Bhattacharya being associated with the "Alt Right."[22]   On December 30, 2018, Canterbury sent UVA Med School students an email about impending action to address "disturbing online posts" that Canterbury attributed to Bhattacharya.[23]   Contemporaneously, Canterbury had numerous communications with Threat Assessment Team ("TAT") Director Markowski about the "threat" that Bhattacharya supposedly presented.[24] Markowski responded that Bhattacharya "did not make any specific threats of violence towards the SOM or the ASAC committee members although some individuals in chat rooms encouraged Kieran to engage in this behavior."[25]   These facts did not stop Canterbury from insisting upon the NTO and the UVA Police from issuing it based on the alleged online threats by Bhattacharya.

Like Canterbury, Peterson also figures prominently in the allegations of the SAC, which mentions her 55 times, and in Plaintiff's MSJ Opposition, which mentions her 83 times.   Shortly after the panel discussion on October 25, 2018, Peterson emailed one of the event's student organizers that she was "hoping to sit

---

[22] *See* (JA1177); (JA1226).

[23] *See* UVA00003267.

[24] *See generally* (JA2777-2786).

[25] *See* (JA1488-1492).

down with [Bhattacharya] and chat a bit about the challenges [Bhattacharya] raised. ***Words are important and semantics matter***…."[26] That same day, while instructing Nora Kern how to submit a PCC, Peterson referenced Bhattacharya's "semantic challenges."[27] Kern's October 25, 2018 PCC cited Bhattacharya for asking a "series of questions that were quite antagonistic toward the panel." (JA459). The foregoing verbiage from Kern's PCC was cited, paraphrased, or quoted as a basis for subsequent discipline that Bhattacharya received—including the November 14, 2018 Forced Psychiatric Evaluation, the November 15, 2018 ASAC Letter of Reprimand, the November 19, 2018 Forced Psychiatric Evaluation, and the November 29, 2018 Suspension Letter.

On October 26, 2018, Peterson sent an email to another faculty member, Joanne Mendoza, who complained that "Kieran engaged in a line of questioning that was viewed by many to be combative and aggressive against the panelists"[28] and expressed concern that Bhattacharya posed a threat to patients' "emotional safety." (JA1063). In response, Peterson's October 26, 2018 email said that she hoped to meet with Bhattacharya the following week "to explore ***his thoughts about the topic of microaggressions***" but expressed concern whether he would "be able to get

---

[26] *See* UVA00002454 (JA1431) (emphasis added).

[27] *See* (JA756-757).

[28] *See* UVA00002471 (JA1431).

14

***beyond the concrete semantics*** he seemed to be concerned about." (UVA00002471) (JA1431) (emphasis added).

Peterson was one of several UVA witnesses who, after some remedial First Amendment education, later claimed to have objected not to "what" Bhattacharya said but to "the way in which he said it." (JA1027) (45:13-21)[29] Yet as part of the very same answer, Peterson complained that "it was clearly intended to discredit the speaker, to supplant her way of looking at things with a - - a different take." (JA1027) (45:15-17). Under Peterson's view of the First Amendment, asking tough questions of a "guest on a panel" is so "unprofessional" and "rude"[30] as to warrant banishment from UVA Med School.

These and other unhelpful facts in the record prompted UVA to claim in support of its summary judgment motion that the only discipline Bhattacharya received for the events of October 25, 2018 was the November 15, 2018 letter that purported to "recommend" the "counseling" that he was already being ***forced*** to undergo. This "factual" assertion—which the District Court accepted at face value

---

[29] While insisting that Bhattacharya's "tone of voice" was inappropriate, Peterson testified that she never confirmed her recollection by listening to the recording of the panel discussion "because it's irrelevant." (JA1029) (47:1-8). On the last day of discovery, however, UVA produced handwritten notes showing that she had listened to the audio and made detailed notes about it. (JA1060-1061).

[30] *See* (JA1035) (105:3-15).

and resolved in favor of UVA—was contrary to the evidence cited in Plaintiff's MSJ Opposition. For example:

- On November 27, 2018, Mendoza followed up on her October 26, 2018 complaint by inquiring about the consequences that Bhattacharya had already faced and would continue to face for questioning microaggression theory.[31] Densmore responded immediately that Bhattacharya would be required to obtain "medical clearance" before returning to UVA Med School and would be the subject of an "emergency ASAC meeting" the following day as directed by Canterbury.[32] ASAC voted to suspend Bhattacharya the very next day, November 28, 2018.

- On November 28, 2018, Bhattacharya asked why he was being hauled before ASAC on a few hours' notice to discuss his "current enrollment status."[33] UVA Med School "College Dean" Sean Reed responded by disclosing for the very first time the existence of Kern's October 25, 2018 PCC regarding Bhattacharya's questions and comments at the AMWA event.[34] These questions and comments were the only speech or conduct on the part of

---

[31] *See* (JA1063-1064); (JA1497, JA1499).

[32] *See* (JA1499); (JA818); (JA828).

[33] *See* (JA421) (¶120); (JA481).

[34] *See* (JA425) (¶128); (JA489).

Bhattacharya specifically discussed during his brief meeting with ASAC on November 28, 2018.[35]

- The notice of suspension sent the following day, November 29, 2018, stated that Bhattacharya's "aggressive and inappropriate interactions . . . during a speaker's lecture" violated "the School of Medicine's Technical Standards." (JA492).

- The NTO by which UVA made Plaintiff's suspension permanent was expressly based on Bhattacharya's exercise of his First Amendment rights, on October 25, 2018 and thereafter.[36]

Internal documents show that, by November 2018, UVA Med School recognized that it had insufficient grounds to suspend Bhattacharya for violating "Technical Standards," for academic reasons, or pursuant to the Title IX investigation that UVA had begun (but never disclosed to Bhattacharya for years thereafter, until discovery in this case).[37] The basis for Bhattacharya's suspension claimed in UVA's pleadings—other than the events of October 25, 2018—include the following:

---

[35] *See* (JA385, JA430-431) (¶¶12, 139, 140); (JA464-465).

[36] *See, e.g.*, (JA924); (JA933).

[37] *See, e.g.*, (JA2820-2831).

November 14, 2018 meeting between Plaintiff and John Densmore at which Plaintiff's behavior was erratic and troubling, to the point that Dean Densmore was sufficiently concerned about Plaintiff's health and welfare that he accompanied him to the University's counseling center; Plaintiff's involuntary admission to the hospital thereafter; a later meeting between Dean Densmore and Plaintiff during which Plaintiff's behavior was extremely erratic, aggressive, and concerning, to the point that Dean Densmore had to call the police; another involuntary hospitalization of Plaintiff; and the issuance of a restraining order against Plaintiff with respect to his girlfriend, who was also a Medical School student.

(Dkt.135 at 4).

UVA's summary judgment motion insisted that this is "a case about mental illness" and that Bhattacharya's expulsion resulted solely from his allegedly untreated bipolar disorder. At oral argument, the District Court suggested that Plaintiff was trying to prevent UVA from advancing this narrative. (JA1296) (28:6-11). To the contrary, Plaintiff's argument—then and now—was and is that *the jury* should be permitted to consider evidence showing that the *content* of Bhattacharya's speech was what UVA found objectionable and that other explanations had been contrived to justify censoring allegedly "unprofessional" speech about microaggressions. In this regard, the "girlfriend" referenced in UVA's pleadings (actually an "ex-" in the midst of a break-up but still living with Bhattacharya at the time of the events in question) supplied the narrative that UVA cited to justify several of the "adverse actions" of which Bhattacharya complains. In exchange,

UVA helped her procure the preliminary protective order ("PPO") that UVA has since cited as justification for expelling Bhattacharya, even though Peterson privately conceded that the evidence was "flimsy."[38] UVA relied upon the statements of this individual despite knowledge, on the part of Peterson in particular, of numerous "red flags" as to why she was not a credible witness and was prone to inappropriate acts of retaliation.[39] Credible or not, her claims were not the subject of any attempt to verify them, and they were not disclosed to Bhattacharya so he could address them at the November 28, 2018 ASAC suspension hearing and other critical events that were the career equivalent of a death sentence.

The evidence cited in Plaintiff's MSJ Opposition and prior filings (including his June 10, 2021 motion for leave to amend) shows that Canterbury's battle cry against Bhattacharya quickly changed from "professionalism" to "mental health" after this non-party witness helped UVA claim that Bhattacharya's questions and comments on October 25, 2018 were attributable to the bipolar disorder with which he had been diagnosed in January 2017 (also with the involvement of this non-party[40]):

---

[38] *See* (JA1015-1017).

[39] *See* (JA2749-2752, JA2778, JA2793); (JA2833-2835).

[40] *See, e.g.,* (JA2807).

- Initially, Peterson rejected efforts to link Mr. Bhattacharya's questions and comments on October 25, 2018 with his prior hospitalization in January 2017—especially after meeting with Mr. Bhattacharya herself on October 31, 2018.[41] The non-party witness who later helped supply the "missing link" was aware of the October 31, 2018 meeting and discussed it with Peterson in person the very next day, November 1, 2018[42]—saying nothing about an alleged relationship between the AMWA Microaggression Panel Discussion and mental illness until November 13, 2018.[43]

- By November 13, 2018, however, events in Bhattacharya's relationship made reconciliation with the non-party witness unlikely and provided her with motive and opportunity to retaliate.[44] At that point, the witness approached Peterson and provided a new narrative that Peterson immediately passed on to Densmore.[45] Densmore used this narrative the very next day to procure the November 14, 2018 Forced Psychiatric Evaluation during a brief meeting with Bhattacharya that Densmore hastily arranged for the ostensible purpose of

---

[41] *See* (JA1155); (JA2816).

[42] *See* (JA1430) (HSU00003398-3400).

[43] *See* (JA2309); (JA511) (155:19-23).

[44] *See* (JA2809-2814).

[45] *See* (JA2816); (JA1045) (155:19-23).

discussing a subpar exam grade.[46]  Within an hour of the November 14, 2018 ASAC meeting in which Peterson participated, the non-party witness texted two other students at UVA Med School, based on her communications with Peterson, that "Kieran's in the psych ward again" because "the deans decided to intervene and get him to the ED."[47]

- Information from this witness was cited in the ECO Petition that resulted in the November 14, 2018 Forced Psychiatric Evaluation[48] and in the subsequent medical records summarized in Plaintiff's MSJ Opposition.

- The November 14, 2018 Forced Psychiatric Evaluation cited by UVA as grounds for expulsion found no medical basis for Bhattacharya's involuntary hospitalization, prompting Canterbury to lament: "It's a shame they released him."  (JA1424).

- Before UVA Medical Center released Bhattacharya, the witness had been "adamant that there were no safety concerns."[49]  On November 19, 2018, however, the witness provided additional grist for UVA's mill, claiming to fear for her safety in two text messages to Peterson while asking Peterson to

---

[46] *See* (JA2754, JA2761); (JA770).

[47] *See* (JA2818).

[48] (JA1425), (JA1426).

[49] *See* (JA2746); (JA2620); (JA1425); (JA1426).

write a letter—which the witness could use in court to obtain a PPO against Bhattacharya and obtain possession and custody of the couple's shared apartment and puppy.[50]

- That same day, November 19, 2018, Peterson agreed to write the requested letter, after the witness helped procure another forced psychiatric evaluation of Bhattacharya in a way that did not directly involve Peterson or Densmore as had been the original plan.[51]

- On November 20, 2018, Canterbury agreed with Densmore and Peterson that it was a "good idea" to bring Bhattacharya to the attention of UVA's TAT,[52] the stated purpose of which is "prevention of violence on Grounds, including assessment of and intervention with individuals whose behavior poses a threat to the safety of the University community."[53] The evidence that Bhattacharya posed a "threat" cited in Peterson's November 20, 2018 email consisted of a podcast of the AMWA Microaggression Panel Discussion "sent by a

---

[50] *See* (JA1048); (JA1087-1089); (JA1427-1428).

[51] *See* (JA2764-2772).

[52] *See* (JA1424).

[53] *See* https://threatassessment.virginia.edu/.

concerned student," UVA Med School's Technical Standards, and quotes from two November 19, 2018 text messages sent by the non-party witness.[54]

- By November 20, 2018, UVA had already executed its scheme to have Bhattacharya undergo the November 19, 2018 Forced Psychiatric Evaluation at Poplar Springs Hospital in Petersburg because UVA Medical Center had, just a few days earlier, found no basis for his involuntary hospitalization. On November 20, 2018, UVA called Poplar Springs and requested that Bhattacharya not be released anytime soon, explaining that UVA Med School planned to suspend him while he was hospitalized and stating that he should not be released because of "threats"—not "physical threats" but because he "threatens litigation against his Dean." (JA504).

- While Bhattacharya was at Poplar Springs, Peterson used information from the non-party witness to write a November 23, 2018 "to whom it may concern" letter on UVA Med School letterhead. (JA1427-1428). The only statement in the letter about Bhattacharya of which Peterson had personal knowledge was as follows: "On October 25, I witnessed his inappropriate and aggressive questioning of a guest speaker on a panel for an extracurricular program." The efforts of the non-party witness, even with Peterson's help,

---

[54] *See* (JA1087-1089).

were initially unsuccessful as the magistrate denied her initial petition on November 23, 2018. Thereafter, UVA arranged for a faculty member at the law school to represent the witness, who—after falsely claiming that other cases involving these parties had not been filed in Virginia courts—sought and obtained from a different judge the PPO that UVA now cites as justifying Bhattacharya's expulsion.[55]

- Like UVA Medical Center, Poplar Springs found no basis for Bhattacharya's involuntary hospitalization.[56] On November 27, 2018, the day after Bhattacharya's release, Canterbury—who had not seen or spoken to Bhattacharya in more than two years—declared that "he's still quite manic and likely psychotic."[57] Notwithstanding Bhattacharya's release from two recent hospitalizations with no requirement for ongoing medication or treatment,[58] Densmore and Canterbury insisted that Bhattacharya receive "medical clearance" from CAPS even though Bhattacharya told both of them that doing so would violate his First Amendment rights,[59] UVA's Office of General Counsel told them Bhattacharya could not be required to go to

---

[55] *See* (JA2764-2772).

[56] *See* (JA808).

[57] *See* (JA830).

[58] *See* (JA2764, JA2769); (JA1162-1164); (JA808-810).

[59] *See, e.g.*, (JA467); (JA469-470); (JA472); (JA1471).

CAPS,[60] UVA TAT Director Markowski testified it was improper for Canterbury to require the CAPS evaluation[61] and UVA CAPS Director Ruzek was "[un]aware of any policy that requires a student to be cleared by CAPS to go back to class."[62] Canterbury nevertheless scheduled an "emergency" ASAC meeting for the following day and insisted upon the CAPS evaluation by invoking "emergency powers" that he has since admitted he did not have.[63]

- The November 28, 2018 ASAC meeting minutes do not disclose the fact, which came to light only at the end of discovery, that Peterson read her November 23, 2018 letter out loud during the ASAC meeting at which it voted to suspend Bhattacharya.[64] Privately, she told Canterbury, "I think the evidence for actual risk is flimsy."[65]

- Peterson told the non-party witness about the November 28, 2018 ASAC meeting before Bhattacharya was notified that it had been scheduled. After the meeting, which UVA policies required be kept confidential, Peterson told the non-party witnesses about the vote to suspend Bhattacharya before he

---

[60] *See* (JA1267-1268).

[61] *See* (JA1104-1106) (246:10-248:9).

[62] *See* (JA1114, JA1142) (31:3-5, 243:9-12).

[63] *See* (JA1249-1250) (322:24-323:2).

[64] *See* (JA1033-1034) (67:20-68:3).

[65] *See* (JA1015-1017).

received notice of the outcome. The non-party witness, who had not been told to keep this information confidential, began disclosing the suspension to classmates at UVA Med School as early as November 30, 2018.[66]

- On November 30, 2018—the day after UVA notified Bhattacharya of his suspension—Peterson and others at UVA learned of additional reasons to question the reliability of this witness[67] in addition to the "red flags" of which Peterson was aware dating back to January 2017.[68]

- Contemporaneously with UVA's issuance of the NTO—for which UVA now cites this witness as justification[69]—Peterson learned of additional grounds for doubting the credibility of this witness.[70]

Rejecting the foregoing evidence out of hand, the District Court refused to let the jury consider the fact that every single act of First Amendment retaliation that Bhattacharya claims—even including the medical records that UVA dragged into this case—cites his questions and comments at the AMWA Microaggression Panel Discussion. Following a lengthy rebuttal of the "facts" supporting UVA's summary

---

[66] *See* (JA1408-1409) (¶176); (JA992); HSU 000033.

[67] *See* (JA2801-2805).

[68] *See* (JA2749-2752, JA2778, JA2793); (JA2833-2835).

[69] The disputed issues of material fact regarding UVA's changing narrative as to why the NTO was issued are catalogued at length in Plaintiff's MSJ Opposition. *See* (JA2777-2786).

[70] *See* (JA1153).

judgment motion,[71] Plaintiff's MSJ Opposition recapped this evidence in its argument.[72] The District Court's grant of summary judgment in favor of UVA thus deprived Bhattacharya of his right to have the jury decide whether it found the foregoing evidence more credible than the justifications proffered by UVA.

## II.   THE DISTRICT COURT DENIED LEAVE TO AMEND THE COMPLAINT TO CONFORM TO SUPPORTING EVIDENCE

After Bhattacharya filed his Complaint *pro se* on September 16, 2019, the District Court entered a Scheduling Order allowing Bhattacharya to propound discovery requests as early as October 15, 2019.  (JA196-202).  On October 11, 2019, UVA moved for a "stay of discovery," arguing that "a limited stay will not cause prejudice to [Bhattacharya]" because "[his] claims do not present matters of particular urgency."  (Dkt.6 at 5).  Bhattacharya filed a *pro se* opposition to the stay.  (Dkt.7).  The District Court entered an Order staying discovery on November 7, 2019.  (Dkt.16).  The stay was not lifted until April 6, 2021.  (Dkt.134).

On April 19, 2021, the District Court entered a Scheduling Order (Dkt.139) requiring the parties to develop a discovery plan within 14 days and file motions for leave to amend pleadings within 45 days.  As a practical matter, that meant that Bhattacharya could not seek leave to amend before UVA's written discovery

---

[71] *See* (JA2755-JA2786).

[72] *See* (JA2787-2793).

responses would be due. The deadline for amending pleadings was later extended by another week, until June 10, 2021, when Bhattacharya sought leave to amend. (Dkt.149). The proposed Second Amended Complaint that Bhattacharya sought leave to file on June 10, 2021 (JA1336-1422) ("Proposed SAC") did not reflect any discovery except the parties' May 19, 2021 initial disclosures.

The principal substantive amendments were prompted by UVA's denial that the conduct at issue "was related to or triggered by Plaintiff's speech at the panel discussion." (Dkt.135). The motion for leave to amend stated that "[w]hen all of the facts come out, they will show that UVA Med School's retaliation for Mr. Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion was much more egregious than previously alleged," citing events to which the Proposed SAC referred as the "November 14, 2018 Forced Psychiatric Evaluation" and the "November 19, 2018 Forced Psychiatric Evaluation"— "both of which were instigated by Dean Densmore, Dean Peterson, and a new third-party defendant, Mr. Bhattacharya's former girlfriend." (Dkt.149 at 3-4). The new claims that the Proposed SAC sought leave to assert included civil conspiracy claims against Densmore, Peterson, and the former girlfriend. UVA filed its opposition on June 24, 2021 (Dkt.154), Bhattacharya filed his reply on July 1, 2021 (Dkt.155), and the magistrate judge heard oral argument on August 23, 2021. (Dkt.173). UVA's

written discovery responses were initially due July 1, 2021, a deadline that was later extended to July 19, 2021 as a professional courtesy.

When oral argument on the motion for leave to amend took place on August 23, 2021, UVA was just starting to produce documents that Bhattacharya had not already received before filing suit. Bhattacharya's counsel referenced some of these documents at the August 23, 2021 hearing. UVA continued to withhold many critical documents throughout the course of the litigation,[73] which Bhattacharya's counsel referenced in subsequent briefing and argument—or at least tried to. The Magistrate's Report and Recommendation regarding amendment was not issued until November 12, 2021. (JA318-338). Plaintiff's November 26, 2021 Objections (JA339-351) cited discovery obtained since the filing of the motion for leave to amend, including Federal Rule of Evidence 1006 summaries of documents (attached as Exhibits B, C, D, E, and F thereto) showing the involvement of the non-party witness in the acts of First Amendment retaliation at issue.[74]

The briefing of Plaintiff's Objections (and UVA's Objections) was complete by December 17, 2021 with the filing of Plaintiff's Reply (Dkt.263) to UVA's

---

[73] The withheld documents included Peterson's handwritten notes about discussions with the non-party witness (JA1060-1061) which were scanned for production on July 9, 2021 but not produced until the beginning of the Memorial Day weekend in May 2022—approximately two weeks before UVA moved for summary judgment.

[74] *See* (JA1429-1458); (JA1459-1463); (JA1464-1466); (JA1467); and (JA1468-1469).

Response (Dkt.257). The District Court heard oral argument on January 12, 2022 and ruled on March 16, 2022. (JA366-376). The aspects of the March 16, 2022 ruling from which Bhattacharya appeals are the District Court's denial of leave to add civil conspiracy claims and join additional defendants, including the non-party, and the District Court's failure to "receive further evidence or recommit the matter to the magistrate judge with instructions" pursuant to 28 U.S.C. § 636(b)(1).

## III. THE DISTRICT COURT DISMISSED MR. BHATTACHARYA'S CLAIM THAT UVA VIOLATED HIS DUE PROCESS RIGHTS

Rather than answer Bhattacharya's *pro se* complaint, UVA filed a Rule 12(b)(6) motion to dismiss (Dkt.18) which was rendered moot once Bhattacharya retained counsel to file an opposition (Dkt.25) and First Amended Complaint ("FAC") (JA203-258). In response to the FAC, UVA filed another Rule 12(b)(6) motion on March 24, 2020 (Dkt.112). UVA's Rule 12(b)(6) motion was fully briefed by April 14, 2020 (Dkt.113, 115, 116) and heard on June 24, 2020. (Dkt.120). It was not decided, however, until March 31, 2021, more than a year after its filing. (JA278-316); (JA317). Discovery had been stayed on November 7, 2019, before UVA filed its motions to dismiss. (Dkt.16). The stay was not lifted until April 6, 2021, after they were decided. (Dkt. 134).

The District Court's March 31, 2021 dismissal of Bhattacharya's due process claim was therefore based on the allegations of the FAC, based on what Bhattacharya

knew at the time without the benefit of discovery, about the alleged "Retaliatory

Conduct," *i.e.*:

> issuing a Professionalism Concern Card, disciplining Mr.
> Bhattacharya for his Protected Free Speech, requiring Mr.
> Bhattacharya to undergo counseling and obtain "medical
> clearance" as a prerequisite for remaining enrolled at UVA
> Med School, suspending Mr. Bhattacharya from UVA
> Med School, and preventing Mr. Bhattacharya from
> appealing his suspension or applying for readmission to
> UVA Med School by issuing and refusing to remove the
> No Trespass Order.

(JA250-252) (¶¶142, 150, 151). Other factual allegations upon which

Bhattacharya's due process claim was based at the time included: (1) failing to notify

Bhattacharya of Kern's issuance of the October 25, 2018 PCC (and affirmatively

concealing its existence from him); (2) failing to have his "College Dean" discuss

the PCC with him and document the discussion as required by UVA Med School's

policies; (3) failing to provide Bhattacharya with the PCC in advance of the

November 28, 2018 hearing or at any other time before his suspension; (4) allowing

Professor Kern to vote at the November 14, 2018 meeting; (5) failing to provide Mr.

Bhattacharya with sufficient notice of the November 28, 2018 hearing or its basis so

that he could adequately defend himself; and (6) using Bhattacharya's defense of

himself at the November 28, 2018 hearing as a basis for his suspension. (JA252-

253) (¶151). Bhattacharya's pending appeal challenges the dismissal of this claim

on the grounds that the Retaliatory Conduct was "disciplinary" rather than "academic" as the District Court held.  (JA308-311).

When Bhattacharya sought to file the SAC, he did not have the benefit of any additional discovery and sought only to add claims and parties that were not included in the FAC.  Even then, as previously discussed, the District Court would not "receive further evidence or recommit the matter to the magistrate judge with instructions" to do so pursuant to 28 U.S.C. § 636(b)(1) in ruling on the motion for leave to amend.

By the close of discovery, however, there was substantial evidence in the record of additional due process violations.  Plaintiff's MSJ Opposition cited this evidence not to try to resurrect the previously dismissed due process claim but rather based on authority that lack of due process can provide evidence of First Amendment retaliation.[75]  The District Court did not consider evidence of due process violations in dismissing Bhattacharya's First Amendment claims—much less in support of the due process claims that had previously been dismissed.

---

[75] *See*, *e.g.*, *Roncales v. Cty. of Henrico*, 451 F. Supp. 3d 480, 498 (E.D. Va. 2020); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500-01 (4th Cir. 2005).

# STATEMENT OF STANDARD OF REVIEW

## I. THE GRANT OF SUMMARY JUDGMENT IN FAVOR OF UVA

This Court reviews grants of summary judgment *de novo*. This Court's review is subject to the same standard that, pursuant to Federal Rule of Civil Procedure 56, the District Court should have applied. *See*, *e.g.*, *Wells v. Liddy*, 186 F.3d 505, 520 (4th Cir. 1999). Summary judgment is appropriate only where the record shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 permits the grant of summary judgment only when the case is "so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986). If the evidence in this case permitted either of two conclusions, then a jury—not the District Court— should have resolved Bhattacharya's claims of First Amendment retaliation. *Id.* at 250-51. Under *Liberty Lobby*, it was not the proper role of the District Court to "weigh the evidence and determine the truth of the matter." *Id.* at 249. Instead, the District Court's role was limited by Rule 56 to determining whether there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

This Court's precedents similarly recognize that a grant of summary judgment should be reversed when the district court attempts to "resolve [] factual dispute[s]" and "resolve conflicts in the evidence." *Podberesky v. Kirwan*, 38 F.3d 147, 156-57

(4th Cir. 1994). *See also Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 202 n.18 (4th Cir. 2005) (vacating grant of summary judgment in part because "the district court inappropriately made a finding of fact"); *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 259-262 (4th Cir. 2005) (reversing grant of summary judgment based on district court finding that the employee was terminated for cause because the facts it used to distinguished this case from pertinent precedent were "irrelevant"). In short, a motion for summary judgment should be granted "only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950).

## II.    DENIAL OF LEAVE TO AMEND THE COMPLAINT

To the extent that the denial of leave to amend was based on futility, this Court reviews the District Court's decision *de novo*. *United States ex. rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014). To the extent that the District Court's decision was based on discretion granted by Federal Rule of Civil Procedure 15(a)(2) to grant leave to amend "when justice so requires," the standard of review is abuse of discretion. *Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) (*en banc*). The same is true of the District Court's failure to "receive further evidence or recommit the matter to the magistrate judge with instructions" to do so pursuant to 28 U.S.C.

§ 636(b)(1).  *Doe v. Chao*, 306 F.3d 170, 183 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) (citing *United States v. Howell*, 231 F.3d 615, 622-23 (9th Cir. 2000).

## III.   DISMISSAL OF MR. BHATTACHARYA'S DUE PROCESS CLAIM

This Court reviews the District Court's Rule 12(b)(6) dismissal of Mr. Bhattacharya's due process claim *de novo*.  *Wag More Dogs*, *Ltd. Liab. Corp. v. Cozart*, 680 F.3d 359, 364-65 (4th Cir. 2012).  Consistent with Rule 12(b)(6), for purposes of this appeal, the factual allegations of the FAC are accepted as true. *Martin Marietta Corp. v. Int'l. Tel. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992).

## SUMMARY OF ARGUMENT

First and foremost, the District Court violated Rule 56 by resolving disputed issues of fact from which a jury could find that the retaliatory conduct of which Bhattacharya complains—including his November 29, 2018 suspension from UVA Med School and ultimate expulsion by virtue of the January 3, 2019 NTO—were the result of his protected speech at the October 25, 2018 AMWA Microaggression Panel Discussion and on subsequent occasions.  These include Bhattacharya's efforts to defend himself against the unspecified "charges" at the November 28, 2018 ASAC suspension "hearing" and his online postings following the suspension in which he sought help appealing the suspension and having it overturned.  In the process of making these improper findings of fact that a jury should have been permitted to make, the District Court reached erroneous conclusions of law.  These

include whether certain conduct on the part of UVA—including the October 25, 2018 PCC Card, the November 14, 2018 ASAC Vote to Reprimand, and the November 15, 2018 ASAC Letter of Reprimand—were "adverse actions" likely to "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Clark v. Coleman*, 335 F. Supp. 3d 818, 825 (W.D. Va. 2018) (quoting *Constantine*, 411 F.3d at 500). With respect to each of the retaliatory acts the District Court found were "adverse actions," the District Court erred by holding that there was ***not*** "a causal relationship between [Bhattacharya's] protected activity and the defendants' conduct.'" *Id.* The material facts upon which the District Court based these determinations were very much in dispute. The evidence cited in Plaintiff's MSJ Opposition was sufficient to establish First Amendment violations under the authorities cited therein.

When the District Court denied Bhattacharya leave to amend to assert a claim for civil conspiracy involving UVA Individual Defendants and a non-party, the District Court committed error as a matter of law. The intra-enterprise conspiracy doctrine did not bar these claims because the alleged conspiracy included an individual who was not part of UVA and because of the "independent personal stake" of the Individual Defendants, particularly Peterson. The District Court also disregarded authority from this Court and others that, as long as the alleged conspirators have the same ***objective***, the fact that they have different ***motives*** does

not bar the conspiracy claim. This error was compounded by the District Court's refusal, in ruling on the motion for leave to amend, to consider evidence obtained in discovery that supported these conspiracy allegations. The District Court abused its discretion under 28 U.S.C. § 636(b)(1) to receive such evidence because its lengthy stay of discovery and scheduling orders had permitted ***no discovery*** before the deadline for moving to amend.

The District Court erred as a matter of law by granting UVA's Rule 12(b)(6) motion to dismiss Bhattacharya's due process claims. The allegations of Bhattacharya's pleadings at the time establish that he did not have the notice and opportunity to be heard that he should have received before being suspended and expelled from UVA Med School, among other adverse actions. As a matter of law, these acts were on disciplinary rather than academic grounds under the authorities cited by Bhattacharya. The allegations supporting these dismissed claims have since been supported by evidence obtained in discovery showing that—by November 2018—UVA Med School itself recognized that it had insufficient grounds to suspend Bhattacharya for violating "Technical Standards," for academic reasons, or pursuant to the Title IX investigation that UVA had begun but never informed Bhattacharya was underway (and concluded with Bhattacharya's expulsion).

# ARGUMENT

## I. THE DISTRICT COURT VIOLATED RULE 56 BY RESOLVING DISPUTED ISSUES OF MATERIAL FACT IN FAVOR OF UVA

With all due respect, the evidence cited and discussed more extensively in Plaintiff's MSJ Opposition simply cannot be reconciled with the District Court's finding that "discovery has failed to produce a single piece of evidence indicating that Defendants retaliated against Plaintiff because of his protected speech." (JA1313). One of the incorrect ways that the District Court reached this conclusion was by indulging UVA's fiction that various individuals at UVA, including defendants named in their official capacities, should be viewed in isolation rather than as a whole. This was contrary to law, including the District Court's own precedents requiring UVA to be viewed as a single entity.[76] It was not material whether ASAC members who voted to reprimand and suspend Bhattacharya themselves were motivated by their own personal reactions to Bhattacharya's protected speech (although one member of ASAC, the day after voting to reprimand Bhattacharya for his remarks on October 25, 2018, "diagnosed" Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion as

---

[76] *Nzabandora v. Univ. of Va. Health Sys.*, No. 3:17-cv-00003, 2017 U.S. Dist. LEXIS 9691, at *3 (W.D. Va. Jan. 24, 2017); *Johnson v. Univ. of Va. Med. Ctr.*, No. 3:06-cv-00061, 2007 U.S. Dist. LEXIS 3122, at *12 (W.D. Va. Jan. 17, 2007); *McCarthy v. Univ. of Va. Health Sys.*, No. 3:18-cv-00121, 2019 WL 2610118, at *2 (W.D. Va. June 25, 2019); *Faxon v. Univ. of Va. Health Sys.*, Civil Action No. 3:10-cv-00049, 2011 WL 841279, at *1 (W.D. Va. Mar. 7, 2011).

symptomatic of untreated bipolar disorder[77]).  ASAC certainly should have investigated the unspecified "charges" against Bhattacharya before imposing the discipline at issue.  Instead, its members apparently relied on what individuals like Canterbury were telling them to do and what individuals like Peterson were telling them they should do.  Censorship is censorship regardless of whether individuals involved privately agree with the speech being censored (and the speaker being "cancelled," as Bhattacharya was).

Plaintiff's MSJ Opposition cited evidence, as summarized herein, that Canterbury and Peterson themselves were motivated by ideological opposition to the **content** of what Bhattacharya had to say on October 25, 2018.  The District Court completely ignored this evidence about Canterbury and Peterson while also claiming that there was no link between the complaints of others about the **content** of Bhattacharya's speech and the retaliatory conduct that Canterbury, Peterson, and others at UVA Med School orchestrated.  Again, the evidence cited in Plaintiff's MSJ Opposition summarized herein shows otherwise.  The complaints that began upon the conclusion of the AMWA Microaggression Panel Discussion and continued through issuance of the NTO all related to the **content** of Bhattacharya's speech, including what he said on October 25, 2018 at the AMWA event and what

---

[77] (JA1837).

he allegedly said—but in fact did not say—in subsequent postings seeking legal representation. So did the discipline that he received, including the November 29, 2018 Suspension Letter citing not only what he said at the AMWA Microaggression Panel Discussion but even what he said on November 28, 2018 at the ASAC "hearing," such as it was.

In this regard, it is simply not material whether the members of ASAC who voted did so based on their own personal opinions. They accepted at face value the narrative advocated by Peterson, Canterbury, and others. Even then, every single act of retaliation of which Bhattacharya complains in fact cited the ***content*** of what Bhattacharya said on October 25, 2018, as documented in Plaintiff's MSJ Opposition. Even the medical records cited his questions and comments at the AMWA Microaggression Panel Discussion, as did Peterson's November 23, 2018 "to whom it may concern" letter that she read aloud to ASAC on November 28, 2018.

Besides ignoring facts contrary to the result set forth in the MSJ Opinion, the District Court erred by resolving factual disputes in favor of UVA. Whether "there was a causal relationship between [Bhattacharya's] protected activity and the defendants' conduct"[78] is—like the "adverse action" and other elements of a First

---

[78] *Clark v. Coleman*, 335 F. Supp. 3d at 825 (quoting *Constantine*, 411 F.3d at 499).

Amendment retaliation claim under Section 1983—"a fact-intensive inquiry, as the court must analyze 'the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts.'" *Webb v. Paine*, 515 F. Supp. 3d 466, 479-80 (S.D.W. Va. 2021).

By resolving factual disputes in favor of UVA, the District Court committed reversible error because Rule 56 permits the grant of summary judgment only when the case is "so one-sided that a party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251-52. The jury—not the District Court—should have resolved whether Bhattacharya was disciplined because of his protected speech or based on the other grounds that UVA asserts. *Id.* at 250-51. It was not the proper role of the District Court to "weigh the evidence and determine the truth of the matter." *Id*. at 250. It was improper for the District Court to "resolve [] factual dispute[s]" and "resolve conflicts in the evidence." *Podberesky*, 38 F.3d at 156-57. The gravity of this error is compounded by the fact that the District Court resolved many of these factual disputes in a way that was demonstrably incorrect. One of many examples of this is the District Court's finding that the "November 27 CAPS Evaluation Requirement" was the result of UVA Med School "evenly applying its attendance policy" and therefore "was not an adverse action as a matter of law." (JA1326). The

evidence showed that there was no such policy[79] and that UVA's Office of General Counsel, TAT Director, and CAPS Director advised against requiring another CAPS evaluation, found the requirement improper, and/or were not aware of the alleged policy[80]—whereupon Canterbury insisted upon the CAPS evaluation anyway by invoking "emergency powers" that he admittedly did not have.[81]

Other errors of law in the District Court's MSJ Order include its reliance upon its prior holding "that the Professionalism Concern Card was not an adverse action as a matter of law." (JA1324) (citing Dkt.487). Previously, the District Court had held that the Professionalism Concern Card *was* an adverse action. (JA299). The District Court got it right the first time. The PCC provided the basis for hauling Bhattacharya before ASAC, which it in fact did. Without the PCC, Bhattacharya would not have faced the subsequent discipline that the District Court found *did* constitute adverse action. The statements in the PCC certainly found their way into the subsequent "adverse actions." Kern's characterization of Bhattacharya's questions as "antagonistic toward the panel" (JA459) found its way into subsequent discipline that Bhattacharya received—including the November 14, 2018 Forced Psychiatric Evaluation, the November 15, 2018 ASAC Letter of Reprimand, the

---

[79] *See* (JA1114, JA1142) (31:3-5, 243:9-12).

[80] *See* (JA1267-1268); (JA1104-1106) (246:10-248:9); (JA1114, JA1142) (31:3-5, 243:9-12).

[81] *See* (JA1249-1250) (322:24-323:2).

November 19, 2018 Forced Psychiatric Evaluation, and the November 29, 2018 Suspension Letter.

So did the November 14, 2018 ASAC Vote to Reprimand and the November 15, 2018 ASAC Letter of Reprimand. Like the PCC, they were cited in, and paraphrased in all of the subsequent adverse actions, even in Bhattacharya's medical records. These two events, which the District Court previously held *were* "adverse actions" (JA299), in fact would likely "deter 'a person of ordinary firmness' from the exercise of First Amendment rights." *Clark v. Coleman*, 335 F. Supp. at 825 (quoting *Constantine*, 411 F.3d at 500). They were intended to do so and the evidence supports finding that they in fact did so, not only with respect to Bhattacharya[82] but with respect to other students. Regardless of how other students may have felt privately, as of December 30, 2018, "no one else [was] outspoken in support of Kieran's views or conduct." (JA1485).

The evidence cited in Plaintiff's MSJ Opposition is inconsistent with the District Court's assertions that "Bhattacharya has put forth no direct evidence that Defendants considered the content of his speech in undertaking any of the adverse actions in question." (JA1328). Nor does the record support the assertion that "there is no evidence that Defendants relied on or in any way incorporated [student]

---

[82] *See* (JA2793-2794).

complaints into their decision making." (JA1328-1329). Canterbury, Peterson, Reed, and others all acted upon and relied upon such student complaints. Reed even directed a student to submit a complaint to the "Listening Post" so that UVA Med School could act upon it as it did.

The District Court's suggestion that Bhattacharya raised a "pretext" theory to offset the lack of evidence of First Amendment retaliation similarly ignores all of the direct evidence of retaliation. It is inconsistent with Supreme Court precedent requiring Bhattacharya to have the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, (2000) (citation omitted). The District Court attempted to distinguish this Court's decisions in *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) and *Warren v. Halstead Indus., Inc.*, 802 F.2d 746, 753 (4th Cir. 1986), *on reh'g*, 835 F.2d 535 (4th Cir. 1988) on the grounds that they were Title VII cases rather than First Amendment cases. In fact, the standard for finding pretext for alleged justification is similar if not the same in Title VII retaliation and First Amendment retaliation cases. *See Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015). It was therefore entirely appropriate for Plaintiff's MSJ Opposition to rely upon indirect or circumstantial evidence sufficient to show state of mind (*Warren*, 802 F.2d at 752); implausibility of the alleged justification, which

creates a genuine issue of material fact,[83] an adverse action so lacking in merit that its genuineness is called into question, thereby creating an inference of pretext,[84] dishonesty,[85] departure from established policy, particularly where the departure affected the plaintiff differently than others[86] and discriminatory comments by the decision-maker.[87]

Like its ruling finding no First Amendment retaliation, the District Court's ruling that Individual Defendants were entitled to qualified immunity violated the Supreme Court's directive that a district court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014). Like the lower court in *Tolan*, here the District Court "fail[ed] to credit evidence that contradicted some of its key factual conclusions" and thus "improperly weigh[ed] the evidence and resolved disputes in the favor of the moving party." *Id.* at 657 (internal citation and quotation marks omitted). The District

---

[83] *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1564 (11th Cir. 1987); *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).

[84] *Dister v. Cont'l Grp. Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988).

[85] *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000); *M.L. v. Williamson Cty. Bd. of Educ.*, No. 3:16-cv-1093, 2018 WL 2970704, at *8 (M.D. Tenn. June 12, 2018), *aff'd*, 772 F. App'x 287 (6th Cir. 2019).

[86] *Floyd v. State of Missouri Dep't of Soc. Servs., Div. of Fam. Servs.*, 188 F.3d 932, 937 (8th Cir. 1999).

[87] *Rajaravivarma v. Bd. of Trustees for Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 152 (D. Conn. 2012).

Court's grant of summary judgment on the qualified immunity defense was not appropriate because the parties disputed whether the offending conduct—First Amendment retaliation—actually occurred. *See*, *e.g.*, *Douglass v. Sanok*, No. 3:05-cv-00018, 2006 WL 2927780, at *6 (W.D. Va. Oct. 11, 2006) (citing *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

## II.  THE DISTRICT COURT SHOULD HAVE GRANTED LEAVE TO AMEND AND CONSIDERED THE SUPPORTING EVIDENCE

The District Court's March 16, 2022 ruling acknowledged that, pursuant to Federal Rule 15(a), "[t]he court should freely give leave when justice so requires" to "give effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).  Of the grounds for denying leave to amend that this Court recognized in *Franks v. Ross*, 313 F.3d 184, 193 (4th Cir. 2002), only one—futility—was the basis for the District Court's denial.  Bhattacharya's Proposed SAC would have been futile only if it "fail[ed] to satisfy the requirements of the federal rules" and applicable standards of review,[88] including the standards governing a motion to dismiss under Rule 12(b)(6).  *See Wilkins v. Wells Fargo Bank*, *N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

---

[88] *Katyle v. Penn. Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

Here, the District Court's denial of leave to amend on grounds of futility was incorrect as a matter of law under Rule 12(b)(6) even without consideration of the additional evidence supporting the Proposed SAC's allegations. The District Court's finding that the civil conspiracy claim against Individual Defendants Peterson and Densmore and the non-party defendant was "futile" is incorrect as a matter of law. The claim was not barred by the intra-enterprise conspiracy doctrine because the allegations of the Proposed SAC were sufficient to establish "an independent personal stake" creating an exception to the doctrine under this Court's decision in *Greenville Publ'g Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). In addition, joinder of the non-party defendant would have eliminated the intra-enterprise conspiracy issue. The District Court's ruling that her joinder would have been futile on the grounds that she had a different ***motive*** was incorrect as a matter of law because she and UVA (and the Individual Defendants) shared a common ***objective***: punishing Bhattacharya by having him at least suspended from UVA Med School, if not worse.

The conduct alleged on the part of Peterson alone was sufficient to establish "an independent personal stake in achieving [UVA's] illegal objective" because it was outside the scope of her employment and normal duties. *Buschi v. Kirven*, 775 F.2d 1240, 1252 (4th Cir. 1985) (citing *Greenville Publ'g*, 496 F.2d at 399). At the time she sent the November 23, 2018 "to whom it may concern" letter (JA1427-

1428) referenced in ¶174 of the Proposed SAC (JA1407-1408), Peterson was Associate Professor of General Obstetrics and Gynecology and Assistant Dean for Medical Education at UVA Med School. Her duties and responsibilities did not include sending such a letter for submission to a magistrate in Charlottesville, the Charlottesville Juvenile & Domestic Relations Court, and/or anyone else to whom the non-party witness wanted to disseminate it. To the contrary, UVA policies prevented her from sending such a letter to a court on UVA Med School letterhead. (JA341, JA346-347). But Peterson did so anyway. Peterson was among the individuals alleged to have "subordinated their responsibilities to UVA Med School—including students and faculty alike—to their personal ideologies and prejudices and their loyalty to AMWA." (JA1353) (¶34). The Proposed SAC (JA1408-1409) (¶176) also described text messages exchanged between Peterson and the non-party witness (later produced as UVA00002254-55) disclosing what transpired at ASAC on November 28, 2018 "in violation of Mr. Bhattacharya's privacy rights, General Policies III.E. of ASAC's Operating Procedures, and the Family Educational Rights and Privacy Act of 1974."[89]

The involvement of the non-party witness also took the alleged conspiracy outside the intra-enterprise conspiracy doctrine regardless of whether the non-party

_____

[89] *See* (JA354) (n.5).

witness was joined as a defendant. *Buschi*, 775 F.2d at 1252-53; *see also United States v. Berkeley Heartlab, Inc.*, 225 F. Supp. 3d 487, 502 (D.S.C. 2016); *Mbadiwe v. Union Mem'l Reg'l Med. Ctr., Inc.*, No. 3:05CV49-MU, 2005 U.S. Dist. LEXIS 31674, at *8 (W.D.N.C. Nov. 28, 2005). The Proposed SAC contained several examples of collaboration between the non-party witness and UVA faculty and administrators. *See*, *e.g.*, (JA1373-1374, JA1397, 1404-1409) (¶¶ 96, 157, 164, 168-69, 172-74, and 176). Discovery later produced many more.

The District Court's denial of leave to amend to add the civil conspiracy claim against individuals at UVA and the non-party witness was contrary to precedents that a conspiracy is actionable if they have one "conspiratorial objective"—regardless of whether they have the same motive. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). Many other federal courts have "recognize[d] the difference between motive and objective" in the context of a conspiracy claim, often in antitrust cases. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 212 (3d Cir. 1992); *see also Spectators' Commc'n. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 221 (5th Cir. 2001); *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137 (10th Cir. 1997) (*en banc*); *MCM Partners, Inc. v. Andrews-Bartlett & Assocs., Inc.*, 62 F.3d 967, 975 (7th Cir. 1995); *United States v. Davis*, 183 F.3d 231, 244 (3d Cir. 1999), *amended*, 197 F.3d 662 (3d Cir. 1999); *United States v. Redifer*, 631 F.

App'x 548, 553 (10th Cir. 2015) ("an identical . . . motive is not essential to a conspiracy").

Put another way, the "what" of a conspiracy must be the same, but the "why" need not. *See United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) (holding that co-conspirators' motives "need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes."). Bhattacharya's Proposed SAC did not allege different unlawful objectives, only different motives for pursuing that objective. The ***what*** was the derailing of Mr. Bhattacharya's career by "disciplin[ing], suspend[ing], and ultimately banish[ing]" him from UVA Medical School. (JA1338-1339) (¶3). The ***why*** varied by defendant. The UVA Med School Co-Conspirators had "the purpose of depriving Mr. Bhattacharya of his First Amendment right of free speech" whereas Angel Hsu's motive was personal "retribution." (JA1417) (¶¶206-07.) These differing motives do not defeat a conspiracy claim. *See Davis*, 183 F.3d at 244. There is a "difference between motive and objective." *Fineman*, 980 F.2d at 212.

In addition to misapplying the intra-enterprise conspiracy doctrine, the District Court abused the discretion afforded by 28 U.S.C. § 636(b)(1) to "receive further evidence or recommit the matter to the magistrate judge with instructions." The District Court's prior orders did not allow any discovery before the deadline for seeking leave to amend. Rule 15(b) permits amendments at or after trial to conform

to the evidence.  UVA would not have been prejudiced by having to address evidence that it knew about but deliberately withheld until the end of discovery.  Not only should Bhattacharya have been allowed to rely upon such evidence in support of his Proposed SAC, he should have been allowed to conform the Proposed SAC to the evidence—just as he would have been permitted to do after the fact had there been a jury trial beginning October 24, 2022 as scheduled.

Citing precedents such as *Doe v. Chao*, 306 F.3d at 183 n.9, this Court has previously found an abuse of discretion where the district court refused to consider additional evidence submitted with objections to a magistrate judge's report and recommendations.  *Wojcicki v. Aiken Tech. Coll.*, 360 F. App'x 484 (4th Cir. 2010). Bhattacharya respectfully requests that the Court do so here.

## III.  THE DISTRICT COURT ERRED BY FINDING THE SUSPENSION AND NTO TO BE ACADEMIC RATHER THAN DISCIPLINARY

Before voting to suspend Bhattacharya, ASAC determined that Bhattacharya's questions and comments at the AMWA Microaggression Panel Discussion were "unnecessarily antagonistic and disrespectful" and that he engaged in "aggressive and inappropriate interactions in multiple situations, including in public settings, during a speaker's lecture."  UVA sought to justify the NTO whereby the suspension effectively became an expulsion because "concerns were raised about comments on a chat room that were perceived as threats."  These actions are nothing

"[l]ike the decision of an individual professor as to the proper grade for a student in his course." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 90 (1978). They did *not* "require[] an expert evaluation of cumulative information" and *are*—unlike a grading decision—"readily adapted to the procedural tools of judicial or administrative decisionmaking." *Id.*

Consistent with the Supreme Court's decision in *Horowitz*, the District Court should have rejected UVA's characterization of what was in fact an "expulsion for misconduct" as an "academic removal." *See*, *e.g.*, *Byrnes v. Johnson Cty. Cmty. Coll.*, No. CIV.A. 10-2690-EFM, 2011 WL 166715, at *2 (D. Kan. Jan. 19, 2011) (rejecting college's attempt to categorize as an "academic" decision its dismissal of four students from a nursing program for "unprofessional" behavior on Facebook); *Barnes v. Zaccari*, 669 F.3d 1295, 1307 (11th Cir. 2012) (finding expulsion of student environmental activist whose blogging and leafleting was annoying to the university president, without pre-removal process, violated due process rights notwithstanding the university's insistence that removal was justified by safety concerns over speech indicating that the student might be violent). Here, Bhattacharya was in good standing at UVA Med School before October 25, 2018,

and the FAC's allegations establish that ASAC raised no concerns about Mr. Bhattacharya's academic record.[90]

Unlike an academic decision of the type found by the District Court, "disciplinary proceedings require more stringent procedural protection than academic evaluations, even though the effects of an adverse decision on the student may be the same." *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983). "Expulsion for misconduct triggers a panoply of safeguards designed to ensure the fairness of factfinding by the university." *Abbariao v. Hamline Univ. Sch. of Law*, 258 N.W.2d 108, 112 (Minn. 1977) (citing *Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961)).

ASAC's November 28, 2018 "hearing"—which lasted all of 28 minutes, following little or no notice of its purpose and the nature and basis of the "charges" against him—deprived Bhattacharya of "[t]he fundamental requirement of due process," *i.e.*, "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). So did the NTO, of which Bhattacharya had no notice, and for which UVA

---

[90] Discovery has since established that—by November 2018—UVA Med School recognized that it had insufficient grounds to suspend Bhattacharya for violating "Technical Standards," for academic reasons, or pursuant to the Title IX investigation that UVA had begun but never informed Bhattacharya was underway. *See*, *e.g.*, (JA2820-2831).

provided no explanation until after the deadline for appeal. Each was a "mere sham"[91] in which UVA Med School "simply brushed aside" its own policies and procedures. *Escobar v. State Univ. of New York/Coll. at Old Westbury*, 427 F. Supp. 850, 858 (E.D.N.Y. 1977).

Bhattacharya was alerted to the November 28, 2018 hearing by email four hours before it was convened and was not notified as to its purpose or subject matter. He was finally told by a UVA Med School dean shortly beforehand that it had something to do with his statements at the AMWA Microaggression Panel Discussion. He could not prepare for the discussion or present evidence in his defense. The November 28, 2018 recording shows that ASAC simply opened the floor to Bhattacharya without establishing the grounds for the disciplinary hearing or stating how his "enrollment status" would be decided. ASAC Chair Tucker specifically prevented Bhattacharya from presenting relevant evidence, including the recording of what Bhattacharya said on October 25, 2018—a recording that no one present (except Peterson and Kern), not even Tucker, had ever heard. The hearing would have ended even sooner had Bhattacharya not persisted in seeking information about the basis for the claims against him so that he could defend himself. Rather than providing specific information or evidence, one ASAC voting

---

[91] *Lightsey v. King*, 567 F. Supp. 645, 649-650 (E.D.N.Y. 1983).

member, Barnett Nathan, repeatedly asked why ***Bhattacharya*** thought he was there. The hearing was perfunctory, and its outcome was preordained—as discovery has since confirmed.[92] The lack of due process on November 28, 2019 was certainly not cured by ASAC's letter the following day claiming that Bhattacharya had been "provided an opportunity to be heard and to respond to the concerns about your recent behavior." (JA492). To the contrary, ASAC cited Bhattacharya's effort to defend himself the previous day as additional grounds for suspension. (*Id.*)

With respect to the suspension and the NTO alike, UVA failed to state reasons for its decision sufficient to provide "a basis for objection before the next decisionmaker or in a subsequent . . . review." *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005); *see also Incumaa v. Stirling*, 791 F.3d 517, 535 (4th Cir. 2015). To the extent ASAC provided any such statement, discovery has since revealed that it was deliberately incomplete and misleading. The November 28, 2018 minutes omitted the fact that the only specific documentary evidence considered in the closed door session was Peterson's November 23, 2018 "to whom it may concern" letter that she had written to help Angel Hsu obtain a PPO and possession of the couple's apartment and dog, which Peterson read out loud.[93] The District Court did not have access to

---

[92] For example, before ASAC met on November 28, 2018, Peterson wrote that Bhattacharya was "facing (likely) suspension for not being able to meet the SOM technical standards." *See* (JA1171).

[93] *See* Peterson Dep. (JA1048-1050) (94:1-196:3).

this information when it dismissed the due process claim. But when Bhattacharya later tried to rely upon the November 23, 2018 letter in subsequent proceedings, including the motion for leave to amend, the District Court rejected the evidence and castigated Bhattacharya for not citing it earlier:[94]

> However, as Judge Hoppe noted, Bhattacharya failed to allege in his proposed Second Amended Complaint that Peterson's letter was outside of Dean Peterson's duties, or make any allegation regarding the letter at all. Dkt. 230 at 16–17. Bhattacharya cannot retroactively attempt to amend his Second Amended Complaint through his objections to the Magistrate Judge's R&R.

(JA374-375).

As for the NTO, the District Court's inability to decipher the unidentified "chat room" comments upon which UVA claimed to rely is, in and of itself, sufficient to show a deprivation of due process that is inconsistent with the Supreme Court's decision in *Wilkinson* and this Court's decision in *Incumaa*. The stated basis for the NTO continued to "morph" until the day that UVA moved for summary judgment, as documented in Plaintiff's MSJ Opposition.[95]

---

[94] Although Bhattacharya did not previously have the letter because it was not in his UVA Med School student file that he received in December 2018 when he tried to appeal his suspension, the Proposed SAC (JA1407-1408) (¶174) quoted a text message from the non-party witness asking Peterson "to write a letter documenting all the distress Kieran has caused me and how I perceived him as a danger to me when I spoke with you." (JA1408).

[95] *See* (JA2777-2786).

## CONCLUSION

For Bhattacharya, justice has been both delayed and denied—while he was at UVA and, unfortunately, since them. He therefore respectfully requests that a jury be allowed to consider his evidence of First Amendment retaliation, that he be allowed to pursue the civil conspiracy claims that he was denied leave to assert, and that he be afforded due process by being allowed to obtain relief for UVA's violation of his due process rights.

## REQUEST FOR ORAL ARGUMENT

Bhattacharya's appeal raises important public policy questions that are not limited to whether Bhattacharya should have been expelled from UVA Med School. If allowed to stand, the District Court's rulings will create a "road map" for government officials to violate free speech and due process rights with impunity by the simple expedient of creating a paper trail to support an alternative justification for their conduct. Accordingly, Bhattacharya respectfully requests oral argument on the issues raised by his appeal.

Date:  March 29, 2023

Respectfully submitted,

By:  /s/ Michael J. Lockerby
Michael J. Lockerby (VSB No. 24003)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W. Suite 600
Washington, D.C. 20007-5109
(202) 945-6079 (Telephone)
(202) 672-5399 (Facsimile)
mlockerby@foley.com

*Counsel for Appellant*,
*Kieran Ravi Bhattacharya*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations. Exclusive of the portions exempted by Fed. R. App. P. 32(f), this brief contains 12,587 words. This certificate was prepared in reliance on the word-count function of Microsoft Word 2010.

Pursuant to Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), this brief was formatted in a proportionally-spaced typeface using Microsoft Word 2010 in Times New Roman 14-point type font.

/s/ Michael J. Lockerby
Michael J. Lockerby

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 29th day of March, 2023, the foregoing FINAL

BRIEF OF APPELLANT was served on the following counsel of record for

Defendants-Appellees, James Murray, Jr., et al., through the CM/ECF system:

Andrew Nathan Ferguson, Solicitor General
Erika L. Maley, Principal Deputy Solicitor General
Kevin M. Gallagher, Deputy Solicitor General
Rick W. Eberstadt, John Marshall Fellow
OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA
202 North 9th Street
Richmond, Virginia 23219

/s/ Michael J. Lockerby
Michael J. Lockerby